pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration. General Dynamics, 828 F.2d at 1362-63. There were no such issues in this case. There was no SSA regulation in dispute. The district court was not required to interpret, or even instruct the jury, regarding SSA regulations. While there is no dispute that Congress has established SSA as the administrative body with responsibility for promulgating and administering the SSDI benefits program, there is simply no regulation at issue.

Defendant contends that the core issue at trial was whether her medical records proved her to be disabled. (Def.'s Br. at 27.)[10] As set forth above, that contention is without basis. Indeed, while the jury's loss determination necessarily required a finding that the defendant was not disabled, the convictions and findings with respect to the elements of the offenses did not.

While defendant points the Court to the many regulations governing the program, Congress also enacted a criminal statute, 42 U.S.C. § 408, to address the problem of Social Security fraud through criminal prosecution. This Court has held that "[i]t is inappropriate to invoke the doctrine of primary jurisdiction in a case in

---

[10] The evidence proved that medical evaluations require accurate information from patients. In this case, after reviewing videotapes of the defendant's activities, which were inconsistent with her claims to him, one doctor changed his opinion and concluded she should be able to return to work. (Tr. at 2042-50.)

44

which Congress, by statute, has decided that the courts should consider the issue in the first instance." McDonnell, 751 F.2d at 224; see also United States v. Culliton, 328 F.3d 1074, 1081-83 (9th Cir. 2003) (rejecting claim that prosecution should have been deferred until after FAA action even though FAA had primarily regulatory authority over matter). Indeed, criminal prosecutions for social security fraud in United States courts are, not surprisingly, commonplace. See, e.g., United States v. Baumgardner, 85 F.3d 1305 (8th Cir. 1996) (prosecution under 42 U.S.C. § 408(a)(4)); United States v. Gallant, 306 F.3d 1181 (1st Cir. 2002) (prosecution under 42 U.S.C. § 408(a)(4)); United States v. Rettenberger, 344 F.3d 702 (7th Cir. 2003). Defendant suggests that cases affirming prosecutions address failures to disclose income, "a straightforward issue that a lay jury is easily capable of divining," rather than eligibility. (Def.'s Br. at 24, n.3.) That assertion is inaccurate. See, e.g., Rettenberger, 344 F.3d 702, 704-05 (7th Cir. 2003) (real estate development activities and extensive travel contrary to claims to SSA); United States v. Goodson, 155 F.3d 963, 965-66 (8th Cir. 1998) (prosecuted for undisclosed substantial gainful activity in that he operated business, depositing checks, received deliveries and placed orders while telling SSA he only checked identifications at door for $75 per week); United States v. Streebing, 987 F.2d 368, 370 (6th Cir. 1993) (prosecuted for claiming he was not self-employed where evidence showed defendant formed and owned

company for which he created and marketed software); see also United States v. Brown, 948 F.2d 1076, 1079-80 (8th Cir. 1991) (rejecting defendant's contention of insufficient medical evidence in a veterans disability fraud prosecution in light of witness testimony that defendant told people to falsify statements, was not seen in wheel chair and medical testimony that defendant could have caused symptoms).

Recognizing the plain fact that Congress has authorized the criminal prosecution for social security fraud under 42 U.S.C. § 408, defendant suggests that the issue is one of timing; criminal prosecution must be postponed until after SSA has determined the disability status of the defendant. (Def.'s Br. at 25 n.4.) This assertion is not only without legal support, but it is flawed in practical terms. It ignores the obvious impediment prospective criminal defendants could then employ to hinder prosecution: prospective defendants could simply tie up the administrative process with the appeals process until the criminal statute of limitations had expired or evidence had grown stale. Moreover, defendant's assertion that the Social Security Act requires that the administrative determination precede criminal prosecution is simply illogical. (Def.'s Br. at 31-32.) Defendant correctly notes that SSA is required to investigate fraud unless the Department of Justice certifies that such an inquiry would jeopardize a criminal prosecution. (Def.'s Br. at 31 (citing 42 U.S.C. § 1383(e)(7)(A)(i)).) This provision proves, however, that criminal prosecution by

46

the Department of Justice takes precedence, not the reverse. The fact that no certification was made in this case – as the administrative process did not jeopardize the criminal prosecution – does not alter that precedence.

Ironically, in this case, SSA had made a determination that the defendant had committed fraud and was not entitled to the $193,509 that she had received in SSDI benefits prior to the criminal trial. PSI ¶ 41. Notwithstanding her claim here that "the SSA has the technical expertise, experience, and Congressional mandate to make such a determination," (Def.'s Br. at 29), in the face of SSA's adverse administrative decision finding that she had committed fraud and was not entitled to benefits, she has filed suit in the United States District Court to have that decision overturned.

Accordingly, the district court properly rejected defendant's motion to refer the case to SSA.[11]

---

[11] Defendant also claims that the district court's denial of her motion to refer the matter violated her Due Process rights under the Fourteenth Amendment. (Def.'s Br. at 32.) In order for a due process claim to be cognizable, a recognized liberty or property interest must be at stake. Board of Regents v. Roth, 408 U.S. 564, 569 (1972). For the reasons set forth above, even if one were to assume that a favorable administrative determination would have been *res judicata*, the defendant cannot establish that she has a cognizable interest in the administrative process going first. To the contrary, the doctrine of primary jurisdiction is a "flexible tool" for courts to allocate business. McDonnell, 751 F.2d at 224.

47

## III. THE INDICTMENT FAIRLY INFORMED THE DEFENDANT OF THE CHARGES

Defendant also argues that her conviction must be reversed because the indictment was vague and imprecise. (Def.'s Br. at 38-40.) Federal Rule of Criminal Procedure 12(b)(2) requires that challenges to the sufficiency of an indictment be brought before trial. United States v. White, 241 F.3d 1015, 1020-21 (8th Cir. 2001). In this case, defendant raised no such challenge prior to trial.[12] Accordingly, she waived any such objection. Id. On review, this Court will uphold the indictment, "unless it is so defective that by no reasonable construction can it be said to charge the offense." Id. (quoting United States v. Pennington, 168 F.3d 1060, 1064-65 (8th Cir. 1999)).

"[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974); see United States v. Dolan, 120 F.3d 856, 864 (8th Cir. 1997) ("To be

---

[12] As noted above, during the charge conference, defense counsel claimed for the first time that Count 7 was vague. (Tr. at 2144-47.) The following day the government voluntarily filed a Bill of Particulars setting forth the specific statements made by the defendant to the administrative law judge that were at issue. Defense counsel did not have the same objection with regard to Counts 8 and 9. (Tr. at 2149.)

48

sufficient, an indictment must fairly inform the defendant of the charges against him and allow him to plead double jeopardy as a bar to future prosecution."). Even a cursory review of the superseding indictment's 21 pages can leave no doubt the indictment fairly informed the defendant of the charges against her. Dolan, 120 F.3d at 864.

Defendant complains that the indictment was defective for the following reasons: (i) it failed to allege materiality and intent; (ii) it failed to allege the amount of the intended loss; and (iii) the broad, general statements were unsupported by alleged facts. (Def.'s Br. at 38-39.)

With respect to Counts 7 though 9, the Superseding Indictment alleged the defendant "knowingly and willfully did make and cause to be made a false statement and representation of a material fact." (Superseding Indictment ¶¶ 66, 68, 70.)

With respect to Count 1 through 5, paragraph 3 alleged the defendant "devised and intended to devise a scheme and artifice to defraud the SSA and to obtain money." The concept of material false statements is incorporated in, and is part of, the common law definition of "scheme to defraud." Neder v. United States, 527 U.S. 1, 184-41 (1999). The failure to employ the word "material" in the language of a mail fraud indictment is not fatal. United States v. Bieganowski, 313 F.3d 264, 285 (5th Cir. 2002); see also United States v. Fernandez, 282 F.3d 500, 508-09 (7th Cir. 2002)

49

(affirming sufficiency of mail fraud indictment without word "material"). The allegation will suffice so long as the facts alleged warrant an inference that the false statements were material. Bieganowski, 313 F.3d at 285; White, 241 F.3d at 1021 ("Useage of a particular word or phrase in the indictment is not required as long as we can recognize a valid offense and the form of the allegation 'substantially states the elements.'") In addition to the allegation set forth above, the Superseding Indictment also alleged that SSA granted benefits as a result of the defendant's representations "in her filings with SSA and her statements at the hearing, regarding her physical condition, her activity level, and her claimed disability" (Superseding Indictment ¶ 24), thereby further referencing the concept of materiality.

With respect to Count 6, the Superseding Indictment similarly alleged the defendant concealed facts "with the intent to fraudulently secure payments . . . knowing that these [undisclosed] facts affected her initial and continued right to receive disability benefits" (Superseding Indictment ¶ 64), thereby including the concept of materiality. Accordingly, the indictment is not deficient. See Bieganowski, 313 F.3d at 285; Fernandez, 282 F.3d at 508-09; see also United States v. Ferro, 252 F.3d 964, 966-68 (8th Cir. 2001) (reversing pre-trial dismissal for failure to allege material misrepresentation and holding materiality is question for jury).

50

Citing United States v. Evans, 272 F.3d 1069, 1093 (8th Cir. 2001),[13] defendant contends "an indictment that omits a *mens rea* requirement or a materiality element must be reversed." (Def's Br. at 38.)[14] Evans simply does not stand for that proposition. To the contrary, "[i]f the constitutional sufficiency of the indictment is first raised on appeal, then plain error applies. United States v. Lee, 374 F.3d 637, 650-51 (8th Cir. 2004). The district court instructed the jury with regard to materiality; moreover, there was evidence regarding the importance of the false information to SSA, and its termination of benefits. Thus, even were the indictment deficient, which it is not, the defendant cannot demonstrate any error "seriously affect[ed] the fairness and integrity of the judicial proceedings." Id.

## IV. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN ADMITTING EVIDENCE OF DEFENDANT'S BUSINESS AND ACTIVITY

Defendant argues that the district court improperly admitted unfairly prejudicial evidence. (Def.'s Br. at 52-56.) This Court reviews a district court's admission of

---

[13] Defendant also cites United States v. X-Citement Video, Inc., 77 F.3d 491, 1996 WL 5314 (9th Cir. 1996), an unpublished opinion that does not address fraud or materiality and is without precedential value under CT9 Rule 36-3.

[14] As far as defendant's contention that the indictment failed to allege the intended loss amount or failed to detail the factual allegations that supported the charges, these are simply not recognized as legal requirements for indictments.

51

evidence for an abuse of discretion. United States v. Brown, 110 F.3d 605 (8th Cir. 1997).

First, defendant contends that evidence of the defendant's ownership of her consignment business, Queen's Bear Closet, was irrelevant because ownership of a business is irrelevant to the issue of substantial gainful activity. (Def.'s Br. at 52.) Defendant's argument misses the point. First, the evidence was more than that the defendant simply owned the consignment business, but that she operated it. (Tr. at 653-54.) Second, the fact that an individual is self-employed is relevant to SSA. (Tr. at 922-24.) Finally, the issue of one's ownership of a business is relevant to explaining why an individual would not need to take a "paycheck" to receive the benefits of one's efforts on behalf of a for-profit corporation.

Defendant also argues that the government's "extensive focus" on presenting evidence of the defendant's participation in beauty pageants was not probative. (Def.'s Br. at 53-54.) Again, this simply ignores the point. Information regarding a person's actual daily activities is "critical" in making the determination regarding an individual's eligibility for benefits: "if they are doing certain activities, kind of regardless of what the other evidence might indicate, they certainly maintain that capability." (Tr. at 913.) Accordingly, SSA repeatedly asked the defendant to describe her daily activities. As set forth above, her own description of her daily

52

## V. THE DISTRICT COURT PROPERLY INSTRUCTED THE JURY REGARDING MATERIALITY

Defendant contends that the district court improperly instructed the jury instruction on the issue of materiality. (Def.'s Br. at 56-59.) This Court reviews a district court's jury instructions for an abuse of discretion. United States v. Turner, 189 F.3d 712, 721 (8th Cir. 1999). While defendant did object to the materiality instruction with respect to the false statement counts (Tr. at 2158-59), she did not object to the instructions with respect to materiality in the context of the wire fraud counts or the concealment count. (Tr. at 2135-40, 2143 (objecting to reckless indifference component of "intent to defraud" definition).) Accordingly, with respect to the wire fraud and concealment counts, this Court reviews the instructions under the plain error standard. United States v. Cuervo, 354 F.3d 969, 994 (8th Cir. 2004).

As with her other arguments, defendant's contention is premised on her argument that to be material any misrepresentations must have had a "reasonable likelihood" to change the outcome. (Def.'s Br. at 59.) Again, she relies on inapposite opinions from civil cases. As set forth above, in the context of a criminal prosecution for false statements to a federal agency, this Court has rejected the contention that the false statement must be the proximate cause for the agency's action. See United States v. Richmond, 700 F.2d 1183, 1188 (8th Cir. 1983) ("To establish materiality

of a false statement it is not necessary to show that a government agency actually relied on the statement, that the government suffered pecuniary loss as a result of the statement, or that the false statement was sufficient to induce a payment or benefit."); United States v. Baker, 200 F.3d 558, 561 (8th Cir. 2000) (materiality does not require proof that the government actually relied on the statement) see also Baumgardner, 85 F.3d at 1307 n.1 (acknowledging standard formulation of materiality in context of social security fraud).

Accordingly, the district court properly instructed the jury regarding materiality in a manner consistent with precedent and the Eighth Circuit model instructions.

## VI. THE DISTRICT COURT CORRECTLY DENIED DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED PURSUANT TO A SEARCH WARRANT

Defendant also contends that the district court erred in denying defendant's motion to suppress computer-based evidence seized pursuant to a search warrant executed on February 23, 2003. (Def.'s Br. at 64-65.) Defendant contends that the search warrant was insufficiently particularized with respect to the computer-based evidence.

The Fourth Amendment requires that a search warrant describe with sufficient particularity the things to be seized. Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971). However, it is black letter law that "the degree of specificity required in

55

applying the particularity requirement 'is flexible and may vary depending on the circumstances and the types of items involved.'" United States v. Kail, 804 F.2d 441, 445 (8th Cir. 1986) (quoting Marvin v. United States, 732 F.2d 669, 673 (8th Cir. 1984), and United States v. Apker, 705 F.2d 293, 299 (8th Cir. 1983)). In particular, fraud investigations, by their nature, require a greater degree of flexibility: "for use involving a scheme to defraud, therefore, a search warrant is sufficiently particular in its description of the items to be seized 'if it is as specific as the circumstances and nature of activity under investigation permit.'" Kail, 804 F.2d at 445 (quoting United States v. Wuagneaux, 683 F.2d 1343, 1349 (11th Cir. 1982)).

The affidavit for the search warrant amply set forth probable cause to believe defendant was engaged in various business activities out of her home and that she actively conducted business via the internet. (Def.'s App at A-276-77.) The affidavit also set forth, based on training and experience of the affiant, that business records are often maintained electronically on computers. (Id. at A-278.) The search warrant affidavit concluded that there was probable cause that there was evidence of social security fraud, namely various types of records and documents evidencing the defendant's business activity as well as a "computer or electronic record storage device which may contain any of the information described above." (Id. at 279-80.) Accordingly, after the Items To Be Seized attachment listed various types of business

56

documents and records relating to the defendant's businesses, Item 14 of the Items To Be Seized permitted agents to seize "Records which appear on any and all computers which are located in the house, to include the hard drive and any disks which are located in the house." (Id. at A-273.)

While the items itself permitted officers to seize all computers and electronic records, such a seizure is necessary given the nature of electronic files and how they are stored. See, e.g., United States v. Schandl, 947 F.2d 462, 465-66 (11th Cir. 1991); United States v. Henson, 848 F.2d 1374, 1383-84 (6th Cir. 1988) ("We do not think it is reasonable to have required the officers to sift through the large mass of documents and computer files found in the [defendant's] office").

Although the district court rejected defendant's contention that other aspects of the search warrant were overly broad, it concluded that Item 14 was overly broad. (Order dated July 19, 2004 at 4 n.1.) However, the district court concluded that given the stated nexus in the affidavit between defendant's business activity and her home computers, agents seized the electronic evidence in good faith. Order at 4; R&R at 29-32 (citing United States v. Leon, 468 U.S. 897 (1984)); see also United States v. Stelten, 867 F.2d 446, 450 (8th Cir. 1988) (applying good faith doctrine to evidence seized pursuant to warrant deemed overbroad by the Tenth Circuit).

57

loss to $193,549. (Sent. Tr. at 6.) Of course, this contention ignores the simple fact that SSA took that action only after investigating agents informed SSA of the defendant's fraud. (Tr. at 1116-17.) (It also ignored the fact that the defendant was, and is, challenging SSA's determination and attempting to reinitiate her benefits.) Moreover, the focus of the "intended loss" is a determination of what the defendant intended. In the absence of any evidence that the defendant would disclaim her benefits – indeed, given the evidence to the contrary - the district court was not clearly erroneous in finding that the defendant intended to collect SSDI benefits until retirement age. See United States v. Rettenberger, 344 F.3d 702, 708 (7th Cir. 2003) (affirming intended loss amount of social security disability fraud based on total benefits that would have been received through the age of 65).

On appeal, defendant also argues that the calculation of loss is erroneous and violates the Sixth Amendment because the intended loss amount was not alleged in the Superseding Indictment. (Def.'s Br. at 61.) At sentencing, defendant objected to judge-based sentencing determinations pursuant to Blakely v. Washington, 124 S. Ct. 2531 (2004). (Sent Tr. at 17; Def.'s Position on Sentencing.) Accordingly, this Court reviews the imposition of a Guideline sentence for harmless error. Fed. R. Crim. P. 52(a); United States v. Thompson, – F.3d –, 2005 WL 763313 (8th Cir. Apr. 6, 2005). As a consequence of United States v. Booker, 125 S.Ct. 738 (2005), holding that the

59