UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br>EX REL. DAWN BARRETT,<br><br>Plaintiff,<br><br>v.<br><br>CIGNA CORPORATION and<br>LIFE INSURANCE COMPANY OF<br>NORTH AMERICA,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 03-12382-MLW<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**RELATOR'S SURREPLY IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS COMPLAINT**

This False Claims Act (FCA) case seeks to recoup monies spent by the Social Security Administration (SSA) in processing false claims for disability benefits. Seeking dismissal under Federal Rule of Civil Procedure 12(b)(6), CIGNA makes several arguments that mischaracterize Relator's allegations. To begin, CIGNA asserts that the Complaint in this action would allow Relator to recover for money spent by the federal government processing truthful, legitimate claims for Social Security Disability Insurance (SSDI). Reply at 1. CIGNA further argues that Relator's allegations are based on nothing more than a statistical "probability" that the claims submitted to the SSA are false. Reply at 2. CIGNA also protests that a FCA claim cannot be stated, as a matter of law, because CIGNA does not know that it will deny Long Term Disability (LTD) benefits for any particular claimant when the claimant applies for SSDI. Id.

Though cleverly made, CIGNA's arguments do not withstand scrutiny. Relator's Complaint does <u>not</u> seek to recover damages for truthful or legitimate claims for SSDI. This action is more limited in scope. Read fairly, the Complaint asserts a claim for the administrative

costs incurred by the United States in processing the thousands of <u>false</u> claims for SSDI benefits that CIGNA caused to be submitted in reckless disregard of the claimants' eligibility for benefits. CIGNA's argument that the allegations in the Complaint would reach legitimate claims for SSDI, is without foundation.

Moreover, CIGNA does not inadvertently or through lack of prescience cause the filing of thousands of false claims with SSDI each year. Filing for SSDI by every LTD claimant is the result of a deliberate and uniform corporate policy intended to improve CIGNA's financial statement by allowing CIGNA to reduce its reserves during the pendency of claims with the SSA. To enforce its policy of 100% SSDI application, CIGNA threatens claimants that it will reduce their LTD benefits by the amount of an estimated offset unless they file an application for SSDI and claim to be eligible for SSDI benefits. CIGNA follows this reckless course knowing full well that a large number do not have a credible claim for benefits under SSDI's much narrower definition of disability. CIGNA even causes those with return to work dates within one year, and those with disabilities that could not possibly qualify them for SSDI, to apply for SSDI.

Thus, Relator Barrett does not rely on "probabilities instead of facts" as CIGNA charges. Reply at 1. The Complaint pleads with great detail a fraudulent scheme for CIGNA to enrich itself at the expense of SSA by imposing a uniform requirement that all LTD claimants apply for SSDI regardless of their eligibility. And, the Complaint pleads the specifics of two actual false claims as examples. Federal Rule of Civil Procedure 9(b) requires nothing more.

At the motion to dismiss stage, defendant bears a heavy burden of demonstrating that plaintiff can prove no set of facts to support her claim. This burden is not met by CIGNA's arguments. The uniformity of CIGNA's Social Security Referral program supports the allegation

that CIGNA knowingly causes a very large number of false claims for SSDI benefits to be submitted to the United States. By choosing not to screen claimants for credible SSDI claims and, instead, flooding SSA with thousands of claims for SSDI, CIGNA knowingly harms the United States. Knowing submission of false claims to the United States supports a claim under the False Claims Act. CIGNA's Motion to Dismiss should be denied.

I.     **The Complaint Pleads Fraud with Particularity**

CIGNA argues that the allegations of CIGNA's scheme to file false claims for SSDI, and the pleading of two examples of actual false claims, does not meet Rule 9(b) standards. CIGNA also argues that Relator is seeking refuge under a "relaxed 9(b) standard." Reply at 2-5. These arguments are wholly without merit.

1.     As explained at length in Relator's Opposition at 12-22, Relator's Complaint alleges the circumstances of CIGNA's fraudulent scheme with sufficient particularity to satisfy Rule 9(b). The Complaint avers that, since 1997, CIGNA has had a uniform policy, practice and procedure of causing all of the claimants on its disability policies (except those with pregnancy-related claims) to apply for SSDI, whether or not the insured meets the stringent "any occupation" definition of disability and in reckless disregard of the claimant's entitlement for benefits. ¶¶ 73, 85. Under CIGNA's Social Security Referral Guidelines, CIGNA coerces, pressures and induces its insureds to file claims for SSDI in complete and utter disregard to the claimant's eligibility. ¶¶ 68-80, 86-99. CIGNA's purpose for conducting this scheme is to enrich itself by reducing reserves during the pendency of the claims with SSA. CIGNA's conduct inevitably results in submission of thousands of meritless, false claims for SSDI, imposes millions of dollars in

administrative costs on SSA, and poses the attendant risk that SSDI will pay benefits for ineligible claimants.

In addition to describing the fraudulent scheme in detail, the Complaint sets forth two "actual false claims" as examples. ¶¶ 102-110. For both claims, CIGNA coerced and cajoled the claimants to file for SSDI and then, within a short time period thereafter, denied the claimant LTD benefits. These two SSDI claims for SSDI are exemplary of the thousands of other similar claims where CIGNA caused its claimant to apply for SSDI only to deny LTD benefits shortly thereafter.[1] Pleading such "actual false claims" satisfies the concerns articulated in <u>United States ex rel. Karvelas v. Melrose-Wakefield Hospital</u>, 360 F.3d 220, 228 (1st Cir. 2004), that actual false claims be pled with particularity.

CIGNA's argument that neither of the claims pled in the Complaint contained anything "actually false" is simply wrong. Reply at 8. As explained in Relator's Opposition at 17, the "false" representation in these claims is that the applicant meets the eligibility requirements for SSDI. For both claims, within a few months of the SSDI claim being made, CIGNA denied claimant's LTD claims. Opp. at 16-18. CIGNA's denial of LTD benefits on the heels of SSDI application supports the allegation that CIGNA "knowingly" caused the submission of false claims. To plead knowledge, it is not necessary to show that at the time of submission of the claim CIGNA knew whether or not SSA would grant the claim or even to plead that CIGNA concealed from SSA its decision to deny LTD. <u>See</u> Reply at 8. Under the FCA, it is enough that

---

[1] In some instances, CIGNA caused claimants to apply for SSDI even when the claimant could not qualify for SSDI because of length of credits or other legal barrier. <u>See</u>, <u>e.g.</u>, Complaint in <u>Lewis v. CIGNA Group Ins. Co. and Life Ins. Co. of North America</u>, No. CV-N-04-0321-LRH-VPC at ¶¶ 35-40 (D. Nev., filed May 2004) (requiring claimant to file for SSDI even though status as state employee precluded SSDI benefit award and denying LTD claim) (attached as Exhibit A).

CIGNA caused the submission of these claims in reckless disregard to the claimant's eligibility. Knowledge can be pled by alleging facts that generally support an inference of CIGNA's reckless disregard. See United States ex rel. Pogue v. American Healthcorp, Inc., 977 F. Supp. 1329, 1333 (M.D. Tenn. 1997) (knowledge can be pled generally in FCA action).

Moreover, there is no support for CIGNA's intimations that additional claims beyond two claims must be pled. Decisions in this jurisdiction criticize False Claims Act complaints for not citing a "single" false claim. See, e.g, Karvelas, 360 F.3d at 232-35; United States ex rel. Walsh v. Eastman Kodak Co., 98 F. Supp. 2d 141, 147 (D. Mass. 2000); see also United States ex rel. Michael Gublo, et al .v. Novacare, Inc., 62 F. Supp. 2d 347, 354 (D. Mass. 1999) (dismissed case where relator did not cite a single instance of false claim). However, no decision has suggested that more than two false claims is needed to satisfy Rule 9(b) or how many claims will be sufficient. Such a requirement would engraft a requirement on the FCA for pleading multiple claims and would place a whistleblower in the uncomfortable position of rifling through company files and invading claimant's privacy. Even without raiding CIGNA's files, Relator Barrett has sufficient information to plead a fraudulent scheme resulting in actual false claims. Rule 9(b) does not require such an exhaustive independent investigation.

2.   Because the Complaint pleads in detail CIGNA's fraudulent scheme and pleads two "actual false claims," Relator need not, and does not, suggest that she is exempt from Rule 9(b) standards, or that a relaxed Rule 9(b) standard applies here, as CIGNA accuses. Reply at 2-3. Without doubt, some Rule 9(b) decisions have suggested that a "relaxed standard" applies where "the fraudulent scheme is so complex that offering detailed accounting of each individual's role in the fraud is virtually impossible." See, e.g., United States ex rel. Taylor v. Gabelli, 345 F. Supp.

2d 313, 339 (S.D.N.Y. 2004); United States ex rel. Butler v. Magellan Health Services, 101 F. Supp. 2d 1365, 1368 (M.D. Fla. 2000). Under Fifth Circuit case law, a relaxed Rule 9(b) standard is appropriate where the facts are uniquely within the possession of the defendant. See United States ex rel. Russell v. Epic Healthcare Management Grp., 193 F.3d 304, 308 (5th Cir. 1999) ("We have held that when the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge, the Rule 9(b) standard is relaxed ..."). In United States ex rel. Clausen v. Laboratory Corp., 290 F.3d 1301, 1314 n.24 (11th Cir. 2002), the Eleventh Circuit observed that Rule 9 (b) standards may be relaxed where defendant possesses the evidence of the fraud exclusively as long as the factual allegations have an "indicia of reliability." One year after Clausen, in United States v. Morehouse Medical Associates, 2003 WL 22019936 (11th Cir. 2003), the Eleventh Circuit applied this "relaxed standard" and denied dismissal of allegations about fraudulent billing made by a corporate insider even though she could not allege the names and dates for actual false claims.[2]

In the instant case, Relator does not seek a relaxed standard. The allegations in the Complaint, including the details of two actual false claims, are sufficient as pled. Nonetheless, if this Court conducts a further review to assess the reliability of Relator's allegations consistent with Clausen, an analogy to Morehouse would be apt. Here, as in Morehouse. Relator's status as an insider employee at CIGNA lends her allegations the requisite "indicia of reliability" to satisfy the Rule 9(b) standard. Relator Barrett brought this case after witnessing first hand CIGNA's corporate policy of referring all of its LTD claimants, even those with return-to-work dates, to

---

[2] CIGNA's argument (Reply at 4) that courts have applied a relaxed standard only where corporate outsiders bring actions without access to claim-specific information, is untrue. Although a relaxed standard may apply for corporate outsiders where their allegations have a similar "indicia of reliability," in Morehouse, Relator was the quintessential corporate insider.

6

apply for SSDI. The inference to be drawn from Relator's first hand information is that her allegations are particularly reliable.

Under these circumstances, extensive additional pleading of the names of individual claimants or the exact dates of claims submissions as CIGNA urges, is not necessary. See Morehouse, supra; see also Pogue, 977 F. Supp. at 1332-33 (permitting relator to omit allegations concerning each instance of fraudulent conduct). Certainly, there is no support in any of the case law cited by CIGNA that a complaint must be dismissed even though it pleads both a fraudulent scheme and actual false claims with reasonable specificity.

Even worse, CIGNA actually proposes to turn pleading standards on their head and to hold corporate insiders to a higher standard for pleading than other Relators. If adopted, CIGNA's standard would amount to a requirement that Relators engage in "fact pleading." Such evidentiary pleading is not required by First Circuit case law or Rule 9(b) and would be inconsistent with Federal Rule of Civil Procedure 8(a). See Karvelas, 360 F.3d at 233 (details concerning claims "do not constitute a checklist of mandatory requirements that must be satisfied by each allegation included in a complaint"); see also United States ex rel. Franklin v. Parke-Davis, 147 F. Supp. 2d 39, 47 (D. Mass. 2001) (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1298, at 625-26 (2d ed. 1990) (stating that Rule 9(b) does not require plaintiff to resort to "fact pleading"). The Complaint in this action should be reviewed against the Rule 9(b) standard articulated by the courts. CIGNA's hypothetical standard would

require more expansive pleading. CIGNA's intimation that Relator should have taken more information from its corporate records and published them in a FCA action, should be rejected.[3]

    3. Finally, contrary to defendant's argument, the Complaint in this action in comparable in its detail to other complaints that have been held to satisfy Rule 9(b). For example, in decisions cited by CIGNA (Reply at 8), many courts have refused to dismiss even where the Relator did not plead the details of actual false claims as Relator has done here. See, e.g., United States ex rel. Thompson v. Columbia/HCA Healthcare Corp, 20 F. Supp. 2d 1017, 1049 (S.D. Tex. 1998) (Rule 9(b) satisfied by alleging the "basic framework, procedures, the nature of fraudulent scheme, and the financial arrangements and inducements among the parties and physicians that gave rise to Relator's belief that fraud had occurred"); United States v. Kensington Hospital, 760 F. Supp. 1120, 1125 (E.D. Pa. 1991) (Rule 9(b) requires pleading only the time-frame, the clinics involved and the type of kickbacks involved).

    Moreover, the references CIGNA makes to statements made by courts in addressing fraud claims for conduct that differ dramatically from the conduct alleged in this case are of little help. See Denny v. Barber, 576 F.2d 465, 470 (2d Cir. 1978) (Friendly, J.) ("no profit" in analyzing countervailing authorities about sufficiency of pleadings in other cases). What may work for one case is likely not to work for another. Compare United States ex rel. Sikkenga v. Regence Blue Cross/Blue Shield of Utah, No. 2:99CV86K, 2001 U.S. Dist. LEXIS 25717 at *16 (D. Utah, Nov. 27, 2001) (requiring a detailed list of the dates of filing false claims) with Pogue, 977 F. Supp. at 1333 (not necessary to provide dates where fraudulent scheme stretched over 12 years). Clearly,

---

[3] Although Relator does not seek a relaxed Rule 9(b) standard, it is the case that the vast majority of the information needed for this case is readily accessible in defendant's corporate records and can be produced easily through Rule 26 disclosures and routine discovery.

facts that are crucial for pleading one case – identities of individuals or specific dates of claims – will not be critical for every case.

In any event, this case is dramatically different from the run-of-the-mill fraudulent billing case in the health care context. In those cases, courts have focused on the actual false claims to ensure that the defendant not be forced to defend against speculative challenges to its internal billing practices if those practices do not result in false claims. See Karvelas, 360 F.3d at 225 (requiring evidence of "actual false claim" in hospital billing case). In this case, unlike in the medical billing cases, Relator has not identified improper procedures which might, or might not, have resulted in false claims. Id. at 232-35; see also Clausen, 290 F.3d at 1303-12 (alleging that defendant LabCorps engaged in medically unnecessary lab tests but not averring whether unnecessary lab tests had been billed to a federal health care program); Walsh, 98 F. Supp. 2d at 147 (identifying inflated invoices issued by vendors to hospitals but not identifying false hospital cost reports or transactions); Gublo, 62 F. Supp. 2d at 354 (no identification of false claims). In those cases, whether or not actual false claims were submitted was nothing but speculation.

Here, however, it is not speculative that CIGNA's uniform corporate policy results in submission of false claims. As the Complaint alleges, CIGNA's policy was formalized in its SSDI Referral Guidelines. ¶¶ 68-80. Even claimants with a return to work date within nine months and claimants who could not possibly qualify for SSDI benefits must apply under CIGNA's uniform policy and practice. ¶¶ 72, 101. CIGNA set up a comprehensive administrative apparatus to ensure filing of as many SSDI claims as possible. ¶¶ 86-90. Case Managers and Offset Specialists were given incentive compensation to boost the number of referrals of claimants to Social Security. ¶¶ 98. Case Managers and Offset Specialists were

responsible for estimating SSDI benefits to calculate offsets and reduce reserves after claims were filed with SSA. ¶¶ 75, 98. CIGNA even contracted with private consulting firms, including Advantage 2000, to assist claimants with filing SSDI claims. ¶¶ 94-96. In 2003, Advantage 2000 reported that it had filed a claim or pursued an appeal for virtually all of CIGNA's referred claimants. ¶ 99.

For these reasons, United States v. Krizek, 192 F.3d 1024 (D.C. Cir. 1999), provides a useful analogy. Here, as in Krizek, simply by examining CIGNA's policy for Social Security referrals, a reasonable inference can be drawn that a large number of false claims for SSDI are filed at CIGNA's behest by LTD claimants each year. In Krizek, the D.C. Circuit similarly held that it was reasonable to infer that false claims for psychiatric bills had been submitted where the bills submitted totaled more than 24 hours per day. Id. at 1029. So too, here, a reasonable inference can be drawn that false claims have been submitted based on the uniformity of CIGNA's policy and the representation by Advantage 2000 that of the 2000 claims referred to it by September 2003, virtually all have been submitted to SSA. See Complaint ¶ 99. Under these circumstances, it is appropriate to deny CIGNA's motion and allow Relator to proceed with discovery to present the details of additional false claims to the Court at summary judgment or trial.

II.   **The First Amended Complaint States a Claim Under the Federal False Claims Act**

   A.   **Applications For SSDI Benefits are "Claims" Under the False Claims Act**

Despite the lack of any authority to support its novel argument, CIGNA insists in its Reply that the SSDI Application Form (Form SSA-3368-BK) is not a "claim" under the False Claims Act. See Reply at 8-12. CIGNA's argument defies well-settled case law and runs counter to the

considered opinion of the United States Department of Justice. As conceded by CIGNA, in United States v. Henderson, Nos. Civ. 03-5060 (D. Minn.), and doubtless other cases, the United States sued a SSDI claimant under the FCA for misrepresenting her eligibility on the SSDI Application Form. That the United States takes the position in litigation that SSDI Applications are "claims" is not surprising. The FCA definition of "claim" is quite broad and includes "any request or demand, whether under a contract or otherwise, for money or property." 31 U.S.C. § 3729(c) (emphasis added). Clearly, as the United States has concluded, the term "claim" encompasses a "request or demand" for SSDI benefits.

Consistent with this broad statutory definition of "claim," the Supreme Court has held that the Act "reaches beyond 'claims' which might be legally enforced, to all fraudulent attempts to cause the Government to pay out sums of money." United States v. Neifert-White Co., 390 U.S. 228, 233 (1968). The legislative history of the 1986 amendments to the FCA confirms this interpretation, and states further that "claims may be false even though the services are provided as claimed if, for example, the claimant is ineligible to participate in the program." See S. Rep. No. 345, 99th Cong., 2d Sess., at 9, reprinted in 1986 U.S.C.C.A.N. 5266, 5274.

Thus, under well-settled case law, applications for government benefits are prototypical "claims" under the FCA. See, e.g., United States v. Mackby, 261 F.3d 821 (9th Cir. 2001) (claim for participation in the Medicare program); United States ex rel. Kneepkins v. Gambro Heathcare, Inc., 115 F Supp. 2d 35, 42 (D. Mass. 2000) ("claim for program benefits under the false pretense of entitlement is fraudulent"); United States v. Lamanna, 114 F. Supp. 2d 193, 195-96 (W.D.N.Y. 2000) (conviction for making a fraudulent statement to obtain federal employees' compensation estops defendant from denying civil liability under the FCA for false claim). As explained at

length in Relator's Opposition at 22-27, the SSDI Application Form is no different than countless other claims for government benefits which often involve extensive administrative review before benefits are granted or denied.

In an attempt to avoid the plain meaning and settled case law defining the term "claim," CIGNA relies principally on two cases arising in wholly different fact situations – loan guarantees and bids in government auctions – to argue that the SSDI Application is not a claim. See Reply at 8-10 (citing United States v. Van Oosterhout, 96 F.3d 1491 (1996) and United States ex rel. Taylor v. Gabelli, 345 F. Supp. 2d 313, 339 (S.D.N.Y. 2004)). CIGNA argues that because the SSDI Application does not subject the government to an "immediate demand for payment," and because the United States conducts a lengthy administrative process to review SSDI claims, that somehow a "claim" for these benefits has not been made or is not "ripe." Id. CIGNA's argument, largely repetitive of that made in its opening papers, remains wholly without merit.

Van Oosterhout and Gabelli are completely distinguishable from the facts in this case. In Van Oosterhout, the D.C. Circuit concluded that a "claim" had not been submitted until the United States became liable to reimburse third party lenders based on the debtor's default. 96 F.3d at 1494-95. That analysis has no bearing on this case, however. In Van Oosterhout, the question was whether a statute of limitations had been triggered because under the loan guarantee program no "claim" arose until the debtor's default triggered the government's legal obligation to pay. Id. Here, by contrast, the claim for SSDI benefits is ripe as soon as it is submitted to SSA. Just like a claim for reimbursement submitted to Medicare, the SSDI claim triggers a government decision whether to pay the claim.

Gabelli is also distinguishable. In Gabelli, the district court concluded that no FCA claim arose for unsuccessful bidders in a FCC auction because "a bid unless accepted does not create a contract which would give rise to a claim." 345 F. Supp. 2d at 335 & nn.130-31. Unlike in Gabelli, however, in this case the claims here are not made as part of an auction where even eligible claimants may not succeed. The SSDI claims are made, instead, under a government entitlement program. Even if meritless, SSA must spend money disposing of each of the SSDI claims. This process costs the United States on average $1300 per claim. Simply by submission of these false SSDI claims, CIGNA imposes considerable administrative costs on the United States. The same cannot be said for the unsuccessful auction bidders in Gabelli.[4]

For similar reasons, CIGNA's attempts to distinguish cases cited by Relator involving "claims" under the FCA lack persuasive force. See Reply at 10-11. All of the cases cited by Relator present illustrative examples of "claims" under the FCA. See Opposition at 25 (citing United States v. TDC Management, 288 F.3d 421 (D.C. Cir. 2002) (progress and expenditure reports submitted to support payment under program to encourage minority participation in large transportation construction projects are "claims"); Ab-Tech Const., Inc., v. United States, 31 Fed. Cl. 429, aff'd, 57 F.3d 1084 (Fed. Cir. 1995) (claims made under project intended for minority businesses); United States v. Cooperative Grain & Supply Co., 476 F.2d 47 (8th Cir. 1973) (false representation in claim to obtain price supports for purchased grain); Sell v. United States, 336 F.2d 467, 474 (10th Cir. 1964) (fraudulent claim for federal assistance under the Emergency Feed Program); United States ex rel. King v. F.E. Moran, Inc., 2002 WL 2003219 (N.D. Ill. 2002) (claims made under project intended for minority businesses)). These cases demonstrate the

---

[4] Significantly, the successful bidders in Gabelli are subject to liability for "false claims" under the FCA and are in active litigation on that matter presently.

wide variety of circumstances under which a request or demand for payment from the United States may trigger the FCA.

That the foregoing cases do not involve so-called "adjudicatory processes," as described by CIGNA, is of no significance.  As explained in Relator's Opposition at 26, it is invariably the case that claims submitted to the United States are subject to some form of review before payment and, like a claim for SSDI benefits, may be denied.  Liability under the FCA attaches when a request or demand for payment is made even if the government's liability to pay the claim does not ripen until subsequent conditions occur.  United States v. Rivera, 55 F.3d 703, 710 (1st Cir. 1995).  Otherwise, no claims for governmental benefits would be subject to the FCA.

Finally, CIGNA errs by conflating the "falsity" inquiry under the FCA with the "claims" inquiry and suggesting that the cases cited by Relator involve "claims" only because material information had been withheld from the government.  Reply at 11.  A claim's "falsity" is a separate question from the "claims" inquiry and turns primarily on whether the defendant was entitled to payment "in light of applicable law." United States ex rel. Oliver v. The Parsons Co., 195 F.3d 457, 463 (9th Cir. 1999).  Even where there is nothing false on the face of a claim submitted to the government, courts have repeatedly stated that withholding "information critical to the decision to pay [such as non-compliance with conditions on participation in a funding program] is the essence of a false claim." United States v. TDC Management Corp., Inc., 288 F.3d 421, 426 (D.C. Cir. 2002) (citation omitted).  Here, the Complaint alleges that CIGNA required claimants to state falsely that they met the SSDI eligibility criteria and that CIGNA and

its agents withheld information about the claimants lack of entitlement for SSDI benefits. "False claims" have been fairly alleged.[5]

### B.  Misrepresentations of Eligibility for SSDI Are Material and False

CIGNA's argument that no "material" misrepresentation has been alleged, is similarly lacking in foundation. Reply at 12-14. To demonstrate materiality under the FCA, most courts have examined whether the information presented could have influenced the decisionmaker and not whether the decisionmaker was, in fact, influenced by or relied on the information. See United States v. Southland Management Corp., 288 F.3d 665 (5th Cir. 2002), on reh'g en banc, 326 F.3d 669 (5th Cir. 2003) (discussing different materiality standards); see also Restatement (Second) of Torts § 538 (1976) (whether "recipient of information . . . likely to regard matter as important in determining choice of action"). CIGNA misstates the applicable legal standard by asserting that the Complaint is "devoid" of any allegation that SSA "takes a claimant's word" about his or her disability or relies on a private insurer's determination of LTD benefits. Reply at 12.

A representation that one is entitled to SSDI under the Social Security Act's definition of disability is a material representation – not akin to misspelling one's name or misstating which street one lives on. See Opposition at 35-36. Such a representation purports to apply the legal standard for disability – unable to work in any occupation and expected to last at least one year or result in death – to a set of facts – the circumstances of the claimant's injury or medical

---

[5] CIGNA suggests that there is no "claim" under the FCA because the Complaint does not allege that CIGNA's claimants falsely stated the <u>facts</u> underlying their claims. Reply at 8. As explained at length in Relator's Opposition, the "false"claim here is the knowing misrepresentation that the claimant is eligible for SSDI when, in fact, eligibility for SSDI is foreclosed by the claimant's residual work abilities. Therefore, these claims are false claims even if they do not contain untrue factual information. See Opposition at 27-30.

15

condition. Particularly where, as here, a sophisticated insurance company, well-versed in the statutory definition of disability, recklessly causes such a representation to be made without regard to the truth or falsity of the claim and as part of a fraudulent scheme to enrich itself, such a statement cannot be considered immaterial to the SSA's process for adjudicating SSDI claims.[6] For this reason, one does not need a citation to support the common sense understanding that a representation that one is eligible for SSDI is material. Such a representation clearly "could have" influenced SSA.

Likewise, the allegation that many of these claims for SSDI eligibility are "false" is also well supported. CIGNA has a policy of causing <u>all</u> of its LTD claimants (except for those with pregnancy-related claims) to apply. Even those with return to work dates within a year must apply or have their LTD benefits reduced. It is reasonable to infer, given the stringent SSDI "any occupation" definition of disability and the fact that many of these claimants will be denied LTD benefits within a few months of applying for SSDI, that many, if not most, of these claims of eligibility were knowingly false when submitted to SSA.

That CIGNA may not have made a formal determination to deny LTD benefits when it refers the claimant to apply for SSDI does not absolve the claim of its falsity. <u>See</u> Reply at 13. Denial of LTD benefits within a few months of SSDI application is proof of a knowing false claim. One who does not qualify for LTD benefits cannot, as a matter of definition, qualify for

---

[6] CIGNA's attempt to avoid liability by distancing itself from false representations made by the claimant, and CIGNA's agents, on the SSDI claim forms, must fail. <u>See</u> Reply at 13 n. 10. The Complaint alleges in detail CIGNA's role in causing such false claims to be submitted by coercing claimants and threatening to reduce LTD benefits unless SSDI application is made. Complaint ¶¶ 68-98. The Complaint also details CIGNA's role in hiring Advantage 2000 and other vendors to represent all claimants in SSDI applications. Id. ¶¶ 94-99. In any event, at the motion to dismiss stage, all facts pled must be assumed to be true. CIGNA cannot shift its responsibility for false claims to others through argument alone.

SSDI benefits. The claim is false when submitted regardless of CIGNA's later determination about LTD benefits. The uniformity of CIGNA's corporate policy of 100% application for SSDI, in and of itself, gives rise to a reasonable inference that a great number of false, ineligible claims for SSDI have been submitted all so that CIGNA can reduce its reserves for those claims during its pendency with SSA.

So too, CIGNA creates another straw man by arguing that liability cannot be based on its failure to inform SSA of its determination to deny the claimant LTD benefits. See Reply at 13-14. The primary allegation here is that the claims were false when submitted. As a further extension of this fraud, CIGNA and its agents do not inform SSA of its determination to deny LTD benefits. Although the FCA may not require such a disclosure, see Reply at 13, this omission of a material fact from SSA supports a finding of CIGNA's reckless indifference toward SSA in the SSDI claims process.

### C. CIGNA Knowingly Caused False Claims for SSDI to be Submitted

Finally, the allegation that CIGNA's submission of false claims is done knowingly when it denies LTD benefits within a few months of causing the SSDI claim to be submitted, is sufficient at this pre-discovery stage without providing the exact percentage of LTD claims that CIGNA denies. Reply at 14-15. The routine denial of LTD claims after SSDI application is only one of many facts that support the allegation that CIGNA's involvement in causing the submission of false claims was "knowing" under the FCA. Opposition at 30-32.

As explained in Relator's Opposition, CIGNA's conduct here readily meets at least the "reckless disregard" standard. Opposition at 30. As one of the leading disability insurers in the country, CIGNA has extensive and superior knowledge about disability insurance coverage and

government programs for disability insurance. CIGNA is well aware that SSA has a much more stringent definition of disability than the definition of disability under its own LTD policies. Because of these different definitions, many claimants who qualify for LTD coverage will never qualify for SSDI coverage. CIGNA knows that and, nonetheless, persists in its corporate policy that 100% of LTD claimants must apply for SSDI, even those with return to work dates under one year, and then, within a few months, denies coverage under its LTD policies. ¶¶ 112-117. By not exercising any discretion over which claimants are sent to CIGNA's agents to apply for SSDI, CIGNA's conduct evinces a "reckless disregard" for the truth of the claims submitted to SSA. The Complaint alleges all the essential elements under 31 U.S.C. §§ 3729(a)(1) and (a)(2) for submission of materially false claims.

## CONCLUSION

For the foregoing reasons and the reasons set forth in plaintiff's Opposition, defendant's Motion to Dismiss should be denied.

Date:  October 3, 2005                    Respectfully submitted,

/ S / Peter B. Krupp

W. Mark Lanier                            Peter B. Krupp, BBO # 548112
Kevin P. Parker                           LURIE & KRUPP, LLP
Judson A. Waltman                         One McKinley Square
Aaron J. Deluca                           Boston, MA  02109
THE LANIER LAW FIRM, P.C.                 Tel.: (617) 367-1970
P.O. Box 691408                           Fax: (617) 367-1971
Houston, TX  77269-1408
Tel.: (713) 659-5200                      Mary Louise Cohen
Fax:  (713) 659-2204                      Peter Chatfield
                                          Phillips & Cohen LLP
                                          2000 Massachusetts Avenue, NW
                                          Washington, DC 20036
                                          Tel:(202) 833-4567
                                          Fax:(202) 833-1815