UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* DAWN BARRETT<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>CIGNA CORPORATION and LIFE<br>INSURANCE COMPANY OF NORTH<br>AMERICA<br><br>　　　　　　　　　　Defendants | Civil Action No. 03-12382-MLW |

**JOINT STATEMENT**
**PURSUANT TO LOCAL RULE 16.1**

Pursuant to Local Rule 16.1(D) and the Court's October 5, 2006 Order, relator Dawn Barrett ("Barrett") and defendants CIGNA Corporation ("CIGNA") and Life Insurance Company of North America ("LINA"), hereby submit the following Joint Statement:

1. **Agenda of Matters to be Discussed at the November 30, 2006 Scheduling Conference.**

    a.   Pre-trial schedule and discovery matters;

    b.   Trial by magistrate judge; and

    c.   Report on settlement discussion status.

2. **Rule 26(f) Conference.**

Pursuant to Fed. R. Civ. P. 26(f) and Local Rule 16.1(B), the parties held three (3) teleconferences on November 2, 2006, November 14, 2006, and November 27, 2006, which were attended by Jack Cinquegrana, Karen Collari Troake and/or Andrew Ziegler for LINA and CIGNA, and Lawrence P. Wilson, Kevin Parker and/or Peter Krupp for Barrett. This Joint Statement reports the results of those conferences and, except where indicated, jointly proposes a discovery plan and pre-trial schedule as set forth below.

3. **Rule 26(a)(1) Initial Disclosures.**

The parties have agreed to exchange initial disclosures, required by Fed. R. Civ. P. 26(a)(1), on or before January 5, 2007.

4. **Discovery and Scheduling.**

The parties were unable to agree regarding whether formal phasing of discovery was necessary or what parameters should govern discovery. The following sections set out the parties' respective proposals and note areas (if any) where the parties may agree.

    a.    **The Plaintiff's Proposal.**

Plaintiff is tailoring discovery to focus on the following **Subject Areas**.

1. Cigna's conduct as a substantial factor in causing people to file SSDI claims.
2. Cigna's reckless disregard for the merits of the claim for SSDI.
3. That many of the SSDI claims which Cigna recklessly caused to be filed constitute false or fraudulent claims by persons whose LTD claims were ultimately denied by Cigna and whose SSDI claims were likewise denied.
4. The number of claims for which Cigna denied LTD benefits and for which Social Security also denied SSDI
5. The cost to the government of a false or fraudulent SSDI claim.

The Plaintiff proposed **Phased Discovery**, as follows

> Plaintiff will initially send Interrogatories which seek to identify and quantify those persons who fit the following criteria: (1) Cigna encouraged the person to file for SSDI, (2) the person's SSDI claim was denied, and (3) Cigna denied LTD

benefits. Hereinafter, this group is referred to as the population.

After identifying the population of potential false claims above, Plaintiff will seek to begin a file review limited to a sub-group (randomly selected by perhaps date of filing or the first letter of the last name) to allow for a statistical sampling of the percentage of false claims that are likely to exist within the population identified through interrogatory responses. Plaintiff would intend for this review to be able to be accomplished within a single month after gaining access to the selected sub-group. This would not halt further file reviews but would allow the parties to know what Plaintiff contends that the total number of false claims is likely to be. This could be used for purposes of settlement or for purposes of a stipulation (for use at trial) as to the number of persons fitting certain criteria.

Accomplishing the above will depend on the ease with which Plaintiff is able to identify the population that meet the criteria in the first paragraph above. But Plaintiff hopes that the identification could occur in five months. The review of a sub-group could occur in one month. Then the remaining review would take an estimated five months.

Plaintiff will utilize requests for production to discover the practice of Cigna as it relates to encouraging people to apply for SSDI and as it relates to doing so recklessly.

| | |
|---|---|
| **Discovery Completion:** | September 14, 2007. |
| **Experts for Plaintiff:** | July 6, 2007 |
| **Experts for Defendant**: | August 3, 2007 |
| **Proposed Schedule for Filing Motions:** | |
| **Motions for Leave to Amend Pleadings:** | By May 4, 2007 |
| **Case Dispositive Motions:** | By September 21, 2007 |
| **Response to Case Dispositive Motions:** | By October 22, 2007 |
| **Non-Dispositive Motions:** | By September 28, 2007 |

    b.    <u>The Defendants' Proposal.</u>

The Defendants propose that issues and discovery be bifurcated in order to first address and resolve issues which would be controlling of the liability, if any, of the Defendants and, therefore, could resolve the case in its entirety. These issues include: (1) whether the Court lacks

subject matter jurisdiction based upon a public disclosure within the meaning of the False Claims Act ("FCA"); and (2) whether the Social Security Administration ("SSA") Application Form (the "Application") is not "material" within the meaning of the FCA and whether it does not constitute a "claim" within the meaning of the FCA. Addressing these issued first would focus discovery primarily upon the SSA and would provide a path to resolving the case without invading the privacy of thousands of claimants, which would result from the review of thousands of claims files.

Based on the foregoing, the Defendants propose formal phasing of discovery as follows:

**PHASE I**

Scope: Discovery during this phase would be limited to the following issues: (1) whether this Court lacks subject matter jurisdiction due to a public disclosure within the meaning of the FCA; and (2) whether the Application is "material" and/or constitutes a "claim" within the meaning of the FCA. Additionally, subject to a mutually agreed upon protective order, the Defendants would provide Barrett with copies of the claims files for the individuals referred to in the Second Amended Complaint as Claimants A through D during this phase of discovery. *See* Second Amended Complaint and Demand for Jury Trial (the "Complaint"), ¶¶ 168-210.

Limitations: The following limitations would apply to Phase I only and would be subject to modification upon motion by either party and by leave of Court:

- Five (5) depositions per side pursuant to Fed. R. Civ. P. 30(d)(2);
- Ten (10) interrogatories per side;
- Ten (10) requests to admit per side;
- Two (2) sets of requests for production of documents per side; and
- The deposition of each proposed expert pursuant to Fed. R. Civ. P. 30(d)(2).

Schedule: The proposals set forth below are subject to further motion by the parties, either jointly or individually.

4142586v3

| Event | Proposed Deadlines |
|---|---|
| Production of Claim Files for Claimants A through D | January 12, 2007 |
| Amendment of Pleadings | January 26, 2007 |
| Completion of Fact Discovery | March 30, 2007 |
| Initial Expert Reports | April 20, 2007 |
| Rebuttal Expert Reports | May 4, 2007 |
| Close of Expert Discovery | June 1, 2007 |
| Filing of Dispositive Motions and Opening Briefs | June 29, 2007 |
| Response Briefs on Dispositive Motions | July 27, 2007 |
| Reply Briefs on Dispositive Motions | August 10, 2007 |
| Oral Argument on Dispositive Motions | To be set by Court |

**PHASE II**

Scope: Discovery during this phase would cover the remaining issues in the case should the Court not decide summary judgment in Phase I of the case in favor of the Defendants. In the event discovery must focus on the review of claimants' claim files, the Defendants agree with Barrett that this phase of the case should involve, as part of the overall discovery, a streamlined approach to identifying and reviewing claims files.[1] According to Barrett, the relevant universe of claims files are those files where SSA denied benefits and LINA denied long term disability ("LTD") benefits. *See* Plaintiff's Proposal, *supra*. The Defendants cannot accurately identify this group of claim files from the information they maintain in the ordinary course of their business. Therefore, Defendants propose to identify the claimants who were referred to SSA vendors Allsup Inc. or Advantage 2000 Consultants, Inc. to assist in applying for SSDI benefits (the "Referrals"). From this group, a random subset would be identified through a procedure agreed

---

[1] The Defendants do not concede that any of these claims files are relevant. Moreover, the Defendants reserve their rights to object to the relevance and admissibility of these claims files at trial.

4142586v3

upon by the parties (the "Sample"). The sample would be provided to SSA, which would then (pursuant to Court order, if necessary) identify the claimants in the Sample who have been awarded benefits through the appeal level, including any closed period benefit. The claim files of the remainder of the Sample (the "Denials") would be produced for review by the Plaintiff, pursuant to an appropriate protective order.

Schedule: Following resolution of Phase I, the parties would meet and confer regarding proposed discovery limitations and scheduling that would apply to Phase II.

A Proposed Scheduling Order reflecting this proposal is annexed hereto as Exhibit A.

5. **Protective Order.**

The parties have agreed to file a stipulated protective order governing the handling of confidential and proprietary materials produced in either phase of discovery.

6. **Trial by Magistrate Judge.**

The parties do not consent to trial by Magistrate Judge.

7. **Settlement.**

Pursuant to Local Rule 16.1(C), Barrett made a written settlement demand on the Defendants. The Defendants rejected that settlement demand. The Defendants believe that, at present, a settlement does not appear likely.

8. **Certifications Pursuant to Local Rule 16.1(D)(3).**

    a.    Barrett's certification is attached hereto as Exhibit B.

    b.    The Defendants' certification is attached hereto as Exhibit C.

Respectfully Submitted,

| DAWN BARRETT | CIGNA CORPORATION and LIFE INSURANCE COMPANY OF NORTH AMERICA |
|---|---|
| By her attorneys, | By their attorneys, |
| /s/ Peter B. Krupp | /s/ R.J. Cinquegrana |
| Peter B. Krupp (BBO # 548112) | R.J. Cinquegrana (BBO # 084100) |
| LURIE & KRUPP LLP | Karen Collari Troake (BBO # 566922) |
| One McKinley Square | CHOATE, HALL & STEWART LLP |
| Boston, Massachusetts 02109 | Two International Place |
| Tel: (617) 367-1970 | Boston, Massachusetts 02110 |
| | Tel: 617-248-5000 |

Date:   November 27, 2006

4142586v3