UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
*EX REL.* DAWN BARRETT, )
 )
 )
                    Plaintiff, )
 )
v. )
 ) Civil Action No. 03-12382-MLW
 )
CIGNA CORPORATION and )
LIFE INSURANCE COMPANY )
OF NORTH AMERICA )
 )
                    Defendants. )
 )

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER GOVERNING CLAIMANT CONTACT

Pursuant to Fed. R. Civ. P. 26(c), L.R. 26.2(C) and Paragraph 23 of the Confidentiality Stipulation and Order (Docket Entry No. 91), defendants CIGNA Corporation ("CIGNA Corp.") and Life Insurance Company of North America ("LINA")[1] (collectively, the "Defendants"), by and through their counsel, hereby move for a protective order governing contact with LINA's insureds for the duration of this litigation. For the following reasons, the Defendants respectfully request that this Motion be granted and the Court enter the Proposed Order annexed hereto as Exhibit 1.

---

[1] References herein to "LINA," "LINA's insureds," or "LINA's claimants" includes CIGNA Life Insurance Company of New York ("CLICNY") and Connecticut General Life Insurance Company ("CGLIC"), and their respective insureds and claimants.

I. **Background.**

Relator Dawn Barrett ("Barrett" or "Relator") filed her original complaint under seal on or about November 25, 2003.[2] As set out more fully in the Defendants' motions to dismiss and supporting memoranda, Barrett's Second Amended Complaint (the "Complaint" or "Compl.") (Docket Entry No. 49) alleges that the Defendants violated the False Claims Act, 31 U.S.C. §§ 3729(a)(1) and (2) (the "FCA"), by causing claimants to file false or fraudulent claims for Social Security Disability Insurance ("SSDI") benefits with to the Social Security Administration ("SSA").[3] *See* Compl., ¶¶ 4-14, 228-33. Specifically, the fundamental allegation in the Complaint is that "[a]s a matter of uniform corporate policy, CIGNA [sic][4] requires all of the [long term disability ("LTD")] claimants on its disability policies and those written by its subsidiaries, to apply for SSDI as a condition of receiving the full LTD benefits which the claimants are entitled to receive." Compl., ¶¶ 5, 8, 14. Accordingly, LINA's insureds, *not* CIGNA Corp. or LINA, are the persons alleged to have made the actual filing of a false claim with the SSA. *See* Compl., ¶ 123 ("This leaves most insureds with no option other than to file false or fraudulent claims with the Government.").

Barrett also alleges that LINA forces its insureds to apply for SSDI by "threatening [insureds] that if they refuse to file, they will lose a substantial portion of their disability

---

[2] Barrett amended her original complaint twice. The first amended complaint was dismissed, but she was given leave to amend. The Second Amended Complaint survived the Defendants' most recent motion to dismiss. *See* Transcript of October 5, 2006 Hearing ("Oct. Trans."), pp. 65:11-79:13, annexed to the Affidavit of Karen Collari Troake, Esq. (dated October 26, 2007) ("Troake Aff."), filed herewith as <u>Exhibit A</u>.

[3] This most recent Complaint also includes a count alleging that CIGNA and LINA conspired in violation of 31 U.S.C. § 3729(a)(3). *See* Compl., ¶¶ 234-36.

[4] Throughout the Complaint, Barrett refers to CIGNA Corp. and its subsidiaries collectively as "CIGNA." However, CIGNA Corp. is qualified to do business as a general business corporation, not as an insurance company. CIGNA Corp. is not an insurance company and does not offer insurance products or insurance services to the public; nor has it entered into any agency contracts pursuant to which third parties or agents offer insurance products or insurance services on behalf of CIGNA Corp.

benefits." Compl., ¶ 67. *See also id.*, ¶¶ 5, 104-105, 123-132 (alleging Defendants use economic duress to cause insureds to apply for SSDI).

Following the denial of the Defendants' most recent motion to dismiss at a hearing on October 5, 2006 (the "October Hearing"), the parties conferred as required by applicable rules and filed a joint [Proposed] Scheduling Order and joint [Proposed] Stipulation and Confidentiality Order. As set out in the proposed Scheduling Order, the parties exchanged their Rule 26 Initial Disclosures on March 16, 2007. Shortly thereafter, the Relator served her document requests on the Defendants. In those requests, Relator sought the production of numerous LTD claim files for the months of January 2000 and 2004. *See* Relator's First Sets [sic] of Document Requests to Defendant Life Insurance Company of North America, Request No. 57 (the "Request"), Troake Aff., Exhibit B.[5] On or about October 17, 2007, LINA produced several hundred claim files in response to the Request, totaling over 80,000 pages of documents. Additionally, the parties have been negotiating the production of electronically stored information relating to LTD claim files dating back to January 1, 1996. These files and the electronic information requested contain highly confidential and personal information about each of the claimants (and their families), including medical and mental health records, employment histories and information relating to the insured's personal and family life.[6]

As stated in Relator's Initial Disclosures, the Relator and her counsel intend to contact many of the claimants whose files may be made available in the course of discovery. *See*

---

[5] In addition to seeking the production of these claim files, many of Barrett's other document requests seek documents or categories of information that likely will only be found in individual claim files.

[6] Examples of the type of highly confidential and personal information that may be contained in any given claim file may be gleaned from the unredacted version of Defendants' Memorandum of Law in Support of their Motion to Dismiss Plaintiff's Second Amended Complaint, which was filed under seal on May 19, 2006, as well as the Assented-To Motion for an Order Governing Disclosure of Claimant Files Containing Confidential Health Information ("Confidential Health Information Motion") (Docket Entry No. 88).

Relator's Initial Disclosures Pursuant to Federal Rule of Civil Procedure 26, page 6 ("Relator also believes that many of CIGNA's [sic] insureds may have discoverable information. . . ."), Troake Aff., Exhibit C. Many of these claimants may be represented by counsel in relation to applications for SSDI and associated appeals. Some of the claimants may still have open LTD claims or may have returned to work already. In other cases, the claimant's file may contain information subject to either state or federal law privacy protections (*e.g.*, records related to drug or alcohol treatment). Finally, some claimants may have settled their claims for LTD benefits with LINA and be subject to settlement agreements that may prohibit the claimant from disclosing information regarding the settlement. *See* Example Settlement Agreement, Troake Aff., Exhibit D.

In light of the sensitive nature of the content of the claim files and the allegations of false or fraudulent conduct, the Defendants request that this Court require every reasonable step to guard the privacy and personal information of the claimants. Failure to take such steps likely will have a direct and adverse effect on Defendants' business interests, i.e., complaints from insureds regarding the disclosure of their information. By making this Motion the Defendants are acting consistently with the expectations of the insureds and their own business interests. The procedures requested are reasonably necessary to protect the privacy interests of the third party insureds and minimize the disruption to the Defendants' business.[7]

---

[7] Moreover, at the October Hearing, the Court expressed concern regarding how discovery would progress and in particular expressed its concern that discovery "would involve the privacy interests of the claimants who even the plaintiff alleges are innocent intermediaries." Oct. Trans., p. 15:17-24, Troake Aff., Exhibit A. Moreover, the allegations of the Complaint raise concerns regarding the potential criminal liability of claimants. *See, e.g.*, Compl., ¶ 123 ("This leaves most insureds with no option other than to file false or fraudulent claims with the Government.").

II. **Argument.**

    A. <u>This Court Has Broad Discretion To Manage And Control Discovery, Including The Fashioning Of Protective Orders.</u>

Rule 26(c) of the Federal Rules of Civil Procedure "permits the district court to grant a protective order in the discovery context for 'good cause shown.'" <u>Ramírez-Rodriguez v. Boehringer Ingelheim Pharm., Inc.</u>, 425 F.3d 67, 73 (1st Cir. 2005). *See also* <u>Seattle Times Co. v. Rhinehart</u>, 467 U.S. 20, 36 (1984) ("The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders."); <u>Ayala-Gerena v. Bristol-Meyers-Squibb Co.</u>, 95 F.3d 86, 91 (1st Cir. 1996) (trial judge has broad discretion in ruling on pre-trial matters). Where good cause is shown, the court may enter any order "which justice requires to protect a party *or person* from annoyance, embarrassment, oppression, or undue burden or expense. . . ." Fed. R. Civ. P. 26(c) (emphasis added). "Under Rule 26, the trial court is required to balance the burden of proposed discovery against the likely benefit." <u>Gill v. Gulfstream Park Racing Assoc.</u>, 399 F.3d 391, 400, 402 (1st Cir. 2005) (citations omitted) ("Rule 26(c) is highly flexible, having been designed to accommodate all relevant interests as they arise. The good cause standard in the Rule is a flexible one that requires an individualized balancing of the many interests that may be present in a particular case.") (internal quotations and citations omitted)). *See also* <u>Farnsworth v. Proctor & Gamble Co.</u>, 758 F.2d 1545, 1547 (11th Cir. 1985). "In particular, considerations of the public interest, the need for confidentiality, and privacy interests are relevant factors to be balanced." <u>Gill</u>, 399 F.3d at 402. *See also* <u>Seattle Times Co.</u>, 467 U.S. at 35 n. 21 (noting that "broad purpose and language" of Rule 26 implicates privacy rights).

### 1. The Information That LINA's Insureds Might Provide Is Not Relevant As A Matter Of Law.

The only possible information that Relator might attempt to extract from directly contacting LINA's insureds is with respect to her claim regarding duress and coercion, or LINA's insured's return to work or medical condition. None of this information, however, is relevant to the instant litigation as a matter of law, or likely to lead to the discovery of admissible evidence. *See* Fed. R. Civ. P. 26(b)(1).

First, the Relator alleges that the Defendants "exert [ ] significant coercion and duress and inducement to persuade LTD claimants to file claims for SSDI." Compl., ¶ 5. *See also id.*, ¶¶ 67, 100, 104-105, 123 ("CIGNA uses economic duress to cause its claimants to file for SSDI."), 124-132. Relator also alleges that LINA's policies provide for the reduction of LTD benefits by amounts received from SSA. *See id.*, ¶¶ 101, 127. The only purpose of contacting individual claimants whose claim files have been made available, therefore, would be to extract information from them regarding the purported pressure they subjectively felt to submit an application for SSDI, as provided for in the applicable policy. The individual insured's subjective feelings of duress or compulsion, however, are irrelevant as a matter of law. *See, e.g.*, Baxter v. Briar Cliff College Group Ins. Plan, 409 F. Supp.2d 1108, 1126-27 (N.D. Iowa 2006) (noting that subjective feelings of insured does not factor into how plans must be administered).

The offset provision in the LTD policies at issue is nothing more than a specific type of cooperation clause. For example, the policy may provide that the company may reduce LTD benefits by an estimated amount the insured will receive from SSDI (or other sources), if the insured refuses to cooperate in applying for SSDI or other income, or refuses to cooperate in informing the insurer regarding the status of any such claim. *See* Excerpts of Policies (Assumed Benefit provision), Troake Aff., Exhibit E. Generally speaking, cooperation clauses are

enforceable and valid, and have routinely been enforced. *See* Couch on Insurance (3d ed. 2005), §199:1 *et seq*. Many such clauses allow insurers to cease *all* benefits payable under a policy where an insured fails to cooperate in good faith. *See id.*, § 199.5 (discussing validity and enforceability of cooperation clauses generally). The offset provision contained in LINA's policies is not so draconian. Those provisions merely (and validly) request that insureds exhaust other benefits. *See* Couch on Insurance (3d ed. 2005), §182.32 (citing cases).[8] Accordingly, the operation of a valid and enforceable provision of an LTD policy cannot rise to the level of duress or coercion. *See id. See also* Egelhoff v. Egelhoff, 532 U.S. 141, 150 (2001) (ERISA requires "that plans be administered . . . in accordance with plan documents"); Baxter, 409 F. Supp.2d at 1126-27. As such, an insured's subjective feelings as a result of the operation of a valid and enforceable contractual provision are wholly irrelevant as a matter of law.

Second, any information outside of what is contained in the LTD claim file, regarding the insured's proposed return to work (if any) or his or her medical condition, also is irrelevant. The allegations of the Complaint rely on what information LINA had in its files at the time the insured is asked to apply for SSDI. *See, e.g.,* Compl., ¶¶ 7 ("Indeed, CIGNA [sic] causes submission of many such claims even when it has *other evidence on hand* that the claimant is not properly eligible for SSDI benefits." (emphasis added)), 8(b) ("At the time of submission of the SSDI claim to SSA, CIGNA [sic] has *extensive information in its files* that the individual LTD claimant cannot possibly qualify for SSDI . . . ." (emphasis added)), 8(c), 67, 78, 89. *See also* Responses, Interrogatory No. 6 ("Relator also believes that defendants [sic] either failed to make

---

[8] It also is worth noting that Relator does not contend that LINA may not reduce LTD benefits by amounts actually received by insureds from the SSA. *See* Relator's Response to Defendants' First Set of Interrogatories ("Responses"), Interrogatory No. 31, Troake Aff., Exhibit F.

an adequate investigation regarding SSDI eligibility or caused claimants to make application for SSDI in situations where defendants [sic] had information sufficient to demonstrate that many of these claimants had no reasonable basis to believe that they qualified for SSDI."), Troake Aff., Exhibit F. Accordingly, any additional information claimants might provide regarding their return to work or their medical condition is wholly irrelevant. The only information relevant to LINA's intent, according to Relator's own allegations, is the information contained in the claim file at the time the insured was asked, pursuant to the terms of the policy, to apply for SSDI.

> 2. The Marginal Relevance Of The Information That LINA's Insureds Might Provide Is Outweighed By The Privacy And Other Interests Of LINA's Insureds.

Even if the subjective feelings of the insureds, or their medical information not contained in the claim file, could be deemed relevant, the marginal relevance of that information is far outweighed by the invasion of privacy that would result from Relator contacting LINA's insureds. *Compare* Ellison v. Am. Nat'l Red Cross, 151 F.R.D. 8, 11 (D.N.H. 1993) (party's interest in obtaining names of individual blood donor's far outweighed public interest in nations' blood supply and donor's privacy); Farnsworth, 758 F.2d at 1546, 1547 (defendant's trial preparation interests did not outweigh privacy interests of study participants and, therefore, district court did not err in denying defendant information regarding study participants); Jo Ellen Smith Psychiatric Hosp. v. Harrell, 546 So.2d 886, 889, 890 (La. Ct. App. 1989) (rights of other third-party patients outweighed party's (and former patient's) right to investigate possible claim against hospital and, therefore, party was prohibited from contacting those patients). As acknowledged by Relator's counsel and observed by the Court, the insureds are unwitting third parties, who have shared personal medical and financial information with their insurance company for purposes of receiving LTD benefits. Moreover, LINA's insureds sign a release authorization to permit disclosure of their personal medical information to LINA, but no further.

-8-

As observed by the court in *Harrell*, and equally applicable in the instant case, LINA's insureds "have not sought the public spotlight." *Harrell*, 546 So.2d at 889. On this basis, the marginal relevance of the information that the Relator might obtain from direct contact with LINA's insureds is clearly outweighed by the privacy interests of the insureds.[9]

B.   Summary Of Proposed Procedure.

In light of the foregoing, the Defendants request that the Court prohibit Relator, or her counsel, from contacting any of the claimants whose LTD claim file (or the information contained therein) will be (and has been) disclosed (either in whole or in part) in the course of discovery.

Alternatively, if the Court deems it appropriate for Relator to directly contact LINA's insureds, then the Defendants request that the following procedure for such contact be ordered so that LINA's insureds have a full opportunity to understand and consider the relevant facts and issues, and consult with an attorney (or others) if necessary, prior to making any decision to communicate with Relator or her counsel. Specifically, the Defendants request that the Court prohibit Relator, or her counsel, from contacting any of LINA's insureds, whose claim files (or claim information) has been or will be disclosed in the course of discovery, unless: (1) the Relator limits the claimants to those who fit the criteria outlined in her response to Interrogatory No. 28 in which Relator identified her criteria for identifying potential false claims (*see* Responses, Interrogatory No. 28, Troake Aff., Exhibit F); (2) the Relator notifies the Defendants and the Court of the names of the insureds that she intends to contact; (3) the Relator complies with all applicable privacy restrictions, including, but not limited to, those set out in federal or

---

[9] Another factor militating in favor of prohibiting contact with LINA's insureds is the extensive disruption in LINA's business that likely would result from Relator, or Relator's counsel, contacting thousands of LINA's insureds regarding their purportedly false claims for SSDI.

state statutes; (4) the Relator or her counsel, provide the insured with a letter and consent form, in the form annexed hereto as Exhibit 2; (5) neither the Relator nor her counsel have any contact with an insured until the insured affirmatively consents to such contact by returning the consent form; and (6) the Relator or her counsel provides the Defendants with copies of the executed consent forms within five (5) days of receiving such form from an insured.[10]

### III. Conclusion

For the foregoing reasons, the Defendants respectfully request that this Motion be granted, the Court enter the Proposed Protective Order annexed hereto as Exhibit 1, and grant such other relief as the Court deems just and appropriate.

Respectfully submitted,

CIGNA CORPORATION and
LIFE INSURANCE COMPANY OF NORTH AMERICA

By their attorneys,

/s/ Karen Collari Troake
R. J. Cinquegrana (BBO #084100)
Karen Collari Troake (BBO #566922)
Richard C. Abati (BBO #651037)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
(617) 248-5000

Dated: October 26, 2007

---

[10] It is worth noting that in U.S. ex rel. Loughren v. UNUM Provident, et al., Civil Action No. 03-CV-11699-PBS (D. Mass.), Magistrate Alexander approved a similar proposal. See Electronic Order dated May 21, 2007, Troake Aff., Exhibit G.

## LOCAL RULE 7.1 AND 37.1 CERTIFICATION

The undersigned counsel hereby certifies that on July 9, 2007 and October 25-26, 2007, she conferred with Carl S. Nadler, counsel for Relator Dawn Barrett, in good faith and in an effort to narrow or resolve the issues raised herein, and no agreement could be reached.

/s/ Karen Collari Troake
Karen Collari Troake

4225648v5

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 26, 2007.

/s/ *Karen Collari Troake*
Karen Collari Troake