UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| United States of America<br>*ex. rel.* Dawn Barrett,<br><br>                              Plaintiff,<br><br>        v.<br><br>CIGNA CORPORATION and LIFE<br>INSURANCE COMPANY OF NORTH<br>AMERICA ,<br><br>                              Defendant. | Civil Action No.:03-12382-MLW |

**OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER GOVERNING CLAIMANT CONTACT**

Plaintiff/Relator Dawn Barrett ("Relator") respectfully opposes Defendants Cigna Corporation and Life Insurance Company of North America's (collectively, "Cigna" or "Defendants") Motion for Protective Order Governing Claimant Contact. Relator has no objection to the entry of a protective order genuinely tailored to protect the privacy interests of Cigna's insureds. The relief requested by Cigna, however, appears designed to seek a litigation advantage, not to protect legitimate privacy concerns.

For the reasons set forth below, any Protective Order governing claimant contact should (a) apply with equal force to all parties, (b) use the "opt-out" procedure this Court adopted in the related *Unum* litigation, and (c) use Relator's version of the letter to be sent to claimants before they are contacted, because it is more even-handed and factually

accurate.

I.    BACKGROUND

This *Qui Tam* case alleges that defendants violated the False Claims Act by knowingly causing Cigna's Long Term Disability (LTD) insureds to file false or fraudulent claims for Social Security Disability Insurance (SSDI) benefits.  With limited exceptions, Defendants' policies and practices required its LTD claimants to file for SSDI without adequate investigation to determine their actual eligibility for such benefits.[1]

The Confidentiality Order on file in this case (Docket No. 91) currently protects the sensitive information about Cigna's insureds from inappropriate disclosure.  The confidential medical, identifying, claim, employment, and financial information about the insureds is designated as "Highly Confidential" under the Protective Order, limiting disclosure of the information to Counsel and other specified persons in connection with this litigation.  *See* Confidentiality Stipulation and Order (Docket No. 91) at 5-6.  The parties may make no public disclosure or filing of these materials, and if they file these materials, the materials must be filed under seal.  *Id*. at 9-10.

Defendants' motion now seeks to eliminate Relator's right to contact Cigna's insureds, the very individuals Relator alleges were coerced by Cigna into applying for

---

[1] The limited exceptions the Cigna's policies may have included not requiring some claimants to apply who were pregnant or who had a firm return to work date within nine months of the date of disability. *See, e.g.*, Second Amended Complaint ("Compl.") ¶¶ 98-100.

SSDI insurance. *See* Memorandum of Law in Support of Defendants' Motion for Protective Order (Docket No. 95) (Defs.' Mem.) at 9. Yet the insureds are crucial witnesses to the communications at the heart of this case: what Cigna told its insureds about applying for SSDI, and what the insureds told Cigna about their ability to return to work. Relator should, at a minimum, be given a realistic opportunity to interview a representative sample of these first-hand witnesses to the communications at issue in this matter.

Defendants alternatively ask the Court to place severe restrictions on Relator's ability to contact the insureds, including restrictions which would cause Relator to reveal her attorneys' thought processes. Defs.' Mem. at 9-10. Because the additional requested restrictions interfere with Relator's right to prepare for trial and are not necessary to protect a legitimate interest, they should be denied.

Defendants' request for relief also mischaracterizes the relief afforded defendants in *United States ex. rel Loughren v. Unum Provident, et al.*, Civil Action No. 03-CV-11699-PBS (D. Mass.) (hereinafter, "*Unum*"), a False Claims Act case alleging similar misconduct. *See* Defs.' Mem. at. 10 n.10. In *Unum*, the Court imposed far fewer restrictions on contact with insureds and, in fact, *none* of the restrictions Cigna proposes to place on Relator is a condition of Relator's contact with the insureds in the *Unum* matter.

The Court-approved procedure in *Unum* simply provides that prior to contacting the insureds, the Relator should send a letter summarizing the allegations, informing the recipient of the Protective Order in the action, and providing a form that allows the

recipient to opt-out (*i.e.* affirmatively object to) being contacted by Relator if he or she chooses. *See* Order dated May 21, 2007 (Exhibit A to Nadler Affidavit); Sample Letter from *Unum* (Exhibit B Nadler Aff.). If twenty days elapse after sending the letter without the claimant returning the "opt-out" form, Relator and his counsel may contact and interview the insured. *Id*. Unlike Cigna's proposal, in *Unum* there is no provision requiring Relator to inform opposing counsel of the names of the claimants Relator intends to contact or has actually contacted, nor are Relator's communications limited to certain claimants. *Id*.

Relator believes that the procedure followed in *Unum* represents a good-faith attempt to tailor the protective order to address the legitimate concern about privacy for insureds. The additional procedures proposed by Cigna should be rejected by the Court for what they are: an attempt to interfere with Relator's legitimate trial preparation needs.

## II.   ARGUMENT

### A.   Cigna Has Not Made the Required Showing for the Requested Relief

Where, as here, a party seeks to restrict another parties' legitimate trial preparation, the moving party bears the burden to show good cause "sufficient to overcome [the requesting party's] legitimate and important interest in [unimpeded] trial preparation." *Lohrenz v. Donnelly*, 187 F.R.D. 1, 3 (D.D.C. 1999) (citing *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985)). Furthermore, any protective order seeking to restrict a party's communications with others must be a "carefully drawn order that limits speech as little as possible consistent with the rights of the parties under the circumstances." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 (1981).

4

Cigna has submitted no facts demonstrating that any harm will result from allowing Relator's counsel to contact the insureds using Relator's proposed method as opposed to Defendants' method. Furthermore, its proposed order is not narrowly drawn to protect a legitimate interest. *Gottstein v. Nat'l Ass'n for the Self-Employed*, 186 F.R.D. 654, 657 (D. Kan. 1999). In light of Relator's substantial interest in unimpeded trial preparation, the Court should deny Cigna's motion.

> B.   **Information in the Possession of the Insureds is Highly Relevant to Relator's Claims**

The requested relief should be denied because it would jeopardize the normal function of the adversary system. "Counsel for plaintiffs have a right to interview persons who might have knowledge concerning the dispute in [the] litigation." *Gottstein*, 186 F.R.D. at 659. As succinctly put by this Judicial District:

> "For the adversary system to operate effectively, counsel must have access to potential witnesses. A lawyer needs access in order to perform the traditional litigation functions of interviewing favorable witnesses and preparing them for trial. Preventing [counsel] from communicating with potential witnesses would frustrate precisely these essential aspects of the adversary process. Without access to potential witnesses, [counsel] has no effective way of knowing of the existence of evidence favorable to him.")
> *Siguel v. Trustees of Tufts College*, No. 88-0626, 1990 WL 29199, at * 3 (D. Mass. Mar. 12, 1990).

Here at least two *prima facie* elements of Relator's case are directly related to information in the possession of the insureds: knowledge and causation. A defendant is liable under the False Claims Act when it (1) knowingly (2) causes to be presented (3) false or fraudulent claims for payment or approval, *see* 31 U.S.C. § 3729(a)(1); or (1) knowingly causes to be made or used (2) false records or statements (3) to get a false or

5

fraudulent claim paid or approved. *Id.* § 3729(a)(2).  In the False Claims Act context, to act "knowingly" means that a person (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of such information.  *Id.* § 3729(b).

The insureds can provide important information and testimony related to causation.  The insureds are crucial first-hand witnesses to Cigna's efforts to coerce them to file claims for SSDI benefits.  Although some of this information may be contained in the claims files Cigna will produce, there is no reason to believe the files capture every communication Cigna had with the relevant insureds.  In any event, Relator is entitled to test whether Cigna's characterization of the communications (as contained in the claims files) is accurate, and to gather supporting evidence to prove its case at trial.  *See* "Compl." ¶ 7 ("Indeed, Cigna causes submission of many such claims even when it has other evidence on hand that the claimant is not properly eligible for SSDI benefits.")

The insured's recollection of what they told Cigna about their condition and ability to return to work also is highly relevant to proving Cigna's scienter to submit false or fraudulent claims.[2]  For example, in deciding whether defendants conducted an appropriate investigation into the insured's eligibility for SSDI benefits, the fact-finder is entitled to know what information pertinent to return-to-work the insured furnished to

---

[2] Relator's interest in contacting the insureds is not, as Defendants suggest, to examine the insureds' "subjective feelings" of events, or to ask them about terms of their insurance policies with Cigna. Defs.' Mem. at 6-7.  The purpose of contacting the insureds is to gather evidence and information that Relator may use to prove her case at trial.

Cigna.

### C. The Court Should Not Impose a Blanket Prohibition on Communicating With Insureds

#### 1. The Insured's Privacy Interests Will Be Adequately Protected

Cigna offers two unpersuasive justifications for its proposed order. First, Cigna speculates that contacting the insureds may result in harm to Cigna's business interest. As discussed *infra*, the Court should disregard this as a factor because it is based on speculation, not facts. Cigna also points to the claimant's interest in privacy. The interest in respecting privacy is, of course, a legitimate one, but the additional relief requested by Cigna is not legitimately tailored to protect those concerns. First, the claimant's information is protected by the Protective Order on file in this case. Any disclosure of this information to third parties and/or the public is prohibited. *See Burka v. N.Y. City Transit Auth.*, 110 F.R.D. 660, 667 (S.D.N.Y. 1986) (allowing disclosure of identities and personnel files of employees who tested positive for marijuana to plaintiffs where protective order limited disclosure to plaintiff's counsel, documents were sealed upon submission to court, and use of documents was limited to the pending litigation).

Furthermore, under Relator's proposal (which largely adopts the procedure ordered by the Court in *Unum*) every witness will receive multiple opportunities to decide that they do not wish to speak with the parties before being interviewed. Relator intends to (1) send a letter to the Claimant explaining the nature of the lawsuit, (2) provide a simple form and self-addressed stamped envelope allowing the insured to opt-out so that the insured never has to speak with Relator if he or she does not wish to do so,

and (3) at the beginning of every call, politely inquire as to the insured's interest in speaking about the case. Under these circumstances, if an insured does not wish to speak to Relator's counsel, the insured is fully capable of deciding and expressing that for themselves.[3] Furthermore, Relator and her counsel will fully comply with their ethical obligations when contacting both represented and unrepresented persons. *Gottstein*, 186 F.R.D. at 659 ("Unless presented with persuasive evidence to the contrary, the court assumes counsel will abide by ethical rules and canons.").

Relator notes that she is proposing to be allowed to contact the insureds in order to discover their communications with Cigna, not necessarily to ask the witnesses about their medical condition or other sensitive information.[4] There are many non-sensitive subjects which Relator should be allowed to explore with these witnesses, such as what Cigna told them about applying for SSDI, whether they did in fact apply, and what they told Cigna about their ability to return to work.[5] Nevertheless, courts frequently hold that a plaintiff's need to access information to effectively litigate her case outweighs even

---

[3] *See Patt v. Family Health Sys. Inc.*, 189 F.R.D. 518, 525 (E.D. Wis. 1999), *aff'd*, 280 F.3d 749 (7th Cir. 2002); *Commercial Laundry, Inc. v. Linen Supply Ass'n,* 90 F. Supp. 470, 472 (D. S.D.N.Y. 1950); *In re Westinghouse Elec. Corp. Uranium Contracts Litig.*, 76 F.R.D. 47, 50 (E.D. Va. 1977).

[4] Relator also respectfully submits that the fact that a communication from Relator may cause the insured to realize that information has been disclosed to Relator's Counsel pursuant to the Protective Order in this matter does not in and of itself raise a significant privacy concern.

[5] Of course, Relator has no intention of pursuing claims against these witnesses, or in assisting others in doing so. Doing so would also violate the Protective Order. *Burka,* 110 F.R.D. at 664-65 (privacy interest in non-disclosure of employees' drug use reduced when litigants maintain confidentiality of information divulged).

very significant privacy interests.  *See*, *e.g.* , *Burka*, 110 F.R.D. at 663-67 (holding, in case challenging New York Transit Authority's drug testing policy, that disclosure of identities, test results, medical records, and personnel files of employees who had tested positive for marijuana use was justified so that plaintiff could demonstrate the existence of illegal policies and practices).[6]

### 2. The Speculative Harm to Cigna's Business Interest is No Basis for a Blanket Restriction on Communication With Any Insureds

Defendants claim, without any factual showing, that contacting the insureds will "have a direct and adverse effect on Defendants' business interests, i.e., complaints from insureds regarding the disclosure of their information." Defs.' Mem. at 4.  This purported "harm" is mere speculation and as such, cannot be the basis for a protective order.  *See*

---

[6] *See also Choate v. State Farm Lloyds*, No. 3:03-CV-2111-M, 2005 WL 1109432, at * 3 (N.D. Tex. May 5, 2005) (ordering disclosure of policyholder's contact information because there was minimal risk plaintiffs would "harass" policyholders);  *Putnam v. Eli Lilly & Co.*, 508 F. Supp. 2d 812, 813-14(C.D. Cal. 2007); *Serina v. Albertson's*, *Inc,* 128 F.R.D. 290, 292-93 (M.D. Fla. 1989) (compelling disclosure of names and last known addresses of former employees its suit by manager to recover bonuses); *Hoyt v. Connare*, 202 F.R.D. 71, 76-79 (D.N.H. 1996) (compelling disclosures  of complaints against other officers).  Defendants' cases are distinguishable because they involved the potential disclosure of information to someone *other* than the possessor of that information and involved significant public policy implications not present here.  *See Ellison v. Am. Nat'l Red Cross*, 151 F.R.D. 8, 11 (D.N.H. 1993) (magistrate did not abuse his discretion in denying motion to disclose identity of donor of HIV contaminated blood to plaintiff in light of the important public policy interest in protecting the nation's blood supply); *Farnsworth*, 758 F.2d at 1547-48 (court did not abuse its discretion denying plaintiff access to information about participants in CDC study because disclosure would harm ability to conduct scientific research and harm public health); *Jo Ellen Smith Psychiatric Hosp. v. Harrel*, 546 So. 2d 886, 893, 895 (La. Ct. App. 1989) (party had threatened to contact other former patients in a dispute over hospital fees and had made no showing at all that the dissemination of the information was necessary for her case, and the court was clearly concerned that she had threatened to contact patients if she was not paid $55,000).

*e.g., Gottstein,* 186 F.R.D. at 659 (defendants' claim that plaintiffs' communication with their customers would harm their business or reputation was nothing but supposition and conjecture); *Gulf Oil Co.*, 452 U.S. at 102 n.16; 8 Charles Allen Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2035, at 484 (2d ed. 1994). As Defendants are well aware, Relator only intends to contact a representative sample of claimants in this matter. If a non-specific allegation of business harm were sufficient grounds for a protective order, plaintiffs would never be allowed to interview customer witnesses in a fraud or products liability case. These sorts of speculative allegations of harm to defendant' business interest are routinely rejected. *See, e.g., Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 549 (6th Cir. 2004) (reversing trial court's restriction preventing plaintiff from conducting *ex parte* interviews of Mitsubishi's customers in a product defect case, because Mitsubishi's purported interest in shielding its customers from damaging innuendo about the safety of its products was based on mere speculation insufficient to warrant stringent limits on pretrial investigation). Here the alleged harm is not only speculative, but also belied by the success and Court-approval of the opt-out procedure in *Unum*.

### D. The Court Should Impose on Both Parties a Procedure Similar to that Followed in the *Unum* Matter

Any relief should be "carefully drawn [and] limit[] speech as little as possible consistent with the rights of the parties under the circumstances." *Gulf Oil Co.*, 452 U.S. at 102. None of the additional limitations Cigna seeks to place on Relator's contact with the insureds are narrowly tailored or necessary and should be rejected by the Court. Each

of the provisions of Cigna's proposal is examined below.

### 1. The Order Should Not Restrict the Claimants Relator May Contact

Cigna seeks to limit contact to those claimants who fit the "criteria" outlined in Relator's current response to Interrogatory No. 28. Defs.' Mem. at 9. Relator's response to Interrogatory No. 28 gave examples of the types of false and fraudulent claims Defendants caused to be filed with the Social Security Administration. *See* Relator's Responses to Defendants' First Set of Interrogatories at 37 (Exh. C to Nadler Declaration). Defendants' proposal limiting Relator to only contacting individuals who meet the criteria of Interrogatory 28 is wholly unrelated to protecting the privacy interests of the insureds and interferes with Relator's ability to prepare for trial. The protective order in *Unum* places no restriction on categories of insureds Relator may contact, and to date none of the parties to that litigation have suggested that the absence of such restrictions has caused any hardship or difficulty.

Moreover, restricting Relator to only those claimants who fit these "criteria" puts the cart before the horse. Relator wishes to contact the claimants to identify evidence that *demonstrates* that a claimant meets the criteria described in response to interrogatory No. 28. Furthermore, as stated in Relator's interrogatory responses, discovery in this matter is at an early stage, and Relator has reserved the right to amend its response to Interrogatory No. 28—which it may well do, after it is provided an opportunity to speak with Cigna's insureds. *Id*. at 10.

### 2. An "Opt-In" Approach is Unnecessary

Cigna also seeks to prohibit Relator from having any contact with an insured until the insured affirmatively agrees to be contacted by returning a form indicating their consent. Defs.' Mem. at 10. This approach would obviously negatively impact Relator's ability to gather relevant information. *See United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 581 (3d Cir. 1980) (rejecting opt-out approach because of the difficulties inherent in obtaining written consent). For the reasons discussed *supra*, it also is unnecessary. Again, this Court in the related *Unum* litigation heard full argument on adopting the "opt-in" procedure now proposed by Cigna or the "opt-out" procedure Relator urges (which would require claimants to return a form to avoid any further communications). Nadler Aff. Exh. A. The Court decided that the "opt-out" process was more appropriate. *Id*. To date, that opt-out procedure has worked well, and has provided more than ample protection for claimants who do not wish further involvement in the litigation.

### 3. Relator Should Not Have to Advise the Court or Defendants about the Claimants She Communicates With

Cigna seeks to require Relator to notify Defendants and the Court of the names of the insureds she intends to contact, and to provide Defendants with copies of executed consent forms within five days of receiving such form from an insured. Defs.' Mem. at 9-10. This request is wholly unrelated to the interest of the insureds and is nothing more than a shameless attempt to invade Relator's trial strategy. *Wagner v. City of Holyoke*, 183 F.Supp. 2d 289, 294 (D. Mass. 2001) (refusing to require interviewing party to

12

inform opposing counsel of the employees they intended to contact because doing so would reveal counsel's thought process); *Morrison v. Brandeis Univ.*, 125 F.R.D. 14, 19 (D. Mass 1989) (authorizing plaintiff's attorney to interview employees of defendants without prior notice to or consent from defendant's counsel).

> **4. Any Procedure Regarding Claimant Communication the Court Adopts Should Apply to All Parties in the Case, Not Just to Relator**

Neither Plaintiff nor Defendants have a greater justification for contacting the insureds in connection with this litigation. As such, any limitations placed on communicating with insureds about this litigation should apply equally to both parties. Relator has no objection to Defendants having routine insurance-related communications with the insureds. But if Relator is to be saddled with rules and conditions concerning litigation-related communications with insureds, those rules and restrictions should be applied equally to all parties to the case.

> **5. There is No Need to Order Relator to Comply with Laws That She is Already Obliged to Honor**

Cigna asks the Court to order Relator to "compl[y] with all applicable privacy restrictions, including, but not limited to, those set out in federal or state statutes." Defs.' Mem. at 9-10. Relator does not object to the Court's entry of such an order, but notes that it is entirely unnecessary. Relator fully intends to comply with all applicable law when contacting the insureds. In fact, the most appropriate course is for the Court to assume that Counsel will act lawfully when contacting witnesses. *Gottstein*, 186 F.R.D. at 659 ("Unless presented with persuasive evidence to the contrary, the court assumes

13

counsel will abide by ethical rules and canons.").

### 6. Relator Has Proposed a Letter to Insureds That is More Accurate and More Fair Than That Proposed by Defendants

Finally, Defendants ask the Court to force Relator to send any insureds it wishes to contact a copy of the letter attached as Exhibit 2 to their memorandum. Defs.' Mem. at 10. In addition to the problems with this approach discussed *supra*, Defendants' letter mischaracterizes the nature of this action, fails to inform the insureds that Relator does not allege that the insureds themselves are liable for submitting false claims, and fails to impose similar restrictions on Defense Counsel. Defendants' proposed letter also misstates the position the United States has taken with respect to this litigation, which is that Relator should be allowed to proceed with this action. *See* United States' Notice of Election to Decline Intervention (Docket No. 6).

Therefore, if the Court concludes that any letter is appropriate, it should adopt the more fair and balanced description of the action set forth as Exhibit 1 to this opposition.

## III. CONCLUSION

For the foregoing reasons, Relator respectfully requests that Defendants' request for a protective order be denied, and that the Court adopt the procedures proposed by Relator and set forth above instead of those proposed by Defendants. The procedures Relator describes above are more even-handed, and their efficacy has already been established through use in the *Unum* litigation.

DATED: November 9, 2007   Respectfully submitted,

                                            HELLER EHRMAN LLP
                                            1717 Rhode Island Avenue NW
                                            Washington, DC 20036
                                            202-912-2000
                                            By /s/   Carl S. Nadler
                                                   Carl S. Nadler

                                            Attorney for Plaintiff
                                            Relator Dawn Barrett

## CERTIFICATE OF SERVICE

    I hereby certify that this document sent through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 9, 2007.

                                                /s/   Carl S. Nadler
                                                    Carl S. Nadler