# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br>*EX REL.* DAWN BARRETT,<br><br>Plaintiff,<br>v.<br><br>CIGNA CORPORATION and<br>LIFE INSURANCE COMPANY<br>OF NORTH AMERICA<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 03-12382-MLW<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PROTECTIVE ORDER GOVERNING CLAIMANT CONTACT

Pursuant to Fed. R. Civ. P. 26(c), L.R. 26.2(C) and Paragraph 23 of the Confidentiality Stipulation and Order (Docket Entry No. 91), defendants CIGNA Corporation ("CIGNA Corp.") and Life Insurance Company of North America ("LINA")[1] (collectively, the "Defendants"), by and through their counsel, hereby reply to Relator's Opposition to Defendants' Motion for a Protective Order Governing Claimant Contact ("Opposition" or "Opp."). As demonstrated in Defendants' Motion for a Protective Order Governing Claimant Contact ("Motion"), the Relator and her counsel should be prohibited from contacting any of the claimants whose LTD claim file (or the information contained therein) has been or will be disclosed in the course of discovery. At a minimum, the alternative procedures proposed in Defendants' Motion are necessary to protect the legitimate privacy concerns of claimants and the legitimate business concerns of

---

[1] References herein to "LINA," "LINA's insureds," or "LINA's claimants" includes CIGNA Life Insurance Company of New York ("CLICNY") and Connecticut General Life Insurance Company ("CGLIC"), and their respective insureds and claimants.

4272130v2

Defendants. Relator's suggestion that these proposed procedures are intended in any way to interfere with Relator's trial preparation is baseless. For these reasons and those set forth in the Memorandum of Law in Support of Defendants' Motion for Protective Order Governing Claimant Contact ("Defendants' Memorandum"), the Defendants respectfully request that this Court grant Defendants' Motion seeking the prohibition of any contact or, alternatively, the "opt-in" procedures outlined therein.

I. **Argument.**

    A. <u>Prohibiting Contact with LINA's Claimants Is Necessary To Protect The Legitimate Privacy Concerns of Claimants And Business Concerns of Defendants.</u>

The Defendants' have a legitimate interest in protecting LTD claimants from the invasion of privacy that would result from Relator or her counsel contacting them. As acknowledged by Relator's counsel and observed by the Court, the insureds are unwitting third parties, who have shared personal medical and financial information with their insurance company for purposes of receiving LTD benefits and with the reasonable expectation that such information would remain private. *See, e.g.*, <u>Burka v. New York City Transit Authority</u>, 110 F.R.D. 660, 665 (S.D.N.Y. 1986) ("A litigant himself must reasonably anticipate that his personal matters will be disclosed, while a non-party having no stake in the litigation retains a greater expectation of privacy."). On this basis alone, any marginal relevance of the information that the Relator might obtain from direct contact with LINA's insureds is clearly outweighed by the privacy interests of the insureds. Accordingly, any contact by Relator or her counsel should be prohibited.

In addition to protecting the claimant's privacy interests, however, Defendants also have a legitimate interest in protecting their businesses. Relator is incorrect in stating that Defendants' assertion of harm to their businesses is purely speculative. Opp. at 7. If Relator's allegations are to be believed, as many as 250,000 LTD claimants may be at issue. Relator has

expressed an interest in interviewing *all* of those claimants, and refuses to limit contact only to those claimants who meet the criteria outlined *by Relator* in her response to Interrogatory No. 28, as claims that she believes may constitute false claims under the False Claims Act. If Relator is successful in contacting all 250,000 claimants (or even a substantial portion thereof),[2] it is almost certain that those claimants will then contact LINA or their employers (who will then contact LINA). Dealing with such a volume of (possibly hostile) calls from claimants and customers, as well as consultants who place business with LINA, would undoubtedly create a substantial burden for LINA and would ultimately harm its ability to efficiently and effectively operate its claims management business.[3]

    B.    <u>Any Information That LINA's Insureds May Provide Is Not Relevant As A Matter of Law.</u>

Furthermore, and as demonstrated in Defendants' Motion, only information contained in the LTD claim file is relevant to this litigation. The allegations of the Complaint rely on what information LINA had in its files at the time the insured was asked to apply for SSDI. Ignoring her own allegations, Relator now contends that the insureds are "first-hand witnesses" to communications between LINA and its insureds regarding (1) the claimants' applications to SSDI; (2) the claimants' ability to return to work; and (3) "Cigna's [sic] efforts to coerce them." Opp. at 3, 6. Relator further suggests that "there is no reason to believe the files capture every communication Cigna [sic] had with the relevant insured" and that Relator should be entitled to "test whether Cigna's [sic] characterization of the communications (as contained in the claims

---

[2] Relator contends that "Defendants are well aware, Relator only intends to contact a representative sample of claimants in this matter." Opp. at 10. Relator has said nothing to Defendants to date regarding her intentions with respect to contacting LINA's claimants. In terms of the scope of Relator's requested discovery regarding LINA's claimants, she has set no such limits, seeking electronic information regarding *all* of LINA's LTD claimants over a ten-year period. *See* Letter from Karen Collari Troake to Thomas S. Kimbrell dated November 14, 2007 (and correspondence cited therein), annexed hereto as <u>Exhibit A</u>.

[3] In order to sufficiently respond to the likely flood of claimant calls, at a minimum, LINA would need to have advanced notice of who Relator is contacting.

-3-

4272130v2

files) is accurate." Opp. at 6. Neither Relator's original Complaint, nor her two Amended Complaints, however, contains any allegations that these claim files were altered by LINA in any way, or that the claim files do not accurately reflect the information provided to LINA at the time the claimant was asked to apply for SSDI. Accordingly, any information that Relator may try to extract from claimants regarding their past conversations with LINA, their return to work, or their medical condition at that time, are wholly irrelevant.[4] On this basis, the Relator and her counsel should be prohibited from contacting any of LINA's LTD claimants.

    C.    <u>Limiting Contact To Claimants Who Meet The Criteria Outlined In Relator's Response To Interrogatory No. 28 Is Fair And Reasonable.</u>

If Relator is permitted contact with LINA's LTD claimants, she should be limited by the parameters set out in her own interrogatory responses. This condition serves the legitimate purpose of limiting the unnecessary harassment of LINA's LTD claimants – especially those who fall outside Relator's own "criteria for identifying potential false claims." Relator, however, contends that Defendants' proposed procedure for "limiting Relator to only contacting individuals who meet the criteria of Interrogatory 28 is wholly unrelated to protecting the privacy interest of the insureds." Opp. at 11. It is telling that Relator seems to find even her own criteria insufficient to aide her in identifying any false claims. Relator is grasping at straws in the hopes of uncovering *any* evidence that would support her claims. As stated in her Opposition, once she does so, she will amend her response to Interrogatory No. 28 (and perhaps again attempt to amend her Complaint) in order to encompass this new evidence. *See* Opp. at 11. It appears that this type of fishing-expedition-discovery is the "trial strategy" with which Relator contends Defendants are attempting to interfere. Based on the allegations in her Complaint, the

---

[4] Relator's contention that she or her counsel has no intention of inquiring about the claimant's medical condition is disingenuous at best. *See* Opp. at 8. Relator acknowledges that she would inquire about the claimant's ability to return to work. *See id.* What else, if not the claimant's medical condition, would bear on that issue?

-4-

information contained in the claim file alone (or provided in electronic form) should be sufficient for Relator to determine whether or not a claimant meets the criteria outlined in Interrogatory Response No. 28. Relator should be held to the allegations of her Complaint and her interrogatory responses.

D. Defendants' Proposed Procedures Will Not Interfere With Relator's Trial Preparation.

Relator's suggestion that Defendants' Motion constitutes "a shameless attempt to invade Relator's trial strategy" is mere hyperbole. Relator provides no basis for this contention. Moreover, Relator's reliance on Wagner v. City of Holyoke, 183 F.Supp.2d 289, 294 (D. Mass. 2001) is misplaced. *See* Opp. at 12-13. Wagner involved an employment discrimination case in which the plaintiff (a city employee) sought to interview other city employees. After the court dispensed with all issues arising under Disciplinary Rule 4.2 of the Massachusetts Rules of Professional Conduct against defendants, the court addressed defendants' request that plaintiffs provide them with a list of the proposed questions plaintiffs intended to ask and the identities of the employees plaintiffs intended to contact. Wagner, 183 F.Supp.2d at 291. The court refused both requests, however, citing the need "to guard against Plaintiffs revealing their attorneys' thought processes" due to the "particularly contentious issues at play" and the fact that there were only ten potential employees that Plaintiffs intended to contact. Id. at 294. Here, in contrast, the persons Relator seeks to interview are not a handful of employees she works with every day. On the contrary, Relator's potential interview list could contain as many as 250,000 claimants (with whom Relator has no pre-existing contentious relationship arising from the facts at issue in this case). Moreover, this is not a situation involving, as Wagner did, an employment case -- "the most compelling case for court authorization of ex parte contact between the

plaintiff's counsel and the defendant's employees." Id. at 292 (internal quotations and citations omitted). Simply put, Wagner is inapplicable.

As stated above, Defendants' proposed procedures are intended solely to protect the legitimate privacy interests of the claimants and Defendants' legitimate business interests. These requests are fair and reasonable and should be adopted by the Court.[5]

## II. Conclusion

For the foregoing reasons, as well as those set forth in Defendants' Memorandum, the Defendants respectfully request that their Motion be granted, the Court enter the Proposed Protective Order annexed to Defendants' Motion as Exhibit 1, and grant such other relief as the Court deems just and appropriate. Additionally, Defendants agree that, if adopted, Defendants' proposed procedures for contacting claimants (other than in the ordinary course of business) will apply equally to all parties to the case.

---

[5] Relator's proposed "opt-out" procedure, in contrast, is unreasonable. For example, Relator's response to Interrogatory No. 28 lists impairment due to "substance abuse, including alcoholism or drug addiction" as a key criteria demonstrating that claimant presented a false or fraudulent claim. However, claimants suffering from such impairment are the least likely to be in a position to respond to Relator's letter within the 14-day "opt-out" period, due either to the very nature of their impairment or the possibility that they are in the process of seeking treatment. In addition, Relator's proposed letter does not contain the following language which was included in the letter proposed by Defendants: "If an attorney represents you, please forward this letter to him or her." There is no reasonable basis for failing to include this language. Relator also asserts without any support that the procedures adopted in UNUM are successful. She has offered no evidence that the procedures have not caused substantial business interruption to UNUM or distress to the UNUM claimants who are contacted. Finally, Relator makes much of Defendants' comment that "similar procedures" were approved in the UNUM case. Defendants did not represent that the procedures were identical. More importantly, Relator's proposal here also differs from the procedure adopted in UNUM.

Respectfully submitted,

CIGNA CORPORATION and
LIFE INSURANCE COMPANY OF NORTH
AMERICA

By their attorneys,

*/s/ Karen Collari Troake*
R. J. Cinquegrana (BBO #084100)
Karen Collari Troake (BBO #566922)
Richard C. Abati (BBO #651037)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
(617) 248-5000

Dated: November 19, 2007

# Exhibit A

# CHOATE

CHOATE HALL & STEWART LLP

Karen Collari Troake<br>
(617) 248-5192<br>
ktroake@choate.com

November 14, 2007

**BY E-MAIL AND FIRST CLASS MAIL**

Thomas S. Kimbrell, Esq.
Heller Ehrman LLP
1717 Rhode Island Avenue, NW
Washington, DC 20036

Re:   *United States of America, ex rel. Barrett*
      *v. CIGNA Corporation et al.*
      *Civil Action No. 03-12382-MLW (D. Mass.)*

Dear Tom:

I am writing in response to your letter of yesterday and our e-mail exchange of November 6, 2007.

First, your letter (as has been the case in prior correspondence) misleading states that you have asked us to proceed with producing the electronic information that remains the subject of negotiation and for which Relator has changed her proposal on numerous occasions. As stated previously and due to the breadth of information requested, our client will not process the request for electronic information until the parties are agreed on the fields to be included and the scope. As you know, Relator recently provided to us a list of almost 90 additional fields that she seeks to include. We have been working with our client to understand the requested fields and whether the information that may be contained in those fields is responsive. Until this is resolved, our client will not process the requested data.

Second, your letter misconstrues our prior e-mail exchange in numerous ways and, in light of the parties dealings on these issues to date, is a clear demonstration of the Relator's continued lack of good faith. First, your statement that my November 6th e-mail "left [Relator] no choice but to ask you to run an electronic report for . . . all LTD applicants . . .", ignores the fact that *Relator* originally requested and confirmed that the electronic data should include *all* LTD claims opened during the relevant period. *See* Letter from Carl S. Nadler to Karen Collari Troake dated July 25, 2007 ("The

Thomas S. Kimbrell, Esq.
November 14, 2007
Page 2

production of electronic information should include *all long-term disability [ ] claimants . . ..*" (emphasis added)); E-mail from Carl S. Nadler to Karen Collari Troake dated August 21, 2007 ("Yes, we mean LTD claims opened on or after 1/1/96."). Thereafter, Relator narrowed the scope of her request and asked for only those LTD claims "that were approved", without any caveats, conditions or requested representations. *See* Letter from Carl S. Nadler to Karen Collari Troake dated October 9, 2007 ("Relator clarifies that she is asking [LINA] to produce the electronic data only on behalf of individuals that [LINA] actually approved for LTD benefits, not all individuals that applied for LTD benefits.")  Only after we asked you to confirm that we should proceed on the basis of Relator's revised request, did Relator (again) change the parameters and seek the representation as stated in your November 6, 2007 e-mail.

Third, your e-mail requested that our client either: (1) include all LTD claims that were opened in the relevant period (as originally requested and confirmed by Relator); or (2) some subset of LTD claims that excluded those claims for which our client "can verify that the LTD applicant never applied for SSDI in connection with the disability that was the basis for the claim for LTD."  As noted in my e-mail of November 6th, our client will produce electronic information (subject to further negotiation between the parties as noted above) for all LTD claims opened in the relevant period as originally and unconditionally requested by the Relator and as requested in your November 6th e-mail.  My statements regarding your alternative proposal (made for the first time in your e-mail) merely state the obvious, *i.e.* that your requested representation is not reasonable or realistic.  Specifically, in many circumstances our client may never know whether an LTD claimant applied for SSDI, nor whether, if they applied, whether it relates to the same, related or entirely different medical condition or disability.  To the extent that you have read something else into my e-mail, you are mistaken.

Finally, your letter poses a different question than that posed in your e-mail of November 6th.  If the question is whether our client has the capability to exclude from the electronic data, LTD claimants for whom there is no electronic data indicating that they applied for SSDI, this is entirely different from what was requested previously.  Please confirm whether this is what Relator is now seeking and we can then discuss it with our client.

4271500v1

Thomas S. Kimbrell, Esq.
November 14, 2007
Page 3

Sincerely,

Karen Collari Troake

cc: R.J. Cinquegrana, Esq.
    Richard C. Abati, Esq.

4271500v1