UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA<br>*EX REL.* DAWN BARRETT,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>CIGNA CORPORATION and<br>LIFE INSURANCE COMPANY<br>OF NORTH AMERICA,<br><br>　　　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 03-12382-MLW |

**DEFENDANTS' (1) OPPOSITION TO RELATOR'S MOTION TO COMPEL
DISCLOSURE OF CLAIMANT-IDENTIFYING INFORMATION AND
(2) REQUEST FOR A RULING ON DEFENDANTS' PENDING MOTION FOR
PROTECTIVE ORDER GOVERNING CLAIMANT CONTACT (DOCKET NO. 94)**

Relator has moved to compel Defendants to disclose the name, Social Security number, telephone number, street address, city, and zip code (the "Claimant-Identifying Information") of each of the 268,000 individuals who filed long-term disability ("LTD") insurance claims with the Defendants between 1996 and 2006.[1]  At Relator's request, Defendants have produced detailed electronic data relating to each of these 268,000 claimants.  Relator intends to use the electronic data to identify a sample of "at least several hundred" claim files.  Relator's Memo. at 2 n.2.  Defendants cannot think of any legitimate reason that Relator needs the Claimant-Identifying Information to select her sample, and her motion does not even attempt to offer one.

Defendants did not include the Claimant-Identifying Information in the electronic data production for two reasons.  First, some of the 268,000 claimants are likely to have medical

---

[1] Contrary to Relator's assertion, the Defendants have not redacted or otherwise refused to produce the LTD claimants' dates of birth, states of residence, or "other identifying information."  Relator's Memo. at 2.

information whose disclosure is prohibited by federal and/or state law.[2] There is no way for the Defendants to determine which of the 268,000 claim files contain protected information other than by reading through every single claim file, which would be unduly burdensome; even Relator has not proposed this Herculean task. Second, Defendants are the custodian of the most sensitive medical information concerning the claimants. Some of these 268,00 files will contain information concerning, *inter alia*, cancer, mental illness, substance abuse, and sexually transmitted diseases.

Relator's motion to compel production of the Claimant-Identifying Information should be denied because she has failed to identify any reason why she needs the information, much less good cause. Even if she could make some showing of good cause, it would have to be weighed against the claimants' legitimate right to privacy in their confidential medical information, which they disclosed to CIGNA[3] under the reasonable belief that it would be used solely for purposes of determining their LTD claims. They never consented to the disclosure of their most personal, private, and potentially embarrassing health information to anyone outside CIGNA.

Moreover, Relator's motion is unnecessarily premature. The Court need not yet address the thorny privacy issues raised by Relator's motion. The Court may postpone a ruling until after (1) Relator has selected her sample from the electronic data, (2) CIGNA has reviewed the claim files in the sample, and (3) CIGNA has determined whether information in any of the claim files in the sample is, in fact, covered by federal and/or state laws governing private health information. This will protect the privacy interests of 267,000+ claimants at a minimum. Then

---

[2] For example, the electronic data produced by the Defendants may indicate that a non-identified individual is HIV-positive. If that person lives in a state where such information is protected against disclosure, see statutes described infra, Defendants would violate state law by identifying the claimant.

[3] Defendant CIGNA Corp. ("CIGNA") is a holding company that does not issue insurance. As Relator acknowledges, "CIGNA conducts its business through various wholly-owned subsidiary corporations including [defendant] Life Insurance Company of North America ('LINA'), CIGNA Life Insurance Company of New York and Connecticut

and only then, if Relator can identify a compelling reason why she needs the Claimant-Identifying Information for the claimants within her sample, ways to provide such information in a manner that also addresses the claimants' privacy concerns can be fashioned.

## BACKGROUND

### 1. The Relevant Allegations

This is an exceedingly novel False Claims Act lawsuit in which the Relator maintains that CIGNA may be held liable when a claimant for LTD insurance benefits under a CIGNA policy files a completely truthful application for Social Security Disability Insurance benefits ("SSDIB"). Specifically, Relator has alleged that CIGNA has violated the False Claims Act by causing LTD claimants who purportedly "cannot possibly be eligible" for SSDIB to apply for such benefits. Second Am. Complaint ("Complaint" or "Comp."), ¶ 6. Although no such requirement appears in the statute or in any Social Security Administration ("SSA") regulation or guidance, Relator maintains that before a disability insurer may direct claimants to apply for SSDIB, it must make an "adequate inquiry … into whether they [can] reasonably qualify" for SSDIB. Relator's Supp. Responses to Interrogs., No. 6 (Jan. 18, 2008) (attached hereto as Exhibit 1); accord id., No. 2 (describing this purported requirement as an "adequate investigation of eligibility"); Comp. ¶ 7 (a "good faith assessment"). It appears from her allegations that Relator contends that any individual who applies for SSDIB without making a "good faith assessment" that he/she will likely qualify as disabled under the SSA's myriad and confusing rules and standards[4] commits a False Claims Act violation – and is therefore subject to a felony conviction and imprisonment for up to five years. See 42 U.S.C. § 408(a).

---

General Life Insurance Company." Comp. ¶ 10. For ease of reading, these subsidiaries are collectively referred to herein as "CIGNA."

[4] "[D]isability determinations are highly complex …." DAVID STAPLETON & MICHAEL D. PUGH, EVALUATION OF SSA'S DISABILITY ASSURANCE (QA) PROCESSES AND DEVELOPMENT OF QA OPTIONS THAT WILL SUPPORT THE

With respect to causation, Relator has alleged that CIGNA causes LTD claimants to submit SSDIB applications, which she contends are "false claims" even though they are facially accurate, by enforcing the provision in its LTD policies allowing it to offset from the LTD benefits due a claimant, not only the amount of SSDIB received by the claimant but also, if the claimant refuses to apply, the amount of SSDIB that CIGNA estimates the claimant would receive if he/she did apply.  Comp. ¶ 123.  Such coordination-of-benefits provisions have existed for decades in disability insurance policies issued by virtually every carrier in the country – not to mention federal and state disability benefit providers, and they have been uniformly upheld by the courts.[5]  See, e.g., Baxter v. Briar Cliff College Group Ins. Plan, 409 F. Supp. 2d 1108, 1127 (N.D. Iowa 2006) (estimated SSDIB offset provision did not violate ERISA); Gardner v. Bear Creek Corp., 2007 WL 2318969, at *19 (N.D. Cal. 2007) (rejecting plaintiff's challenge to CIGNA's offset for estimated SSDIB); Lamb v. Conn. Gen. Life Ins. Co., 643 F.2d 108, 112 (3d Cir. 1981) (offset provision in CIGNA policy did not violate Social Security Act); see also, e.g., Buck v. Fries & Fries, Inc., 953 F. Supp. 896, 906 (S.D. Ohio 1996) ("the Court cannot censure UNUM for having requested or required the Plaintiff to apply for Social Security benefits when it was entitled to a set-off if such benefits were awarded").

The value of such offset provisions in keeping down premiums is well recognized. "[C]oordination-of-benefits clauses serve the public purpose of avoiding duplicate recoveries for the same injuries.  These clauses enable insurance companies to charge lower premiums." Cody v. Conn. Gen. Life Ins. Co., 387 Mass. 142, 151 (1982).

---

LONG-TERM MANAGEMENT OF THE DISABILITY PROGRAM at iii (SSA Contract No. 0600-96-27331, The Lewin Group, Mar. 16, 2001), *available at* www.disabilitydoc.com/storage/LewinQA.pdf.  "The amount of materials that an adjudicator is required to master is truly impressive."  Id. at 16; see id. at 13 (describing the SSA's five-step "sequential evaluation" process for the initial determination); id. at 17 (as many as 20% of all SSDIB applications could legitimately go either way).

[5] Even the SSA itself imposes a coordination-of-benefits requirement.  See 20 C.F.R. § 404.408(a)(2).

Moreover, the SSA has known for years about such provisions and the fact that many if not most disability insurance carriers require LTD claimants to apply for SSDIB.  See, e.g., Internal SSA memo dated Sept. 22, 1989 by Associate Commissioner Eileen Bradley (attached hereto as Exhibit 2) ("This type of situation typically involves a recipient of long-term disability (LTD) benefits paid by a private insurer which encourages or requires the recipient to file for Social Security Disability insurance benefits (DIB).  Under the terms of most LTD policies, the amount of the LTD monthly benefit is offset by the amount of DIB payable.").  Despite this long-term knowledge, the SSA has never promulgated a regulation requiring carriers to make a "good faith assessment" of probable eligibility before directing LTD claimants to apply for SSDIB.  Simply stated, no such legal requirement exists.[6]

Defendants know of only one other case in which Relator's novel theory has been asserted:  the parallel action against UnumProvident filed by the same plaintiff's law firms that represent Relator in this action.  That case is currently pending before Judge Saris.  U.S. ex rel. Patrick Loughren v. UnumProvident Corp., et al., Civil Action No. 03-11699-PBS (D. Mass.) (the "Unum case").[7]  The government has declined to intervene in either the instant action or the Unum case.

According to the Complaint in this action, "[a]t the time of submission of the SSDI claim to SSA, CIGNA has extensive information in its files documenting that the individual LTD claimant cannot possibly qualify for SSDI" benefits.  Comp. ¶ 8(b).  Despite this knowledge,

---

[6] Indeed, Relator seeks to create a new SSA requirement through judicial fiat instead of through the notice-and-comment rulemaking procedure required by the Administrative Procedures Act.

[7] The relator in the Unum case, Attorney Patrick Loughren, filed his sealed complaint in September 2003, shortly before the relator in the CIGNA case, Dawn Barrett, filed her complaint.  Both relators live in Pittsburgh, Pennsylvania.  In 2002, Attorney Loughren represented Ms. Barrett in Pennsylvania state court in an unrelated family law matter.  On information and belief, when Attorney Loughren learned that Ms. Barrett works at one of CIGNA's disability insurance subsidiaries (specifically, defendant Life Insurance Company of North America), he explained to her his liability theory against Unum and put her in touch with his lawyers to persuade her to file an analogous complaint against CIGNA.

CIGNA allegedly "requires LTD claimants to file claims for SSDI with actual knowledge of and deliberate indifference to their clear ineligibility for SSDI" benefits.  Id.  Relator has conceded that CIGNA does not require *all* LTD claimants to apply for SSDIB.  Instead, she has alleged that CIGNA refers all LTD claimants (who by definition are seriously ill or injured individuals who have exhausted their short-term disability benefits, meaning they have already been disabled for three to six months) to Social Security assistance vendors that help them pursue claims for SSDIB, unless they fall under one of the following exceptions:  (a) their diagnosis is a simple pregnancy, (b) they are able to work part-time and earn at least $800/month, (c) they have a firm return-to-work date within nine months, (d) there are outstanding issues concerning their LTD eligibility or CIGNA is investigating whether they may be ineligible due to a pre-existing condition limitation, or (e) they want to pursue their SSDIB claims on their own or through representatives outside CIGNA's approved network of Social Security assistance vendors.  See Exhibit 1 (Relator's Supp. Responses to Interrogs. at No. 6).

   2.    **The Relevant Discovery**

Relator seeks to prove that some number of the 268,000 individuals who filed LTD claims with CIGNA in 1996-2006,[8] who CIGNA required to apply for SSDIB by enforcing the estimated SSDIB offset provision in its policies, and who were denied SSDIB, were patently ineligible.  See id., No. 28.  Assuming *arguendo* the validity of Relator's legal theory, the evidence she requires to prove her case is:  (a) the information in each individual's LTD claim file at the time CIGNA allegedly required the claimant to apply for SSDIB (which must show that the claimant could "not possibly qualify" for SSDIB, according to the Relator's theory); and

---

[8] Relator suggests that the relevant time period for the electronic claim file data is 1996 through 2008.  Relator's Memo. at 1.  This is incorrect.  Defendants have objected to the production of data for LTD claims received after Relator filed her Second Amended Complaint in April 2006.

6

(b) information showing whether the claimant applied for SSDIB and, if so, whether SSA denied the application.

Rather than reviewing 268,000 LTD claim files or a statistically relevant sample drawn randomly from those files, Relator has elected to try to prove her case through a targeted sampling. Apparently she intends to try to identify a certain number of LTD claim files which supposedly are "false claims" in that the claimant was patently ineligible for SSDIB yet was required to apply for SSDIB (and was denied), and extrapolate that number to the universe of 268,000 claimants.[9]

Initially Relator did attempt a random sampling and requested as her sample all LTD claims opened in January 2000 or January 2004, which totaled about 600 claim files. CIGNA believed it could not legally produce any claim files that contained private health information protected by federal or state law – specifically, the Public Health Service Act, 42 U.S.C. § 290dd-2 (protecting against disclosure of certain alcohol and drug abuse treatment records); Conn. Gen. Stat. § 19a-583 (protecting against disclosure of HIV-related information for Connecticut residents); Mich. Comp. Laws § 333.5131 (protecting against disclosure of HIV-related information for Michigan residents); N.J. Stat. § 26:5C-9 (protecting against disclosure of HIV-related information for New Jersey residents); N.Y. Pub. Health Law § 2785 (protecting against disclosure of HIV-related information for New York residents); R.I. Gen. Laws § 5-37.3 (protecting against disclosure of "all information relating to a patient's health care history, diagnosis, condition, treatment, or evaluation obtained from a health care provider who has

treated the patient," if the healthcare provider is located or licensed in Rhode Island); or Wash. Rev. Code § 70.24.105 (protecting against disclosure of Washington residents' HIV-related information and information relating to sexually transmitted diseases).

Prior to producing the 600 claim files, CIGNA sought a court order that would have allowed the production of all 600 files whether or not any of the above laws applied. See Defendants' Assented-to Motion for an Order Governing Disclosure of Claimant Files Containing Confidential Health Information (Docket No. 88, filed March 23, 2007).[10] However, the Court denied the motion as premature (Docket No. 90, issued June 29, 2007). Thereafter, CIGNA's counsel reviewed the 600 claim files, determined that only one contained private health information protected by one of the above statutes, withheld that file, and produced all the others as "Highly Confidential" information protected by the Confidentiality Stipulation and Order endorsed by the Court on July 3, 2007 (Docket No. 91).

After requesting the 600 LTD claim files opened in January 2000 and January 2004, Relator reversed course and decided this random sample was not what she wanted. Instead, she requested that CIGNA produce electronic data on all 268,000 claimants, from which she now proposes to select a targeted sample of several hundred claim files. Negotiations concerning the proper data fields to be produced continued for many months. Eventually the parties reached agreement on the production of 93 data fields for all 268,000 claimants. CIGNA produced this

---

[9] Defendants deny that any false claims exist. But even if they did, the use of statistical sampling would still be inappropriate in a case involving decision-making as complex and subjective, and involving so many variables, and subject to so many appellate reviews, as SSDIB eligibility. "[W]hether the use of sampling and extrapolation is proper is a question of law." Ratanasen v. State of Cal., Dep't of Health Servs., 11 F.3d 1467, 1469 (9th Cir. 1993). For example, in a recent class action filed by 180,000 pretrial detainees claiming poor treatment in prison, the Ninth Circuit affirmed the trial court's decision that statistical sampling was inappropriate "given the facts of this case …, the size of the class and the array of variables related to causation and damages." Pierce v. County of Orange, __ F.3d __, 2008 WL 762072, at *5 (9th Cir. Mar. 24, 2008).

[10] Specifically, Defendants requested an Order that would have: (a) authorized discovery of documents containing private health information protected by state law; and (b) sanctioned a procedure whereby Defendants could

voluminous data in February 2008.[11]  However, CIGNA redacted the Claimant-Identifying Information from the production.  As explained below, Relator does not need any of this information to select her sample or even to prove her case.

Whether the Defendants must produce the Claimant-Identifying Information is inextricably intertwined with the issues raised in their pending Motion for Protective Order Governing Claimant Contact (Docket No. 94, filed Oct. 26, 2007), which the Defendants filed after Relator and her counsel stated their intention to contact the claimants.[12]  Unless Relator's Motion to Compel the Disclosure of Claimant-Identifying Information is denied outright, a ruling on that motion must be accompanied by a ruling on Defendants' Motion for Protective Order Governing Claimant Contact.  Otherwise, Relator will have access to information enabling her to identify and contact CIGNA's claimants without any direction from the Court regarding whether she may do so, or, if so, under what limitations.

**ARGUMENT**

**1.     Relator's Burden of Proof**

A court may authorize the production of confidential medical information protected by the Public Health Service Act, 42 U.S.C. § 290dd-2, only after giving the patient notice and an opportunity to be heard.  See 42 C.F.R. § 2.64(b).  In addition, the moving party must establish good cause for the requested disclosure.  Id. § 2.64(d); see U.S. v. Cresta, 825 F.2d 538, 552 (1st

---

withhold records protected by the federal law and Relator then could apply to the Court for the discovery thereof (under applicable federal law).

[11] Relator claims that she cannot read all of the electronic data unless CIGNA puts it into an Access database for her, which is not how CIGNA stores the data in the ordinary course of its business.  The parties are currently working out this issue and anticipate resolving it shortly.

[12] The claimant contact motion asks that the Court prohibit Relator from contacting any of the claimants whose LTD claim files are disclosed in the course of discovery.  Alternatively, the motion requests that the Court prohibit Relator from contacting any of those claimants unless: (1) Relator limits the claimants to those who fit the criteria outlined in her response to Interrogatory No. 28 (see Exhibit 1 attached hereto); (2) Relator notifies the Defendants and the Court of the names of the claimants whom she intends to contact; (3) Relator complies with all applicable privacy restrictions; (4) Relator provides the claimant with a letter and consent form; (5) Relator refrains from

Cir. 1987) (burden is on the party seeking the information). To meet her burden of proof, Relator must show "that: (1) [o]ther ways of obtaining the information are not available or would not be effective; and (2) [t]he public interest and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship and the treatment services." 42 C.F.R. § 2.64(d). Moreover, even if Relator could establish good cause, the Court could not authorize the disclosure of "confidential communications" in this case because such disclosure may not be authorized except in unique circumstances that are absent here. Specifically:

> A court order under these regulations may authorize disclosure of confidential communications made by a patient to a program in the course of diagnosis, treatment, or referral for treatment only if:
>
> (1)     The disclosure is necessary to protect against an existing threat to life or of serious bodily injury, including circumstances which constitute suspected child abuse and neglect and verbal threats against third parties;
>
> (2)     The disclosure is necessary in connection with investigation or prosecution of an extremely serious crime, such as one which directly threatens loss of life or serious bodily injury, including homicide, rape, kidnapping, armed robbery, assault with a deadly weapon, or child abuse and neglect; or
>
> (3)     The disclosure is in connection with litigation or an administrative proceeding in which the patient offers testimony or other evidence pertaining to the content of the confidential communications.

Id. § 2.63(a).

Relator correctly notes that in a federal case, federal common law controls the existence of evidentiary privileges, and, therefore, the Court may authorize the disclosure of medical information protected by the state statutes listed *supra*. However, unless the Court also finds good cause and authorizes the disclosure of information protected by the federal Public Health Service Act after notifying each affected claimant and giving him/her the opportunity to be heard, Defendants would still need to redact the Claimant-Identifying Information from all of the

---

contacting any claimant until he/she has affirmatively consented to such contact by returning the consent form; and

electronic claim file data. This would be required because, as noted above, there is no way for the Defendants to determine which of the 268,000 claim files contain information protected by the Public Health Service Act other than by reviewing every single file.

If federal and state statutes governing private health information were the only issue, it could be resolved by having Relator first identify her sample from the electronic data (for which she does not need the Claimant-Identifying Information); at that point the universe of affected files would only be a few hundred; and then defense counsel could review all of the claim files in the sample. If any claim files in the sample contained information protected by the Public Health Service Act, Defendants would hold back those files and work with Relator to find replacement files. There are, however, other important privacy issues, as described *infra*.

### 2. Relator's Motion Should Be Denied on the Merits or Denied as Premature

Relator's motion should be denied on the merits because she does not need the Claimant-Identifying Information either to select her sample or even to prove her case. Indeed, Relator admits that a court order requiring the production of information protected by the federal Public Health Service Act requires good cause, but then fails to identify any good cause supporting her request. Relator's Memo. at 6. Relator asserts merely that the information "is necessary to enable Relator to litigate [her] claims," but does not explain how. Id. She also ignores the fact that no Order may issue without each affected claimant being given notice and an opportunity to be heard, as required by the Act. See 42 C.F.R. § 2.64(b).

Perhaps Relator wishes to contact claimants and ask them about their personal medical history. The issues in this case do not indicate the relevance of information that might be gained through such highly intrusive contact. First, there is no reason Relator needs to contact any claimant before she selects her sample. But even after she selects her sample, the information

---

(6) Relator provides the Defendants with copies of the executed consent forms within five days after receiving them.

11

Relator will need to prove her case (assuming the validity of her legal theory) will be contained in the claim files that Defendants have agreed to produce after Relator identifies her sample. Relator's theory is that CIGNA requires many claimants to apply for SSDIB even though it knows or should know from the "extensive information in its files" that those claimants "cannot possibly qualify for SSDI" benefits. Comp. ¶ 8(b). In other words, CIGNA's alleged violation of the law is based on its knowledge of the information in its claim file at the time it supposedly requires a claimant to apply for SSDIB. Since the information from which Relator hopes to prove her case is in the LTD files, she has no need to know the names, Social Security numbers, etc., of any of the claimants.[13]

Moreover, even if Relator could identify some legitimate reason why she needs the redacted information, that reason would have to be weighed against the need to protect the claimants' privacy interests. Both the electronic claim file data and the actual claim files contain highly sensitive and personal information about the claimants, including, *e.g.*, identification of claimants who are HIV-positive or have AIDS, who have schizophrenia or other stigmatized mental illnesses, who are suffering or have suffered from drug or alcohol addiction, or have embarrassing sexually transmitted diseases. A person filing a claim for disability insurance benefits has a reasonable and well-founded belief that his/her personal confidential medical information will be used solely to decide his/her claim and for no other purpose. "Even without an express guarantee of confidentiality [and even more so here, where the LTD claimants *were* guaranteed confidentiality], there is still an expectation, not unjustified, that when highly personal and potentially embarrassing information is given for the sake of medical research [or

---

[13] Alternatively, it is possible that Relator seeks the Claimant-Identifying Information so that she can subpoena from the SSA data confirming that the claimants in her to-be-selected sample applied for and were denied SSDIB. If that is her aim, Defendants will agree to subpoena the information from the SSA and produce it to Relator, thereby avoiding intrusion into the privacy of any of the claimants.

12

here, the adjudication of a disability benefits claim], it will remain private." Farnsworth v. Procter & Gamble Co., 758 F.2d 1545, 1547 (11th Cir. 1985); see Tower v. Hirschhorn, 397 Mass. 581, 586-87 (1986) (neurologist violated patient's right to privacy by discussing her medical condition with two other professionals without her consent); *Safeguarding Private Medical Data*, N.Y. TIMES (Mar. 26, 2008 editorial) (discussing the disclosure of confidential medical information of 2,500 heart disease patients caused by the theft of an NIH researcher's laptop, and stressing "the need for a strong federal law to protect medical privacy and for greater responsibility by those who handle sensitive medical information").

    CIGNA's LTD claimants would undoubtedly be dumbfounded if they learned that their most personal, private information could be subject to discovery demands in lawsuits about which they have no knowledge and in which they have no stake or interest. A claimant would legitimately be mortified and/or furious to receive a phone call or a visit from lawyers representing Relator, asking about the LTD claim that the person filed with CIGNA perhaps as long as 12 years ago, and indicating that they have information about, *e.g.*, the claimant's long-ago cocaine addiction or suicide attempt about which his family knows nothing and which he has fought hard to put behind him. At a bare minimum, Relator and her counsel should not be permitted to contact any LTD claimant unless the person has been alerted in writing about this lawsuit and what it concerns, has been advised that Relator's counsel wants to speak with him/her and the reason therefor, and has indicated a willingness to be contacted by Relator's counsel concerning his/her medical information and SSDIB application.

    In the alternative, the Court should deny Relator's motion without prejudice and postpone a ruling until after Relator selects her sample and CIGNA reviews the claim files in that sample. Issues raised by federal and state law and personal privacy expectations can be

addressed more directly and facilely when the cohort of claimants at issue is a few hundred instead of a few hundred thousand.

## CONCLUSION

For the foregoing reasons, the Defendants respectfully request that the Court deny Relator's motion on the merits and grant Defendants' pending Motion for Protective Order Governing Claimant Contact (Docket No. 94). In the alternative, the Court should deny Relator's motion without prejudice because it is premature.

    Respectfully submitted,

    CIGNA CORPORATION and LIFE INSURANCE COMPANY OF NORTH AMERICA

    By their attorneys,

    */s/ Christine J. Wichers*
    Mitchell H. Kaplan (BBO# 258940)
    R. J. Cinquegrana, (BBO# 084100)
    Christine J. Wichers (BBO# 631857)
    Richard C. Abati (BBO# 651037)
    CHOATE, HALL & STEWART LLP
    Two International Place
    Boston, MA  02110
    (617) 248-5000

Dated:  April 2, 2008

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 2, 2008.

    */s/ Christine J. Wichers*
    Christine J. Wichers

4316133v3