# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>*ex rel.* DAWN BARRETT, )<br>  )<br>     Plaintiff, )<br>  )<br>v.   )<br>  )<br>CIGNA CORPORATION and LIFE )<br>INSURANCE COMPANY OF NORTH )<br>AMERICA )<br>  )<br>     Defendants. )<br>_____) | Civil Action No. 03-12382-MLW |

**RELATOR'S REPLY IN SUPPORT OF HER MOTION FOR AN ORDER
COMPELLING DISCLOSURE OF CLAIMANT FILES AND INFORMATION**

**I.    Defendants Do Not Justify Their Wholesale Withholding of Claimant
Identification Information**

Defendants do not deny that they have withheld relevant identifying information on hundreds of thousands of claimants, even though the state and federal confidentiality statutes on which they rely undisputedly do not apply to the vast majority of those claimants. Nor do Defendants deny that the statutes they rely upon apply only to specific concerns in six states and a narrow federal statute. In fact, Defendants concede that the state privacy laws do not govern in a federal question case like this one. (Defs.' Opp. at 10.) But even if the state statutes are considered, five of the six state statutes apply only to HIV-related illnesses. *See* Conn. Gen. Stat. § 19a-583; Mich. Comp. Laws § 333.5131; N.J. Stat. § 26:5C-9; N.Y. Pub. Health Law § 2785; Wash. Rev. Code

§ 70.24.105. The federal Public Health Service Act applies only to substance abuse records maintained by federally funded programs. 42 U.S.C. § 290dd-2.

With respect to the records of patients in 44 states and to those without the very specific health concerns addressed by the six state and one federal statutes, Defendants have no basis to withhold claimant identifying information whatsoever. Even as to the few claims that may fall within the relevant statutes, Defendants do not dispute that this Court has authority to order disclosure on a showing of "good cause." This is precisely what Defendants themselves represented to the Court in their Assented Motion for an Order Governing Disclosure of Confidential Claimant Information. (Assented to Mot. for an Order Governing Disclosure of Confidential Claimant Information, Docket No. 88, at 3-5.)

Defendants' claim that they "cannot think of a reason" Relator needs the claimant information is no excuse for withholding the information. The Federal Rules of Civil Procedure do not require that a producing party be able to "think of a reason" for the opposing party's request for information. Instead, they instruct that "[p]arties may obtain discovery regarding *any nonprivileged matter that is relevant to any party's claims or defense.*" Fed. R. Civ. P. 26(b)(1) (emphasis added). "[T]he plain language of . . . Rule 26(b)(1) contemplates wide-ranging discovery to the fullest possible extent." *Klonoski v. Mahlab*, 156 F.3d 255, 267 (1st Cir. 1998).[1]

---

[1] Relevance has "been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (relevance );

*(Footnote continued)*

3

The claimant identification information at issue in this motion is critically relevant to Relator's case, for at least two reasons.  ***First,*** as Defendants concede, Relator intends to show that Defendants improperly caused claimants to apply for SSDI, that the claimants did, in fact, apply and that their SSDI applications were denied by the SSA.  As Relator's original motion explains, Relator intends to secure information from the SSA on whether claimants applied and whether the SSA denied their application.  Relator can only secure that information from the SSA if she can identify the claimants in question to the SSA.  (Relator's Mem. at 2.)  ***Second,*** Relator will likely seek to contact claimants to secure their testimony as to Defendants' conduct in causing them to apply for SSDI (subject, of course, to any restrictions the Court may place on contacting claimants).  Relator obviously cannot contact claimants without identifying information.

Relator's planned statistically-valid sample is one reason — but not the only reason — that this information is critically relevant.  Defendants are correct that one reason Relator needs identifying information is that she plans to do a statistically-valid sample of Defendants' files to establish how frequently Defendants' improperly caused claimants to apply for SSDI, with the inevitable result that their claims were denied.  Relator does not believe that this motion is the time or place to argue the admissibility of such statistical evidence.  But Defendants are incorrect that statistical evidence would be

---

*Klonoski*, 156 F.3d at 267-68 (same).  Indeed, this Court has recognized that "relevancy must be broadly construed at the discovery stage such that information is discoverable if there is any possibility it might be relevant to the subject matter of the action." *United States v. Mass. Indus. Fin. Agency*, 162 F.R.D. 410, 414 (D. Mass. 1995).

4

improper in this case.[2] Courts have recognized the benefits of statistically valid sampling in eliminating fraud, particularly where, as here, the fraud concerns an abuse of public resources. *See Yorktown Med. Lab., Inc. v. Perales*, 948 F.2d 84, 90 (2d Cir. 1991) (finding that balance of interests weighed in favor of using statistical sampling in case against laboratory serving as a Medicare provider); *Ratanasen v. Cal. Dept. of Health Servs.*, 11 F.3d 1467, 1471 (9th Cir. 1993) (upholding use of statistical sampling).[3] Additionally, Relator's intention to use a statistically valid sample was described to the Court in the hearing on Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Docket No. 53) and the hearing on Defendants' motion to bifurcate discovery (Docket No. 72). In those hearings, the Court recognized this was the method Relator intends to use to assess liability and damages, as is being done in the action pending in front of The Honorable Patricia B. Saris, *United States ex. rel. Loughren v. UnumProvident Corp.*, Case No. 03-11699-PBS.

Indeed, in the meet and confer leading up to this motion, Relator asked whether Defendants would agree to provide identifying information *at least for the hundreds of*

---

[2] Defendants are simply wrong in asserting that Relator plans "targeted sampling" as opposed to statistically-valid sampling. (*See* Opp. at 7.) To the contrary, Relator plans to perform a statistically-valid sample.

[3] *Pierce v. County of Orange*, Nos. 05-55829, 05-55845, 2008 WL 762072 (9th Cir. Mar. 24, 2008), is inapposite here. There, the Ninth Circuit held that the district court did not abuse its discretion in finding that statistical sampling would not be an effective means for determining damages for a class of pretrial detainees where "'[c]lass membership [was] highly fluid and indefinite,'" and "'[i]ssues of damages proof would be highly individualized.'" *Id.* at *5 (citation omitted)..

*claims files Relator chooses for the sample*.  Defendants refused to make even that commitment.  Again, Relator can only prove that SSA denied these claimants' improperly-caused SSDI application if it has identification information for the claimants.  The information is thus critically relevant.

**II.     Defendants' Generalized Confidentiality Concerns Do Not Justify Withholding this Critical Evidence.**

The Confidentiality Stipulation and Order that has been in place in this case for more than one year adequately protects any confidentiality concern.  (Confidentiality Stipulation & Order, Docket No. 91.)  The terms of the Confidentiality Stipulation and Order incorporated the Court's specific instructions regarding a protective order for this case.  Additionally, the parties crafted specific provisions relating to "Confidential Claimant Information" (*id.* ¶ 3), agreeing that all such information would be treated as "Highly Confidential Information."  (*Id.* ¶ 4, 12.)  These protections refute Defendants' claims that they may withhold claimant identification information altogether based on confidentiality issues.  *See Barnhart v. Safeway Stores, Inc.*, No. CIV S-92-0803, 1992 U.S. Dist. LEXIS 22572, at *20-*21 (E.D. Cal. Dec. 14, 1992).

In *Barnhart*, plaintiffs filed a class action alleging sex discrimination against defendant Safeway.  *Id.* at *1-*2.  Plaintiffs sought documents concerning sex discrimination charges filed by any employee, and Safeway objected that such documents were protected by privacy concerns.  *Id.* at *21.  The Court found that "[w]hile the requested documents appear to be entitled to protection to assure the charging parties' privacy," the stipulated protective order entered in the case would "adequately

6

accomplish that goal." *Id.*; *see also Sedona Crop. v. Open Solutions, Inc.*, No. 3:07CV00171, 2008 U.S. Dist. LEXIS 25915, at *11 (D. Conn. Mar. 28, 2008) (finding that stipulated protective order was sufficient to protect privacy interests of third party customers).

Additionally, the Court may issue a decision governing communications with claimants, and this will provide further protection for the claimant information. If the Court believes an order governing the parties' communications with the claimants is necessary, Relator urges that any such order should (a) apply with equal force to all parties, (b) use the "opt-out" procedure this Court adopted in the related *United States ex. rel. Loughren v. UnumProvident Corp.*, litigation, and (c) use the version of the letter suggested by Relator in her Opposition to Defendants' Motion for Protective Order Governing Claimant Contact (Docket. No. 99) because it is more even-handed and factually accurate than the letter proposed by Defendants. Of course, Relator will scrupulously adhere to any such Order the Court enters.

## III. Relator's Motion Is Not Premature

Defendants urge the Court to postpone a ruling on Relator's motion until after Relator has selected a sample and Defendants have reviewed that sample to determine which, if any, claims files in that sample present statutory confidentiality concerns. As explained above, however, Relator is entitled to identification for all claimants – and certainly of all claimants not covered by the seven specific and narrow statutes in question. Thus, the specific files Relator selects for her sample are not dispositive of this motion.

7

In any event, Defendants' proposal will just lead to unnecessary delay. There is no reason to put this ruling off pending Relator's selection of a sample and Defendants' painstaking review of that sample to determine whether they believe they implicate specific statutes. The Court should rule now that Relator is entitled to identification information (subject to the Confidentiality Order) so that Defendants can produce the sample claims files without the need for an exhaustive and dilatory review.

## IV. Defendants' Opposition Mischaracterizes the Nature of the Case and the Discovery to Date

The first nine pages of Defendants' opposition appears to be nothing more than a transparent effort to influence the Court's view of the case as a whole. While largely irrelevant to the motion before the Court, Defendants' "Background" section includes serious misstatements that Relator must address briefly:

- This case is not an "exceedingly novel" false claims suit. To the contrary, it is a straightforward fraud case that has already withstood Defendants' motion to dismiss. (*See* Order, Oct. 10, 2006, Docket. No. 63 (denying motion to dismiss because "relator pleads facts that state a claim under the False Claims Act").) In brief, Relator alleges that Defendants have knowingly caused ineligible claimants to submit false or fraudulent applications for SSDI. *See* 31 U.S.C. § 3729(a)(1) (making liable any individual that "knowingly presents, or causes to be presented . . . a false or fraudulent claim for payment or approval").

- It is incorrect that Relator asserts that Defendants cause "false claims" even though the claimants SSDI applications are "completely accurate." To the

8

contrary, Defendants require certain claimants to certify that they are disabled *within the meaning of the SSDI statute,* even though Defendants know such claimants cannot qualify under the SSDI standard, *which is far more stringent than the LTD standard Defendants themselves apply to LTD applications*.

- This is not a case about "coordination of benefits." It is a case about applying for SSDI when Defendants knew or should have known that the claimants had no legitimate basis to do so.

- Defendants' assertion that SSA has "known for years" of the practices at issue in this case is simply not true. The internal SSA document Defendants cite gives no indication SSA knew that Defendants require claimants to apply when they know they are not eligible for SSDI. In any event, the question whether SSA "knew" about Defendants' practices is simply not relevant to the issue before this Court: whether Defendants must comply with a valid request for production of documents in discovery. Issues about the materiality of Defendants' conduct and whether Defendants possessed the requisite scienter to violate the False Claims Act will be addressed in dispositive motion papers at the close of discovery.[4]

---

[4] Defendants made essentially these same arguments in their motions to dismiss and their motion to bifurcate discovery. These motions were denied on the basis that there was sufficient basis to determine that a claim under the False Claims Act has been stated to allow for discovery. Judge Saris has made the same determination in the *United States ex. rel. Loughren v. UnumProvident Corp.*, Case No. 03-11699-PBS. That case is set for trial in September 2008 and it is likely that Unum may also attempt to argue that
*(Footnote continued)*

- Defendants are just wrong that Relator requested one "random sample" of 600 claims files and then "reversed course" and requested a different sample. The initial 600 claims files – which Defendants agreed to produce if Relator bore the cost of copying, which she did – were not a random sample at all. They were *all of the claims submitted* in two selected months. While this was useful discovery – which Defendants agreed to produce and which Relator paid for – it was never intended to be (and it indeed plainly was not) a random sample. Accordingly, Relator has made clear to Defendants that it will request a statistically-valid sample of claims files, and Defendants have agreed to produce those files. In any event, it is utterly incorrect that any of this reflects a "change in course" on Relator's part. The initial 600 claims files were useful discovery that Relator was happy to pay for, and was completely separate from Defendants' production of a truly random sample.

## V.   CONCLUSION

Relator's Motion for an Order Compelling Disclosure of Claimant Files and Information should be granted for the reasons set forth above and in Relator's Memorandum in Support of Her Motion for an Order Compelling Disclosure of Claimant Files and Information.

---

SSA "knew" about its fraud and that, therefore, it is legally excused from liability for its submission of tens of thousands of knowingly false claims.

Dated:  April 11, 2008                                    Respectfully submitted,


                                                     /s/ Carl. S. Nadler
                                                   Carl S. Nadler


| | |
|---|---|
| Mary Louise Cohen<br>Colette G.  Matzzie<br>PHILLIPS AND COHEN LLP<br>2000 Massachusetts Ave., NW<br>Washington, DC 20036<br>Tel: (202) 833-4567<br>Fax: (202) 833-1815<br><br>Carl S. Nadler<br>Stuart M. Rennert<br>HELLER EHRMAN LLP<br>1717 Rhode Island Avenue, NW<br>Washington, DC 20036<br>Tel: (202) 912-2000<br>Fax: (202) 912-2020 | Peter B.  Krupp, B.B.O.  #548112<br>LURIE & KRUPP, LLP<br>One McKinley Square<br>Boston, MA 02109<br>Tel: (617) 367-1970<br>Fax: (617) 367-1971<br><br><br><br><br><br><br><br><br>*Counsel for Dawn Barrett* |

## **CERTIFICATE OF SERVICE**

       I, Carl S. Nadler, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on April 11, 2008.

                                        /s/ Carl S. Nadler
                                        Carl S. Nadler