UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| UNITED STATES OF AMERICA *EX REL.* DAWN BARRETT, <br><br> Plaintiff, <br> v. <br><br> CIGNA CORPORATION and LIFE INSURANCE COMPANY OF NORTH AMERICA, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 03-12382-MLW <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

### DEFENDANTS' OPPOSITION TO SSA'S MOTION TO QUASH DEFENDANTS' RULE 30(b)(6) DEPOSITION NOTICE AND RULE 45 SUBPOENA

This case is a *qui tam* action filed by a relator in the name of the United States of America. In consequence, the real party in interest is the United States, and, more particularly, the Social Security Administration ("SSA"). If Relator prevails, according to her theory of damages, the SSA will recover hundreds of millions of dollars. Defendants have served the SSA with a Rule 45 subpoena properly seeking deposition testimony that is directly relevant to their defense. In fact, some of the requested testimony may well be dispositive: testimony relating to whether the SSA has long known about, and voiced no objection to, the Defendants' allegedly "fraudulent" practices may negate scienter as a matter of law and require judgment for the Defendants. Ironically, in an action where the Defendants are accused of defrauding the SSA, the SSA is refusing to testify about whether it was defrauded by the Defendants, asserting that this is simply an action between private litigants. Clearly, it is not.

The sole basis for the SSA's motion to quash is its *Touhy* regulations, which, the SSA argues, trump the Federal Rules of Civil Procedure. Asserting sovereign immunity, the SSA maintains that none of its employees may testify pursuant to a Rule 45 subpoena unless the SSA authorizes them to do so and the SSA has declined authorization here. The SSA's motion should be denied because its *Touhy* regulations do not apply when SSA is, in fact, the real party in interest. Even if SSA's *Touhy* regulations did apply, they would not authorize SSA to withhold information sought pursuant to a valid federal court subpoena. Finally, even if the SSA were correct that its *Touhy* denial letter must be reviewed under the standard articulated in the Administrative Procedures Act, the SSA's motion should still be denied because its refusal to provide critical, and potentially dispositive, testimony is arbitrary and capricious.

## BACKGROUND

The underlying *qui tam* case is one of first impression. Relator maintains that CIGNA,[1] acting through its disability insurance subsidiaries, may be held liable when a claimant seeking long-term disability ("LTD") insurance benefits under a CIGNA policy files a completely truthful application for Social Security Disability Insurance benefits ("SSDIB"). Specifically, Relator has alleged that CIGNA violates the False Claims Act by causing LTD claimants who purportedly "cannot possibly be eligible" for SSDIB to apply for such benefits. Second Am. Complaint, ¶ 6. Relator maintains that before CIGNA may direct claimants to apply for SSDIB,

---

[1] Defendant CIGNA Corporation is a holding company that does not issue insurance. It has three disability insurance subsidiaries: defendant Life Insurance Company of North America, Connecticut General Life Insurance Company, and CIGNA Life Insurance Company of New York. These subsidiaries are collectively referred to herein as "CIGNA."

it must make a "good faith assessment" that they will likely qualify, id. ¶ 7, even though no such requirement appears in the Social Security Act or in any SSA regulation or guidance.[2]

Relator asserts that CIGNA causes its LTD claimants to file "false" applications for SSDIB by requiring those who it supposedly knows or should know are ineligible for SSDIB to apply anyway. Id. ¶ 67. Relator alleges that CIGNA enforces this requirement through the coordination-of-benefits provision in its policies, which allows CIGNA to deduct SSDIB received by a claimant from the claimant's LTD benefits. Id. ¶¶ 63, 65. Specifically, Relator challenges the estimated-SSDIB-offset provision in CIGNA's policies. If a claimant is asked to apply for SSDIB but refuses, this provision allows CIGNA to deduct from the claimant's LTD benefits the amount of SSDIB which it estimates the claimant would receive if he/she applied. Id. ¶¶ 64, 66.[3] Relator maintains that enforcement of the offset "leaves most insureds with no option other than to file false or fraudulent claims with the Government." Id. ¶ 123.

---

[2] Relator concedes that the Defendants *do* pre-screen LTD claimants before referring them to outside vendors to assist them with applying for SSDIB. Specifically, she concedes that, under CIGNA's referral guidelines, claimants are not referred to Social Security assistance vendors if any of the following apply: (a) their diagnosis is a simple pregnancy, (b) they are able to work part-time and earn at least $800/month, (c) they have a firm return-to-work date within nine months, (d) there are outstanding issues concerning their LTD eligibility or CIGNA is investigating whether they may be ineligible due to a pre-existing condition limitation, or (e) they want to pursue their SSDIB claims on their own or through representatives outside CIGNA's approved network of Social Security assistance vendors. See Relator's Supp. Responses to Interrogs., No. 6 (copy attached to Wichers Aff. as Exhibit A). Relator contends that this pre-screening is legally deficient. She does not, however, explain what procedures her proposed (but not currently legally required) "good faith assessment" would involve or the standards against which it would be measured.

[3] Courts have uniformly upheld coordination-of-benefits provisions in disability insurance policies, including the enforcement mechanism allowing the insurer to deduct estimated SSDIB if the claimant refuses to apply. See, e.g., See, e.g., Lopez v. Commonwealth Oil Co., 833 F. Supp. 86, 89 (D.P.R. 1993) (holding that SSDI offset provision in a CIGNA policy did not violate ERISA), aff'd per curiam, 29 F.3d 619 (1st Cir. 1994); Lamb v. Conn. Gen. Life Ins. Co., 643 F.2d 108, 112 (3d Cir. 1981) (holding that SSDI offset provision in a CIGNA policy did not violate the Social Security Act); Cody v. Conn. Gen. Life Ins. Co., 387 Mass. 142, 151 (1982) (holding that SSDI offset provision in a CIGNA policy was properly enforced because the policy was neither misleading nor without substantial economic value, and stating: "[C]oordination-of-benefits clauses serve the public purpose of avoiding duplicate recoveries for the same injuries. These clauses enable insurance companies to charge lower premiums."); Baxter v. Briar Cliff College Group Ins. Plan, 409 F. Supp. 2d 1108, 1127 (N.D. Iowa 2006) (holding that estimated SSDIB offset provision did not violate ERISA); Gardner v. Bear Creek Corp., 2007 WL 2318969, at *19 (N.D. Cal. 2007) (rejecting plaintiff's challenge to CIGNA's offset for estimated SSDIB).

Scienter is an element of a False Claims Act case. See 31 U.S.C. § 3729(a)(1), (2). To establish scienter, Relator must prove that (a) CIGNA has actual knowledge that information in some of the SSDIB applications that it supposedly causes its LTD claimants to file is false; or (b) it acts in deliberate ignorance of the truth or falsity of the information; or (c) it acts in reckless disregard of the truth or falsity of the information. See id. § 3729(b). Importantly, although the First Circuit has never addressed the issue, a majority of the Circuits have held that "prior government knowledge of an allegedly false claim can negate the scienter required for an FCA violation." U.S. ex rel. Becker v. Westinghouse Savannah River Co., 305 F.3d 284, 289 (4th Cir. 2002); accord U.S. ex rel. Kreindler & Kreindler v. United Techs. Corp., 985 F.2d 1148, 1157 (2d Cir. 1993); U.S. v. Southland Mgmt. Corp., 288 F.3d 665, 686 (5th Cir. 2002); U.S. ex rel. Durcholz v. FKW Inc., 189 F.3d 542, 545 (7th Cir. 1999); U.S. ex. rel. Costner v. U.S., 317 F.3d 883, 887-88 (8th Cir. 2003); U.S. ex rel. Hagood v. Sonoma County Water Agency, 929 F.2d 1416, 1421 (9th Cir. 1991); Shaw v. AAA Eng'g & Drafting, Inc., 213 F.3d 519, 534 (10th Cir. 2000). The only judge within the District of Massachusetts to examine the issue has also acknowledged this doctrine. See In re Pharma. Indus. Average Wholesale Price Litig., 478 F. Supp. 2d 163, 174 (D. Mass. 2007) (Saris, J.) (acknowledging the government knowledge defense, but denying motion to dismiss because the government asserted it lacked knowledge of the alleged fraud); accord, e.g., U.S. ex rel. Watson v. Conn. Gen. Life Ins. Co., 2003 WL 303142, at *8 (E.D. Pa. 2003), aff'd, 87 Fed. Appx. 257, 2004 WL 234970 (3d Cir. 2004).

**PROCEDURAL HISTORY**

The Defendants have been seeking evidence from the SSA since March of last year concerning SSA's knowledge of the practices of the disability insurance industry, and, in particular, CIGNA, in enforcing coordination-of-benefits provisions in LTD policies. At that

time, Defendants served the SSA with a subpoena for documents and testimony pursuant to Federal Rules of Civil Procedure 30(b)(6) and 45. See Wichers Aff., Ex. B. Defendants also sent a letter to the SSA's *Touhy* officer pursuant to 20 C.F.R. § 403.120 requesting testimony by one or more SSA employees. See id., Ex. C.

The SSA objected to the document request. The Defendants compromised and negotiated with the SSA to come up with a narrower list of documents. (Contrary to SSA's representation, see Mot. to Quash at 9, the SSA did *not* produce all the documents requested by Defendants.) The SSA subsequently produced 902 pages of documents. None of those documents, however, squarely addresses the issues on which the Defendants seek SSA testimony, including the key issue relevant to Defendants' scienter defense: whether the SSA has long known that CIGNA (and many if not most other private disability insurers) encourages claimants to apply for SSDIB and deducts estimated SSDIB if they refuse, without conducting what Relator describes as a "good faith assessment" of eligibility.

The SSA similarly denied the Defendants' request for testimony. The SSA took the position that "it would not be in the Agency's best interest to permit the requested testimony" for the same reasons it raises now. Wichers Aff., Ex. D. In discussions with the SSA, Defendants reserved their right to contest the SSA's denial of their request for testimony at a later time, in exchange for which the SSA agreed not to object to such later contest on timeliness grounds.

On February 26, 2008, Defendants served a new subpoena on the SSA's Boston office, requesting, pursuant to Rule 30(b)(6), oral examination of the SSA on March 10, 2008. See Exhibit A attached to SSA's motion. The subpoena lists ten narrowly tailored subjects of inquiry, including SSA's awareness of the practices that Relator contends constitute fraud. See id. After SSA sent Defendants a letter stating it might move to quash the subpoena, see Exhibit

5

B attached to SSA's motion, Defendants sought to negotiate with the SSA, to no avail. More than a month after being served with the subpoena, the SSA sent the Defendants another *Touhy* denial letter, see Exhibit C attached to SSA's motion, and moved to quash.

Recently, Defendants independently discovered SSDI-related documents concerning a group called DISSATAG (Disability Insurance Social Security Administration Technical Advisory Group), whose membership consists of representatives from SSA and representatives from numerous disability insurers, including CIGNA. The documents indicate that, since 2002, DISSATAG members have been working together to find ways to improve the transmission of data on SSDI beneficiary benefit status from the SSA to private disability insurers so that SSDI and LTD benefits can be better coordinated. On March 18, 2008, Defendants wrote to the Assistant U.S. Attorney representing SSA, alerting him to the DISSATAG documents. See Wichers Aff., Ex. E. They expressed their belief that the documents they had found were responsive to their March 2007 subpoena *duces tecum*, and requested any similar documents within the possession of the SSA. See id. Enclosed with the letter was an outline detailing all the information the Defendants were able to compile based on their review of the DISSATAG-related documents they had discovered, including the names of fourteen current or former employees of the SSA who were or are involved with DISSATAG. Id. Defendants believe that one or more of these fourteen employees are likely to have knowledge or information concerning most, if not all, of the ten subject areas on which Defendants seek the SSA's 30(b)(6) deposition testimony.

## ARGUMENT

1. **The SSA's *Touhy* Regulations Do Not Apply Because the SSA Is a Party to This *Qui Tam* Action.**

The sole basis for the SSA's motion to quash is its *Touhy* regulations, found in 20 C.F.R. Part 403. These regulations were promulgated under the Federal Housekeeping Act, which expressly "does not authorize withholding information from the public or limiting the availability of records to the public." 5 U.S.C. § 301. Because the SSA is a party to this lawsuit, the SSA's *Touhy* regulations do not apply. See 20 C.F.R. § 403.115(b)(2) ("This part does not apply to requests for testimony …[i]n a legal proceeding to which SSA is a party ….").

The SSA maintains that it is "not a party to this action because it declined to intervene, pursuant to the *qui tam* provisions of the False Claims Act"; that this *qui tam* action is purely between "private litigants"; and that "SSA's interest … is not substantial." SSA's Mot. to Quash, at 4 n.2, 10. The SSA's position ignores reality. Relator filed this action in the name of and on behalf of the SSA. The SSA is the reported victim of the alleged fraud. The SSA will receive no less than 70% of any damages awarded in the case. See 31 U.S.C. § 3730(d)(2). In addition, the Relator cannot settle this action without first securing governmental permission. See id. § 3730(b)(1).

Even when the government declines to intervene in a *qui tam* action, it remains the real party in interest. See U.S. ex rel. Zissler v. Regents of Univ. of Minn., 154 F.3d 870, 872 (8th Cir. 1998). In the words of Judge Saris:

> As is well established, the FCA contemplates a direct link between the interest of the relator, who is always acting "in the name of the Government," and the government in every *qui tam* suit. See 31 U.S.C. § 3730(b)(1). Indeed, a Latin scholar might recognize the phrase "*qui tam*" as "an abbreviation for '*qui tam pro domino rege quam pro seipso*,' which literally means 'he who as much for the king as for himself.'" *United States ex rel. S. Prawer & Co. v. Fleet Bank of Maine*, 24 F.3d

7

> 320, 324 n.7 (1st Cir. 1994) (citations omitted); *see also United States ex rel. Rockefeller v. Westinghouse Elec Co.*, 274 F. Supp. 2d 10, 16 (D.D.C. 2003) ("The relator in a *qui tam* FCA action, while having a stake in the lawsuit, represents the interests of the United States"); *see United States ex rel. Zissler v. Regents of Univ. of Minn.,* 154 F.3d 870, 872 (8th Cir. 1998) ("Even in cases where the United States has declined to intervene, the structure of the *qui tam* procedure, the extensive benefit flowing to the government from any recovery, and the extensive power the government has to control the litigation have been held to weigh heavily for holding that it remains the real party in interest").

In re Pharma. Indus. Average Wholesale Price Litig., 498 F. Supp. 2d 389, 398 (D. Mass. 2007). Because the SSA controls this action and remains the real party in interest, its *Touhy* regulations do not apply to Defendants' deposition subpoena. See 20 C.F.R. § 403.115(b)(2). Therefore, SSA's motion to quash must be denied.

    2.    **Even If the SSA Were a Non-Party and Therefore Its *Touhy* Regulations Applied, They Cannot Trump the Federal Rules of Civil Procedure.**

In arguing that its *Touhy* regulations allow it to withhold relevant, even potentially dispositive, evidence from defendants who, according to Relator, are purportedly liable to SSA for hundreds of millions of dollars, SSA maintains that "[a] subpoena, which compels an officer of the United States to act, implicates the Government's sovereign immunity." Mot. to Quash at 6. In support of this position, the SSA relies on inapposite cases involving state-court subpoenas. See id. at 4-5 (citing Reynolds Metals Co. v. Crowther, 572 F. Supp. 288 (D. Mass. 1982); Boron Oil Co. v. Downie, 873 F.2d 67 (4th Cir. 1989); Louisiana v. Sparks, 978 F.2d 226 (5th Cir. 1992); In re Spittler, 831 F.2d 22 (1st Cir. 1987)). In contrast to subpoenas seeking testimony of a federal agency in a state-court action, when the requested testimony is for an action pending "[i]n federal court, the federal government has waived its sovereign immunity." Houston Bus. Journal, Inc. v. Office of the Comptroller of the Currency, U.S. Dep't of the Treasury, 86 F.3d 1208, 1212 (D.C. Cir. 1996). "[N]either the Federal Housekeeping Statute nor the *Touhy*

decision authorizes a federal agency to withhold documents from a federal court. To the extent that the [government]'s regulation may be to the contrary, it conflicts with Federal Rule of Civil Procedure 45 and exceeds the [government]'s authority under the Housekeeping Statute." Id.

The First Circuit is in agreement: "[T]he *Touhy* regulations are only procedural, and do not create a substantive entitlement to withhold information." Puerto Rico v. U.S., 490 F.3d 50, 62 (1st Cir. 2007). "[T]he regulations provide guidance for the internal operations of the agency, but do not create a substantive defense to disclosure." Id. at 61 (internal quotation omitted); accord, e.g., Exxon Shipping Co. v. U.S. Dep't of Interior, 34 F.3d 774, 777 (9th Cir. 1994) (the Housekeeping Act "does not, by its own force, authorize federal agency heads to withhold evidence sought under a valid federal court subpoena."); id. at 778 n.6 ("Every commentator we are aware of who has addressed the issue has reached the same conclusion.") (citing WRIGHT & MILLER and three law review articles); Secs. & Exch. Comm'n v. Selden, 484 F. Supp. 2d 105, 107 (D.D.C. 2007) ("*Touhy* in no way stands for the proposition that agency regulations alter the procedures set forth in the Federal Rules of Civil Procedure or that agency regulations can preclude the production of documents 'that are relevant to a judicial proceeding'") (quoting U.S. ex rel. Touhy v. Ragen, 340 U.S. 462, 472 (1951) (Frankfurter, J., concurring)); id. at 108 ("To the extent that the [federal agency]'s regulations prohibit that which the Federal Rules expressly permit, (*i.e.*, discovery *ad testificatum* of a government agency), those regulations fail.").[4] Simply stated, if information is sought from a federal agency and "the court decides that it is appropriate to compel disclosure of the information," the agency cannot refuse to produce the

---

[4] The SSA attempts to distinguish Selden on the grounds that the government was a party to that action. See Mot. to Quash at 4 n.2. But that argument is illogical. If the SSA were a party to this action (which Defendants maintain is in fact the case), the SSA's *Touhy* regulations would not even apply. See *supra* Section 1.

information by hiding behind the Federal Housekeeping Act. U.S. v. Salemme, 978 F. Supp. 364, 371 (D. Mass. 1997) (Wolf, J.). As noted by the Ninth Circuit:

> … [U]nder the government's argument, sovereign immunity would authorize the executive branch to make conclusive determinations on whether federal employees may comply with a valid federal court subpoena. Such a broad definition would raise serious separation of powers questions. As the Supreme Court has said, "judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers."

Exxon Shipping, 34 F.3d at 778 (quoting U.S. v. Reynolds, 345 U.S. 1, 9-10 (1953)).

While Defendants do not dispute the legitimacy of the SSA's *Touhy* regulations insofar as they "provide guidance for the internal operations of the agency," Puerto Rico, 490 F.3d at 61, *i.e.*, guidance for the SSA's internal decision-making when responding to a subpoena, the regulations do not give the SSA a blanket right or privilege entitling it to withhold testimony in response to a Rule 45 subpoena. Instead, now that SSA has objected to Defendants' subpoena as its *Touhy* regulations permit it to do, it is up to the Court to apply "the federal rules of discovery" to decide whether to enforce Defendants' subpoena. Exxon Shipping, 34 F.3d at 777. The Federal Rules of Civil Procedure offer sufficient protection for any federal agency subpoenaed in a federal action. For example, the Rules "give ample discretion to district courts to quash or modify subpoenas causing 'undue burden.' The Federal Rules also afford nonparties special protection against the time and expense of complying with subpoenas." Id. at 779 (citing Rules 26(c) and 45(c)(3)). Under the Federal Rules, this Court must weigh SSA's interests supporting its refusal to testify against Defendants' "need for the information." In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig., __ F. Supp. 2d __, 2008 WL 859207, at *3 (D. Mass. Mar. 31, 2008) (Wolf, J.) (explaining the balancing test a court must undertake when deciding a challenge to a Rule 45 subpoena).

3.  **The SSA's Motion Should Be Denied Because the Critical, and Potentially Dispositive, Nature of the Requested Testimony Outweighs Any Alleged Burden to the SSA.**

The SSA has identified four reasons why it ought not be required to provide the 30(b)(6) testimony requested by the Defendants: "(1) the request is unduly burdensome, (2) the defendants seek information that is available by means other than the sworn testimony of SSA employees, (3) the request runs counter to the defendants' previous representations to SSA, and (4) the request does not serve SSA's interests." Mot. to Quash at 8. The SSA concedes that none of the areas of inquiry identified by the Defendants except for No. 6(b) "pose[s] a significant risk of violation of law or compromise of a Government privilege." Id.[5] The SSA's four arguments will be examined in turn.

The SSA's first argument is that the subpoena is unduly burdensome. Specifically, SSA maintains that "[t]he sheer breadth of the subject matters of inquiry would require the testimony of several SSA employees from day to day until the deposition is completed. The defendants are asking SSA to surrender an unknown number of employees to testify for an unknown period of time …." Id. This contention is meritless. The ten categories of testimony are narrowly tailored and focused on critical aspects of the defense. They relate to the following subjects: (a) public disclosures of allegations upon which this action is based; (b) SSDI award statistics that should be readily available to the SSA; (c) whether the SSA requires SSDI applicants to disclose that they may also be eligible for disability benefits from CIGNA; (d) what information CIGNA is required to disclose to the SSA about its LTD claimants; (e) the SSA's awareness of whether CIGNA requires or encourages claimants to apply for SSDIB; and (f) the SSA's awareness of whether CIGNA deducts received and/or estimated SSDIB from the LTD benefits it awards.

---

[5] Area of inquiry No. 6(b) is: "[U]nder what circumstances the SSA will take action in response to" acts or omissions that constitute the filing of a false or fraudulent claim for SSDIB. See Ex. A attached to Motion to Quash.

11

Testimony that falls under topics (a), (e), and (f) is not only critical but potentially dispositive. Regarding topic (a), if SSA testimony shows that this action is based upon allegations or transactions that were publicly disclosed before Relator sued, including in any SSA administrative hearing, report, or audit, the Court likely will lack subject matter jurisdiction and the case will have to be dismissed. See 31 U.S.C. § 3730(e)(4). Regarding topics (e) and (f), if SSA testimony shows that the SSA has long known about and accepted CIGNA's practice of causing LTD claimants to apply for SSDIB through the enforcement of the estimated-SSDIB-offset provision in its policies, and regardless of whether it makes a "good faith assessment" of likely eligibility, then scienter will be negated as a matter of law and judgment for the Defendants will be required.

SSA's other claims of undue burden are similarly without merit. The length of the deposition is not "unknown," and it would not go on "from day to day." Mot. to Quash at 8. A deposition, including a 30(b)(6) deposition of a federal agency, is limited to "1 day of 7 hours" under the Federal Rules. Fed. R. Civ. P. 30(d). Moreover, the Defendants have tried to help the SSA locate the employees most likely to have knowledge about the areas of inquiry Defendants have identified (i.e., the individuals involved in DISSATAG) by providing SSA with the names of fourteen current or former SSA employees who Defendants believe participated in DISSATAG, as well as detailed facts about the time and place of DISSATAG meetings. See Wichers Aff., Ex. E.

The SSA's second argument against enforcement of the subpoena is that "the defendants seek information that is available by means other than the sworn testimony of SSA employees." Mot. to Quash at 8. The only other means SSA has identified is the 902 pages of documents which it has produced. However, SSA has not identified what specific documents it is referring

to. See id. at 9 (stating that the SSA has produced unidentified "documents" relating to deposition subject areas 2, 7, 8, and 9, and stating that information relating to subject areas 4 and 6 is contained in an unidentified "paper"). In any event, testimony on the subjects identified will elucidate these issues and could potentially provide testimony dispositive of Relator's claims.

The SSA's third reason for objecting is that "the request runs counter to the defendants' previous representations to SSA." Mot. to Quash at 8. The SSA, however, has not identified Defendants' allegedly inconsistent prior representations. In any event, SSA's claim is untrue. Not only have the Defendants been consistent, they have unsuccessfully tried to negotiate with the SSA to possibly narrow the scope of the requested testimony. See "Procedural History," *supra*. More important, SSA's contention is an improper basis for an objection to a Rule 45 subpoena. See In re Bextra & Celebrex Litig., 2008 WL 859207, at *3 (explaining the balancing test a court must undertake when deciding a challenge to a Rule 45 subpoena).

The SSA's fourth and final reason for objecting to the subpoena is that "the request does not serve SSA's interests." Mot. to Quash at 8. If not serving the government's interests were a proper basis for refusing to testify, a Rule 45 subpoena directed to a government agency would be virtually ineffectual because it would be enforceable only if it benefited the subpoenaed agency and only if the agency consented to its enforcement. It is inconceivable that such a result could have been intended by either Rule 45, the Federal Housekeeping Act, or the Supreme Court in its *Touhy* decision. Moreover, SSA's suggestion that "the requested testimony is not required to prevent [SSDI] fraud" and that "SSA has its own regulations and procedures to deal with fraud" misses the point. Mot. to Quash at 10. The requested testimony is needed so that CIGNA can mount a defense to what it maintains is a meritless case alleging fraud on the SSA.

If SSA agrees the case is meritless and unnecessary to its efforts to fight SSDI fraud, it should move to dismiss the case pursuant to 31 U.S.C. § 3730(c)(2)(A).

Moreover, the SSA's claim that it "neither initiated nor consented to this litigation," Mot. to Quash at 10, misses the point. The SSA has permitted this litigation to continue in its name and for its benefit. To date it has declined to exercise its absolute and "'unfettered right to dismiss.'" U.S. ex rel. Hoyte v. Am. Nat'l Red Cross, 518 F.3d 61, 65 (D.C. Cir. 2008) (quoting Swift v. U.S., 318 F.3d 250, 252 (D.C. Cir. 2003)). "The Government may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion." 31 U.S.C. § 3730(c)(2)(A). As recently stated by the D.C. Circuit: "[T]he language of section 3730(c)(2)(A) ... grants to 'the Government' (not the court) unilateral authority to 'dismiss the action notwithstanding the objections of the person initiating the action.'" Hoyte, 518 F.3d at 65 (quoting Swift, 318 F.3d at 252). If the SSA does not believe this litigation is sufficiently important that its employees can legitimately be asked to provide relevant testimony, it should move to dismiss it.

Finally, even if SSA were correct that the Federal Rules of Civil Procedure do not apply to its *Touhy* denial letter and that its decision may be reviewed only under the Administrative Procedures Act, the result would be the same. See Mot. to Quash at 7. Under the APA, a district court must order a federal agency to comply with a valid Rule 45 subpoena if the agency's *Touhy* denial was "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" Puerto Rico v. U.S., 490 F.3d 50, 61 (1st Cir. 2007) (quoting 5 U.S.C. § 706(2)(A)). The SSA's decision was arbitrary, capricious, and an abuse of discretion for all the reasons stated

14

above.[6] CIGNA is accused of defrauding the SSA, and if the Relator is successful in her assertions, the SSA will receive no less than 70% of any damages awarded. Under such circumstances, CIGNA is certainly entitled to discover whether the SSA – the real party in interest – was defrauded as alleged. When an action "does not involve a private litigant intent on burdening the federal government through his own choosing," but instead the party pursuing discovery from the government "seeks information to mount a defense from a government-initiated action, ... 'judicial control over the evidence ... cannot be abdicated to the caprice of executive officers.'" Secs. & Exch. Comm'n v. Selden, 484 F. Supp. 2d 105, 109 (D.D.C. 2007) (denying government's motion to quash defendant's deposition subpoena) (quoting U.S. v. Reynolds, 345 U.S. 1, 9-10 (1953)).

## CONCLUSION

For the foregoing reasons, the Defendants respectfully request that the SSA's Motion to Quash be denied.

---

[6] If the Court determines that the appropriate standard of review is under the APA, the Court may apply that standard in this action and rule on SSA's motion. Contrary to SSA's position, see Mot. to Quash at 7, it is not necessary for CIGNA to file a separate lawsuit against the SSA. See U.S. Envtl. Prot. Agency v. Gen. Elec. Co., 197 F.3d 592, 599 (2d Cir. 1999) ("the APA allows the enforcement of a non-party subpoena ... for discovery against the government through a motion to compel compliance"; the subpoenaing party need not file "an independent, self-sufficient, legal proceeding" against the government); accord, e.g., Exxon Shipping Co. v. U.S. Dep't of Interior, 34 F.3d 774, 780 n.11 (9th Cir. 1994).

Respectfully submitted,

CIGNA CORPORATION and LIFE INSURANCE COMPANY OF NORTH AMERICA

By their attorneys,

/s/ *Christine J. Wichers*
Mitchell H. Kaplan (BBO# 258940)
mkaplan@choate.com
R. J. Cinquegrana, (BBO # 084100)
rjcinquegrana@choate.com
Christine J. Wichers (BBO #631857)
cwichers@choate.com
Richard C. Abati (BBO # 651037)
rabati@choate.com
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
(617) 248-5000

Dated: April 16, 2008

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 16, 2008, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and copies will be sent via e-mail and by hand to Assistant U.S. Attorney Jeffrey M. Cohen, counsel for the Social Security Administration.

                                                  */s/ Christine J. Wichers*
                                                  Christine J. Wichers

4321856v1