# EXHIBIT B

# CHOATE

CHOATE HALL & STEWART LLP

Karen Collari Troake
(617) 248-5192
ktroake@choate.com

**BY HAND**

March 20, 2007

Jeffrey M. Cohen, Esq.
Assistant U.S. Attorney
Office of the U.S. Attorney
John J. Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA  02110

Re:     *United States of America, ex rel., Dawn Barrett v. CIGNA Corporation, et al.*,
        Civil Action No. 03-12382-MLW (D. Mass.)

Dear AUSA Cohen:

Further to our recent discussions, please find enclosed the original and one copy of the
following documents:

1.      Rule 30(b)(6) and 45 Subpoena directed at the Social Security Administration (the
        "SSA") (including exhibits); and

2.      A letter directed at the SSA pursuant to 20 C.F.R. § 403.120 requesting testimony of an
        SSA employee or SSA employees.

You agreed to accept service of the subpoena on behalf of the SSA.  Additionally, and as noted
in the subpoena, we agreed that the SSA will have thirty (30) days to provide any written
objections to the subpoena.  We also reiterate our request that the SSA provide as many
responsive documents as possible within that timeframe.

Thank you for your attention to this matter.  Please contact me should you have any questions.

Sincerely,

Karen Collari Troake

Two International Place I Boston MA 02110 I t 617-248-5000 I f 617-248-4000 I choate.com

Jeffrey M. Cohen, Esq.
March 20, 2007
Page 2


Enclosures
cc:     R. J. Cinquegrana, Esq.
        Kit A. Pierson, Esq.
        Peter B. Krupp, Esq.
        Colette G. Matzzie, Esq.

        *(All w/encs.)*

**Issued by the**
**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

UNITED STATES OF AMERICA ex rel. DAWN BARRETT,

           Plaintiff,

           v.

CIGNA CORPORATION and LIFE INSURANCE COMPANY OF NORTH AMERICA,

           Defendants.

**SUBPOENA IN A CIVIL CASE**

*CASE NUMBER: 03 12382 MLW*
United States District Court for the District of Massachusetts

TO:    Social Security Administration
Office of the General Counsel, Office of General Law
PO Box 17779
Baltimore, MD  21235-7779

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | **DATE AND TIME** |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case with respect to the topics identified in the attached Schedule A.

| PLACE OF TESTIMONY | DATE AND TIME |
|---|---|
| Williams & Connolly LLP<br>725 12th Street, N.W.<br>Washington, D.C.  20005 | May 22, 2007<br>10:00 a.m. |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Schedule B

| PLACE | DATE AND TIME |
|---|---|
| Williams & Connolly LLP<br>725 12th Street, N.W.<br>Washington, D.C.  20005 | April 20, 2007<br>10:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]* <br> Karen Collari Troake, Attorney for Defendants | March 20, 2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Karen Collari Troake, Choate, Hall & Stewart, Two International Place, Boston, MA 02110; (617) 248-5000

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA *EX REL*. DAWN BARRETT, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 03-12382-MLW |
| v. | ) ) ) | |
| CIGNA CORPORATION and LIFE INSURANCE COMPANY OF NORTH AMERICA, | ) ) ) ) | |
| Defendants. | ) ) | |

## <u>NOTICE OF RULE 30(b)(6) DEPOSITION</u>

TO:  All Counsel of Record

PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) and Rule 45 of the Federal

Rules of Civil Procedure, the undersigned attorneys for Defendants CIGNA Corporation

("CIGNA") and Life Insurance Company of North America ("LINA") (collectively, the

"Defendants") will take the deposition upon oral examination of the Social Security

Administration (the "SSA"), recorded by stenographer, sound and/or video, beginning at 10:00

a.m. on May 22, 2007, at the offices of Williams & Connolly LLP, 725 12th Street N.W.,

Washington, D.C.  20005, or at such other place that may be mutually agreed upon by counsel.

Pursuant to Fed. R. Civ. P. Rule 30(b)(6), the SSA shall designate one or more officers,

directors, managing agents, or other persons with the most knowledge, and who consent to testify

on its behalf, with respect to each of the subjects set forth in the attached <u>Schedule A</u>.  The SSA

is requested to notify the Defendants as to the identity of each person who will testify for each subject on or before May 8, 2007.

The deposition will take place before an officer authorized to administer oaths and will continue from day to day until completed. You are invited to attend and cross-examine.

The Defendants have also served a subpoena upon the SSA requiring it to produce all documents and tangible things responsive to the categories listed in the attached Schedule B, on or before April 20, 2007, at the offices of Williams & Connolly, 725 12th Street, N.W., Washington D.C. 20005, or such other place that may be mutually agreed upon by counsel. Copies of the produced documents will be provided to you.

Respectfully Submitted,

CIGNA CORPORATION and
LIFE INSURANCE COMPANY
OF NORTH AMERICA

By their attorneys,

R. J. Cinquegrana (BBO # 084100)
Karen Collari Troake (BBO # 566922)
Richard A. Abati (BBO # 651037)
Andrew D. Ziegler (BBO # 660419)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Tel: 617-248-5000

Date:   March 20, 2007

2

## SCHEDULE A

## DEFINITIONS

For purposes of this request, the Defendants adopt the "Uniform Definitions in Discovery Requests" contained in the District of Massachusetts Local Rule 26.5. The following additional terms shall have the meanings set forth below:

1.    "You", "your" or "SSA" shall mean the Social Security Administration, and each of its divisions, subsidiaries, affiliates, predecessors, successors, assigns, and their officers, directors, employees, attorneys, other representatives, agents, or any other person or entity acting or purporting to act on their behalf.

2.    "CIGNA" shall mean CIGNA Corporation, the defendant herein, and each of its parent corporations, divisions, subsidiaries, affiliates, predecessors, successors, assigns, and their officers, directors, employees, attorneys, other representatives, agents, or any other person or entity acting or purporting to act on their behalf.

3.    "LINA" shall mean Life Insurance Company of North America, the defendant herein, and each of its parent corporations, divisions, subsidiaries, affiliates, predecessors, successors, assigns, and their officers, directors, employees, attorneys, other representatives, agents, or any other person or entity acting or purporting to act on their behalf.

4.    "Defendants" shall mean CIGNA and LINA.

5.    The "Complaint" shall mean the Second Amended Complaint filed by Relator Dawn Barrett against the Defendants in this action dated April 14, 2006. A true and accurate copy of the Complaint is annexed hereto as Exhibit A.

1

6.    The "GAO Report" shall mean the U.S. General Accounting Office, SSA Disability: Return-To-Work Strategies From Other Systems May Improve Federal Programs (July 1996). A true and accurate copy of the GAO Report is annexed hereto as Exhibit B.

7.    The "Verkuil Statement" shall mean the statement submitted by Professor Paul Verkuil to the Subcommittee on Social Security of the Committee on Ways and Means, House of Representatives, One Hundred-Seventh Congress, Second Session, June 11 and 20, Serial 107-86. A true and accurate copy of the Verkuil Statement is annexed hereto as Exhibit C.

8.    The "Research Paper" shall mean the research paper entitled, Alternative Approaches to Judicial Review of Social Security Disability Cases: A Report to the Social Security Advisory Board, Paul Verkuil & Jeffrey Lubbers, Research Paper No. 71, 2003. A true and accurate copy of the Research Paper is annexed hereto as Exhibit D.

9.    The "Subcommittee Letter" shall mean the letter from the Subcommittee on Social Security of the Committee on Ways and Means, House of Representatives, to the Commissioner of Social Security, dated June 17, 2004. A true and accurate copy of the Subcommittee Letter is annexed hereto as Exhibit E.

10.    The "Ethics Paper" shall mean the paper entitled The Ethics Hour: Responsibilities, Obligations and Expectations, Sarah L. Humphreys, Office of the General Counsel/Office of General Law, Social Security Administration, February 24-25, 2005. A true and accurate copy of the Ethics Paper is annexed hereto as Exhibit F.

11.    The "Ross Statement" shall mean the Prepared Statement by Jane Ross, Deputy Commissioner For Policy, Social Security Administration, "Disability Options in the Private Sector, Before the House Budget Committee, June 22, 1999. A true and accurate copy of the Ross Statement is annexed hereto as Exhibit G.

2

12.    The "Industry Presentations" shall mean the private disability insurance presentations to the Social Security Administration on or around February 19, 2002, May 20, 2002 and October 2, 2002. A true and accurate copy of the PowerPoint slides related to the February industry presentation are annexed hereto as Exhibit H.

3

## SUBJECT MATTERS OF INQUIRY

1.   The SSA's awareness of, views on and/or acknowledgement of, the practice of long term disability insurers of offsetting long term disability benefits to take account of Social Security Disability Insurance benefits.

2.   Any requests pursuant to the Freedom of Information Act regarding the SSA's awareness of, views on and/or acknowledgement of, the practice of long term disability insurers of offsetting long term disability benefits to take account of SS benefits.

3.   The GAO Report, Exhibit B hereto.

4.   The Verkuil Statement, Exhibit C hereto.

5.   The Research Paper, Exhibit D hereto.

6.   The Subcommittee Letter, Exhibit E hereto.

7.   The Ethics Paper, Exhibit F hereto.

8.   The Ross Statement, Exhibit G.

9.   The Industry Presentations, including, but not limited to the presentation referred to in Exhibit H.

10.  The submission of false or fraudulent claims for Social Security Disability Insurance benefits.

11.  The extent to which employees of the SSA are to rely or not rely on information contained in applications for Social Security Disability Insurance benefits, including but not limited to SSA Application Form (Form SSA-3368-BK).

12.  How applicants or others understand the term "unable to work" as used in the application form (the SSA Application Form (Form SSA-3368-BK)) for Social Security Disability Insurance benefits.

13.  The use of so-called social insurance riders in private disability insurance policies. (A "social insurance rider" is a term of a private insurance policy providing for the payment of a benefit to an insured if the insured is disabled under the terms of the private insurance policy, but denied Social Security Disability Insurance benefits.)

14.  Whether and under what circumstances an application for Social Security Disability Insurance benefits will be considered by the SSA to be false or fraudulent.

4

15.  The practices of private disability insurance carriers to cause or encourage their insureds to apply for Social Security Disability Insurance benefits.

16.  The percentage of claims for Social Security Disability Insurance benefits that are:

   a.  Granted solely on the basis of information supplied in an SSA Application Form (Form SSA-3368-BK);

   b.  Granted at the Initial Determination Stage without any hearing;

   c.  Granted at the Reconsideration Stage without any hearing;

   d.  Granted following hearing;

   e.  Granted following an appeal;

   f.  Granted following litigation;

   g.  Denied altogether.

17.  The ability of applicants to understand the directions for completing the applications for Social Security Disability Insurance benefits, including but not limited to SSA Application Form (Form SSA-3368-BK).

18.  The manner in which applicants apply for Social Security Disability Insurance benefits, including but not limited to, any statistics regarding the percentage of all applicants who apply in person.

19.  Studies or analyses of the prevalence or nature of fraud committed by applicants for Social Security Disability Insurance benefits.

20.  The SSA's interactions with Congress and its committees, including but not limited to its response to the Subcommittee Letter.

21.  Studies or analyses concerning the cost incurred by SSA to process each application for Social Security Disability Insurance benefits.

## SCHEDULE B

## DEFINITIONS

For purposes of these document requests, the Defendants adopt the "Uniform Definitions in Discovery Requests" contained in the District of Massachusetts Local Rule 26.5. The following additional terms shall have the meanings set forth below:

1.    "You", "your" or "SSA" shall mean the Social Security Administration, and each of its divisions, subsidiaries, affiliates, predecessors, successors, assigns, and their officers, directors, employees, attorneys, other representatives, agents, or any other person or entity acting or purporting to act on their behalf.

2.    "CIGNA" shall mean CIGNA Corporation, the defendant herein, and each of its parent corporations, divisions, subsidiaries, affiliates, predecessors, successors, assigns, and their officers, directors, employees, attorneys, other representatives, agents, or any other person or entity acting or purporting to act on their behalf.

3.    "LINA" shall mean Life Insurance Company of North America, the defendant herein, and each of its parent corporations, divisions, subsidiaries, affiliates, predecessors, successors, assigns, and their officers, directors, employees, attorneys, other representatives, agents, or any other person or entity acting or purporting to act on their behalf.

4.    "Defendants" shall mean CIGNA and LINA.

5.    The "Complaint" shall mean the Second Amended Complaint filed by Relator Dawn Barrett against the Defendants in this action dated April 14, 2006. A true and accurate copy of the Complaint is annexed hereto as Exhibit A.

1

6.    The "GAO Report" shall mean the U.S. General Accounting Office, SSA

Disability: Return-To-Work Strategies From Other Systems May Improve Federal Programs

(July 1996). A true and accurate copy of the GAO Report is annexed hereto as Exhibit B.

7.    The "Verkuil Statement" shall mean the statement submitted by Professor Paul

Verkuil to the Subcommittee on Social Security of the Committee on Ways and Means, House of

Representatives, One Hundred-Seventh Congress, Second Session, June 11 and 20, Serial 107-

86. A true and accurate copy of the Verkuil Statement is annexed hereto as Exhibit C.

8.    The "Research Paper" shall mean the research paper entitled, Alternative

Approaches to Judicial Review of Social Security Disability Cases: A Report to the Social

Security Advisory Board, Paul Verkuil & Jeffrey Lubbers, Research Paper No. 71, 2003. A true

and accurate copy of the Research Paper is annexed hereto as Exhibit D.

9.    The "Subcommittee Letter" shall mean the letter from the Subcommittee on

Social Security of the Committee on Ways and Means, House of Representatives, to the

Commissioner of Social Security, dated June 17, 2004. A true and accurate copy of the

Subcommittee Letter is annexed hereto as Exhibit E.

10.    The "Ethics Paper" shall mean the paper entitled The Ethics Hour:

Responsibilities, Obligations and Expectations, Sarah L. Humphreys, Office of the General

Counsel/Office of General Law, Social Security Administration, February 24-25, 2005. A true

and accurate copy of the Ethics Paper is annexed hereto as Exhibit F.

11.    The "Ross Statement" shall mean the Prepared Statement by Jane Ross, Deputy

Commissioner For Policy, Social Security Administration, "Disability Options in the Private

Sector, Before the House Budget Committee, June 22, 1999. A true and accurate copy of the

Ross Statement is annexed hereto as Exhibit G.

2

12.    The "Industry Presentations" shall mean the private disability insurance presentations to the Social Security Administration on or around February 19, 2002, May 20, 2002 and October 2, 2002.  A true and accurate copy of the PowerPoint slides related to the February industry presentation are annexed hereto as Exhibit H.

3

## INSTRUCTIONS

1.      These requests are continuing in nature; thus, your responses must be supplemented and modified as required by the Federal Rules of Civil Procedure.

2.      Use of the singular form shall be deemed to include the plural and *vice versa*. Use of either the masculine or feminine pronoun, except when referring to a named person, shall be deemed to include both genders. "And" and "or" shall be construed either disjunctively or conjunctively so as to permit the broadest scope possible.

3.      The documents or communications which are within the scope of these requests are those in your possession, custody or control, including any documents in the possession of your parent corporation, divisions, subsidiaries, affiliates, predecessors, successors, assigns, and their officers, directors, employees, independent contractors, representatives, agents, attorneys, or any other person or entity acting or purporting to act on their behalf.

4.      If any document called for by this request was at any time, but is not presently, in your possession, custody or control, you are requested to identify each such document and to state to the extent known with respect to each document:

   (a)  the type of document (e.g., letter, memorandum, contract, etc.),

   (b)  the date of the document, if known;

   (c)  the title of the document;

   (d)  the name, address and position of the author of the document and of any person who assisted in its preparation;

   (e)  the name, address and position of each addressee or recipient of the document or any copies of it;

   (f)  the general subject matter of the document;

4

(g)     the present location and custodian of the document, to the extent known; and

(h)     if the document no longer exists, the circumstances of its loss, misplacement or destruction.

5.     Documents to be produced include the originals of all documents, plus all drafts of any such documents and all copies of any requested documents, by whatever means made, which bear any marking or notation or differ in any way from the original.

6.     If any of the documents requested to be produced are available in machine readable form (such as disks, drums, punch cards, paper or magnetic tapes, or core storage), state the forms in which each such document is available and describe the type(s) of computer or other machinery required to read and record it.  If the information requested to be produced is stored in a computer, indicate whether you have an existing program that will print the records in a readable form, and identify the persons familiar with the program.  If a program does not exist, state whether you could develop one or whether an existing program could be modified to print the records in a readable form.

7.     If any document is withheld under a claim of privilege or on any other basis, please furnish a log or list describing each withheld document, together with the following information sufficient to test the claim of privilege or other basis for nonproduction:

(a)     the type of document (e.g., letter, memorandum, contract, etc.),

(b)     the date of the document, if known;

(c)     the title of the document;

(d)     the name, address and position of the author of the document and of any person who assisted in its preparation;

5

(e)     the name, address and position of each addressee or recipient of the document or any copies of it;

(f)     the general subject matter of the document; and

(g)     the factual and/or legal basis(es) for your claim of privilege or ground(s) for non-production asserted with respect to the document.

8.     If any request seeks a document that you contend is privileged in whole or in part, please produce all non-privileged documents or portions of documents sought by the request.

9.     If the response to any request consists in whole or in part of an objection relating to burdensomeness, with respect to each such response:

(a)     Provide such information as can be ascertained without undue burden;

(b)     State in detail the facts and reasoning on which the objection to providing any information is based, including:

(i)     A description of the process or method required to obtain any information not provided;

(ii)     The number of files and/or documents that would need to be searched;

(iii)     The number of employee hours required to conduct the search;

(iv)     The estimated cost of the search; and

(c)     State in detail whether the information not provided is available in other sources and, if so identify the other sources.

10.     Excluded from the scope of these requests are the following:

(a)     Documents that are found only in the files of individual claimants seeking benefits from the SSA.

6

4154953v3

    (b)      Documents that pertain to specific individual claimants; and

    (c)      Documents that can be downloaded from the public website maintained by

the SSA.

7

**SPECIFIC CATEGORIES OF DOCUMENTS TO BE
PRODUCED AND MADE AVAILABLE FOR INSPECTION**

1.      All documents concerning the public disclosure of the allegations or transactions

in the Complaint in any of the following forums:

        a.      Civil hearing;

        b.      Criminal hearing;

        c.      Administrative hearing;

        d.      Congressional report, hearing, audit or investigation;

        e.      Administrative report, hearing audit or investigation; or

        f.      Government Accounting Office (GAO) report, audit or
            investigation.

2.      All documents concerning CIGNA.

3.      All documents concerning LINA.

4.      All documents concerning the SSA's awareness of, views on and/or
acknowledgement of, the practice of long term disability insurers of offsetting
long term disability benefits to take account of Social Security Disability
Insurance benefits.

5.      All documents concerning the SSA's awareness of, views on, acknowledgement
of and/or weight given to the decision of long term disability insurers to either
award or deny benefits under their long term disability insurance policies.

6.      All documents concerning any requests pursuant to the Freedom of Information
Act regarding the SSA's awareness of, views on and/or acknowledgement of, the
practice of long term disability insurers of offsetting long term disability benefits
to take account of Social Security Disability Insurance benefits.

7.      All documents concerning the GAO Report, Exhibit B hereto.

8.      All documents concerning the Verkuil Statement, Exhibit C hereto.

9.      All documents concerning the Research Paper, Exhibit D hereto.

10.     All documents concerning the Subcommittee Letter, Exhibit E hereto.

11.     All documents concerning the Ethics Paper, Exhibit F hereto.

12.     All documents concerning the Ross Statement, Exhibit G hereto.

8

13.  All documents concerning the Industry Presentations, including, but not limited to documents similar or related to Exhibit H.

14.  All documents concerning the submission of false or fraudulent claims for Social Security Disability Insurance benefits.

15.  All documents concerning the extent to which employees of the SSA are to rely or not rely on information contained in applications for Social Security Disability Insurance benefits, including but not limited to SSA Application Form (Form SSA-3368-BK).

16.  All documents concerning how applicants or others understand the term "unable to work" as used in the application form (the SSA Application Form (Form SSA-3368-BK)) for Social Security Disability Insurance benefits.

17.  All documents concerning any ambiguities in the application (the SSA Application Form (Form SSA-3368-BK)) for Social Security Disability Insurance benefits.

18.  All documents concerning the use of so-called social insurance riders in private disability insurance policies. (A "social insurance rider" is a term of a private insurance policy providing for the payment of a benefit to an insured if the insured is disabled under the terms of the private insurance policy, but denied Social Security Disability Insurance benefits.)

19.  All documents concerning the question whether an application for Social Security Disability Insurance benefits will be considered by the SSA to be false or fraudulent.

20.  All documents concerning practices of private disability insurance carriers to cause or encourage their insureds to apply for Social Security Disability Insurance benefits.

21.  Documents sufficient to determine the percentage of claims for Social Security Disability Insurance benefits that are:

     a.  Granted solely on the basis of information supplied in an SSA Application Form (Form SSA-3368-BK);

     b.  Granted at the Initial Determination Stage without any hearing;

     c.  Granted at the Reconsideration Stage without any hearing;

     d.  Granted following hearing;

     e.  Granted following an appeal;

     f.  Granted following litigation; and

9

g.  Denied altogether;

including, but not limited to documents concerning the variance (if any) in award rates between or among geographic regions

22. All documents concerning the ability of applicants to understand the directions for completing the applications for Social Security Disability Insurance benefits, including but not limited to SSA Application Form (Form SSA-3368-BK).

23. All documents concerning this civil action.

24. All documents concerning studies or analyses of the prevalence or nature of fraud committed by applicants for Social Security Disability Insurance benefits, including, but not limited to the studies themselves.

25. All documents concerning the costs incurred by SSA to process each application for Social Security Disability Insurance benefits.

26. All documents concerning the manner in which applicants apply for Social Security Disability Insurance benefits, including but not limited to any statistics regarding the percentage of all applicants who apply in person.

10

## CERTIFICATE OF SERVICE

I, Karen Collari Troake, an attorney for CIGNA and LINA, hereby certify under the pains and penalties of perjury, that a copy of the foregoing documents were served by electronic and first-class mail on March 20, 2007 upon counsel for Dawn Barrett, Kit A. Pierson, Heller Ehrman LLP, 1717 Rhode Island Avenue, NW, Washington, D.C. 20036, Peter B. Krupp, Lurie & Krupp, LLP, One McKinley Square, Boston, Massachusetts 02109, and Colette G. Matzzie, Phillips & Cohen LLP, 200 Massachusetts Avenue, NW, Washington, D.C. 20036.

Karen Collari Troake

11

4154953v3