# EXHIBIT D

# SOCIAL SECURITY

Office of the General Counsel
Office of General Law
May 21, 2007

Karen Collari Troake, Esquire
Choate, Hall, and Stewart, LLP
Two International Place
Boston, Massachusetts 02110

Re:  Your Application for Testimony by a Social Security Administration (SSA or Agency) Employee or Employees in <u>United States ex rel. Dawn Barrett v. Cigna Corp. & Life Ins. Co. of North America</u>, Case No. C.A. 03-12382-MLW (D.Mass.)

Dear Ms. Troake:

You filed an application requesting the testimony of one or more SSA employees concerning the following matters:

1. SSA's awareness of, views on, and/or acknowledgement of insurers' practice of offsetting long-term disability benefits to take account of Social Security Disability Insurance benefits.

2. Any requests pursuant to the Freedom on Information Act regarding SSA's awareness of, views on, and/or acknowledgement of insurers' practice of offsetting long-term disability benefits to take account of Social Security benefits.

3. General Accountability Office Report No. 96-133, dated July 1996, entitled "SSA Disability, Return to Work Strategies From Other Systems May Improve Federal Programs."

4. Statement of Professor Paul Verkuil before the Subcommittee on Social Security, House Ways and Means Committee, made on or about June 11, or June 20, 2002.

5. Research Paper No. 71 of Professor Paul Verkuil and Jeffrey Lubbers on, "Alternative Approaches to Judicial Review of Social Security Disability Cases: A Report to the Social Security Advisory Board." (2003).

6. Letter dated June 17, 2004, from the Subcommittee for Social Security, House Ways and Means Committee, to SSA Commissioner Jo Anne B. Barnhart.

7. Paper dated February 24-25, 2005, entitled, "Ethics Hour: Responsibilities, Obligations and Expectations," by Sarah A.L. Humphreys, Office of General Law, SSA.

8. Statement of Jane Ross, SSA Deputy Commissioner for Policy, entitled, "Disability Options in the Private Sector," made before the House Budget Committee on June 22, 1999.

9. Presentations slides entitled, "Private Disability Insurance," dated February 19, 2002.

10. The submission of false or fraudulent claims for Social Security Disability Insurance benefits.

11. The extent to which SSA employees are to rely on information contained in applications for Social Security Disability Insurance benefits, including but not limited to, SSA application form SSA-3368-BK.

12. How applicants or others understand the term "unable to work," as used in the application form SSA-3368-BK for Social Security Disability Insurance benefits.

13. The use of so-called "social insurance riders" in private disability insurance policies.

14. Whether and under what circumstances SSA will consider an application for Social Security Disability Insurance benefits to be false or fraudulent.

15. Private disability insurance carriers' practices which cause or encourage their insured to apply for Social Security Disability Insurance benefits.

16. The percentage of Social Security Insurance Disability Insurance benefits that are:
    a) Granted solely on the basis of the information supplied in SSA application form SSA-3368-BK;
    b) Granted at the initial stage without any hearing;
    c) Granted at the reconsideration stage without any hearing;
    d) Granted following hearing;
    e) Granted following an appeal;
    f) Granted following litigation; or
    g) Denied altogether.

17. The ability of applicants to understand the directions for completing the applications for Social Security Disability Insurance benefits, including, but not limited to, SSA application form SSA-3368-BK.

18. The manner in which applicants apply for Social Security Disability Insurance benefits, including, but not limited to, any statistics regarding the percentage of all applicants who apply in person.

19. Studies or analyses of the prevalence or nature of fraud committed by applicants for Social Security Disability Insurance benefits.

20. SSA's interactions with Congress and its committees, including but not limited to the Agency's response to the letter dated June 17, 2004, from the House Subcommittee on Social Security to the Commissioner, cited in item 6 above.

21. Studies or analyses concerning the cost incurred by SSA to process each application for Social Security Disability Insurance benefits.

This letter constitutes the final decision on your application pursuant to the Agency's regulations at 20 C.F.R. Part 403 governing requests for testimony by employees in legal proceedings. Based on your application, I have determined that it would not be in the Agency's interest to permit the requested testimony.

An Agency employee may appear in a legal proceeding to which the Agency is not a party and testify about any function of SSA, or any information or record created or acquired by SSA as a result of the discharge of official duties. However, such appearance and testimony require the prior authorization of the Commissioner or his designee. *See* 20 C.F.R. § 403.100. Similar regulations governing federal employee testimony have consistently been upheld as legitimate. *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951); *Smith v. Cromer*, 159 F.3d 875 (4th Cir. 1998); *Swett v. Schenk*, 792 F.2d 1447 (9th Cir. 1986).

Under our regulations, we may consider several factors in determining whether to authorize testimony in cases in which SSA is not a party. Those factors include, but are not limited to: the risk of violation of law or compromise of Government privilege; the burden on SSA; and the interests served by allowing the testimony. *See* 20 C.F.R. § 403.130. Your application does not establish the criteria necessary to allow employee testimony.

Releasing the records would not risk violating a law or compromising a Government privilege. 20 C.F.R. § 403.130(a). The testimony that you seek does not appear to involve the release of sensitive, confidential, or privileged information in violation of the Privacy Act, 5 U.S.C. § 552a, and/or the confidentiality provisions of the Social Security Act, 42 U.S.C. § 1306.

However, allowing the testimony in this matter would unduly burden SSA. 20 C.F.R. § 403.130(b). The requested testimony would unduly expend the United States' resources for private purposes. *Id.* Allowing the requested testimony would divert one or more SSA employees from their official duties for private litigation to which SSA is not a party.

4

Moreover, the information you seek is available by means other than the sworn testimony of an SSA employee or employees. As you know, much of the information you seek is available through the Freedom of Information Act. To this end, SSA's Office of Public Disclosure has been locating and/or assembling much of the requested documentation. Accordingly, the information you seek from an SSA employee or employees through testimony would be available in a less burdensome form.

I have considered the interests that would be served by providing testimony in this case and find that the testimony would not serve SSA's interests. 20 C.F.R. § 403.130. Because SSA is not a party to the case, providing testimony would be inconsistent with SSA's strict policy of impartiality among private litigants. 20 C.F.R. § 403.130(c)(2). Moreover, the testimony is not necessary to prevent fraud or a miscarriage of justice. 20 C.F.R. § 403.130(c)(3)-(5). SSA is nominally a party of interest in this litigation which involves the plaintiff's contention that the defendants allegedly made or caused third parties to make false statements and claims to SSA. However, SSA has its own regulations and procedures for dealing with fraud. Further, SSA did not consent to or initiate this litigation, and the United States Department of Justice declined to take over this private suit. Therefore, SSA's interest is not substantial.

Thank you for your cooperation in this matter. If you have any questions, please contact Lyman Goon of my staff at (410) 965-8131, or Eskunder Boyd in our regional office at (617) 565-1868.

Sincerely,

Michael G. Gallagher
Associate General Counsel
for General Law