# EXHIBIT E



CHOATE HALL & STEWART LLP

Richard C. Abati
(617) 248-5076
rabati@choate.com

March 18, 2008

**VIA EMAIL**

AUSA Jeffrey M. Cohen
Office of the U.S. Attorney
John J. Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02110

Re:    *U.S. ex. rel. Dawn Barrett v. CIGNA Corporation, et al.*,
         Civil Action No. 03-12382-MLW (D. Mass.)

Dear Jeff:

Per your telephone conversation with Christine two weeks ago, the defendants hereby request that the Social Security Administration (SSA) produce all SSDI-related documents concerning, from, or to an industry group called DISSATAG (Disability Insurance Social Security Administration Technical Advisory Group). We believe these documents are responsive to the subpoena *duces tecum* served on the SSA by the defendants in March 2007.

I enclose with this letter an outline containing information to facilitate the SSA's identification of the proper custodians and its search for responsive documents. The outline contains all details available based on the documents collected to date, concerning the following: alternative names used by the group other than DISSATAG; the names of the member organizations and the contact persons at each of those organizations; the names of 14 current or former employees of the SSA who we believe are likely to have responsive documents; the dates of known meetings and conference calls between the SSA and DISSATAG; and a description of three sets of documents which were exchanged between DISSATAG and the SSA. Copies of those documents are enclosed herewith as Exhibits A-C.

Thank you for your and the SSA's anticipated cooperation.

4310709v1

AUSA Jeffrey M. Cohen
March 18, 2008
Page 2


Very truly yours,

Richard C. Abati
Enclosures

cc:     Eskunder Boyd, Esq. (via email)
        AUSA Michael A. DiPietro (via email)
        Lyman Goon, Esq. (via email)
        Mitchell H. Kaplan, Esq.
        R.J. Cinquegrana, Esq.
        Christine J. Wichers, Esq.

4310709v1

## INFORMATION ON DISSATAG

I.    **The Organization**

    A.    Title (has varied over time)

        1.    Disability Insurance Social Security Administration Technical Advisory Group (DISSATAG)

        2.    SSDI Information Work Group, which referred to the project as the "SSDI Information Sharing Project" or the "SSDI Information Project" or the "SSDI Information System Project"

    B.    Members have changed over time but include the following companies, with the following employees as contact persons:

        1.    Aetna (Barry Wolfson, Charlyn "Charlie" Iovino, Leslie Carter)

        2.    American Council of Life Insurers (ACLI) (Terri Sorrota)

        3.    America's Health Insurance Plans (AHIP) or its precursor, Health Insurance Association of America (HIAA) (Winthrop Cashdollar, Tom Wildsmith, Kelly Vogel)

        4.    Assurant (Scott Martin, Ed Harper, Tom Vargo)

        5.    CIGNA (Denise Mabilog, Laurie Swanson, Steve Ostrega, Kristin Julason, Lynn Jacobs, Mark D'Antonio)

        6.    Fortis, Inc. (Edwin Harper, Tom Vargo)

        7.    GE Financial Assurance (Chuck Alaimo, Sam Morgante)

        8.    Genworth (Venkat Moorthy)

        9.    Hartford Life (Tim Jordan, Carol Harnett, Kevin Sheridan, Charles Hunt, Laura Donovan)

        10.    Liberty Mutual (Barbara Mountain)

        11.    MetLife (Martha Nolan, Carol Mazurkivich, Marcene Bowers, Rich Vitock, Samantha Ireson, Kathleen Mellody)

        12.    Mutual of Omaha (Melissa Rewinkel)

        13.    Principal (Lucia Riddle, Terry Reed, Doug Fick)

        14.    Prudential (Chris Longo)

1

15. UnumProvident (Sandy Cook, Bernie Tanguay, Caryn Clark, David McMahon, Dave Keenan)

C. Most involved: **Winthrop Cashdollar** from AHIP and **Martha Nolan** from MetLife

## II. SSA Representatives involved with DISSATAG

A. Jo Anne Barnhart, Commissioner (on 11/1/05 she wrote to Karen Ignagni, President of AHIP, enclosing a draft authorization form for SSDI applicants to sign; Randy Gaines and Darrell Blevins met with her and with Lisa Disota before 10/02 to discuss information-sharing effort)

B. Darrell Blevins, Chief Privacy Officer (spoke at 10/2/02 meeting; he and Randy Gaines met with Commissioner Barnhart and Lisa Disota before 10/02 to discuss information-sharing effort)

C. Lisa Disota, General Counsel

D. Randy Gaines, Deputy General Counsel: Randolph.Gaines@ssa.gov (spoke at 10/2/02 meeting; he and Darrell Blevins met with Commissioner Barnhart and with Lisa Disota before 10/02 to discuss information-sharing effort; recipient of 9/10/2003 email from Charlyn Iovino re: Data Requirements and Authorization form)

E. Martin Gerry, Deputy Commissioner (attended 2/02 mtg, at which time he supervised Gaines and Blevins; that had changed by 10/02)

F. Dorcas Hardy, former Commissioner: drhardy@worldnet.att.net (copied on a 7/20/05 email from Winthrop Cashdollar to DISSATAG members re: conference call later that day with SSA)

G. Rose Kane: Rose.Kane@ssa.gov (copied on a 7/20/05 email from Winthrop Cashdollar to DISSATAG members re: conference call later that day with SSA)

H. Mario Maldonado (recipient of 8/29/05 memo from Winthrop Cashdollar)

I. Pete Malinauskas, Associate Commissioner for the Office of Retirement & Survivor Insurance Systems: Pete.Malinauskas@ssa.gov (participated in 7/20/05 and 10/25/05 conference calls; recipient of 8/29/05 memo from Winthrop Cashdollar)

J. Joan Peddicord: Joan.Peddicord@ssa.gov (memo from Winthrop Cashdollar to DISSATAG members summarizing 1/10/05 call with SSA says Peddicord "will be sending the very latest version of the beneficiary authorization form for our assent"; recipient of 9/10/2003 email from Charlyn Iovino re: Data Requirements and Authorization form )

2

K.    Glenn Sklar (attended 11/25/07 & 2/12/08 meetings)

L.    Nancy Webb, manager (?) of the SSA's SSDIE-filing system (attended 11/25/07 & 2/12/08 meetings)

M.    Tom Wiseman, Team Leader (participated in 7/20/05 conference call)

N.    Judy Ziolkowski, Office of Systems (attended 10/2/02 meeting)

O.    Unnamed staff from the SSA's field offices in Kansas City and Boston (attended 10/2/05 meeting)

### III.    Meetings between SSA and DISSATAG

A.    2/19/02

B.    5/20/02

C.    10/2/02:  meeting at SSA in Baltimore (Gaines, Blevins, Ziolkowski, and unnamed staff from SSA's Boston and Kansas City attended)

D.    1/10/05 (conference call)

E.    7/20/05 (conference call) (Malinauskas and Wiseman participated)

F.    10/25/05 (conference call) (Malinauskas participated)

G.    11/25/07:  meeting at SSA in Baltimore (Sklar and Webb attended)

H.    2/12/08:  meeting at Aetna in Hartford, CT (Sklar and Webb attended)

### IV.    Documents Exchanged Between SSA and DISSATAG

A.    Documents sent to the SSA in preparation for the 10/2/02 SSA-DISSATAG meeting.  These include: 10/2/02 Meeting Agenda; Summary of SSA and DISSATAG's May Meeting and Work Projects; Summary of SSA and DISSATAG's February Meeting and Work Projects; Authorization for Release of Social Security Information (form); Authorization for Release of Social Security Information (Attachment A); Explanation of Information Being Requested on Authorization Form; Key Social Security Data Elements & Social Security's Notice of Award Letter; Review of SSDI Data Template; Possible Solutions (chart); Audit Controls for Data Exchange Solutions

B.    8/29/05 memo to Pete Malinauskas and Mario Maldonado from Winthrop Cashdollar

3

C.    11/1/05 letter to Karen Ignagni, President of AHIP, from Commissioner Jo Anne Barnhart enclosing a draft authorization form for SSDI applicants to sign

4

# EXHIBIT A

**Mabilog, Denise K  Esq.  TL48K**

| | |
|---|---|
| From: | Martha Nolan [mnolan@MetLife.com] |
| Sent: | Thursday, September 19, 2002 1:56 PM |
| To: | mnolan@metlife.com; Mabilog, Denise K Esq. TL48K; Reed, Terry; barry.wolfson@aetna.com; BMTanguay@unum.com; carol.harnett@hartfordlife.com; chuck.alaimo@gecapital.com; Carol Mazurkivich; charles.hunt@HartfordLife.com; IovinoCA@Aetna.com; David_Keenan@providentcompanies.com; ed.harper@us.fortis.com; kevin.sheridan@hartfordlife.com; lauren.swanson@cigna.com; lynn.jacobs@us.fortis.com; laura.donovan@thehartford.com; riddle.lucia@principal.com; Marcene J Bowers; sam.morgante@gecapital.com; awcook@unum.com; terrisorota@acli.org; tim.jordan@hartfordlife.com; tom.vargo@us.fortis.com; wcashdollar@hiaa.org; Mountain, Barbara; awcook@unum.com |
| Subject: | Oct 2nd mtg docs |

     

Agenda ssa mtg Oct 2 2002.doc   Summary of SSA and DISSATAG mt...   Summary of SSA and DISSATAG Fe...   Final Authorization - 9-16-02...   Final Auth Data Elements Sept ...   Explanation of Information Bei...

  

Key SSA Data Elements.doc   SSDI DataTemplate 5202002.doc   SSA Possible Solutions to elec...   SSA Possible Solutions to elec...   Audit Controls For Data Exchan...

Attached to this email are all of the documents which we have sent to SSA for the upcoming Oct, 2nd meeting.  Several of the documents are from the May 20th meeting (notice of award chart for example) which I included to not only ensure that they have them in front of them at the meeting, but to remind them that we need to discuss them and come to some agreement on the issues.  For the May 20th meeting, SSA only received the documents just before the meeting and had not had a chance to review and discuss the material.  They don't have the same excuse this time.

It would be most helpful if everyone would print out and review the documents prior to the meeting.  I will likely be discussing the agenda with SSA next week to get everything in order (I hope) with SSA so let me know if you have any questions.  Several of the documents have been revised based on our conference call last Monday Sept 9th. or are new like my summary of the May meeting for example.

Agenda for October 2nd Meeting
Summary of SSA and DISSATAG's May Meeting and Work Projects
Summary of SSA and DISSATAG's February Meeting and Work Projects
Authorization for Release of Social Security Information
Attachment A - Information on Data Elements Requested
Attachment B - Explanation of Information Being Requested on Authorization Form
Attachment C - Key Social Security Data Elements & Social Security's Notice of Award Letter
Attachment D - Review of SSDI Data Template and Sample Queries
Attachment E - Possible Solutions Chart
Attachment F - Possible Solutions to Electronic Exchange of Information
Attachment G - Audit Controls for Data Exhange Solutions

Please feel free to call me if you have any questions.

Martha Nolan
Assistant Vice President
MetLife

(See attached file: Agenda ssa mtg Oct 2 2002.doc)

1

CONFIDENTIAL

LINA 0152450

(See attached file: Summary of SSA and DISSATAG mtg 5202002.doc)

(See attached file: Summary of SSA and DISSATAG February Mtg and work
projects.doc)
(See attached file: Final Authorization - 9-18-02.doc)
(See attached file: Final Auth Data Elements Sept 2002 Attachment A.doc)
(See attached file: Explanation of Information Being Requested on
Authorization Form.doc)
(See attached file: Key SSA Data Elements.doc)
(See attached file: SSDI DataTemplate 5202002.doc)

(See attached file: SSA Possible Solutions to electronic sharing of
info-Chart.doc)
(See attached file: SSA Possible Solutions to electronic sharing of
info.doc)
(See attached file: Audit Controls For Data Exchange Solutions.doc)
The information contained in this message may be CONFIDENTIAL and is for the intended addressee only.  Any
unauthorized use, dissemination of the information, or copying of this message is prohibited.  If you are not the intended
addressee, please notify the sender immediately and delete this message.

2

CONFIDENTIAL

LINA 0152451

Agenda

SSA/DI Carrier Meeting
October 2, 2002

1:00 p.m. - 3:00 p.m.

Social Security Administration
Baltimore, MD

I     Introductions
          Reorganization at SSA
          Meetings with Martin Gerry, IT and Commissioner Barnhart

II    Final Uniform Authorization
          Discussion of final Authorization (Attachments A & B)
          Timeline for approval and usage of Authorization
          Interim steps for year-end goal

III   Notice of Award
          Notification of Awards by SSA (Attachments C & D)
          Content of notification
          Interim steps for year-end goal

IV    Electronic Interchange
          Possible Solutions (Attachments E & F)

V     Audit Controls
          (Attachment G)

VI    Other Business

VII   Next Meeting

VII   Adjournment

CONFIDENTIAL

LINA 0151994

Summary of SSA and DISSATAG's May Meeting and Work Projects

On May 20, 2002, SSA met with DISSATAG carriers (Aetna, Fortis, The Hartford, MetLife, UnumProvident, Principal, GB Financial, CIGNA, Liberty Mutual, ACLI, and HIAA) to continue discussions on creation of a universal Authorization form, notice of award issues, and a future communication link that were raised in the meeting on February 19th. These issues are of mutual interest to SSA and the DI industry. The goal of our meeting is to improve and streamline the information exchange process for everyone and to develop an ongoing partnership for sharing information between SSA and the DI industry.

In preparation for the May 20th meeting, DISSATAG created the following documents:
- uniform Authorization form with accompanying Explanation of Information Requested
- High Level Information Flow of LTD Claim
- Key Social Security Data Elements & Social Security's Notice of Award Letter
- Review of SSDI Data Template
- Information on the DI marketplace

All of these documents were reviewed and discussed at the May 20th meeting. As a result of the meeting both SSA and DISSATAG agreed to address areas of concern for purposes of further discussion and agreement at the next meeting.

**Social Security Administration:**
- Review current internal process of handling authorization forms across field offices.
- Send specific rule on Authorization validity
- Provide language for signature line on the draft Authorization
- Share information on what issues are raised by the Federal Privacy Act
- Review the issue of timing of notice of award in order to consider changes this year
- Meet with Executives and Commissioner to determine direction of effort

**DISSATAG:**
- Revise proposed Authorization form based on discussion at the meeting
- Provide additional information/explanation of the key elements on Authorization
- Provide sample SPD information
- Provide information on total # of LTD claims per year
- Create a draft of the possible options for an electronic sharing of information by SSA and the DI industry
- Create a draft of the audit issues that would need to be considered or handled

SSA and DISSATAG are scheduled to meet on October 2, 2002 to review and finalize the Authorization form, continue discussions on the notice issues, and determine interim steps that can be accomplished by the end of the year. Further, we will discuss options for future electronic communication links that would work toward improving the process of sharing information for everyone.

**Summary of SSA and DISSATAG's February Meeting and Work Projects**

On February 19, 2002, SSA agreed to meet with the following DI carriers (Aetna, Fortis, The Hartford, MetLife, The Principal, UnumProvident, GE Financial) and the HIAA, hereafter referred to as DISSATAG (Disability Insurance Social Security Administration). DISSATAG, on behalf of the insurance industry, met with SSA to discuss topics of common interest and resolve issues of mutual concern while establishing an ongoing partnership for sharing information.

In preparation for this meeting each DISSATAG representative provided overpayment statistics and presented a summary of concerns and the identified opportunities for both SSA and the insurance industry.

Shared Concerns:
- The potential that the claimant may not comprehend the process, what they are consenting to, and how the information will be used.
- The timing and method of receiving disability award information from SSA often varies, is inconsistent, and incomplete, consequently increasing the administrative burden on both parties.
- Inconsistencies among the different authorization forms accepted by SSA and the length of time the forms are valid.
- The significant financial impact on the DI insurance industry due to the challenges inherent in the current process.

As a result of the Feb 19th meeting both SSA and DISSATAG agreed to address the areas of concern by obtaining and or developing the following information and documents for further discussion.

Social Security Administration:
- Review the length of time that an authorization form is valid and consider extending that time frame.
- Review current internal process of handling authorization forms across field offices.
- Provide DISSATAG with a template of SSDI notice of award.
- Supply information on link for Death and Disability indicators to include standard agreements for access to the electronic link.

DISSATAG
- Outline the process used in obtaining the signed authorization form and the steps followed to ensure the claimant understands what they are signing.
- Develop one universal authorization for release of Social Security information that provides clarity of retention, use and disclosure.
- Provide the types of data elements requested from Social Security, and the reason they are important.
- Review the SSDI template and identify the pertinent information.
- Provide industry demographics concerning number of carriers, percent of the industry represented by DISSATAG and other related information.
- Communicate with the industry and obtain approval of final work product.

SSA and DISSATAG (now comprised of MetLife, UnumProvident, The Hartford, Fortis, Aetna, Principal, GE Financial, CIGNA , Liberty Mutual, ACLI and HIAA), are scheduled to meet on May 20th to continue discussions on the universal Authorization form, notice of award issues, and a future communication link, in order to work toward improving the process for everyone.

CONFIDENTIAL

LINA 0151996

## Authorization for Release of Social Security Information

| Name of Claimant   (Last, First, M.I.) | Date of Birth | Social Security # | Disability Claim #<br>(to be completed by disability claim administrator) |
|---|---|---|---|

I authorize the Social Security Administration to send a copy of my Social Security award or denial notice and release the information requested below to:

Disability Claim Administrator
Address
(to be completed by disability claim administrator)

I understand that I may be required to apply for Social Security benefits as part of my disability claim. Any benefits paid or payable under this claim may be reduced by the amount of, or may be otherwise reduced because of, Social Security benefits that I and/or my dependents receive or are eligible to receive. I may elect not to sign this authorization for release of information. If I do not sign this authorization, I understand that the amount of the monthly Social Security award(s) that could be payable to me and/or my dependents may be estimated and my monthly disability benefits may be reduced, or my claim may be denied or terminated if permitted by the provisions of my disability plan.

I understand the following information, including the Social Security award(s) or denial notice(s), will be released for the purpose of administering my claim for disability benefits and other limited circumstances as outlined below. This information will be maintained in my disability records for the life of my claim and at least six (6) full calendar years following the termination of my disability claim.

THE FOLLOWING INFORMATION WILL BE REQUESTED FROM THE SOCIAL SECURITY ADMINISTRATION:

- Complete Primary Insurance Amount & Benefit Payment History
  - Primary Beneficiary--Effective Date, Amount Paid, Date 1st Check Released, and Reason for Change
    (including any Changes due to Worker's Compensation, Public/State Disability and/or Credit for Additional Earnings)

- Complete Dependent Beneficiary(ies) Insurance Amount(s) & Benefit Payment History:
  - Dependent Beneficiary(ies)--Effective Date(s), Amount(s) Paid, Date 1st Check Released, and Reason for Change (including Family Max)

- Retroactive Benefits Paid & Fees Approved:
  - Amount of Retroactive Benefits-- including Entitlement Date and Date Benefits Paid Through
  - Amount of Attorney Fees Paid and/or Approved

- Application Information:
  - Insured Status                  - Appeal Date
  - Application Date(s)             - Denial Date
  - Current Level of Appeal

- Other Information:
  - Social Security Retirement -- Date 1st Check Released
  - Date Primary Social Security Benefits Terminated & Reason
  - All Dependent Beneficiary(ies) Termination Date(s)

I understand that in order to calculate my disability benefit and any possible benefit overpayment amount, my disability claim administrator may use this signed authorization form to request any/all of the information listed above as long as this authorization is in effect.

This authorization shall remain in effect for the longer of two (2) years from the date below or until a decision regarding my benefits is made by the Social Security Administration up through the Administrative Law Judge level, unless I choose to revoke it. I may revoke this authorization at any time by submitting a signed written request to the disability claim administrator listed at the top of this form. If I elect to revoke this authorization, the amount of the monthly Social Security award(s) may be estimated and my monthly disability benefits may be reduced by this estimated amount, or my claim may be denied or terminated if permitted by the provisions of my disability plan.

I am the individual to whom this authorization applies or that person's Authorized Representative. I know that if I make any representation, which I know is false, to obtain information from the Social Security Administration, I could be punished by a fine, imprisonment, or both.

I understand that the information obtained by use of this authorization will be used for the purpose of determining the amount of benefits payable and recovery of any overpayments accrued under my claim. This information may also be disclosed to other third parties, as required or permitted by law, when investigating or pursuing suspected fraud, collecting an overpayment, or relating to an audit. The disability claim administrator may create an internal database that includes this information for the purpose of tracking the Social Security status and award history of all its claimants. This database may be shared with outside companies for the purpose of collecting my overpayments accrued under my claim, pursuing suspected fraud, or relating to an audit. This information will not be sold.  A photocopy of this authorization is as valid as the original and my authorized representative or I have a right to receive a copy of this authorization upon request.

Signature: _____   Date: _____

I, _____, sign on behalf of claimant as Court-appointed Guardian.
Please attach a copy of the document granting authority.

HIGHLY CONFIDENTIAL

LINA 0151997

Attachment A

**Authorization for Release of Social Security Information**

Information on Data Elements Requested in the
Authorization for Release of Social Security Information

Each of the data elements requested in the authorization are required by the disability claim administrator to calculate the correct benefit amount under the beneficiary's disability claim, to recover benefit overpayments, and to ascertain that the claimant is compliant with the requirements of the disability contract. Samples of standard contract language that relate to the application of Social Security benefits and offsets are provided in Attachment D, Summary Plan Description Language.

1) **Primary Beneficiary Information** including effective date, amount paid, date the first check is released, and changes due to worker's compensation, public/state disability and/or credit for additional earnings are required to calculate the monthly Long Term Disability (LTD) benefit as well as overpaid benefits. This information is used to determine "Other Income Benefits". Other Income Benefits are part of the monthly LTD calculation.

2) **Retroactive Benefits Paid and Fees Approved** are requested to calculate any benefits that may have been overpaid to the claimant.

3) The **Dependent Beneficiary** amount is also considered Other Income Benefits and is required to calculate the monthly LTD benefit. Without this information the LTD monthly benefit amount will be incorrect and the claimant will incur an overpayment.

4) **Application Information** is requested to assess that the claimant is eligible for Social Security benefits, has applied for Social Security benefits, and to verify the current status of the application. The LTD contract requires that the claimant apply for benefits. The contract also specifies the level that the claimant must take his application through.

5) **Social Security Retirement** benefits are considered Other Income Benefits and are used to calculate the LTD monthly benefit.

6) The **Dependent Beneficiary termination date** is needed to update the LTD monthly benefit. Without this information we will continue to include the Dependent Beneficiary amount in Other Income Benefits, thus underpaying the claimant.

7) The date the **Primary Social Security Benefits terminated** is required to update the LTD monthly benefit. Without this information we will continue to include the Primary Social Security amount in Other Income Benefits and underpay the claimant.

HIGHLY CONFIDENTIAL

LINA 0151998

Attachment B

## Explanation of Information Being Requested on Authorization Form

The following is an explanation of why the disability claim administrators are requesting the information, and it follows the outline of the authorization by section.

1. **Complete Primary & Dependent Insurance Amounts and Payment History:**
   - **Effective dates:**
     Needed to calculate the start date for the Social Security offset and to correctly adjust the offset when changes occur. This information is also compared with the disability claim administrator's date of disability. Necessary in the event that benefit approvals are delayed or if receipt of Social Security benefits does not correspond to the disability claim administrator's date of disability
   - **Amounts Paid:**
     To accurately determine the offsets based on the policy provisions
   - **Date first Check Released:**
     To determine if benefits have been delayed, or if benefits were payable prior to start date of covered disabling condition. Some disability claim administrators use date offset was first paid while, others use date first eligible to be paid.
   - **Reason for Change:**
     Helps assure accurate offsets and adjustments due to modifications to Social Security benefits
   - **Type of Benefit:**
     SSDI, SSR, SSI and Widow's Benefit are unique offsets handled differently depending on the disability claim administrator and their policy provisions

2. **Retroactive Benefits Paid and Fees approved:**
   - **Amount of Retroactive Benefits:**
     Allows disability claim administrators to document the history of benefits paid and accurately reconcile benefits.
   - **Entitlement Date and Termination Date:**
     Provides confirmation that offsets correspond to dates of disability and to appropriately credit retroactive lump sum offsets on a monthly pro-rated basis as benefits are paid and to properly administer W2 forms.
   - **Amount of Attorney Fees paid:**
     Depending on the policy provisions and circumstances, fees may be credited to the overpayment pending approval by SSA

3. **Application Information:**
   - **Status:**
     Allows disability claim administrators to confirm compliance with provisions pertaining to Social Security application process
   - **Dates:**
     Documents adherence to SSA and policy provision guidelines
   - **Denial & Appeal Dates:**
     Confirms status as indicated above
   - **Current Level of Appeal:**
     Helps to evaluate the potential liability and anticipate further actions taken (i.e. Multiple appeals and denials)

4. **Other Information:**
   - **Termination Dates:**
     To avoid erroneous offsets that have ended/ terminated
   - **Medicare Effective Date and Premium:**
     Assure that offset is correct based on policy provisions and eligibility

CONFIDENTIAL

LINA 0151999

Attachment C

## Key Social Security Data Elements & Social Security's Notice of Award Letter

During the previous meeting between SSA and the DI Carriers, SSA wanted to know both the types of data elements Carriers request from Social Security, and the reason these elements are important to the insurance industry. In addition, there was discussion regarding the SS Notice of Award Letter and whether or not SSA uses a standard template to produce the letters so that key data elements are included in SSA's letters on a consistent basis.

DISSATAG formulated the attached chart as a result of our meeting with Social Security Administration Officials.

In short, the chart below hones in on four key areas:

- Initial Notice of Award Data
- Situations Resulting in Adjustments to SS Payments
- Other Claim Information
- Subsequent Information Requests

Within each of the first two areas, the chart itemizes items in terms of:

- Data elements currently found in the award letter
- Data elements not consistently found in the award letter
- Result of award letter being incomplete as to key data elements

The chart is intended to focus on the key data elements most often needed and requested by our industry.  We believe this represents the points most integral to the industry.

Comments as to content as well as the frequencies noted in the Subsequent Information Request Section will be reviewed by the steering committee.

CONFIDENTIAL

LINA 0152000

## A. Initial Notice of Award Data

Data elements in the table below are needed to determine our contractual liability.

| Data elements currently found in the award letter | Data elements not consistently found in the award letter that should be included | Data elements that may not be found in the award letter due to timing, resulting in requests to SSA. |
| --- | --- | --- |
| <ul><li>Entitlement date</li><li>Initial net primary & dependent SSDI / SSR amounts</li><li>Classification of benefit: disability, retirement, survivors.</li><li>Type of benefit: spouse, child, widow(er)</li><li>Established date of onset</li></ul> | <ul><li>Initial primary (PIA) and dependent SSDI benefit amounts.</li><li>Level of award</li><li>Amount of retroactive benefits</li><li>Itemized payment history explaining how the retroactive benefit payment was calculated</li><li>Attorney's fees withheld</li><li>Attorney's fees approved by SSA</li><li>Adjustments (state disability / worker's compensation) — see B. below</li></ul> | <ul><li>Earnings increases & the effective date of increases when these occur after the date of the award letter</li><li>COLA increases & the effective date of increases when these occur after the date of the award letter</li><li>Medicare effective dates that are subsequent to the date of the award letter – both Parts A & B</li></ul> |

## B. Adjustments to SSDI Payments

Data elements in the table below are needed to determine our contractual liability.

| Data elements currently found in the award letter | Data elements not consistently found in the award letter that should be included | Result of not having complete payment history and description of benefit adjustments. |
| --- | --- | --- |
| <ul><li>Entitlement date & amount of reduced SSDI benefits due to state disability and worker's compensation.</li></ul> | <ul><li>Cessation/Adjustment of SSA's offset for state disability or worker's compensation when those benefits have fluctuated or ceased in the past. Itemized payment history explaining effective dates & payment amounts for offset periods and non-offset periods.</li><li>Initial primary (PIA) and dependent SSDI benefit amounts.</li></ul> | <ul><li>Carriers must query SSA for corrected SS benefit calculation & release of additional monies payable to the claimant.</li></ul> |

CONFIDENTIAL

LINA 0152001

## C. Other Claim Information

Data elements in the table below are needed to determine whether the claimant has sufficient quarters of coverage to be eligible for Social Security benefits and/or has satisfied the contractual requirements to pursue Social Security disability benefits to a specified level of appeal.

| Insured Status/Quarters of Coverage | • Required quarters of coverage for fully insured status * and 20/40 status ** <br> • Actual quarters of coverage for fully insured status * and 20/40 status ** <br><br> * Fully insured is the first of two insured status tests which requires one to have a minimum number of work credits. <br> ** 20/40 is the second of two insured status tests which requires one to have earned a portion of work credits in recent years. |
| --- | --- |
| Pending SSD Claims | • Date of filing application <br> • Level of application |
| Denied SSD claims | • Date of denial <br> • Level of denial |
| Appealed SSD claims | • Date of filing request for reconsideration <br> • Date of filing request for hearing <br> • Level of appeal (i.e. reconsideration, hearing, etc.) |

CONFIDENTIAL

LINA 0152002

D. **Subsequent Information Requests:**

Action may result after the initial notice of award, relate to a separate claim filed under the claimant's Social Security Number, or relate to other post-entitlement actions on the claimant's Social Security record.

| Type| | We Request this Information to| | Frequency| |
|---|---|---|
| • Earnings increases & effective date of increases when these occur after the date of the award letter;<br>• COLA increases & effective date of increases when these occur after the date of the award letter | • Properly determine our contractual liability. We reduce the LTD benefit by increases in SSDI/SSR due to credits for additional earnings. We do not reduce the LTD benefits due to COLA increases. | • 100% |
| • Adjustments to SSDI when state disability (SD)/PDB or worker's compensation (WC) offset applies to the SSDI payment | • Properly determine our contractual liability. We reduce LTD benefits by net SSDI benefits when the SSDI has been reduced due to WC or SD/PDB offset. Need to follow-up for increase in SSDI when WC or SD/PDB offset changes/ceases. | • 75%–100% |
| • Spousal / Dependent benefit entitlement date & amount | • Properly determine our contractual liability. We reduce LTD benefits by primary and dependent SS benefits, including spousal benefits. We do not offset widow's benefits received under the deceased spouse's SSN. However, some LTD plans allow for a reduction of the difference when benefits paid on the claimant's SSN exceed the benefits paid on another SSN. | • 50% |

CONFIDENTIAL

LINA 0152003

| | | |
|---|---|---|
| ○ Dependents in Another Household – confirmation dependents live apart from the claimant (not seeking dependent's address) | ○ Dependent benefits may not be offset when the dependent lives apart from the claimant or the primary provides proof (i.e. divorce decree) that s/he has no financial liability for the dependent. | ○ 50% |
| ○ Medicare effective date – if occurs after date of award letter | ○ Determine effective date of Medicare coverage. | ○ <5% |
| ○ FICA taxable wages | ○ Determine if the claimant has earned any FICA taxable wages while he/she has been disabled. | ○ <5% |
| ○ Overpayment / Adjustment amount, reason, effective date of recovery | ○ Determine if reason for reduced or withheld SSDI benefit has an impact on our contractual liability, and to what extent | ○ <5% |
| ○ Date scheduled for Continuing Disability Review (CDR) | ○ Obtain the date that SSA plans to conduct a CDR in those cases where improvement in the condition is expected and a CDR may result in the termination of benefits | ○ <5% |

CONFIDENTIAL

LINA 0152004

Attachment D

**REVIEW OF SSDI DATA TEMPLATE**
**(Pertinent Data Highlighted)**

<u>Sample Primary "Insurance" Query</u>

FACT DTE-MM/DD/YY

STATUS

ACCOUNT

PRIMARY

TOTAL

FULL PT/SHIS

WC ACCT

PAYMENT

PAYEE
ADDRESS

BANK

SPC PAY

SCH PAY

ATTY-FEE

BENEFIT

WOB
MM/YY

REDACTED

HIGHLY CONFIDENTIAL

LINA 0152005

HI – DIB*
SMI – DIB*

AGE

SML PREM

DIB INV                          REDACTED

OFFSET
STATE CA

DIB

LPDD

FULL HISTORY

Sample Dependent "Insurance" Query

FACT DTE-MM/DD/Y.Y.

STATUS

PRIMARY

PAYMENT                          REDACTED

PAYEE

ADDRESS

BANK

SPC PAY

HIGHLY CONFIDENTIAL

LINA 0152006

SCH PAY

ATTY FEE

BENEFIT

REDACTED

R PAYEE
RPNL-1

OFFSET
STATE-CA

FULL HISTORY

If applicable, these data elements apply to both Sample Primary & Dependent Insurance Queries:

Overpayments:
O/U PAY

PAR REC            REDACTED

INSTALL

Dual Entitlement:
X-REF

DE DATA

Items remaining from the sample web query & not included on the Sample Insurance Query to SSA:

NON REC

AR DATA           REDACTED

DRC

STUDENT

HIGHLY CONFIDENTIAL

LINA 0152007

BLK LNG

SID

RAIL

BEN REF

RDC

LSPD

PRI COV

REDACTED

3RD PTY

ST EXCH

PREMIUM

RP INST

AL TAX

PRV

TRANS

HIGHLY CONFIDENTIAL

LINA 0152008

| Possible Solutions | | Request For Information | | Response | | Image of authorization sent to and retained by | Audit Process | Frequency of requests | SSA system modification needed |
|---|---|---|---|---|---|---|---|---|---|
| | | Basis | Via | Immediate | When decision made | | | | |
| 1. Electronic exchange of information between carriers and SSA on a claim-by-claim basis via e-mail, with subsequent notice of award provided: | A. automatically on an individual basis | Claim-by-claim | E-mail or Fax | Award info or pending status | SSA automatically notifies carrier of decision via e-mail | SSA | Not needed | Once, unless updates needed | To provide carriers with automatic notification of award |
| | B. automatically on an aggregate basis to each carrier | Claim-by-claim | E-mail or Fax | Award info or pending status | SSA runs a weekly query against a database for new award determinations and then notifies carrier | SSA | Not needed | Once, unless updated info is needed | To establish the database of requests for award determinations on pending cases |
| 2. Electronic exchange of batch information between: | A. each carrier and SSA | Batch, from carrier | E-mail | Award info on multiple claimants | None | Carrier | Needed | Multiple, until carrier learns of award | No |
| | B. a third party aggregator and SSA | Batch, from aggregator | E-mail | Award info on multiple claimants | None | Third party aggregator | Needed | Multiple, until carrier learns of award | No |
| 3. Utilization of a web-based portal (interface) that is maintained by: | A. a trusted third party vendor | Claim-by-claim & Batch | Web-based portal | Award info or pending status | Receive e-mail notice of future award(s) | Third party vendor | Needed | Once | To pass data to the web-based interface |
| | B. SSA | Claim-by-claim & Batch | Web-based portal | Award info or pending status | Receive e-mail notice of future award(s) | SSA | Not needed | Once | To build and pass data to the web-based interface |

HIGHLY CONFIDENTIAL

LINA 0152013

| Possible Solutions | Mechanics | Advantages | Disadvantages |
|---|---|---|---|
| I.A. Electronic exchange of information between carriers and the Social Security Administration (SSA) on a claim-by-claim basis via e-mail. | Carriers send a request for information, along with an electronic image of the authorization, via e-mail to SSA in Baltimore. The information request could be part of the e-mail message or a separate text file or Word document. A determination would also have to be made on the format (e.g. JPEG) of the scanned image.<br><br>SSA responds to the inquiry and sends an e-mail back to the individual at the carrier who made the initial request.<br><br>If an award hasn't yet taken place, SSA responds with the pending status (date & level of application) and checks a field in their system that automatically generate an e-mail notification to the carrier immediately following an award determination.<br><br>An annual fee can be charged to each carrier based on anticipated usage, with a true up at year-end based on actual usage. | SSA maintains an authorization on every claim for which it discloses information; no need for an audit.<br><br>SSA provides carriers with information in the timeliest way possible.<br><br>This eliminates follow-up requests to SSA for initial award decisions.<br><br>Fees collected from carrier usage could fund the salary of the SSA employee(s) in Baltimore who respond to these inquiries. | System modifications may be necessary:<br><br>(1) to link electronic authorizations to SSA's file on the individual;<br><br>(2) to keep track of the e-mail address where information was sent; and,<br><br>(3) to provide carriers with notification of an award that hasn't been made at the time the inquiry is first received. |

HIGHLY CONFIDENTIAL

LINA 0152014

| Possible Solutions | Mechanics | Advantages | Disadvantages |
|---|---|---|---|
| 1.B. Electronic exchange of information between carriers and the Social Security Administration (SSA) on a claim-by-claim basis via e-mail, with subsequent notice of award provided on an aggregate basis to the carriers. | Carriers send a request for information, along with an electronic image of the authorization, via e-mail to SSA in Baltimore. The information request could be part of the e-mail message or a separate text file or Word document. A determination would also have to be made on the format (e.g. JPEG) of the scanned image. | SSA maintains an authorization on every claim for which it discloses information; no need for an audit. | System modifications may be necessary: (1) to link electronic authorizations to SSA's file on the individual; (2) to establish the database of requests for award determinations on pending cases in order to provide carriers with notification of an award. |
| | SSA responds to the inquiry and sends an e-mail back to the carrier with the needed data if an award has already taken place. | SSA provides carriers with information in a timely fashion. | |
| | If an award hasn't yet taken place, SSA responds to cases still pending, responds with the pending status (date & level of application) and also maintains a database of requests for award determinations on cases still pending. This database includes a claimant's SS number along with the carrier ID. Once a week, SSA runs a query comparing this database against active benefit recipients to identify recent award determinations. SSA notifies each carrier electronically when the query identifies a recent award determination. | This eliminates follow-up requests to SSA for initial award decisions.

There would be one e-mail address per carrier to be used by SSA. | |
| | An annual fee can be charged to each carrier based on anticipated usage, with a true up at year-end based on actual usage. | Fees collected from carriers could fund the salaries of the SSA employees who run the queries &/or respond to the inquiries. | |

HIGHLY CONFIDENTIAL

LINA 0152015

| Possible Solutions | Mechanics | Advantages | Disadvantages |
|---|---|---|---|
| 2. A. Electronic exchange of batch information between each carrier and the Social Security Administration (SSA). | Carriers send a "batch" request form and data feed containing multiple SS numbers via e-mail to SSA in Baltimore. | SSA addresses the request for information on multiple claimants at the same time. This frees up time for SSA employees in the field offices. | An audit process is necessary since no authorizations are submitted to SSA. |
| | SSA responds to the request by running a query and sending data back to the carrier in batch. | Responses to benefit inquiries are uniform and standardized. | Carriers will submit batch requests to SSA for information concerning initial award decisions on the same claimant multiple times until an award determination is made. |
| | If an award hasn't yet taken place, the carrier must re-request information concerning that claimant in future batch requests. | | |
| | If an award has taken place, the carrier may still need to request clarifying or follow-up information from SSA. | | Carriers will also add requests for information to the next batch request to SSA in order to obtain updated information about particular claimants. |
| | Fees can be charged to each carrier based on actual usage. | Fees collected from carrier usage could fund the salary of the SSA employee(s) in Baltimore who respond to these batch requests. | |

HIGHLY CONFIDENTIAL

LINA 0152016

| Possible Solutions | Mechanics | Advantages | Disadvantages |
|---|---|---|---|
| 2.B. Electronic exchange of batch information between a third party aggregator and the Social Security Administration (SSA). | Carriers submit batch requests for information on multiple claimants to a third party aggregator. The third party combines these requests into one large batch-file that is submitted via e-mail to the Social Security Administration (SSA) in Baltimore. | SSA can address information requests for multiple claimants at the same time. This frees up time for SSA employees in the field offices. | An audit process is necessary since no authorizations are submitted to SSA. This may need to include verification that: (1) an authorization was submitted to and retained by the third party aggregator; and (2) the third party aggregator distributed information to the proper carrier. |
| | Electronic images of claimants' authorizations are submitted to and retained by the third party aggregator. | The third party aggregator maintains an authorization for each claimant. As a result, we would implement an audit process to address SSA's privacy concerns. | |
| | SSA responds to the request by running a query and sending the data back to the third party aggregator in batch. If an award hasn't yet taken place, the carrier must re-request information concerning that claimant in future batch requests to the third party aggregator. | Responses to benefit inquiries are uniform and standardized. The third party aggregator is responsible for distributing data back to each of the carriers. | Carriers will submit batch requests to SSA for information concerning initial award decisions on the same claimant multiple times until an award determination is made. |
| | If an award has taken place, the carrier may still need to request clarifying or followup information from SSA. | | Carriers will also add requests for information to the next batch request to SSA in order to obtain updated information about particular claimants |
| | Fees can be charged to each carrier based on actual usage. | Fees collected from carrier usage could fund the salary of the SSA employee in Baltimore who responds to these batch requests. | |

HIGHLY CONFIDENTIAL

LINA 0152017

| Possible Solutions | Mechanics | Advantages | Disadvantages |
|---|---|---|---|
| 3. A. Utilization of a web-based portal (interface) that is maintained by a trusted third party vendor. | Carriers go online and utilize a web-based interface to obtain information on individual (or multiple) claimants from a repository of electronic files maintained by a third party vendor. | SSA no longer has to spend time providing benefit information directly to the disability insurance industry. This frees up time for SSA employees in the field offices. | SSA submits data to a third party vendor for this initiative in order to allow carriers to have access to the requisite information. |
| | If an award hasn't yet taken place, the carrier can, by utilizing the web-based interface, select the option of receiving an e-mail notification of a future award. | Information is obtained in the most timely and effective manner, and provided in a uniform & standardized fashion. | The disability insurance industry would fund the system work necessary by SSA to allow data to pass to the third party vendor. |
| | Carriers are provided with unique identifiers and passwords in order to access the system and maintain an audit trail. | Access to the data is secure and restricted. | |
| | Carriers submit an electronic image of the authorization through the web-based interface. The system would immediately review the authorization for certain key elements to ensure validity and then pull the data from SSA's system into the portal. (A less desirable option would be for the data to become available the next day through the portal following batch processing of these requests.) The authorization would be stored in the electronic file in the data repository. | An audit process would be implemented to address SSA's privacy concerns. An authorization is maintained in the electronic file for each claimant. | An audit process is necessary since no authorizations are submitted to SSA. This process would need to include verification that an authorization was electronically stored in the data repository. |
| | Modest fees can be charged to each carrier based on actual usage. | Fees collected would fund the services of the third party vendor. | |

HIGHLY CONFIDENTIAL

LINA 0152018

| Possible Solutions | Mechanics | Advantages | Disadvantages |
|---|---|---|---|
| 3.B. Utilization of a web-based portal (interface) that is maintained by the Social Security Administration. | Carriers go online and utilize a web-based interface to obtain information on individual (or multiple) claimants from a repository of electronic files maintained by the Social Security Administration. | SSA employees no longer have to spend time providing benefit information to the disability insurance industry. | SSA must allocate resources to do the system development work needed for building the web-based interface. |
| | If an award hasn't yet taken place, the carrier can, by utilizing the web-based interface, select the option of receiving an e-mail notification of a future award. | Information is obtained in the most timely and effective manner, and provided in a uniform & standardized fashion. | The disability insurance industry would be expected to fund the cost of this expense. |
| | Carriers are provided with unique identifiers and passwords in order to access the system and maintain an audit trail. | Access to the data is secure and restricted. | |
| | Carriers submit an electronic image of the authorization through the web-based interface. The system would immediately review the authorization for certain key elements to ensure validity and then pull the data into the portal. (A less desirable option would be for the data to become available the next day through the portal following batch processing of these requests.) The authorization would be stored in the electronic file in the data repository. | SSA maintains images of authorizations in the electronic file for claimants, thus eliminating the need for an audit process. | |
| | Modest fees can be charged to each carrier based on actual usage. | Fees collected could fund any maintenance expense for the web-based interface. | |

HIGHLY CONFIDENTIAL

LINA 0152019

Attachment G

# Audit Controls For Data Exchange Solutions

| Solutions | Audit Controls (applies to one or both solutions) |
|---|---|
| <ul><li>Electronic exchange of batch information between a third party vendor and the Social Security Administration (SSA).</li><li>Utilization of a web-based portal (interface) that is maintained by a trusted third party vendor.</li></ul> | <ul><li>Electronic record needed to tally the number of requests that are sent and returned timely.</li><li>Standards need to be set up for the timely filing of batch request.</li><li>Balancing needs to take place. Controls must be added to make certain that information is complete and accurate and that a process is developed to return incomplete documents (e.g. authorization forms).</li><li>Due diligence of vendor needs to be conducted, including the identification of disaster recovery and business continuity plans.</li><li>Performance standards with the vendor need to be spelled out and must include quality measurements.</li><li>Confidentiality standards need to be in place. Audit rights must be spelled out in the contract with the vendor.</li><li>Vendor needs to have an internal audit program in place aimed at Fraud prevention and detection.</li><li>Process to reconcile fees with the various carriers needs to be in place.</li><li>Controls must be in place to be certain that award information is mapped to the appropriate party.</li><li>Carriers must have an internal audit program in place to verify the proper usage of Social Security award data.</li><li>Carriers must have controls in place to restrict access to the web-based interface to authorized individuals.</li></ul> |

HIGHLY CONFIDENTIAL

HIGHLY CONFIDENTIAL

LINA 0152021

# EXHIBIT B

# MEMORANDUM

**DATE:**       August 29, 2005

**TO:**         Pete Malinauskas, Mario Maldonado

**CC:**         AHIP SSDI Information Work Group

**FROM:**       Winthrop Cashdollar

**SUBJECT:**    Disability Insurer Comments and Questions

This memorandum responds to the Social Security Administration (SSA) request for comments on a list of implementation questions provided by the SSA pursuant to establishing a more efficient system for providing private disability insurers with access to the Social Security Disability Insurance (SSDI) information needed to coordinate private and public disability income benefits. As requested it also raises additional implementation questions.

**Additional Implementation Questions**

Does the SSA have restrictions and requirements regarding data access for the new data warehouse hub?

How will claimant information consent be stored, handled, etc.? What are the SSA requirements for this?

How will SSA calculate the costs for access to/use of the system?

How will testing & validation occur?

Is there a need for a separate test/validation environment?

How will problems be identified and reported by both parties?

What level of support will be agreed to for this data exchange?

How will problems/questions from either party be handled during development and during production?

Are there any impediments to authorized claims subcontractors accessing the system on behalf of their disability insurer clients?

**Ideal System Capabilities**

1

CONFIDENTIAL                                      LINA 0100138

Given the uniqueness of the SSA, its functions, and its IT systems, SSA personnel are in a unique position to assess the best approaches for system solutions to accomplish the shared goals of more efficient transmission of SSDI information. Perhaps the most expeditious next step therefore, is for the SSA to offer its best approach or approaches to answer the key pending implementation questions. To this end, our disability insurer member company representatives have asked AHIP to present a description of the "ideal" capabilities of the proposed system as a part of addressing the key implementation questions. Your familiarity with the SSA system, the SSA *modus operandi*, and your experience will, in all likelihood, enable you to propose the best feasible answers to implementation questions and/or inform us aspects of our "ideal" which cannot be realized.

We have envisioned two basic approaches. These are depicted and described below.

SSDI Interface – Option 1



2

LINA 0100139

**Features of Option 1:**

- Secure FTP or FTP with PGP encryption
- Periodic batch requests and responses
  - Daily or weekly most likely
  - Cut-off time for receipt of batch request in order to get answer in next scheduled response
- Carrier initiates all activity
- SSDI Interface System responds only to authenticated request
- Assignment of carrier transmission ID, password, and token (if required) is independent of basic system. Could be a paper-based manual approach.
- System would include method authorizing access by carrier to SSDI individuals based on carrier obtaining signed release from individual. Question how to verify carrier has release – Could be by periodic audit in which SSA or SSA's agent reviewed carrier's store of releases. Could be integral part of interface in which carrier transmitted image of signed release before being authorized to access SSDI data.

**Advantages/Disadvantages of Option 1:**

Advantages:

- Simple
- No external TPA hardware or software required
- Limits number of external direct accesses to SSA system to the finite number of disability carriers (reduces hacking exposure)
- Lessens load on SSA hardware/software to just meet batch window (rather than a more demanding online response requirement)

Disadvantages:

- Each carrier must develop system for end user request entry, request aggregation, request transmission, and response display
- Information is delayed by batch cycle and may be dated
- Adjuster must occasionally pend activity waiting on response from batch request

**Possible Variations on Option 1:**

- SSA host system catalogues outstanding information request from carrier and then automatically provides updated information in batch response to carrier whenever data changes
- SSA does not host SSDI interface system. Third party administrator hosts. Information exchange is still via batch mode.

3

CONFIDENTIAL

LINA 0100140



SSDI Interface – Option 2

**Option 2:**
Online Web access approach;
TPA hosts interface system

Features of Option 2:
- Real time access in the nature of a web service
- The format for such a system could be an XML based on XSD schemas
- Implemented via SOAP over HTTP or HTTPS (Secure HTTP)
- Probably should support other appropriate standards like WSDL and/or UDDI
- TPA system manages authentication of carrier personnel request for SSDI data – likely 2-factor authentication
- Assignment of personnel ID, password, token, and authority level would be separate but integral part of TPA system.
- SSA request & response handler communicates via secure channel only to TPA
- TPA system provides end user interface to carrier personnel – real time if SSA/TPA exchange is real time; delayed if SSA/TPA exchange is batch
- TPA system can initiate activity (if programmed to do so) as well as carrier personnel

4

CONFIDENTIAL                                                    LINA 0100141

- TPA System would include method authorizing access by carrier to SSDI individuals based on carrier obtaining signed release from individual. Question how to verify carrier has release – Could be by periodic audit in which SSA or SSA's agent reviewed carrier's store of releases. Could be integral part of interface in which carrier transmitted image of signed release before being authorized to access SSDI data.
- Domain values must be clearly defined, i.e. format of numeric fields, error messages/codes returned, etc.
- Codified values (error codes instead of error messages) should be used as appropriate, in order to facilitate automated interfaces into the SSA service.

Advantages/Disadvantages of Option 2:

Advantages:

- Carriers need not independently develop system for end user request entry, request aggregation, request transmission, and response display
- Limits number of external direct accesses to SSA system to one party (TPA)
- If real time SSA/TPA method of exchange, information is the most current possible
- TPA system can be constructed to avoid forcing adjuster to pend activity (even if batch SSA/TPA method of exchange)
- TPA system represents a layer of code that could be modified to meet future needs without affecting SSA component

Disadvantages:

- More complex
- TPA hardware, software, and support personnel required
- Opens up external access to TPA system to very large group of individuals (carrier adjusters and management)
- If real time SSA/TPA method of exchange, imposes significant load on SSA hardware/software to meet reasonable response time
- If batch SSA/TPA method of exchange, TPA must store sensitive SSDI data

Although some in the disability insurance industry find variations of Option 1 to offer significant benefits due to its relative simplicity, our current inclination is to ask whether SSA experience and *modus operandi* indicate that it would be feasible to build a variation of Option 2 that permits insurers – or subcontractors authorized by them – to access the necessary SSDI information via a secure website hosted by a third party. This interface would allow a disability processor to login to the website using a secure ID and pull SSDI info (can be a day/week old for example) for a claimant who has granted authorization. This provides the most flexibility for those who need the SSDI information to coordinate private and public disability income benefits.

If this is feasible from the SSA perspective, we would interested in SSA proposals to answer the key implementation questions accordingly. If aspects are not feasible, we invite SSA to make a counterproposal.

5

CONFIDENTIAL

LINA 0100142

# EXHIBIT C

..... ....



## SOCIAL SECURITY
The Commissioner

November 01, 2005

Ms. Karen Ignagni
President & CEO
America's Health Insurance Plans
601 Pennsylvania Avenue, NW
South Building
Suite 500
Washington, D.C. 20004

Dear Ms. Ignagni:

Earlier this year, discussions between the Social Security Administration (SSA) and America's Health Insurance Plans (AHIP) led to an agreement regarding implementation of a more efficient solution for transmission of the Social Security Disability Insurance (SSDI) beneficiary information necessary to coordinate private and public disability income benefits. That agreement established the form and content of a standard "authorization form" that a beneficiary must sign to authorize SSA to share information regarding SSDI benefit status with the beneficiary's private disability insurer. The agreement also establishes the specific elements of SSDI benefit status information to be shared for purposes of coordinating private and public disability income benefits. A copy of the authorization form is enclosed.

Our objective regarding the form and content of the authorization form was to ensure that SSDI applicants and beneficiaries fully understand the authority requested, its implications, and their rights. Our objective regarding the specific elements of SSDI benefit status information to be shared upon authorization was to ensure that SSA would be providing the information that is necessary and sufficient for benefit coordination. After careful consideration, I am pleased to inform you that we are confident that the agreement meets both of these objectives.

It is, therefore, our intention that SSA now move forward together with AHIP on the implementation of the more efficient solution we envision. Accordingly, I have authorized the appropriate SSA Systems staff to begin direct discussions with AHIP staff and their members regarding the implementation needs of this effort. The implementation of this new system will result in significant efficiencies for both the SSA and private disability insurers; improve the coordination of private and public disability income benefits; and minimize the problems that can arise for SSDI beneficiaries and private disability insurers when SSDI benefit status information is delayed or unavailable to private disability claims managers. I also believe that our current work together can pave the way to even more robust cooperative ventures in the future.

SOCIAL SECURITY ADMINISTRATION    BALTIMORE MD  21235-0001

Page 2 – Ms. Karen Ignagni

I want to thank you for the leadership that your organization has brought to this effort.  And I look forward to our further cooperation on issues of mutual interest.

Sincerely,

Jo Anne B. Barnhart

Enclosure

· Draft

COMPANY LETTERHEAD

## Authorization to Release
## Social Security Disability Claim Related Information

| | | | |
|---|---|---|---|
| Name of Claimant  (Last, First, M.I.) | Date of Birth | Social Security # | Disability Claim #<br>(to be completed by disability claim administrator) |

NOTE:  I understand that by signing this form, I am authorizing the private disability claim administrator named below to obtain (either directly or through a third party agent) the information described below from the Social Security Administration in order to administer my private disability benefits.  I also understand that the Social Security Administration is not affiliated with any private disability plan or related services and does not endorse any particular company.  I am permitted to obtain the information described below from the Social Security Administration. Signing or refusing to sign this form has no impact on the Social Security disability benefits or retirement benefits I may receive or am eligible to receive from the Social Security Administration.

I authorize the Social Security Administration to release certain Social Security disability and/or retirement claim and entitlement related information requested below to:

Claim Administrator, Insurance Carrier or
Third Party Agent :                         _____
Address:
(to be completed by Claim Administrator)    _____

THE FOLLOWING INFORMATION WILL BE REQUESTED FROM THE SOCIAL SECURITY ADMINISTRATION:
(Note: If you have any questions, the Claim Administrator will explain the types of information named below to you.)

APPLICATION INFORMATION:

- Application Date (Disability and/or Retirement)
- Disability Insured Status (Date Last Insured)
- Retirement Insured Status
- Disability Indicator (shows whether individual is receiving Social Security disability benefits)
- Retirement Indicator (shows whether individual is receiving Social Security retirement benefits)
- Latest Date of Disability Onset
- Current Date of Disability Entitlement
- Current Date of Retirement Entitlement

PAYMENT AND PAYMENT HISTORY INFORMATION:

- Primary Insurance Amount (the amount used to determine almost all cash benefit amounts)
- Monthly Benefit Computation (Monthly Benefit and Family Maximum Amounts rounded to nearest dollar)
- Amount of Retroactive Benefits
- Pending Fee Amount for Attorney Fees (if applicable)
- Deductions for Worker's Compensation, Public or State Disability Benefits (includes start/end dates for deductions)

If application for Social Security Disability Benefits was denied:

- Level of Denial (Initial, Reconsideration, Hearing, Appeal, Court)

Any benefits paid or payable under this private insurance claim may be reduced by the amount of, or may be otherwise reduced because of, Social Security benefits that I and/or my dependents receive or are eligible to receive.  If I do not sign this authorization, _____(name of Company)____ ("Company")* may estimate how much I could or do receive in Social Security disability benefits and reduce my private disability benefits by that amount.  Any estimate will not impact the Social Security benefits I may be eligible for or entitled to receive.  In addition, Company may determine my entitlement to private disability benefits or close my claim if I do not sign this authorization.

The information provided by the Social Security Administration will be maintained in my Company disability records for the life of my claim and at least six (6) full calendar years following  my entitlement to or closure of  my private disability claim.

I understand that in order to calculate my private disability benefit and any possible benefit overpayment amount under that policy, Company may use this signed authorization form to request any/all of the information listed above as long as this authorization is in effect.

·

. . ......

This authorization shall remain in effect for the longer of two (2) years from the date below or until a final decision regarding my Social Security disability benefits is made by the Social Security Administration, unless I choose to revoke it. I may revoke this authorization at any time by submitting a signed written request to the disability claim administrator listed at the top of this form. If I elect to revoke this authorization, such action has the same effect as if I never signed this form.

I understand that the information obtained under this authorization will be used for the purpose of determining the amount of benefits payable under this policy and recovery of any overpayments accrued under my private claim. This information may also be disclosed by Company to our affiliates, reinsurers or to other third parties, as required or permitted by law, for the purpose of administering this claim, investigating or pursuing suspected fraud, collecting an overpayment, or for audit activities. Disclosure of information to other parties may be necessary and is permitted for various business reasons related to disability claims administration, including a company acquisition, due diligence activities, and actuarial studies. Any other disclosure or resale of SSA information to other parties is not permitted. A photocopy of this authorization is as valid as the original and my court appointed legal guardian or I have a right to receive a copy of this authorization upon request from _____(name of Company)_____.

Signature: _____ Date: _____

I, _____, sign on behalf of claimant as court appointed legal guardian. (Please attach a copy of the document granting authority.)