UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA *EX REL.* DAWN BARRETT,<br><br>Plaintiff,<br><br>v.<br><br>CIGNA CORPORATION and LIFE INSURANCE COMPANY OF NORTH AMERICA<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 03-12382-MLW<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**<u>DEFENDANTS' OPPOSITION TO RELATOR'S MOTION TO COMPEL</u>**

Defendants CIGNA Corporation and Life Insurance Company of North America (collectively, "Defendants" or "CIGNA"[1]) hereby oppose Relator's Motion to Compel. The requested documents at issue in her motion are cumulative, of little or no importance to the claim actually asserted, and would take literally *tens of thousands of hours* to search for.

Relator seeks discovery that goes well beyond the reasonable limits or merits of her theory of liability. Relator alleges that CIGNA "cause[s] many insureds to file for … SSDI … when a reasonable investigation would have determined that … they were not eligible." Relator's Supp. Responses to Interrogs., No. 2, attached as Exhibit A to the Affidavit of Richard C. Abati ("Abati Aff."). Relator contends that these SSDI applications constitute "false claims" which are filed with the Social Security Administration ("SSA") in violation of the False Claims

---

[1] Defendant CIGNA Corporation ("CIGNA") is a holding company that does not issue insurance. As Relator acknowledges, "CIGNA conducts its business through various wholly-owned subsidiary corporations including [defendant] Life Insurance Company of North America ('LINA'), CIGNA Life Insurance Company of New York and Connecticut General Life Insurance Company." Comp. ¶ 10. For ease of reading, these subsidiaries are collectively referred to herein as "CIGNA" or the "CIGNA Companies."

Act ("FCA"). Relator makes this claim notwithstanding the fact that (a) the information contained in the SSDI applications is not in any way false or inaccurate, and (b) the mechanism through which CIGNA causes the filing of these SSDI applications is the coordination-of-benefits provision in its long-term disability ("LTD") insurance policies, which has long been sanctioned by the SSA, state insurance regulatory bodies, and courts across the nation.

Based upon her belief that CIGNA's policies are nonetheless actionable under the FCA, Relator now seeks an order compelling CIGNA to produce documents that (a) are potentially voluminous and of marginal relevance to any disputed issue of fact and/or (b) would take tens of thousands of hours to locate, if they exist at all. Relator has identified four categories:

(1) non-claim-file documents regarding CIGNA's "practices up and until the date of trial" (Memorandum In Support Of Relator's Motion to Compel at 4), rather than April 14, 2006, the date of Relator's filing of her Second Amended Complaint;

(2) documents relating to CIGNA's Administrative Services Only ("ASO") agreements, even though they are *not* underwritten by CIGNA;

(3) *non*-responsive material appearing in otherwise responsive non-claim-file documents; and

(4) documents concerning any complaints made by CIGNA's insureds relating to SSDI applications (other than those located in the claim files which Relator intends to request as her sample), which are not in a centralized location or a searchable database and, therefore, would require tens of thousands of hours to locate, assuming they even exist.

As discussed more fully below, such documents are either irrelevant to Relator's claim *or* have minimal relevance thereto, which minimal relevance is outweighed by the substantial burden that their production would place upon CIGNA. Accordingly, CIGNA respectfully requests that this Court deny Relator's Motion.

**Background**

1.  **Relator's Allegations**

Relator has alleged that CIGNA causes LTD claimants to submit applications for Social Security Disability Insurance benefits ("SSDIB"), which she contends are "false claims" even though they are facially accurate, by enforcing the coordination-of-benefits provision in its LTD policies. Second Am. Comp. ¶ 123. The coordination-of-benefits provision allows CIGNA to offset from LTD benefits not only the amount of SSDIB received by the claimant but also, if the claimant refuses to apply, the amount of SSDIB that CIGNA estimates the claimant would receive if he/she did apply. *Id.*[2] Moreover, according to Relator, "[a]t the time of submission of the SSDI claim to SSA, CIGNA has extensive information in its files documenting that the individual LTD claimant cannot possibly qualify for SSDI" benefits. *Id.* ¶ 8(b). Despite this knowledge, according to Relator, the CIGNA Companies' policies "require[] LTD claimants to file claims for SSDI with actual knowledge of and deliberate indifference to their clear ineligibility for SSDI" benefits. *Id.*[3]

---

[2] Notably, coordination-of-benefits provisions have existed for decades in disability insurance policies issued by virtually every carrier in the country – not to mention federal and state disability benefit providers, and they have been uniformly upheld by the courts. See, e.g., Baxter v. Briar Cliff College Group Ins. Plan, 409 F. Supp. 2d 1108, 1127 (N.D. Iowa 2006) (estimated SSDIB offset provision did not violate ERISA); Gardner v. Bear Creek Corp., 2007 WL 2318969, at *19 (N.D. Cal. 2007) (rejecting plaintiff's challenge to CIGNA's offset for estimated SSDIB); Lamb v. Conn. Gen. Life Ins. Co., 643 F.2d 108, 112 (3d Cir. 1981) (offset provision in CIGNA policy did not violate Social Security Act); see also, e.g., Buck v. Fries & Fries, Inc., 953 F. Supp. 896, 906 (S.D. Ohio 1996) ("the Court cannot censure UNUM for having requested or required the Plaintiff to apply for Social Security benefits when it was entitled to a set-off if such benefits were awarded").

[3] Relator has conceded that CIGNA's policies do not require *all* LTD claimants to apply for SSDIB. Instead, she has alleged that CIGNA refers all LTD claimants (who by definition are seriously ill or injured individuals who have satisfied a benefit waiting period, meaning they have already been disabled for three to six months) to Social Security assistance vendors that help them pursue claims for SSDIB, unless they fall under one of the following exceptions: (a) their diagnosis is a simple pregnancy, (b) they are able to work part-time and earn at least $800/month, (c) they have a firm return-to-work date within nine months, (d) there are outstanding issues concerning their LTD eligibility or CIGNA is investigating whether they may be ineligible due to a pre-existing condition limitation, or (e) they want to pursue their SSDIB claims on their own or through representatives outside CIGNA's approved network of Social Security assistance vendors. See Abati Aff., Exhibit A at No. 6 (Relator's Supp. Responses to Interrogs.).

CIGNA's alleged motive in causing the submission of purportedly false or fraudulent applications for SSDIB is twofold. First, CIGNA benefits economically from causing its LTD claimants to file for and to be awarded SSDIB because it receives any lump-sum retroactive award of benefits, and its obligation to pay continuing benefits under the LTD policy is reduced by the monthly amount of the claimant's SSDIB. *Id*. ¶¶ 73-74. Second, CIGNA allegedly can reduce its reserves on each such LTD claim while the SSDIB application is pending, thereby supposedly improving CIGNA's financial statements and enabling it to write more disability insurance policies. *Id.* ¶¶ 12, 75-77.

Importantly, the CIGNA Companies' policies and practices at issue in this case, including the coordination-of-benefits provision in its LTD policies, have not changed since the Second Amended Complaint was filed in April 2006. Therefore, if the pre-April 2006 documents produced by CIGNA show that CIGNA's policies and practices violated the False Claims Act, then the violation will have existed through the date of trial. Conversely, if those same documents show that CIGNA's policies and practices prior to April 2006 did not violate the False Claims Act, then there also was no FCA violation after April 2006.

### 2.    Discovery To Date

Extensive discovery has already been conducted by Relator in this matter. For example, CIGNA has produced detailed electronic information for the universe of approximately 268,000 LTD claim files. It has also produced more than 40,000 pages of non-claim-file documents and more than 160,000 pages of claim-file documents.

The distinction between non-claim-file documents and claim-file documents is important because the requests in Relator's Motion to Compel do *not* concern claim-file documents. It is CIGNA's understanding that Relator is currently reviewing the electronic data on the universe of

268,000 LTD claim files, and, based thereon, intends to identify for production several hundred individual LTD claim files subject to the Protective Order on file in this case (*see* Docket No. 84), and any further Order by the Court.[4]  CIGNA then will locate, review, and produce documents from those several hundred claim files.  CIGNA continues to retain all claim-file documents through the present.

CIGNA's collection process for non-claim-file documents has targeted almost 900 employee-custodians of potentially responsive documents.  That process is nearly complete and CIGNA anticipates making a final production of non-claim-file documents shortly.

Finally, through subpoenas, Relator has obtained documents from certain of CIGNA's Social Security assistance vendors who help CIGNA's insureds to pursue claims for SSDIB.

**3.     Discovery In Dispute**

Relator's Motion to Compel raises four disputes between the parties, three of which were ripe for resolution by the Court early on in discovery (though Relator elected not to file a motion to compel at that time), and the last of which has been the subject of more recent discussions.

a.     <u>Discovery Time Period</u>

Relator defined the time period for her document request as all documents prepared, received or created on or after January 1, 1996.  In response, CIGNA objected to the production of documents dated after April 14, 2006, the date of Relator's filing of the Second Amended Complaint.  CIGNA's proposed discovery cut-off date is a reasonable compromise in light of the following facts:  (a) a never-ending, rolling discovery time period would require nearly 900 employees to identify and collect potentially responsive documents until the yet-to-be-scheduled

---

[4]  It is CIGNA's understanding that Relator intends to review this sample, identify alleged false claims, and then extrapolate those identified claims to the larger universe of all 268,000 claims.  CIGNA contends that statistical sampling is inappropriate in this case.  However, it has agreed to produce the claim file sample requested by the Relator, recognizing that it will be up to the Court to determine whether sampling is or is not appropriate.

trial of this matter, which would be unduly burdensome and would unreasonably disrupt CIGNA's business; and (b) many of the documents at issue will simply be duplicative of documents pre-dating April 2006 because there have been no post-April 2006 changes *whatsoever* to the policies and practices which form the basis of Relator's claim. According to Relator's theory of liability, the *disputed* fact at issue is whether there is information in the claim-file documents (which are *not* the subject of Relator's Motion to Compel) showing that it was fraudulent for CIGNA to require or encourage those individual claimants to apply for SSDIB.

Relator informed CIGNA in July of 2007 that the parties were at an impasse regarding the discovery time period and that the "issue seems ready for a judicial determination." Abati Aff., Exhibit B (Letter from Carl S. Nadler to Karen Collari Troake dated July 2, 2007). Nonetheless, Relator apparently did not believe that the collection of documents dated after April 14, 2006 was sufficiently important to pursue for more than nine months. For this additional reason, Relator's requested relief should be denied. *See Continental Cablevision, Inc. v. Storer Broad. Co.*, 653 F. Supp. 451, 464 (D. Mass. 1986) (denying motion to compel discovery responses in light of movant's delay, because "the orderly administration of justice requires that a motion such as this must be filed within a reasonable time") (internal quotation omitted) (citing case where court denied motion to compel because of movant's nine-month delay in filing).

    b. <u>ASO Agreements</u>

CIGNA has objected to producing documents concerning ASO agreements. ASO agreements differ fundamentally from the CIGNA Companies' own LTD policies. An ASO is an arrangement in which a CIGNA Company serves only as the claim administrator for a disability benefit plan that is funded by a third party, usually an employer. There is no policy of

insurance in this arrangement. Discovery of ASO agreements is unnecessary for several reasons. First, because the CIGNA Company does not fund the plan, it receives no financial benefit from SSDIB awards. That is so because (a) SSDIB are deducted from disability benefits paid from the funds of the employer, not CIGNA, and (b) CIGNA's alleged desire to reduce reserves disappears since there is no reserve requirement imposed upon CIGNA with respect to ASO claims. Accordingly, the alleged motive for CIGNA's allegedly false or fraudulent claims is not present. Second, the benefits in the plans administered under ASO agreements are determined by the terms of the employer's plan documents, not a CIGNA policy. Third, the ultimate liability for any benefits payable under the plan's terms rests with the employer rather than CIGNA, since the CIGNA Company acts only as the plan administrator. Finally and importantly, Relator has not indicated how any such document will help her prove her claim.

For the above reasons, ASO-related documents have no relevance to this litigation. Moreover, their production would be unduly burdensome because documents "relating to" ASO agreements include not just the ASO agreements but all paperwork relating to every claim administered by a CIGNA Company under every ASO agreement. Relator disagrees and, on July 11, 2007, informed CIGNA that "Relator is not willing to exclude documents concerning ASOs from the Requests." Abati Aff., Exhibit C (Letter from Carl S. Nadler to Karen Collari Troake dated July 11, 2007). However, the issue apparently was sufficiently unimportant to Relator that she waited nine months to file her Motion to Compel.

      c.      <u>Non-Responsive Material</u>

Relator has instructed CIGNA that all documents should be produced in their "entirety" and that "[n]o non-privileged material shall be redacted." Abati Aff., Exhibit D (Relator's First Set of Document Requests dated March 23, 2007 at Instruction No. 4). CIGNA objected to this

instruction.  Abati Aff., Exhibit E (LINA's Response to Relator's First Set of Document Requests dated April 23, 2007 at General Objection No. 15).  CIGNA subsequently cited case law for Relator which supports its position.  *See Kingsway Fin. Servs., Inc. v. Pricewaterhouse Coopers LLP*, No. 03Civ.5560, 2007 WL 473726, at *3 (S.D.N.Y. Feb. 14, 2007); *Nauman v. Abbott Labs.*, No. 04 C 7199, 2006 WL 1005959, at *8 (N.D. Ill. Apr. 12, 2006).  Soon thereafter, on July 2, 2007, Relator announced that she would "wait to review [CIGNA's] production, but reserve[d] the right to challenge inappropriate redactions."  Abati Aff., Exhibit B (Letter from Carl S. Nadler to Karen Collari Troake dated July 2, 2007).

        d.      Complaints Regarding SSDIB Applications

The final discovery dispute, which has been the subject of more recent discussions between the parties, relates to Relator's request for documents concerning any complaints made by CIGNA's insureds as a result of having been asked to file for SSDIB.  This dispute does *not* concern any complaint documents located in the claim files that Relator intends to identify as her sample, which CIGNA has agreed to produce.

CIGNA has objected to the production of documents responsive to this request, to the extent any even exist, because of the extraordinary burden associated with searching for them.  The files that conceivably could contain such documents include, but are not limited to, the following:  (a) internal files concerning prior and pending litigations with insureds, which total in the thousands and are *not* searchable electronically; (b) the thousands of *non*-litigation files at CIGNA, such as those maintained by the sales department, which possibly might reference a complaint by an insured from a customer service (or some other) perspective; and (c) any of the 268,000 LTD claim files.  CIGNA does not have a searchable database of any kind where such complaints, if there are any, reside.

## ARGUMENT

It is Relator's burden in bringing the Motion to Compel to demonstrate the relevance of the information she seeks. *See Gagne v. Reddy*, 104 F.R.D. 454, 456 (D. Mass. 1984) (noting that party moving to compel must show information sought is relevant); *Caouette v. OfficeMax, Inc.*, 352 F. Supp. 2d 134, 136 (D.N.H. 2005) ("The party seeking information in discovery over an adversary's objection has the burden of showing its relevance."); *Zanowic v. Reno*, No 97Civ.5292, 2000 WL 1376251, at *6 (S.D.N.Y. Sept. 25, 2000) ("party seeking discovery bears the burden of initially showing relevance."). The Motion to Compel may be denied on the grounds that: "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; . . . or (iii) the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C).

As explained below, under these standards, Relator's Motion to Compel should be denied in its entirety.

**1. The Court Should Deny Relator's Motion To Compel Production Of Non-Claim-File Documents Created After the Filing of the Second Amended Complaint in April 2006.**

Relator's request that discovery proceed on a rolling basis up and until trial is overly broad and unduly burdensome. Indeed, for CIGNA to respond properly to such a condition, it would need to ensure that nearly 900 of its employees are constantly identifying and collecting potentially responsive documents until the yet-to-be-scheduled trial of this matter. Although discovery is to be construed liberally, it cannot be so unlimited. *See Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 192 (1st Cir. 2001) (noting that there are limitations on pre-trial discovery to deal with the problems of over-discovery).

Moreover, the non-claim-file documents in question would have minimal, if any, relevance to Relator's theory that CIGNA causes many insureds to file for SSDIB even when a reasonable investigation would have determined that they were ineligible. This is so because there have been no post-April 2006 changes *whatsoever* to the policies and practices which form the basis of Relator's claims. CIGNA has never disputed that the standard LTD policies, as well as the CIGNA Companies' practices, include economic incentives that encourage claimants to apply for SSDI unless they fall within the exceptions stated in footnote 3, *supra*. Relator's claim must be proved by reviewing claim files to see if her theory -- that they include information which makes it clear that the claimant is not eligible for SSDIB -- is supported. As noted *supra*, all post-April 2006 claim-file documents have been and will continue to be preserved.

As a result, most of the documents Relator seeks would simply be duplicative of documents pre-dating April 2006. Either CIGNA's standard practices and policies in effect from prior to April 2006 through the present violate the FCA or they do not; Relator has the pre-April 2006 documents and does not need post-April 2006 documents to prove her case. For this additional reason, Relator's request for limitless discovery of documents and things created after the filing of the Second Amended Complaint should be denied. *See Mead Reins. Co. v. Superior Court*, 188 Cal. App. 3d 313, 317-18 (1986) (defendant not required to produce "[t]he claims files relating to every claim similar to the claim at issue in this action . . . to the present . . ." because to do so was unduly burdensome).

**2.  The Court Should Deny Relator's Motion To Compel Production Of Documents Relating To CIGNA's ASO Agreements.**

Documents relating to CIGNA's ASO agreements with employers are irrelevant to Relator's claims in this case. As described above, ASO agreements differ fundamentally from CIGNA's own LTD policies because, among other things, CIGNA does not underwrite any of the ASO agreements and, therefore, cannot benefit from any reduction in liability due to an insured's application for and receipt of SSDI. As a result, Relator's entire theory regarding CIGNA's motives for causing the submission of false or fraudulent claims is inapplicable to ASO agreements. Consequently, this Court should deny her request for such unnecessarily burdensome discovery. *See Zanowic*, 2000 WL 1376251, at *6 (moving parties' "failure to explain the relevance of [requested] information is fatal to [a] motion to compel").

**3.  The Court Should Deny Relator's Motion To Compel Production Of Non-Responsive Material Appearing In Otherwise Responsive Non-Claim-File Documents.**

Relator's demand that CIGNA produce "all documents redacted for relevancy in their entirety" is inappropriate. Fed. R. Civ. P. 26(b)(1) states, in pertinent part and with added emphasis, that "[p]arties may obtain discovery regarding any nonprivileged matter that is *relevant* to any party's claims or defense." Thus, CIGNA's redaction of irrelevant information from an otherwise responsive document is an abundantly reasonable approach to discovery in this matter. *See, e.g., Kingsway Fin. Servs., Inc. v. Pricewaterhouse Coopers LLP*, No. 03Civ.5560, 2007 WL 473726, at *3 (S.D.N.Y. Feb. 14, 2007) (denying motion to compel production of unredacted versions of documents produced by defendants with non-responsive information redacted); *Nauman v. Abbott Labs.*, No. 04 C 7199, 2006 WL 1005959, at *8 (N.D. Ill. Apr. 12, 2006) (same).

Relator's contention that CIGNA has "repeatedly redacted information that appears to relate to Social Security and SSDI" and therefore "should be ordered to produce all documents redacted for relevancy in their entirety" (Memorandum In Support Of Relator's Motion to Compel at 7), is baseless. In fact, the redactions cited by Relator relate to *non*-SSDI offsets, ASOs, or short-term disability insurance, all of which are confidential and not relevant to the issues in this case.[5]

### 4. The Court Should Deny Relator's Motion To Compel Production Of Documents Regarding Complaints By Insureds Regarding SSDI.

Relator's request that CIGNA produce all documents "relating to complaints made by defendants' insureds about SSDI, including complaints regarding any requirement that insureds apply for SSDI" is oppressive and unduly burdensome. As explained above, the requested discovery contemplates CIGNA's employees manually searching thousands of litigation and non-litigation files, as well as reviewing literally *hundreds of thousands* of LTD claim files. For example, if we assume that approximately fifteen minutes is required to search through each of the 268,000 claim files to try to locate complaint documents,[6] it would take 67,000 hours to complete the search requested by Relator. Moreover, Relator has offered no evidence that such complaint documents even exist, or exist in a statistically meaningful number.

Relator also has not explained the relevance of such documents, if they do exist. One can imagine that a disabled claimant receiving LTD benefits from CIGNA might be resistant to applying for SSDIB as the immediate economic benefit of receiving those benefits flows to CIGNA as an offset, not to the claimant. How does that help Relator prove her claim? Relator's

---

[5] Based on its re-review of these documents, CIGNA identified only one redaction error: LINA 0099177 (Exhibit 7 to the Nadler Declaration submitted with Relator's Motion to Compel). That document will be produced in its entirety to Relator's counsel.

[6] In defense counsel's experience, a thorough review of a claim file, which typically contains hundreds of pages of medical and vocational information, among other things, averages about four hours.

theory of liability is systemic, not individual or anecdotal.  Accordingly, there are only two sets of documents that Relator needs to prove her claim, both of which CIGNA has agreed to produce:  (1) documents showing CIGNA's policies and practices with regard to requiring LTD applicants to apply for SSDIB, and (2) the claim files that Relator selects as her sample, from which she intends to identify alleged "false claims" and then extrapolate those to the larger universe of 268,000 claims.  To the extent that any complaint documents exist in the claim files making up Relator's sample, they will be produced.  To the extent Relator wants CIGNA to go further and spend tens of thousands of hours searching for other hypothetical complaint documents, her request is unreasonable and unduly burdensome.

Put simply, Relator's request for documents "relating to complaints made by defendants' insureds about SSDI" should be denied because "the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(2)(iii); *see also N.O. v. Callahan*, 110 F.R.D. 637, 645 (D. Mass. 1986) (discovery request overly burdensome where search could not be computerized and would require manual search of over 15,000 files); *Mead*, 188 Cal. App. 3d at 318 (requests seeking information that would require over two hundred man-hours to compile and effectively shut down claims department in order to fulfill was oppressive); *Leeson v. State Farm Mut. Auto. Ins. Co.*, 546 N.E.2d 782, 788 (Ill. App. Ct. 1989) (requests seeking information that would require over five hundred man-hours to compile was oppressive); *In re Perrier Bottled Water Litig,*, 138 F.R.D. 348, 352 (D. Conn. 1991) (denying, on grounds of relevance and burdensomeness, motion to compel production of "volumes of sales related minutiae"); *State Farm Mut. Auto. Ins. Co. v. Stephens*, 425 S.E.2d 577, 584-85 (W. Va. 1992) (discovery not permitted where information requested "would take literally years of man-hours to complete and would cost approximately $40 million").

**Conclusion**

For the foregoing reasons, CIGNA respectfully requests that this Court deny Relator's Motion to Compel.

Respectfully submitted,

CIGNA CORPORATION and LIFE INSURANCE COMPANY OF NORTH AMERICA

By their attorneys,

*/s/ Richard C. Abati*
Mitchell H. Kaplan (BBO# 258940)
mkaplan@choate.com
R. J. Cinquegrana (BBO# 084100)
rjcinquegrana@choate.com
Christine J. Wichers (BBO# 631857)
cwichers@choate.com
Richard C. Abati (BBO# 651037)
rabati@choate.com
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA  02110
(617) 248-5000

Dated:  May 2, 2008

- 15 -

## CERTIFICATE OF SERVICE

     I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 2, 2008.

                              */s/Richard C. Abati*
                              Richard C. Abati

4327322v1