# Exhibit B

# HellerEhrman LLP

July 2, 2007

Carl S. Nadler
Carl.Nadler@hellerehrman.com
Direct +1.202.912.2575
Main +1 (202) 912-2000
Fax +1 (202) 912-2020

*By E-Mail*

Karen Collari Troake
Choate, Hall & Stewart
Two International Place
Boston, MA 02110
United States of America

Re:   Barrett/Cigna

Dear Karen:

As promised, I am writing to follow up on the remaining open items concerning Relator's First Set of Documents to Defendant Life Insurance Company of North America ("LINA"). I am available to meet and confer about these remaining issues any day except Wednesday of this week. We plan to finalize our discussions on this subject by the end of the week so we can proceed to seek judicial relief where necessary.

*Instruction on Possession, Custody or Control, and Definition of "you" and "your."* Relator will wait to review LINA's production, but reserves its right to renew its request for documents in the possession of Advantage 2000 Consultants Inc., Allsup, Inc., The Social Security Law Group, or other "Social Security Vendors."

*Instruction on Redactions.* Relator will wait to review LINA's production, but reserves the right to challenge inappropriate redactions.

*Instruction as to Time Period.* Relator stands by its request for all requested documents through the date of LINA's production. This issue seems ready for a judicial determination.

*Administrative Service Only Documents.* Having reviewed the sample ASO agreements, Relator believes LINA should produce all requested documents relating to services it provides pursuant to ASO agreements. Please advise whether you would like to meet and confer further on this issue or agree that it is ready for judicial determination.

*LINA's Objection to Creating Documents.* Relator believes that LINA may be required to create data output files or printouts as necessary to produce electronic records. Please advise whether LINA agrees.

Heller Ehrman LLP  1717 Rhode Island Avenue, NW,  Washington, D.C. 20036-3001  www.hellerehrman.com

Beijing  Hong Kong  London  Los Angeles  Madison, WI  New York  San Diego  San Francisco  Seattle/Anchorage  Silicon Valley  Singapore  Washington, D.C.

HellerEhrman LLP

Karen Troake
July 2, 2007
Page 2

*Request No. 3.* Relator stands by her request as narrowed in the chart. As narrowed, this is surely a very limited number of documents. I believe this is ready for judicial determination.

*Request No. 4.* Relator stands by her request as narrowed in the chart. This issue is also ready for judicial determination.

*Request No. 6.* Relator did not intend subcategories "(A)" and "(B)" as shown in the chart to be conjunctive. The request in general seeks documents relating to SSDI applications or the preparation, submission or processing of applications. Relator's entry in the chart proposed to narrow that request to: (A) any such document in LINA's possession, custody or control relating to SSDI applications; or (b) any other document falling within the general request that was prepared by or sent to management and other agreed-upon identified individuals. Relator stands by this request, so please advise if this is acceptable or the issue is now ready for judicial determination.

*Request No. 7.* This request is not ambiguous. Relator seeks documents sufficient to identify each and every insured who, during the relevant period (a) unsuccessfully applied for SSDI benefits; *and* (b) was denied LTD benefits. Relator expressly defines "unsuccessfully applied" in the chart entry related to Request No. 8. Please advise if LINA is willing to produce these documents or whether the issue is now ready for judicial determination.

*Request No. 8.* This request is equally clear. Relator seeks documents sufficiente to identify each and every insured who, during the relevant time period (a) unsuccessfully applied for SSDI benefits; *and* (b) was awarded LTD benefits. Relator expressly defines "unsuccessfully applied" in the first paragraph of the chart entry for Request No. 8. Please advise if LINA is willing to produce these documents or whether the issue is now ready for judicial determination.

*Request No. 9.* This request is not "resolved." Relator stands by the request as narrowed in her entry in the chart, *i.e.*, as asking for documents sufficient to show each and every insured for whom LINA took offsets or estimated SSDI benefits, together with documents sufficient to show the basis or amount of those offsets or estimates. LINA's last chart entry fails to agree to provide documents sufficient to identify these individuals. Please advise if LINA is willing to produce these documents or whether the issue is now ready for judicial determination.

*Request No. 10.* To the extent LINA has records (such as database records supporting a claims management or payment system) that include the information requested here, Relator is entitled to production of the requested information outside the context of individual claims files. The request is not limited to summary reports or vendor reports, it extends to information on individual claimants' potential actual eligibility for SSDI benefits as well as

HellerEhrman LLP

Karen Troake
July 2, 2007
Page 3

information on individual claimants' applications for SSDI benefits. Please advise if LINA is willing to produce these documents or whether the issue is now ready for judicial determination.

*Request No. 11.* LINA's proposal on this request would be acceptable if the first paragraph of LINA's proposal were changed from "concerning SSDI applications" to "concerning SSDI offsets or estimated SSDI benefits." Please advise if this is acceptable.

*Request No. 12.* LINA's proposal is acceptable.

*Request No. 13.* This request extends beyond documents that would be found in claims files to include documents describing or discussing the general manner in which LINA processes, considers, and tracks SSDI applications and offsets. Please advise if LINA is willing to produce these documents or whether the issue is now ready for judicial determination.

*Request No. 16.* Please confirm that LINA meant to write "Resolved" instead of "Unresolved" in the chart. We are not aware of any remaining disagreement as to this request.

*Request No. 18.* This request is resolved. Relator reserves the right to pursue the issue of "Brio data" further if that arises in the documents or other discovery in this matter.

*Request No. 19.* LINA's proposal is acceptable.

*Request No. 20.* Relator requests at least one exemplar of every policy, rider, amendment, or plan that included any provision or language relating to SSDI benefits, offsets, or requirements. Please advise if LINA is willing to produce these documents or whether the issue is now ready for judicial determination.

*Request No. 24.* Relator requests all the documents identified in this requests. LINA has greater insight than Relator as to whether there are documents responsive to this request that are not also covered by the documents LINA has agreed to produce in response to Requests 21 and 23. In any event, LINA will suffer no prejudice as a result of any overlap (we are only asking that it produce any given responsive document once).

*Request No. 28.* LINA's proposal is acceptable.

*Request No. 29.* Relator stands by its request. This issue seems ready for judicial determination.

*Request No. 34.* Relator seeks at least one complete copy of every manual or similar procedure-type document that discusses or relates to SSDI applications, estimates, offsets, or

HellerEhrman LLP

Karen Troake
July 2, 2007
Page 4

LTD coverage. In this context, Relator meant "settlement" manual as just one example of the types of procedure-type documents LINA might have addressing these topics. Please advise if LINA is willing to produce these documents or whether the issue is now ready for judicial determination.

*Request 36(b).* Relator seeks production of all the documents in this request, not just "periodic reviews" or other periodically-produced documents. We are willing to limit the request to documents sent to or received by management and an identified list of individuals.

*Request 36(c).* Relator stands by her original request. This one is ready for a judicial determination.

*Request 36(d).* Relator stands by her original request. This one is ready for a judicial determination.

*Request 36(e).* Attached to this letter is an example of the source of the phrase "success rate in obtaining awards is 97+%." Please confirm that LINA will produce these documents.

*Request 36(f).* By "other benefits" as used in this request, Relator means "other *financial* benefits." Please confirm that LINA will produce these documents.

*Request 36(g).* LINA's proposal is acceptable.

*Requests 38-40.* LINA's proposals are acceptable.

*Request 41.* Relator is willing to limit this request to documents prepared by or sent to either management or an agreed-to list of individuals. Relator otherwise stands by the full breadth of the original request. Please confirm that LINA will produce these documents.

*Request 43.* Relator is willing to limit this request to documents prepared by or sent to either management or an agreed-to list of individuals. Relator otherwise stands by the full breadth of the original request. Please confirm that LINA will produce these documents.

*Request 44.* Relator stands by this request as narrowed in the chart. This request seems ready for judicial determination.

*Request 45.* Relator is entitled to receive all documents discussing the identified statements, regardless of whether they were used in connection Relator's interrogatories. Please confirm that LINA will produce these documents.

HellerEhrman LLP

Karen Trouke
July 2, 2007
Page 5

*Request 52.* This request is ready for judicial determination.

*Request 53.* Please advise this week the results of LINA's consideration of Relator's proposed narrowing of this request.

*Request 54.* Please advise this week the results of LINA's consideration of Relator's proposed narrowing of this request.

*Request 55.* Relator stands by her original request. Please confirm that LINA will produce these documents.

*Request 56.* LINA cannot reasonably object to this request as purportedly duplicative of Request No. 20. Relator only seeks to review one copy of any document responsive to either request. LINA should simply agree to produce the documents responsive to this request.

*Request 60.* LINA cannot reasonably object to this request as purportedly duplicative of Request Nos. 35 and 36. Relator only seeks to review one copy of any document responsive to any of these requests. LINA should simply agree to produce the documents responsive to this request.

*Request 63.* Relator is not willing to limit subsection (B) of her narrowed proposal on this request to documents sent to or received by management. She is entitled to production of all documents requested in subsection (B). Please advise whether you are willing to produce these documents.

*Request 63d.* Relator is willing to work with you to identify an agreed-upon "representative group." This should resolve our differences as to this request.

\* \* \* \*

Karen, I'd also like to discuss the roughly $63,000 in costs Cigna says it has incurred in connection with production of the claims files. Is the $0.12 cost per page that you identify in your June 22 e-mail based solely on copying or does it also include costs associated with "collection"?

In any event, I am puzzled that Cigna has incurred any costs associated with copying these claims files. Cigna's "General Objection No. 17" in response to our document request indicated that: "[w]here the following responses indicate that CIGNA will produce documents, CIGNA will make hard copies available for inspection at the offices of CIGNA's counsel, or CIGNA will make arrangements to deliver hard copies to the offices of Relator's counsel upon satisfactory assurance of payment for the reasonable cost of copying and

HellerEhrman LLP

delivery." Since we never discussed any "satisfactory assurance of payment" for copying costs, Relator has assumed that Cigna would follow this procedure make the files available for inspection at your offices.

Relator never agreed to pay for copying costs associated with sending an entire set of these claims files to Relator. Our understanding was that Cigna would make documents available "for inspection at the Offices of Cigna's Counsel," so that particular documents could be selected for copying, as Cigna expressly said it would do in the absence of a subsequent (and different) agreement by the parties;

I'd appreciate your providing a more complete explanation of why Cigna has incurred such substantial costs in advance of our having had a chance even to review the documents at your offices, let alone advise which selected records we actually would request be copied for physical production to Relator.

Regards,

Carl S. Nadler

7/2/07 5:01 PM ()