REDACTED

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* DAWN BARRETT,<br><br>        Plaintiff,<br><br>v.<br><br>CIGNA CORPORATION and LIFE<br>INSURANCE COMPANY OF NORTH<br>AMERICA,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)   Civil Action No. 03-12382-MLW<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**RELATOR'S REPLY MEMORANDUM
IN SUPPORT OF HER MOTION TO COMPEL**

Cigna's opposition fails to justify its refusal to produce the four unquestionably relevant categories of documents sought by Relator. *First*, Cigna argues that it would be unduly burdensome for it to produce relevant documents it created after April 14, 2006. But Cigna is already in the process of producing similar documents for a ten year period, and there is no legal basis for Cigna to cut off discovery where, as here, a continuing violation is alleged. *Second*, Cigna refuses to produce documents related to its Administrative Services Only Agreements ("ASO agreements") on the novel theory that it had no "motive" to cause Long Term Disability ("LTD") claimants under those policies to apply for SSDI. Cigna's contention that it has no motive in connection with the ASO agreements is (a) false, and (b) irrelevant, since Cigna does not contend that it does not *actually* cause ASO applicants to apply for SSDI. *Third,* Cigna suggests that it would be unduly burdensome for it to search the "claims files"—Cigna's specific files concerning each individual insured—for complaints related to SSDI. But Relator has repeatedly informed Cigna that it is not asking for Cigna to search the individual LTD claims

REDACTED

files for these complaints. It would not be unduly burdensome for Cigna to conduct a reasonably diligent search for complaints in its remaining files. *Fourth,* Cigna contends that it should be allowed to make a unilateral determination of which portions of the documents it produces are relevant to Relator's claims. But neither of the unreported cases it cites support this remarkable proposition, and Cigna's own opposition suggests that hundreds of the documents that it has redacted were likely redacted in error, even under Cigna's own determination of "relevance." Finally, Cigna complains that Relator's motion is not timely. However, the timing of Relator's motion is entirely the result of defendants' repeated requests, over a period of almost five months, for more time to respond to Relator's request to finalize the issues for this motion.

I.    ARGUMENT

    A.    **Documents That Postdate April 14, 2006 Should Be Produced In Light Of Cigna's Admission That Its False Claims Act Violations Continue**

As set forth in Relator's Memorandum in Support of Her Motion to Compel, there is simply no basis for Cigna to arbitrarily cut off relevant discovery as of the filing of Relator's Second Amended Complaint. *See United States v. Orlofsky*, No. 79 Civ. 4798, 1982 U.S. Dist. LEXIS 10944, at *3 (S.D.N.Y. Jan. 11, 1982); *Carlson Cos. v. Sperry & Hutchinson Co.*, 374 F. Supp. 1080, 1102 (D. Minn. 1973); *United States v. City of Torrance*, 164 F.R.D. 493, 495-96 (C.D. Cal. 1995). Nor does Cigna argue that the documents that postdate the filing of Relator's Second Amended Complaint are irrelevant to Relator's allegations. To the contrary, Cigna concedes that its illegal practices continue to the present day. *See* Opp. at 4 (Cigna's "policies and practices at issue in this case . . . have not changed since the Second Amended Complaint was filed in April 2006"); Opp. at 6 ("there have been no post-April 2006 changes *whatsoever* to the policies and practices which form the basis of Relator's claim.") (emphasis in original). Cigna's admission of relevant post-Complaint conduct is more than sufficient to compel

2

REDACTED

discovery of the post-April 14, 2006 documents under the Federal Rules. *See Carlson Cos.*, 374 F. Supp. at 1101-1102 (recognizing that after the 1946 amendments, relevancy was the sole criteria for evaluating the appropriateness of post-complaint discovery); *see also Bass v. Gulf Oil Corp.*, 304 F. Supp. 1041 (S.D. Miss. 1969).

Relator is entitled to discover the post-Complaint documents because Cigna's internal documents will shed crucial light on the details of Cigna's practice of forcing its LTD claimants to apply for SSDI benefits regardless of the claimants' actual eligibility.

This email and others like it yet to be discovered in the documents created by Cigna after April 14, 2006 are highly probative of the full scope of Cigna's False Claims Act violations, and should be produced.

Cigna's contention that it would be "burdensome" to produce documents that postdate April 14, 2006 can be dispensed with quickly. Burden is not a legitimate basis to withhold post-

REDACTED

Complaint documents relevant to the suit. Moreover, it is simply not credible to contend that it is not unduly burdensome to produce documents from custodians for the period 1996-2006, yet it is unduly burdensome to produce documents from those same custodians through the date of production. This is especially true in light of Cigna's representations to Relator that it has instituted a litigation hold on documents through the present. Likewise, Cigna's argument that a "limitless" discovery period would be unduly burdensome is moot because that is not the relief requested by Relator's motion. Cigna's unilateral selection of the April 14, 2006 date is wholly arbitrary and cannot be justified as an attempt to avoid "limitless" discovery. Therefore, the Court should order Cigna to produce all responsive documents, irrespective of date.[1]

---

[1] Defendants' suggestion that Relator's Motion to Compel does not encompass "claim-file" documents—which are Cigna's internal documentation and records about a particular claim for Long Term Disability—is untrue. Relator's Motion to Compel seeks production of all responsive documents that postdate April 14, 2006 and in no way excludes claims file documents. *See* Mot. at 1, 2, 4. Moreover, this issue is ripe for adjudication because Cigna has refused to produce electronic claims records that postdate April 14, 2006. *See* Nadler Decl. ¶ 3, Ex. 2 (April 1, 2008 Letter from Kimbrell to Abati). Cigna originally produced electronic claims records that *included* the post-April 14, 2006 data but that (1) omitted data for at least one of Cigna's subsidiaries, Connecticut General, and (2) failed to define the relationship between the 26 separate tables produced. *Id*. On May 2, 2007, Cigna finally produced updated electronic records, but, over Relator's objection and specific reservation of her right to move to compel, refused to include any information that postdated April 14, 2006. *Id*. Since Cigna's opposition to Relator's Motion to Compel now concedes that its illegal practices continued through the present, there is absolutely no basis for Cigna to continue to refuse to produce the post-April 14, 2006 electronic claims data. Therefore, the Court should order Cigna to produce both claims file and non-claims file documents (including electronic data) that postdate April 14, 2006. Relator also notes that, based on its review of the re-production of Cigna's electronic records, Cigna's updated electronic records are *still* deficient and Cigna will need to produce a *third* set of updated electronic records before Relator will be able to proceed with her prosecution of this action.

**B.   Defendants Have Not Established That It Would Be Unduly Burdensome To Produce Documents Concerning Complaints Made By Their Insureds Relating To SSDI Applications**

Cigna suggests that it would be unduly burdensome for it to conduct a reasonably diligent search for complaints it received from LTD claimants about its practice of forcing those LTD claimants to submit SSDI applications. Opp. at 12. Cigna's primary argument, however, has already been resolved. Although Cigna protests that Relator's request would require it to "review[] literally *hundreds of thousands* of LTD claims files," *see* Opp. at 12 (emphasis in original), Relator has repeatedly informed defendants that she is not requesting that defendants manually search the LTD claims files. *See, e.g.,* Mot. at 6.[2]

Cigna fails to provide any evidence to support the notion that reviewing its remaining *non-claims* files would be unduly burdensome. Opp. at 12. Relator submits that it would not be unduly burdensome for defendants to conduct a reasonably diligent search of its hardcopy files for documents responsive to this request, just as they would be obligated to do in response to any other request. Moreover, access to complaints by Cigna's claimants is central to Relator's ability to identify witnesses who will testify at trial about how Cigna caused them to apply for SSDI. Therefore, the Court should order the production of complaints by Cigna's claimants.

**C.   Defendants Are Equally Motivated To Cause LTD Claimants To Apply For SSDI Benefits Under Their Administrative Services Only Agreements ("ASO agreements")**

Defendants offer the novel theory that Relator should not be entitled to discovery of documents related to their ASO agreements because Relator has not articulated a "motive" for defendants to cause LTD claimants under those policies to apply for SSDI claims. Opp. at 11.

---

[2] If, as Defendants have represented, the LTD claims files are not electronically searchable, Relator does not disagree that it would be burdensome to review each of them manually to determine whether they contain a complaint about SSDI.

Tellingly, Cigna does not argue that it does not actually cause LTD claimants to file for SSDI under the ASO agreements it administers, nor does Cigna offer any evidence that its practices with respect to administering the ASO agreements differ in any material respect from their practices in administering the policies it underwrites. Opp. at 6-7, 11. For this reason alone, the Court should order Cigna to produce all claims and non-claims file documents related to the ASO agreements. Furthermore, as Cigna's own documents demonstrate, its assertion that it lacks a "motive" to cause LTD applicants under the ASO agreements to apply for SSDI is false in at least three respects:

- Cigna is motivated to cause LTD applicants to apply for SSDI under the ASO policies it administers because it can market the potential cost savings to its customers.

- As its own publicly available securities filings indicate, Cigna functions as both a stop-loss and excess insurer under some of the ASO polices, giving it ample reason to reduce its own potential liability under these policies through Social Security offsets. *See* Nadler Decl. ¶ 5, Ex. 4 (Cigna's 1996 10K at LINA 0188706) and Nadler Decl. ¶ 6, Ex. 5 (Cigna's 2005 10K at LINA 0189450).

- 

Cigna thus has ample motive to cause LTD applicants under its ASO agreements to apply for SSDI. It has not suggested that it does not actually do so. Therefore, the Court should order Cigna to produce all claims and non-claims file documents related to the ASO agreements.

### D. The Rules Of Civil Procedure Do Not Allow A Litigant To Make Unilateral Redactions For "Relevance"

Under the Federal Rules, discovery must be allowed "unless it is clear that the information sought can have no possible bearing upon the subject matter of the action." *See*

REDACTED

*Gagne v. Reddy*, 104 F.R.D. 454, 456 (D. Mass. 1984) (cited in Defendants' Opp. at 9). The complete context of the more than one thousand redacted documents Cigna has produced to date is very likely to have considerable bearing upon this case. This is especially true since Cigna admits that one of the only six exemplar documents Relator appended to her Motion to Compel was redacted in "error." Opp. at 11. If this error rate is representative of the rate of redaction "errors" in the production, more than 166 documents produced by Cigna were mistakenly redacted. Moreover, Cigna's redactions render many of the documents meaningless. *See, e.g.*, Nadler Decl. ¶ 8, Ex 7 at LINA 0184094-113; *Nauman v. Abbott Labs.*, No. 04 C 7199, 2006 WL 1005959, at * 8 (N.D. Ill. Apr. 12, 2006) (ordering parties to confer about Plaintiffs' concern that information has been redacted "that is truly responsive, and that the redactions delete meaningful context for the information that is provided.").

    Cigna nonetheless suggests that it should be entitled to make a unilateral determination of which portions of the documents it produces are "relevant" to Relator's claims and redact those portions of the documents it deems non-relevant. Opp. at 11. Allowing a party to determine which portions of a document are relevant to opposing counsel's requests simply cannot be reconciled with the liberal standard of relevancy set forth in the Federal Rules of Civil Procedure. *See Gagne*, 104 F.R.D. at 456 ("[r]elevancy is broadly construed at the discovery stage of litigation and a request for discovery should be considered relevant if there is *any* possibility that the information sought may be relevant to the subject matter of the action.") (quoting *Miller v. Doctor's Gen. Hosp.*, 76 F.R.D. 136, 138 (W.D. Okla. 1977)) (emphasis in original). Nor do either of the two unreported cases from outside of the 1st Circuit cited in Cigna's opposition support Cigna's remarkable proposition. Rather, only one of those cases allowed a party to redact a discrete portion of a single document that was not *responsive* to

outstanding discovery requests. *Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, No. 03 Civ. 5560, 2007 WL 473726, at * 3 (S.D.N.Y. Feb. 13, 2007) (refusing to order the production of the portion of one document unrelated to the transaction at issue in the litigation, where the redacted portion was not responsive to the discovery requests). The circumstances of *Kingsway* and *Nauman* are markedly different from the circumstances here, where a litigant has made a unilateral determination of which portions of more than a thousand documents are "relevant" to the opposing party's case.

      E.      **The Timing Of Relator's Motion To Compel Was Dictated By Defendants' Dilatory Conduct And Their Specific Requests To Delay The Filing Of This Motion Until All Related Discovery Issues Were Resolved**

Defendants argue that Relator's motion should be denied because Relator waited to file this motion until defendants had finalized their position on the related discovery issues. Opp. at 6. It is disingenuous for defendants to suggest that the timing of Relator's motion was the result of anything other than defendants' dilatory conduct, including their repeated requests that Relator delay the filing of this motion until they could finalize their position on the other outstanding discovery issues. By November 20, 2007, Relator was prepared to file her motion to compel, and sent defendants a final letter laying out all unresolved issues. *See* Nadler Decl. ¶ 9, Ex. 8 (November 20, 2007 letter).[3] From that point forward, defendants repeatedly requested additional time to resolve outstanding disputes, most of which were, in fact, resolved. In spite of dozens of requests by Relator asking defendants to finalize their position so she could bring her motion to compel, defendants took almost five *months* to respond to Relator's request to narrow

---

[3] Relator first served discovery on defendants CIGNA Corporation ("CIGNA") and its subsidiary Life Insurance Corporation of North America ("LINA") (collectively referred to as "Defendants" or "Cigna") on March 23, 2007. From March 23, 2007 to November 20, 2007 the parties exchanged approximately two hundred separate pieces of correspondence, and Relator worked diligently to resolve the issues between the parties. *See* Nadler Decl. ¶ 19.

REDACTED

the unresolved issues. *See* Nadler Decl. ¶¶ 9-18, Exs. 8-17. Moreover, during that five-month period, defendants repeatedly assured Relator that defendants were on the cusp of responding to Relator's outstanding request to narrow the issues, only to once again request additional time to respond so that defendants could "finalize their position."[4] In total, it took defendants more than a year to hold an internal meeting to "finalize" its position on Relator's discovery requests. Nadler Decl. ¶ 17, Ex. 16 (April 3, 2008 Email from Abati to Rose). Given its own dilatory conduct, defendants should not be heard to complain (at a minimum) that it took too long for Relator to file this motion.

---

[4] *See, e.g.,* Nadler Decl., Ex. 9 (December 20, 2007 Email from Rose to Abati: "We have not yet seen a response to [the November 20, 2007] letter. Please let me know when we can expect a response."); Ex. 10 (December 21, 2007 Email from Abati to Rose: "**We expect to send a response** [to Relator's November 20, 2007 letter] **at the end of the week, or, more likely, shortly after the New Year holiday**."); Ex. 12 (February 11, 2008 Letter from Kimbrell to Abati: "[Y]ou have [not] responded to Carl Nadler's November 20, 2007 letter … regarding the scope of Relator's document requests (outstanding for eleven weeks)"); Ex. 13 ( February 28, 2008 Letter from Rose to Abati: "I am writing regarding the issues raised in Relator's November 20, 2007 letter … Defendants have not yet responded to this letter, despite numerous inquiries from Relator as to when she could expect a response." ); Ex. 14 (March 3, 2008 Email from Abati to Rose: "I am working with the client on a few of the issues raised [in your letters] and **plan to send you a response tomorrow**."); Ex. 15 (March 4, 2008 Letter from Abati to Rose: "[R]egarding the document request issues raised in Relator's November 20, 2007 [] letter[] … Unfortunately … **we are still in the process of tracking down responses to some of these remaining issues.**"); Ex. 17 (April 2, 2008 Email from Rose to Abati: "Relator will be moving to compel on Friday, April 4, 2008 … Please let me know by … April 3, 2008 if defendants agree to narrow or resolve any of these issues."); Ex. 17 (April 3, 2008 Email from Abati to Rose: "I called to inform you that my client **has an internal meeting scheduled for this Monday to finalize its position** with respect to certain of your identified requests. Since there is a possibility of resolving some of these requests informally, **I would ask that you hold off on filing your motion until Tuesday**."); Ex. 18 (April 4, 2007 Email from Rose to Abati: "Relator has now been **waiting for defendants to finalize their position regarding certain requests for more than 145 days**. However, as Relator would like to resolve as many issues as possible informally, we will delay the filing of our motion to compel."); Ex. 18 (April 7, 2008 Email from Abati to Rose: "Given **the parties mutual interest in resolving issues 'informally,' please hold-off on filing your motion until at least the COB tomorrow.**") (emphasis added).

REDACTED

## II.     CONCLUSION

Relator's motion should be granted. The Court should order defendants to provide full and complete responses to the discovery requests set forth in the appendix attached to Relator's Motion to Compel.

Dated:  May 20, 2008                                                      Respectfully submitted,


                                                                          /s/ Carl. S. Nadler
                                                                          Carl S. Nadler


Mary Louise Cohen                                       Peter B. Krupp, B.B.O.  #548112
Colette G. Matzzie                                      LURIE & KRUPP, LLP
PHILLIPS AND COHEN LLP                                  One McKinley Square
2000 Massachusetts Ave., NW                             Boston, MA  02109
Washington, DC  20036                                   Tel: (617) 367-1970
Tel: (202) 833-4567                                     Fax: (617) 367-1971
Fax: (202) 833-1815

Carl S. Nadler
Stuart M. Rennert
HELLER EHRMAN LLP
1717 Rhode Island Avenue, NW
Washington, DC  20036
Tel: (202) 912-2000
Fax: (202) 912-2020

                                                        *Counsel for Dawn Barrett*

REDACTED

## CERTIFICATE OF SERVICE

    I, Carl S. Nadler, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on May 20, 2008.

                          /s/ Carl S. Nadler
                          Carl S. Nadler