| Net Investment Income | Year Ended December 31, | | |
|---|---|---|---|
| | 1996 | 1995 | 1994 |
| | (dollar amounts in millions) | | |
| Fixed maturities | $1,686 | $1,706 | $1,649 |
| Equity securities | 5 | 34 | 55 |
| Mortgage loans | 951 | 894 | 839 |
| Policy loans | 548 | 499 | 365 |
| Real estate | 184 | 272 | 284 |
| Other investments | 75 | 117 | 63 |
| Total | 3,449 | 3,522 | 3,255 |
| Less investment expenses | 163 | 258 | 277 |
| Net investment income, pre-tax | $3,286 | $3,264 | $2,978 |
| Net investment yield[1] | 8.40% | 8.66% | 8.44% |

(1) The net investment yield is equal to (a) net investment income multiplied by two, divided by (b) the sum, at the beginning and end of the year, of cash, invested assets (at cost or amortized cost less impairments) and investment income due and accrued, less borrowed money, less net investment income.

### Property and Casualty Investments

The following tables summarize the distribution of investments attributable to CIGNA's Property and Casualty segment and the related net investment income from such investments.

| Investments | As of December 31, | | |
|---|---|---|---|
| | 1996 | 1995 | 1994 |
| | (in millions) | | |
| Fixed maturities | | | |
| Bonds: | | | |
| Foreign governments[1] | $ 2,256 | $ 2,343 | $ 1,757 |
| Finance | 1,484 | 1,655 | 1,700 |
| States, municipalities and political subdivisions | 1,300 | 1,373 | 1,266 |
| Public utilities | 945 | 906 | 682 |
| Energy | 936 | 835 | 547 |
| U.S. government and government agencies and authorities | 479 | 687 | 802 |
| Consumer products | 749 | 679 | 381 |
| Manufacturing | 715 | 627 | 353 |
| Transportation | 368 | 310 | 139 |
| Other | 295 | 240 | 644 |
| Total bonds | 9,527 | 9,655 | 8,271 |
| Asset-backed securities | 1,894 | 1,921 | 1,716 |
| Redeemable preferred stocks | 3 | 4 | 11 |
| Total fixed maturities | 11,424 | 11,580 | 9,998 |
| Equity securities | | | |
| Common stocks: | | | |
| Industrial and miscellaneous | 268 | 271 | 333 |
| Banks, trust and insurance companies | 85 | 53 | 45 |
| Public utilities | 29 | 13 | 3 |
| Total common stocks | 382 | 337 | 381 |
| Non-redeemable preferred stocks | 1 | 16 | 8 |
| Total equity securities | 383 | 353 | 389 |
| Other long-term investments | 237 | 320 | 693 |
| Short-term investments | 368 | 209 | 342 |
| Total investments | $12,412 | $12,462 | $11,422 |

See Note 2(D) to the Financial Statements of CIGNA's Annual Report for a discussion of the method of valuation of investments.

(1) Comprises fixed maturities of sovereign foreign governments.

31

LINA 0188734

| Net Investment Income | Year Ended December 31, | | |
|---|---|---|---|
| | 1996 | 1995 | 1994 |
| | (dollar amounts in millions) | | |
| Interest: | | | |
| Taxable | $778 | $782 | $726 |
| Tax-exempt | 66 | 70 | 77 |
| Total | 844 | 852 | 803 |
| Dividends from stocks | 14 | 11 | 12 |
| Total investment income | 858 | 863 | 815 |
| Less investment expenses | 54 | 69 | 59 |
| Net investment income, pre-tax | $804 | $794 | $756 |
| Net investment yield[1] | 6.88% | 6.93% | 6.92% |

(1) The net investment yield is equal to (a) net investment income multiplied by two, divided by (b) the sum, at the beginning and end of the year, of cash, invested assets (at cost or amortized cost less impairments) and investment income due and accrued, less borrowed money, less net investment income.

### Other Investments and Operations

Invested assets for CIGNA's Other Operations totalled $3.0 billion and $3.3 billion as of December 31, 1996 and 1995. They include fixed maturities, mortgage loans, real estate and investments maturing in less than one year. These assets primarily support the settlement annuity and non-insurance businesses. Net investment income for these investments was $243 million for 1996, $238 million for 1995 and $212 million for 1994.

### H. Regulation

CIGNA's insurance subsidiaries are licensed to do business in, and are subject to regulation and supervision by, the states of the United States, the District of Columbia, certain U.S. territories and various foreign jurisdictions. Although the extent of regulation varies, most jurisdictions have laws and regulations governing rates, solvency, standards of business conduct, and various insurance and investment products. Licensing of insurers and their agents and the approval of policy forms are usually required. The form and content of statutory financial statements and the type and concentration of investments are also regulated. Each insurance subsidiary is required to file periodic financial reports with supervisory agencies in most of the jurisdictions in which it does business, and its operations and accounts are subject to examination by such agencies at regular intervals.

Most states and the District of Columbia require licensed insurance companies to support guaranty associations, which are organized to pay claims on behalf of insolvent insurance companies. These associations levy assessments on member insurers in a particular state to pay such claims on the basis of their proportionate shares of the lines of business of the insolvent insurer. Maximum assessments permitted by law in any one year generally range from 1% to 2% of annual premiums written by each member in a particular state with respect to the categories of business involved, and may be offset against premium taxes payable in some states. For additional information about guaranty fund assessments, see Note 19 to CIGNA's 1996 Financial Statements included in its Annual Report.

The increase in the number of insurance companies that are impaired or insolvent has prompted state and federal initiatives to enhance solvency regulation. For example, the NAIC has developed model solvency-related laws that many states have adopted. In addition, risk-based capital rules have been adopted for life insurance and property and casualty insurance companies that recommend a specified level of capital depending on the types and quality of investments held, the types of business written and the types of liabilities maintained. Depending on the ratio of the insurer's adjusted surplus to its risk-based capital, the insurer could be subject to various regulatory actions ranging from increased scrutiny to conservatorship.

LINA 0188735

Four levels of regulatory attention may be triggered if the ratio of adjusted surplus to risk-based capital (the "RBC ratio") is insufficient. If an insurance company's RBC ratio is between 75% and 100%, the "company action level," the company must submit a plan to the regulator detailing corrective action it proposes to undertake. If a company's RBC ratio is between 50% and 75%, the "regulatory action level," the company must also submit a plan, but a regulator may also issue a corrective order requiring the insurer to comply within a specified period. If a company's RBC ratio is between 35% and 50%, the "authorized control level," the regulatory response is the same as at the "regulatory action level," but in addition, the regulator may take action to rehabilitate or liquidate the insurer. If the RBC ratio for a company is less than 35%, the "mandatory control level," the regulator must rehabilitate or liquidate the insurer. An insurance commissioner may allow a property and casualty company at the mandatory control level that is writing no business and is running off its existing business to continue its run-off. As of December 31, 1996, CIGNA's life insurance and ongoing domestic property and casualty insurance subsidiaries were adequately capitalized under such rules, and the run-off subsidiaries are running off their liabilities as described on page 19.

In the past, federal oversight of insurer solvency has also been proposed. Among proposals that have been discussed are optional federal chartering, which would preempt most state insurance regulations; minimum federal solvency standards, which would be supervised by the states; federal licensing of all reinsurers; and establishment of a national guaranty fund.

Recent state and federal regulatory scrutiny of life insurers' sales and advertising practices, including the adequacy of disclosure regarding products and their future performance, may result in increased regulations in this area.

CIGNA's insurance subsidiaries are subject to state laws regulating insurers that are subsidiaries of insurance holding companies. Under such laws, which are generally becoming more stringent, certain dividends, distributions and other transactions between an insurance subsidiary and the holding company or its other subsidiaries may require notification to, or be subject to the approval of, one or more state insurance commissioners.

Federal and state proposals to reform health care are expected to continue in 1997. Such proposals are discussed on page 7.

CIGNA's HMOs are subject to regulation and supervision by various government agencies in the states in which they do business. The extent of regulation varies, but most jurisdictions regulate licensing, solvency, contracts and rates. Regulation of these entities also may include standards for quality assurance, minimum levels of benefits that must be offered and requirements for availability and continuity of care. A few states require HMOs to participate in guaranty funds, and several state legislatures have recently considered insolvency and guaranty fund legislation, a trend that is expected to continue. Some of CIGNA's HMOs are also federally qualified and subject to regulation as to benefits, solvency and rates under the federal HMO Act. CIGNA's mental health and substance abuse clinics are licensed by the states in which they operate for quality of treatment.

Regulatory concerns with insurance risk selection have increased significantly in recent years. For example, some states have imposed restrictions on the use of underwriting criteria related to AIDS. Also, various interpretations under the Americans with Disabilities Act may affect the provision of insurance benefits under certain types of policies.

Domestic property and casualty insurers are required to participate in assigned risk plans, joint underwriting authorities, pools and other residual market mechanisms to write coverages on risks not acceptable under normal underwriting standards. In addition, states have responded to concerns about the availability and affordability of commercial casualty insurance by proposing or adopting legislation, regulations or positions to, among other things, limit rate increases, require rate reductions or refunds, restrict nonrenewal and cancellation with respect to commercial lines coverages or require the refunding of "excess" profits, and by expanding regulatory examination of the appropriateness of rates, non-renewals and cancellations.

33

LINA 0188736

The extent of insurance regulation varies significantly among the countries in which CIGNA conducts its international operations. As a foreign insurer, CIGNA is, in many countries, faced with greater restrictions than domestic competitors. Trade barriers include discriminatory licensing procedures, compulsory cessions of reinsurance, required localization of records and funds, higher premium and income taxes, and requirements for local participation in an insurer's ownership. Where appropriate, CIGNA has incorporated insurance subsidiaries locally to improve its position.

Depending upon their nature, CIGNA's investment management activities and products with United States contacts are subject to the federal securities laws, ERISA and other federal and state laws governing investment management activities and products. Investments made by United States insurance companies are subject to state insurance laws. Investment management activities and products outside the United States, and investments made by non-United States insurance companies outside the United States, are subject to local regulation. Often, the investment management activities and investments of individual insurance companies are subject to regulation by multiple jurisdictions.

Federal initiatives can have an impact on the insurance business in a variety of ways. In addition to proposals discussed above related to Superfund, health care reform and federal oversight of insurer solvency, current and proposed federal measures that may significantly affect the insurance business include: pension and other employee benefit regulation; tax legislation; Social Security legislation; financial services regulation; amendment to the antitrust exemption provided for the business of insurance by the McCarran-Ferguson Act; and repeal of the Glass-Steagall Act.

The economic and competitive effects of the legislative and regulatory proposals discussed above would depend upon the final form such legislation or regulation might take.

*I. Ratings*

CIGNA and certain of its insurance subsidiaries are rated by nationally recognized rating agencies. While the significance of individual ratings varies from agency to agency, companies assigned ratings at the top end of the range have, in the opinion of the rating agency, the strongest capacity for repayment of debt or payment of claims, while companies at the bottom end of the range have the weakest capacity.

Insurance ratings represent the opinions of the rating agencies on the financial strength of the company and its capacity to meet the obligations of insurance policies. Insurance rating scales of the principal agencies that rate the Company's insurance subsidiaries are characterized as follows: A.M. Best, A++ to F ("Superior" to "In Liquidation"); Moody's, Aaa to C ("Exceptional" to "Lowest"); Standard & Poor's ("S&P"), AAA to R ("Superior" to "Regulatory Action"); and Duff & Phelps, AAA to DD ("Highest" to "Order of Liquidation").

LINA 0188737

As of March 10, 1997, the insurance rating for Life Insurance Company of North America obtained from A.M. Best was A+ ("Superior," 2nd of 15), and the insurance rating for CIGNA Insurance Company of Europe, S.A., N.V. obtained from S&P was A ("Good", 6th of 18). The insurance ratings obtained for CG Life and the domestic property and casualty ongoing and run-off operations were as follows:

| | Insurance Ratings[1] | | |
| | Life | Property & Casualty | |
| | CG Life | Ongoing Operations[2] | Run-off Operations[3] |
|---|---|---|---|
| A.M. Best | A+ ("Superior," 2nd of 15) | A− ("Excellent," 4th of 15) | B+ ("Very Good," 6th of 15)[4] |
| Moody's | Aa3 ("Excellent," 4th of 19) | Baa1 ("Adequate," 8th of 19) | Ba1 ("Questionable," 11th of 19) |
| S&P | AA ("Excellent," 3rd of 18) | BBB ("Adequate," 9th of 18) | BBB ("Adequate," 9th of 18) |
| Duff & Phelps | AAA ("Highest," 1st of 18) | A− ("High," 7th of 18) | BBB− ("Adequate," 10th of 18) |

(1) Includes the rating assigned, the agency's characterization of the rating and the position of the rating in the agency's rating scale (e.g., CG Life's rating by A.M. Best Company, Inc. ("A.M. Best") is the 2nd highest rating awarded in its scale of 15).

(2) The rated Ongoing Operations consist of CIGNA's domestic ongoing property and casualty insurance subsidiaries. For further information, see "Domestic Operations" on page 15.

(3) The rated Run-off Operations consist of domestic insurance subsidiaries that manage run-off policies and related claims, including those for asbestos-related and environmental pollution exposures. For further information, see "Run-off Operations" on page 19.

(4) Although this is the sixth highest rating in the A.M. Best rating scale, it is the second highest rating available for run-off operations.

Debt ratings are assessments of the likelihood that the Company will make timely payments of principal and interest. The rating scales of the principal agencies that rate CIGNA's senior debt are characterized as follows: Moody's, Aaa to C ("Best" to "Lowest"); S&P, AAA to D ("Extremely Strong" to "Default"); and Duff & Phelps, AAA to DD ("Highest" to "Default"). The commercial paper rating scales for Moody's, S&P, Duff & Phelps and Fitch Investors Service ("Fitch") are as follows: Moody's, Prime-1 to Not Prime ("Superior" to "Not Prime"); S&P, A-1+ to D ("Extremely Strong" to "Default"); Duff & Phelps, D-1+ to D-5 ("Highest" to "Default"); and Fitch F-1+ to D ("Exceptional" to "Default").

As of March 10, 1997, the debt ratings obtained from the following agencies were as follows:

| | Debt Ratings[1] | |
| | CIGNA Corporation | |
| | Senior Debt | Commercial Paper |
|---|---|---|
| Moody's | A3 ("Upper-Medium-grade," 7th of 19) | Prime-2 ("Strong," 2nd of 4) |
| S&P | A− ("Strong," 7th of 22) | A-2 ("Satisfactory," 3rd of 7) |
| Duff & Phelps | A ("Adequate," 6th of 18) | D-1 ("Very high," 2nd of 7) |
| Fitch | Not rated | F-1 ("Very Strong," 2nd of 6) |

(1) Includes the rating assigned, the agency's characterization of the rating and the position of the rating in the applicable agency's rating scale.

LINA 0188738

The ratings are reviewed routinely by the rating agencies and may be changed at their discretion. In connection with the Healthsource tender offer described on page one, S&P placed CG Life's insurance rating and CIGNA's senior debt rating on credit watch with negative implications, and Duff & Phelps placed CIGNA's senior debt rating and commercial paper rating on rating watch with developing implications.

### J. Miscellaneous

Portions of CIGNA's insurance business are seasonal in nature. Reported claims under group health and certain property and casualty products are generally higher in the first quarter. Sales, particularly of individual life products, are generally lowest in the first quarter and highest in the fourth quarter.

CIGNA and its principal subsidiaries are not dependent on business from one or a few customers. No customer accounted for 10% or more of CIGNA's consolidated revenues in 1996. CIGNA and its principal subsidiaries are not dependent on business from one or a few brokers or agents. In addition, CIGNA's insurance businesses are generally not committed to accept a fixed portion of the business submitted by independent brokers and agents, and generally all such business is subject to its approval and acceptance.

CIGNA had approximately 42,800, 44,700 and 48,600 employees as of December 31, 1996, 1995 and 1994, respectively.

## Item 2.   Properties

CIGNA's headquarters are located in approximately 90,240 total square feet of leased office space at One Liberty Place, Philadelphia, Pennsylvania. CIGNA Property & Casualty, CIGNA Group Insurance: Life, Accident, Disability, and CIGNA International are located in a leased building of approximately 1.25 million total square feet at Two Liberty Place, Philadelphia. CIGNA HealthCare, CIGNA Individual Insurance, CIGNA Reinsurance and CIGNA Investment Management are located in a complex of buildings owned by CIGNA, aggregating approximately 1.4 million total square feet of office space, located at 900-950 Cottage Grove Road, Bloomfield, Connecticut. CIGNA's Retirement & Investment Services operations are located in approximately 230,000 total square feet of leased office space at Metro Center One, Hartford, Connecticut. In addition, CIGNA owns or leases office buildings, or parts thereof, throughout the United States and in other countries. For additional information concerning leases and property, see Notes 2(H) and 15 to CIGNA's 1996 Financial Statements included in its 1996 Annual Report. This paragraph does not include information on investment properties.

CIGNA's information processing resources include large mainframe computers in major data centers, a multitude of personal computers connected through local area networks and a nationwide backbone network that provides desktop computing and office automation to CIGNA employees. CIGNA's policies regarding the safeguarding of critical corporate data are disseminated to all employees. The policies require data security through the use of appropriate identification and password practices and data backup through appropriate offsite storage techniques. Protection of CIGNA's major data centers, which house large amounts of critical corporate data, involves access controls, fire detection and suppression systems, and other hazard elimination processes. In addition, CIGNA maintains a formal disaster contingency plan, which includes recovery services in the event of a disaster in a CIGNA data center. Critical files are stored offsite, to be available for recovery in the event of a disaster.

## Item 3.   Legal Proceedings

CIGNA is continuously involved in numerous lawsuits arising, for the most part, in the ordinary course of business, either as a liability insurer defending third-party claims brought against its insureds or an insurer defending coverage claims brought against it by its policyholders or other insurers. One such area of litigation involves policy coverage and judicial interpretation of legal liability for asbestos-related and environmental pollution claims.

While the outcome of all litigation involving CIGNA, including insurance-related litigation, cannot be determined, litigation (including that related to asbestos and environmental pollution claims) is not expected

LINA 0188739

to result in losses that differ from recorded reserves by amounts that would be material to results of operations, liquidity or financial condition. Also, reinsurance recoveries related to claims in litigation, net of allowance for uncollectible reinsurance, are not expected to result in recoveries that differ from recorded recoverables by amounts that would be material to results of operations, liquidity or financial condition.

**Item 4.**  *Submission of Matters to a Vote of Security Holders*

None.

**Executive Officers of the Registrant**

Reference is made below to CG Life, which is an indirect subsidiary of CIGNA. All officers are elected to serve for a one-year term or until their successors are elected. Principal occupations and employment during the past five years are listed.

H. EDWARD HANWAY, 45, President of CIGNA HealthCare beginning February 1996; President of CIGNA International from March 1994 until February 1996; and President of CIGNA International: Property & Casualty from February 1989 until March 1994.

GERALD A. ISOM, 58, President of CIGNA Property and Casualty since March 1993; Group Vice President of Transamerica Corporation from 1990 until March 1993; and Chief Executive Officer and President of Transamerica Insurance Group from January 1985 until March 1993. Transamerica Corporation is a major provider of financial and insurance products.

THOMAS C. JONES, 50, President of CIGNA Individual Insurance since February 1995; President of CG Life since March 1995; President of CIGNA Reinsurance Property & Casualty from March 1994 until February 1995; Executive Vice President, Chief Administrative Officer and member of the Boards of Directors of NAC Re Corporation and NAC Reinsurance Corporation from November 1985 until January 1994; and Chief Operating Officer of NAC Re Corporation and NAC Reinsurance Corporation from June 1993 and September 1990, respectively, until January 1994. NAC Re Corporation is the parent corporation of NAC Reinsurance Corporation, a major provider of property and casualty reinsurance products.

JOHN K. LEONARD, 48, President of CIGNA Group Insurance: Life, Accident, Disability since March 1992; and Senior Vice President of CIGNA from March 1989 until March 1992, with responsibility for Corporate Marketing and Strategy.

DONALD M. LEVINSON, 51, Executive Vice President of CIGNA since March 1988, with responsibility for Human Resources and Services.

FRANCINE M. NEWMAN, 52, President of CIGNA Reinsurance since July 1984.

BYRON D. OLIVER, 54, President of CIGNA Retirement & Investment Services since February 1988.

ARTHUR C. REEDS, III, 52, President of CIGNA Investment Management since March 1992; and Managing Director and Head of Portfolio Management, CIGNA's Investment Division, from May 1986 until March 1992.

B. KINGSLEY SCHUBERT, 51, President of CIGNA International beginning February 1996; Senior Vice President of CIGNA International (Asia-Pacific) from March 1995 until February 1996; President of CIGNA Insurance Company in Japan from June 1992 until February 1996; Senior Vice President of American International Underwriters Corporation from September 1991 until April 1992. American International Underwriters Corporation is a subsidiary of American International Group, Inc., a major provider of insurance products.

JAMES G. STEWART, 54, Executive Vice President and Chief Financial Officer of CIGNA since 1983.

WILSON H. TAYLOR, 53, Chairman of CIGNA since November 1989; and Chief Executive Officer of CIGNA since November 1988 and President of CIGNA since May 1988.

LINA 0188740

THOMAS J. WAGNER, 57, Executive Vice President and General Counsel of CIGNA since January 1992; and Corporate Secretary of CIGNA from January 1988 until April 1992.

## PART II

### Item 5.  *Market for the Registrant's Common Equity and Related Stockholder Matters*

The information under the caption "Quarterly Financial Data—Stock and Dividend Data" on page 45 and under the caption "Stock Listing" on the inside back cover of CIGNA's Annual Report is incorporated by reference, as is the information from Note 8 to CIGNA's Consolidated Financial Statements and the number of shareholders of record as of December 31, 1996 under the caption "Highlights" on page one of CIGNA's Annual Report.

### Item 6.  *Selected Financial Data*

The five-year financial information under the caption "Highlights" on page one of CIGNA's Annual Report is incorporated by reference.

### Item 7.  *Management's Discussion and Analysis of Financial Condition and Results of Operations*

The information on pages eight through 21 of CIGNA's Annual Report is incorporated by reference.

### Item 8.  *Financial Statements and Supplementary Data*

CIGNA's Consolidated Financial Statements on pages 22 through 43 and the report of its independent accountants on page 44 of CIGNA's Annual Report are incorporated by reference, as is the unaudited information set forth under the caption "Quarterly Financial Data—Consolidated Results" on page 45.

### Item 9.  *Changes in and Disagreements with Accountants on Accounting and Financial Disclosure*

None.

## PART III

### Item 10.  *Directors and Executive Officers of the Registrant*
**A.**  *Directors of the Registrant*

The information under the captions "Nominees for Election" and "Incumbent Directors to Continue in Office" on pages 5 and 6 of CIGNA's proxy statement dated March 19, 1997 are incorporated by reference.

**B.**  *Executive Officers of the Registrant*

See PART I above.

### Item 11.  *Executive Compensation*

The information under the captions "Executive Compensation" on pages 12 through 16 and "Compensation of Directors" on pages 8 and 9 of CIGNA's proxy statement dated March 19, 1997 is incorporated by reference.

### Item 12.  *Security Ownership of Certain Beneficial Owners and Management*

The information under the captions "Ownership of CIGNA Corporation Common Stock and Equivalents by Directors, Nominees and Executive Officers" on pages 2 and 3 and "Ownership of CIGNA Corporation

38

LINA 0188741

Common Stock by Certain Beneficial Owners" on page 4 of CIGNA's proxy statement dated March 19, 1997, relating to security ownership of certain beneficial owners and management, is incorporated by reference.

## Item 13.  *Certain Relationships and Related Transactions*

The information under the caption "Certain Transactions" on page 9 of CIGNA's proxy statement dated March 19, 1997 is incorporated by reference.

## PART IV

## Item 14.  *Exhibits, Financial Statement Schedules, and Reports on Form 8-K*

A. (1) The following financial statements have been incorporated by reference from the pages indicated below of CIGNA's Annual Report:

> Consolidated Statements of Income and Retained Earnings for the years ended December 31, 1996, 1995 and 1994 — page 22.

> Consolidated Balance Sheets as of December 31, 1996 and 1995 — page 23.

> Consolidated Statements of Cash Flows for the years ended December 31, 1996, 1995 and 1994—page 24.

> Notes to Financial Statements—pages 25 through 43.

> Report of Independent Accountants, Price Waterhouse LLP—page 44.

> (2) The financial statement schedules are listed in the Index to Financial Statement Schedules on page FS-1.

> (3) The exhibits are listed in the Index to Exhibits beginning on page E-1.

B. During the last quarter of the fiscal year ended December 31, 1996, the registrant filed a Report on Form 8-K dated October 30, 1996 containing a copy of a news release reporting its third quarter 1996 results.

LINA 0188742

## SIGNATURES

Pursuant to the requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed by its undersigned duly authorized officer, on its behalf and in the capacity indicated.

Date: March 27, 1997

CIGNA Corporation

By: /s/ JAMES G. STEWART

James G. Stewart
Executive Vice President
and Chief Financial Officer
(Principal Financial Officer)

Pursuant to the requirements of the Securities Exchange Act of 1934, this report has been signed below by the following persons on behalf of the registrant and in the capacities indicated on March 27, 1997.

**Principal Executive Officer:**

Wilson H. Taylor*
Chairman, Chief Executive Officer
and a Director

**Principal Accounting Officer:**

**Directors:***

Robert P. Bauman
Robert H. Campbell
Alfred C. DeCrane, Jr.
James F. English, Jr.
Bernard M. Fox
Marilyn W. Lewis
Paul F. Oreffice
Charles R. Shoemate
Louis W. Sullivan, M.D.
Carol Cox Wait

/s/ GARY A. SWORDS

Gary A. Swords
Vice President and Chief Accounting Officer

*By: /s/ THOMAS J. WAGNER

Thomas J. Wagner
Attorney-in-Fact

40

LINA 0188743

## CIGNA CORPORATION AND SUBSIDIARIES
## INDEX TO FINANCIAL STATEMENT SCHEDULES

|  |  | PAGE |
|---|---|---|
| Report of Independent Accountants on Financial Statement Schedules . . . . . . | | FS-2 |

**Schedules**

| | | | PAGE |
|---|---|---|---|
| I | Summary of Investments—Other Than Investments in Related Parties as of December 31, 1996 . . . . . . . . . . . . . . . . . . . . . . . . . . . | | FS-3 |
| II | Condensed Financial Information of CIGNA Corporation (Registrant) | | FS-4 |
| III | Supplementary Insurance Information . . . . . . . . . . . . . . . . . . . . . . . . . | | FS-8 |
| IV | Reinsurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | FS-10 |
| V | Valuation and Qualifying Accounts and Reserves . . . . . . . . . . . . . . . | | FS-11 |
| VI | Supplemental Information Concerning Property-Casualty Insurance Operations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | FS-12 |

Schedules other than those listed above are omitted because they are not required or are not applicable, or the required information is shown in the financial statements or notes thereto, which are incorporated by reference from CIGNA's Annual Report.

LINA 0188744

### Report of Independent Accountants on
### Financial Statement Schedules

To the Board of Directors
  of CIGNA Corporation

    Our audits of the consolidated financial statements referred to in our report dated February 11, 1997 appearing on page 44 of the 1996 Annual Report to Shareholders of CIGNA Corporation (which report and consolidated financial statements are incorporated by reference in this Annual Report on Form 10-K) also included an audit of the Financial Statement Schedules listed in the index on page FS-1 of this Form 10-K. In our opinion, these Financial Statement Schedules present fairly, in all material respects, the information set forth therein when read in conjunction with the related consolidated financial statements.

/s/ PRICE WATERHOUSE LLP

Philadelphia, Pennsylvania
February 11, 1997

FS-2

LINA 0188745

### CIGNA CORPORATION AND SUBSIDIARIES
### SCHEDULE I
### SUMMARY OF INVESTMENTS—OTHER THAN INVESTMENTS IN RELATED PARTIES
### DECEMBER 31, 1996
### (In Millions)

| Type of Investment | Cost | Fair Value | Amount at which shown in the consolidated balance sheet |
|---|---|---|---|
| Fixed maturities | | | |
| Bonds: | | | |
| United States government and government agencies and authorities | $ 1,104 | $ 1,275 | $ 1,275 |
| States, municipalities and political subdivisions | 1,608 | 1,776 | 1,776 |
| Foreign governments | 2,272 | 2,416 | 2,416 |
| Public utilities | 2,492 | 2,624 | 2,624 |
| Convertibles and bonds with warrants attached | 36 | 36 | 36 |
| All other corporate bonds | 17,563 | 18,280 | 18,280 |
| Asset-backed securities | 8,313 | 8,510 | 8,510 |
| Redeemable preferred stocks | 16 | 16 | 16 |
| Total fixed maturities | 33,404 | 34,933 | 34,933 |
| Equity securities | | | |
| Common stocks: | | | |
| Industrial, miscellaneous and all other | 434 | 523 | 523 |
| Banks, trust and insurance companies | 86 | 117 | 117 |
| Public utilities | 42 | 51 | 51 |
| Non-redeemable preferred stocks | 11 | 10 | 10 |
| Total equity securities | 573 | 701 | 701 |
| Mortgage loans on real estate | 10,927 | | 10,927 |
| Policy loans | 7,296 | | 7,296 |
| Real estate investments (including $545 million of real estate acquired in satisfaction of debt) | 1,102 | | 1,102 |
| Other long-term investments | 255 | | 255 |
| Short-term investments | 1,320 | | 1,320 |
| Total investments | $54,877 | | $56,534 |

FS-3

LINA 0188746

**CIGNA CORPORATION AND SUBSIDIARIES**

**SCHEDULE II**
**CONDENSED FINANCIAL INFORMATION OF CIGNA CORPORATION**
**(REGISTRANT)**
**STATEMENTS OF INCOME**
**(In Millions)**

| | For the year ended December 31, | | |
| --- | --- | --- | --- |
| | 1996 | 1995 | 1994 |
| Intercompany income | $ 2 | $ 2 | $ 2 |
| Total revenues | 2 | 2 | 2 |
| Operating expenses: | | | |
| Interest | 93 | 109 | 111 |
| Intercompany interest | 30 | 29 | 18 |
| Other | 10 | 5 | 3 |
| Total operating expenses | 133 | 143 | 132 |
| Loss before income taxes | (131) | (141) | (130) |
| Income tax benefit | (39) | (34) | (34) |
| Loss of parent company | (92) | (107) | (96) |
| Equity in income of subsidiaries | 1,148 | 318 | 650 |
| Net income | $1,056 | $ 211 | $ 554 |

See Notes to Condensed Financial Statements on FS-7.

LINA 0188747

CIGNA CORPORATION AND SUBSIDIARIES

SCHEDULE II
CONDENSED FINANCIAL INFORMATION OF CIGNA CORPORATION
(REGISTRANT)
BALANCE SHEETS
(In Millions)

|  | As of December 31, | |
|  | 1996 | 1995 |
|---|---|---|
| **Assets:** | | |
| Cash and cash equivalents | $ — | $ 4 |
| Investments in subsidiaries | 9,005 | 9,069 |
| Other assets | 178 | 184 |
| Goodwill | 56 | 70 |
| Total assets | $9,239 | $9,327 |
| **Liabilities:** | | |
| Intercompany | $ 422 | $ 179 |
| Short-term debt | 286 | 410 |
| Long-term debt | 853 | 892 |
| Other liabilities | 470 | 689 |
| Total liabilities | 2,031 | 2,170 |
| **Shareholders' Equity:** | | |
| Common stock (shares issued, 88; 87) | 88 | 87 |
| Additional paid-in capital | 2,572 | 2,536 |
| Net unrealized appreciation — fixed maturities | 539 | 1,025 |
| Net unrealized appreciation — equity securities | 88 | 73 |
| Net translation of foreign currencies | (45) | (27) |
| Retained earnings | 4,855 | 4,041 |
| Less treasury stock, at cost | (889) | (578) |
| Total shareholders' equity | 7,208 | 7,157 |
| Total liabilities and shareholders' equity | $9,239 | $9,327 |

See Notes to Condensed Financial Statements on FS-7.

FS-5

LINA 0188748

CIGNA CORPORATION AND SUBSIDIARIES

SCHEDULE II

CONDENSED FINANCIAL INFORMATION OF CIGNA CORPORATION
(REGISTRANT)
STATEMENTS OF CASH FLOWS
(In Millions)

| | For the year ended December 31, | | |
|---|---|---|---|
| | 1996 | 1995 | 1994 |
| **Cash Flows from Operating Activities:** | | | |
| Net Income | $ 1,056 | $ 211 | $ 554 |
| Adjustments to reconcile net income to net cash provided by (used in) operating activities: | | | |
| Equity in income of subsidiaries | (1,148) | (318) | (650) |
| Dividends received from subsidiaries | 926 | 545 | 523 |
| Other liabilities | (148) | 159 | (162) |
| Other, net | 6 | 27 | (87) |
| Net cash provided by operating activities | 692 | 624 | 178 |
| **Cash Flows from Investing Activities:** | | | |
| Capital contributions to subsidiaries | (250) | (16) | (158) |
| Other, net | (14) | (6) | — |
| Net cash used in investing activities | (264) | (22) | (158) |
| **Cash Flows from Financing Activities:** | | | |
| Net change in intercompany debt | 253 | (471) | 164 |
| Net change in commercial paper | (6) | (13) | (38) |
| Issuance of long-term debt | — | 86 | 112 |
| Repayment of debt | (157) | — | (44) |
| Repurchase of common stock | (292) | — | — |
| Issuance of common stock | 12 | 21 | 5 |
| Dividends paid | (242) | (222) | (219) |
| Net cash used in financing activities | (432) | (599) | (20) |
| Net increase (decrease) in cash and cash equivalents | (4) | 3 | — |
| Cash and cash equivalents, beginning of year | 4 | 1 | 1 |
| Cash and cash equivalents, end of year | $ — | $ 4 | $ 1 |

See Notes to Condensed Financial Statements on FS-7.

FS-6

LINA 0188749

## CIGNA CORPORATION AND SUBSIDIARIES

### SCHEDULE II
### CONDENSED FINANCIAL INFORMATION OF CIGNA CORPORATION
### (REGISTRANT)

### NOTES TO CONDENSED FINANCIAL STATEMENTS

The accompanying condensed financial statements should be read in conjunction with the Consolidated Financial Statements and the accompanying notes thereto in the Annual Report.

Note 1—In 1993, CIGNA implemented SFAS No. 115, "Accounting for Certain Investments in Debt and Equity Securities," which required that debt and equity securities be classified into different categories and carried at fair value if they are not classified as held-to-maturity. During the fourth quarter of 1995, the Financial Accounting Standards Board (FASB) issued a guide to implementation of SFAS No. 115, which permitted a one-time opportunity to reclassify securities subject to SFAS No. 115. Consequently, CIGNA reclassified all held-to-maturity securities to available-for-sale as of December 31, 1995. The non-cash reclassification of these securities, which had an aggregate amortized cost of $11.8 billion and fair value of $12.8 billion, resulted in an increase of approximately $300 million, net of policyholder-related amounts and deferred income taxes, in net unrealized appreciation included in Shareholders' Equity as of December 31, 1995.

Note 2—In February 1997, CIGNA announced its intent to acquire the outstanding shares of Healthsource, Inc. (Healthsource) for $1.65 billion, including the payment of approximately $250 million of outstanding Healthsource long-term debt. Healthsource's principal businesses are managed care and group indemnity insurance. The transaction, which is subject to regulatory approval, is expected to be completed in 1997. Healthsource had revenues of $1.7 billion and a net loss of $4 million for 1996. Healthsource's shareholders' equity was approximately $400 million as of December 31, 1996.

Note 3—Long-term debt, net of current maturities, consists of CIGNA's 8.16% Notes due 2000; 8¾% Notes due 2001; 7.17% Notes due 2002; 7.4% Notes due 2003; 6⅜% Notes due 2006; 8¼% Notes due 2007; 7.65% Notes due 2023; 8.3% Notes due 2023; and Medium-term Notes with interest rates ranging from 5¾% to 9¾%, and original maturity dates from approximately five to ten years. As of December 31, 1996 and 1995, the weighted average interest rate on Medium-term Notes was 8.5%.

Maturities of long-term debt for each of the next five years are as follows: 1997—$39 million; 1998—$82 million; 1999—$10 million; 2000—$53 million; 2001—$145 million.

During 1995, CIGNA's 8.2% Convertible Subordinated Debentures due in 2010 were converted through non-cash transactions into approximately 3.6 million shares of CIGNA common stock.

In 1995, CIGNA issued $25 million of unsecured 8.16% Notes due in 2000; $25 million of unsecured 7.17% Notes due in 2002; and $36 million of Medium-term Notes.

As of December 31, 1996, CIGNA had approximately $800 million remaining under an effective shelf registration statement filed with the Securities and Exchange Commission that may be issued as debt securities, equity securities or both, depending upon market conditions and CIGNA's capital requirements.

Interest paid on short- and long-term debt amounted to $97 million, $113 million and $109 million for 1996, 1995 and 1994, respectively.

Note 4—CIGNA Corporation files a consolidated U.S. federal income tax return with its domestic subsidiaries. Net income taxes paid in connection with the consolidated return were $285 million, $163 million and $477 million during 1996, 1995 and 1994, respectively.

FS-7

LINA 0188750

# CIGNA CORPORATION AND SUBSIDIARIES

## SCHEDULE III
## SUPPLEMENTARY INSURANCE INFORMATION
### (In Millions)

| Segment | Deferred policy acquisition costs | Future policy benefits and contractholder deposit funds | Unpaid claims and claim expenses |
|---|---|---|---|
| **Year Ended December 31, 1996:** | | | |
| Property and Casualty[3]: | | | |
| Domestic (Ongoing only) | $ 174 | $ — | $ 6,469 |
| International (Ongoing only) | 248 | 2,094 | 2,628 |
| Run-off operations | 2 | 73 | 7,503 |
| Total Property and Casualty | 424 | 2,167 | 16,600 |
| Employee Life and Health Benefits | 26 | 4,287 | 1,927 |
| Employee Retirement and Savings Benefits | 88 | 19,106 | |
| Individual Financial Services | 692 | 13,612 | 314 |
| All Other | — | 2,490 | |
| Total | $1,230 | $41,662 | $18,841 |
| **Year Ended December 31, 1995:** | | | |
| Property and Casualty[3]: | | | |
| Domestic (Ongoing only) | $ 177 | $ — | $ 6,121 |
| International (Ongoing only) | 203 | 2,126 | 2,569 |
| Run-off operations | 11 | 73 | 8,433 |
| Total Property and Casualty | 391 | 2,199 | 17,123 |
| Employee Life and Health Benefits | 29 | 4,410 | 1,914 |
| Employee Retirement and Savings Benefits | 76 | 20,233 | |
| Individual Financial Services | 613 | 12,565 | 266 |
| All Other | — | 2,655 | |
| Total | $1,109 | $42,062 | $19,303 |
| **Year Ended December 31, 1994:** | | | |
| Property and Casualty[3]: | | | |
| Domestic — pre-restructuring | $ 228 | $ — | $14,510 |
| International | 185 | 1,833 | 2,398 |
| Total Property and Casualty | 413 | 1,833 | 16,908 |
| Employee Life and Health Benefits | 28 | 3,909 | 2,125 |
| Employee Retirement and Savings Benefits | 71 | 19,493 | — |
| Individual Financial Services | 616 | 10,080 | 213 |
| All Other | — | 2,138 | — |
| Total | $1,128 | $37,453 | $19,246 |

(1) Amounts presented are shown net of the effects of reinsurance.

(2) The allocation of net investment income is based upon the investment year method, the identification of certain portfolios with specific segments, or a combination of both.

(3) CIGNA's domestic property and casualty operations were restructured into ongoing and run-off operations effective December 31, 1995. Amounts shown for the Property and Casualty segment's ongoing and run-off operations for 1995 are reported on a pro forma basis as though the restructuring was in place at the beginning of 1995. These pro forma results are not necessarily indicative of the results that would have been reported had the restructuring actually occurred as of January 1, 1995. Information for the Property and Casualty segment on a pro forma basis is not available prior to 1995. Consolidated Property and Casualty segment amounts, including International, did not change as a result of the restructuring.

LINA 0188751

| Unearned premiums | Premiums and fees(1) | Net investment income(2) | Benefits, losses and settlement expenses(1) | Policy acquisition expenses | Other operating expenses | Premiums written |
|---|---|---|---|---|---|---|
| $ 862 | $ 1,671 | $ 259 | $ 1,298 | $ 383 | $ 356 | $1,637 |
| 870 | 2,568 | 243 | 1,631 | 545 | 435 | 1,787 |
| 17 | 159 | 302 | 332 | 58 | 100 | 76 |
| 1,749 | 4,398 | 804 | 3,261 | 986 | 891 | 3,500 |
| 139 | 8,341 | 567 | 6,229 | 12 | 2,313 | — |
| — | 235 | 1,680 | 1,419 | 21 | 181 | — |
| 52 | 942 | 1,039 | 1,363 | 119 | 333 | — |
| — | — | 243 | 201 | — | 20 | — |
| $1,940 | $13,916 | $4,333 | $12,473 | $1,138 | $3,738 | $3,500 |
| | | | | | | |
| $ 930 | $ 1,749 | $ 240 | $ 1,375 | $ 445 | $ 474 | $1,706 |
| 956 | 2,716 | 268 | 1,811 | 561 | 430 | 1,817 |
| 110 | 175 | 286 | 1,576 | 41 | 82 | 64 |
| 1,996 | 4,640 | 794 | 4,762 | 1,047 | 986 | 3,587 |
| 150 | 8,135 | 574 | 6,105 | 9 | 2,193 | — |
| — | 258 | 1,722 | 1,522 | 18 | 159 | — |
| 30 | 881 | 968 | 1,268 | 107 | 314 | — |
| — | — | 238 | 198 | — | 16 | — |
| $2,176 | $13,914 | $4,296 | $13,855 | $1,181 | $3,668 | $3,587 |
| | | | | | | |
| $1,291 | $ 2,650 | $ 537 | $ 2,801 | $ 567 | $ 530 | $2,437 |
| 1,033 | 2,393 | 219 | 1,613 | 500 | 436 | 1,635 |
| 2,324 | 5,043 | 756 | 4,414 | 1,067 | 966 | 4,072 |
| 218 | 7,844 | 515 | 5,766 | 11 | 2,044 | — |
| — | 201 | 1,722 | 1,469 | 17 | 162 | — |
| 33 | 824 | 741 | 1,065 | 70 | 292 | — |
| — | — | 212 | 212 | 1 | 31 | — |
| $2,575 | $13,912 | $3,946 | $12,926 | $1,166 | $3,495 | $4,072 |

LINA 0188752

CIGNA CORPORATION AND SUBSIDIARIES

SCHEDULE IV
REINSURANCE
(Dollar Amounts In Millions)

| | Gross amount | Ceded to other companies | Assumed from other companies | Net amount | Percentage of amount assumed to net |
|---|---|---|---|---|---|
| **Year Ended December 31, 1996:** | | | | | |
| Life insurance in force | $502,558 | $54,850 | $155,100 | $602,808 | 25.7% |
| Premiums and fees: | | | | | |
| Life insurance and annuities | $ 3,142 | $ 252 | $ 710 | $ 3,600 | 19.7% |
| Accident and health insurance | 7,324 | 339 | 392 | 7,377 | 5.3 |
| Property and casualty insurance | 3,839 | 1,531 | 631 | 2,939 | 21.5 |
| Total | $ 14,305 | $ 2,122 | $ 1,733 | $ 13,916 | 12.5% |
| **Year Ended December 31, 1995:** | | | | | |
| Life insurance in force | $506,313 | $44,683 | $158,414 | $620,044 | 25.5% |
| Premiums and fees: | | | | | |
| Life insurance and annuities | $ 2,978 | $ 171 | $ 591 | $ 3,398 | 17.4% |
| Accident and health insurance | 7,030 | 336 | 719 | 7,413 | 9.7 |
| Property and casualty insurance | 4,115 | 1,745 | 733 | 3,103 | 23.6 |
| Total | $ 14,123 | $ 2,252 | $ 2,043 | $ 13,914 | 14.7% |
| **Year Ended December 31, 1994:** | | | | | |
| Life insurance in force | $496,373 | $33,891 | $152,334 | $614,816 | 24.8% |
| Premiums and fees: | | | | | |
| Life insurance and annuities | $ 2,905 | $ 133 | $ 520 | $ 3,292 | 15.8% |
| Accident and health insurance | 6,566 | 310 | 646 | 6,902 | 9.3 |
| Property and casualty insurance | 4,591 | 1,894 | 1,021 | 3,718 | 27.5 |
| Total | $ 14,062 | $ 2,337 | $ 2,187 | $ 13,912 | 15.7% |

FS-10

LINA 0188753

## CIGNA CORPORATION

### SCHEDULE V
### VALUATION AND QUALIFYING ACCOUNTS AND RESERVES
#### (In Millions)

| Description | Balance at beginning of period | Charged (Credited) to costs and expenses | Charged (Credited) to other accounts —describe (1) | Other deductions —describe (2) | Balance at end of period |
|---|---|---|---|---|---|
| **1996:** | | | | | |
| **Investment asset valuation reserves:** | | | | | |
| Mortgage loans ...................... | $ 88 | $ 26 | $37 | $ (50) | $101 |
| Real estate......................... | 109 | 18 | 11 | (21) | 117 |
| **Allowance for doubtful accounts:** | | | | | |
| Premiums, accounts and notes receivable | 105 | 13 | — | (20) | 98 |
| Reinsurance recoverables ............. | 700 | 31 | — | (20) | 711 |
| **Deferred tax asset valuation allowance**......................... | 48 | (1) | — | — | 47 |
| **1995:** | | | | | |
| **Investment asset valuation reserves:** | | | | | |
| Mortgage loans ...................... | $179 | $ 3 | $10 | $(104) | $ 88 |
| Real estate......................... | 104 | 5 | 10 | (10) | 109 |
| **Allowance for doubtful accounts:** | | | | | |
| Premiums, accounts and notes receivable...................... | 115 | 16 | — | (26) | 105 |
| Reinsurance recoverables ............. | 435 | 273 | — | (8) | 700 |
| **Deferred tax asset valuation allowance**......................... | 47 | 1 | — | — | 48 |
| **1994:** | | | | | |
| **Investment asset valuation reserves:** | | | | | |
| Fixed maturities ..................... | $ 11 | $ — | $— | $ (11) | $ — |
| Mortgage loans ...................... | 216 | 8 | 24 | (69) | 179 |
| Real estate......................... | 98 | 6 | 6 | (6) | 104 |
| **Allowance for doubtful accounts:** | | | | | |
| Premiums, accounts and notes receivable | 97 | 40 | — | (22) | 115 |
| Reinsurance recoverables ............. | 405 | 42 | — | (12) | 435 |
| **Deferred tax asset valuation allowance**......................... | 53 | (6) | — | — | 47 |

(1) Change in valuation reserves attributable to policyholder contracts.

(2) Reflects transfer of reserves to other investment asset categories as well as charge-offs upon sales, repayments and other.

FS-11

LINA 0188754

**CIGNA CORPORATION AND SUBSIDIARIES**

**SCHEDULE VI**
**SUPPLEMENTAL INFORMATION CONCERNING**
**PROPERTY-CASUALTY INSURANCE OPERATIONS**
**(In Millions)**

| Column A | Column B | Column C | Column D | Column E |
|---|---|---|---|---|
| Affiliation with Registrant | Deferred policy acquisition costs | Reserves for unpaid claims and claim adjustment expenses | Discount, if any, deducted in column C(1) | Unearned premiums |
| Year Ended December 31, 1996: | | | | |
| Consolidated property-casualty entities . . . . . | $409 | $16,482 | $18 | $1,485 |
| Year Ended December 31, 1995: | | | | |
| Consolidated property-casualty entities . . . . . | $386 | $17,023 | $19 | $1,632 |
| Year Ended December 31, 1994: | | | | |
| Consolidated property-casualty entities . . . . . | $406 | $16,825 | $20 | $1,869 |

(1) Discounts were computed using an annual interest rate of 9%.

(2) Amounts presented are shown net of the effects of reinsurance.

FS-12

LINA 0188755

| Column F | Column G | Column H | | Column I | Column J | Column K |
|---|---|---|---|---|---|---|
| | | Claims and claim adjustment expenses incurred related to: | | | | |
| Earned Premiums(2) | Net investment income | Current year(2) | Prior year(2) | Amortization of deferred policy acqui-sition costs | Paid claims and claim adjustment expenses(2) | Premiums written |
| $3,576 | $687 | $2,348 | $ 177 | $ 887 | $3,037 | $3,500 |
| $3,729 | $674 | $2,386 | $1,498 | $ 950 | $3,360 | $3,587 |
| $4,247 | $657 | $3,093 | $ 538 | $1,054 | $3,656 | $4,072 |

FS-13

LINA 0188756

(This page intentionally left blank)

LINA 0188757

## INDEX TO EXHIBITS

| Number | | Description | Method of Filing |
|---|---|---|---|
| 3.1 | | Restated Certificate of Incorporation of the registrant as last amended October 2, 1990 | Filed as Exhibit 3.1 to the registrant's Form 10-K for the year ended December 31, 1993 and incorporated herein by reference. |
| 3.2 | | By-Laws of the registrant as last amended and restated December 9, 1996 | Filed herewith. |
| 4 | (a) | Description of Preferred Stock Purchase Rights, including the Rights Agreement dated as of July 23, 1987 between CIGNA Corporation and Morgan Shareholder Services Trust Company | Filed as Item 1 and Exhibit 1 to the registrant's Form 8-A Registration Statement dated July 28, 1987, such Exhibit 1 amended by the registrant's Amendment No. 1 on Form 8 dated August 11, 1987, and incorporated herein by reference. |
| | (b) | Amended description of Preferred Stock Purchase Rights, including the First Amendment to Rights Agreement dated as of March 22, 1989 between CIGNA Corporation and Morgan Shareholder Services Trust Company | Filed as Item 1 and Exhibit 2 to the registrant's Amendment No. 2 on Form 8 dated March 27, 1989 and incorporated herein by reference. |

Exhibits 10.1 through 10.17 are filed as exhibits pursuant to Item 14(c) of Form 10-K.

| | | | |
|---|---|---|---|
| 10.1 | | Deferred Compensation Plan for Directors of CIGNA Corporation, as amended and restated as of January 1, 1997 | Filed herewith. |
| 10.2 | | Retirement and Consulting Plan for Directors of CIGNA Corporation, as amended and restated as of May 29, 1991 | Filed as Exhibit 10.12 to the registrant's Form 10-K for the year ended December 31, 1993 and incorporated herein by reference. |
| 10.3 | (a) | Restricted Stock Plan for Non-Employee Directors of CIGNA Corporation effective as of September 30, 1989 | Filed as Exhibit 10.15 to the registrant's Form 10-K for the year ended December 31, 1993 and incorporated herein by reference. |
| | (b) | Description of First Amendment to the Restricted Stock Plan for Non-Employee Directors of CIGNA Corporation | Filed as Exhibit 10.16 to the registrant's Form 10-K for the year ended December 31, 1993 and incorporated herein by reference. |
| 10.4 | | Description of Stock Compensation Plan for Non-Employee Directors of CIGNA Corporation, as amended and restated effective July 1, 1995 | Filed as Exhibit 10.3 to the registrant's Form 10-Q for the quarter ended September 30, 1995 and incorporated herein by reference. |
| 10.5 | (a) | CIGNA Corporation Stock Plan effective as of May 1, 1991 | Filed as Exhibit 10.1 to the registrant's Form 10-K for the year ended December 31, 1993 and incorporated herein by reference. |
| | (b) | Amendment No. 1 dated as of July 28, 1993 to the CIGNA Corporation Stock Plan | Filed as Exhibit 10.2 to the registrant's Form 10-K for the year ended December 31, 1993 and incorporated herein by reference. |
| | (c) | Amendment No. 2 dated as of February 24, 1994 to the CIGNA Corporation Stock Plan | Filed as Exhibit 10.3 to the registrant's Form 10-K for the year ended December 31, 1993 and incorporated herein by reference. |
| | (d) | Amendment No. 3 dated as of July 31, 1996 to the CIGNA Corporation Stock Plan | Filed as Exhibit 10.2 to the registrant's Form 10-Q for the quarter ended June 30, 1996 and incorporated herein by reference. |

E-1

LINA 0188758

| Number | | Description | Method of Filing |
|---|---|---|---|
| | (e) | Amendment No. 4 dated as of December 16, 1996 to the CIGNA Corporation Stock Plan | Filed herewith. |
| 10.6 | (a) | CIGNA Corporation Executive Stock Incentive Plan, as Amended and Restated as of March 23, 1988 | Filed as Exhibit 10.4 to the registrant's Form 10-K for the year ended December 31, 1993 and incorporated herein by reference. |
| | (b) | Amendment No. 1 dated as of September 28, 1988 to the CIGNA Corporation Executive Stock Incentive Plan | Filed as Exhibit 10.5 to the registrant's Form 10-K for the year ended December 31, 1993 and incorporated herein by reference. |
| | (c) | Amendment No. 2 dated as of March 27, 1991 to the CIGNA Corporation Executive Stock Incentive Plan | Filed as Exhibit 10.6 to the registrant's Form 10-K for the year ended December 31, 1993 and incorporated herein by reference. |
| | (d) | Amendment No. 3 dated as of July 31, 1996 to the CIGNA Corporation Executive Stock Incentive Plan | Filed as Exhibit 10.3 to the registrant's Form 10-Q for the quarter ended June 30, 1996 and incorporated herein by reference. |
| 10.7 | (a) | CIGNA Long-Term Incentive Plan | Filed as Appendix A to the registrant's definitive proxy statement on Schedule 14A dated March 20, 1995 and incorporated herein by reference. |
| | (b) | Amendment No. 1 dated as of July 31, 1996 to the CIGNA Long-Term Incentive Plan | Filed as Exhibit 10.1 to the registrant's Form 10-Q for the quarter ended June 30, 1996 and incorporated herein by reference. |
| | (c) | Amendment No. 2 dated as of December 16, 1996 to the CIGNA Long-Term Incentive Plan | Filed herewith. |
| 10.8 | (a) | CIGNA Corporation Strategic Performance Plan, as amended and restated March 25, 1992 | Filed as Exhibit 10.8 to the registrant's Form 10-K for the year ended December 31, 1993 and incorporated herein by reference. |
| | (b) | Description of January 25, 1995 Amendment to the CIGNA Corporation Strategic Performance Plan | Filed as Exhibit 10.1 to the registrant's Form 10-Q for the quarter ended March 31, 1995 and incorporated herein by reference. |
| 10.9 | (a) | Deferred Compensation Plan of CIGNA Corporation and Participating Subsidiaries, as amended and restated as of January 1, 1996 | Filed as Exhibit 10.15 to the registrant's Form 10-K for the year ended December 31, 1995 and incorporated herein by reference. |
| | (b) | Amendment No. 1 dated as of December 16, 1996 to the Deferred Compensation Plan of CIGNA Corporation and Participating Subsidiaries | Filed herewith. |
| 10.10 | (a) | CIGNA Supplemental Pension Plan, as amended and restated as of July 28, 1993 | Filed as Exhibit 10.1 to the registrant's Form 10-Q for the quarter ended June 30, 1994 and incorporated herein by reference. |
| | (b) | Description of July 26, 1995 Amendment to CIGNA Supplemental Pension Plan | Filed as Exhibit 10.1 to the registrant's Form 10-Q for the quarter ended September 30, 1995 and incorporated herein by reference. |
| 10.11 | | CIGNA Executive Severance Benefits Plan, as amended and restated as of December 16, 1996 | Filed herewith. |
| 10.12 | | Description of CIGNA Corporation Financial Services Program | Filed as Exhibit 10.9 to the registrant's Form 10-K for the year ended December 31, 1993 and incorporated herein by reference. |

E-2

LINA 0188759

| Number | Description | Method of Filing |
|---|---|---|
| 10.13 | Description of the CIGNA Corporation Key Management Annual Incentive Bonus Plan | Filed as Exhibit 10.7 to the registrant's Form 10-K for the year ended December 31, 1993 and incorporated herein by reference. |
| 10.14 | Agreement dated February 9, 1993 between Mr. Isom and the registrant | Filed as Exhibit 10.14 to the registrant's Form 10-K for the year ended December 31, 1993 and incorporated herein by reference. |
| 10.15 | Form of Special Retention Agreement with Messrs. Taylor and Stewart | Filed as Exhibit 10.3 to the registrant's Form 10-Q for the quarter ended March 31, 1995 and incorporated herein by reference. |
| 10.16 | Special Retention Agreement with Mr. Levinson | Filed as Exhibit 10.26 to the registrant's Form 10-K for the year ended December 31, 1995 and incorporated herein by reference. |
| 10.17 | Description of Mandatory Deferral of Non-Deductible Executive Compensation Arrangement | Filed herewith. |
| 11 | Computation of Primary and Fully Diluted Earnings Per Share | Filed herewith. |
| 12 | Computation of Ratios of Earnings to Fixed Charges | Filed herewith. |
| 13 | Portions of registrant's 1996 Annual Report to Shareholders (Entire Annual Report bound in printed versions of Form 10-K.) | Filed herewith. |
| 21 | Subsidiaries of the Registrant | Filed herewith. |
| 23 | Consent of Independent Accountants | Filed herewith. |
| 24.1 | Powers of Attorney | Filed herewith. |
| 24.2 | Certified Resolutions | Filed herewith. |
| 27 | Financial Data Schedule | Filed as Exhibit 27 to the registrant's Form 8-K dated March 5, 1997. |

The registrant will furnish to the Commission upon request a copy of any of the registrant's agreements with respect to its long-term debt.

Shareholders may obtain copies of exhibits by writing to CIGNA Corporation, Shareholder Services Department, Two Liberty Place, 1601 Chestnut Street, P.O. Box 7716, Philadelphia, Pennsylvania 19192-2378.

E-3

LINA 0188760

Exhibit 11

## CIGNA CORPORATION

### COMPUTATION OF EARNINGS PER SHARE
**(Dollars in millions, except per share amounts)**

|  | For the Year Ended December 31, | | |
|---|---|---|---|
|  | 1996 | 1995 | 1994 |
| **Primary Earnings Per Share** | | | |
| Net income available to common shares ................... | $ 1,056 | $ 211 | $ 554 |
| Common shares ........................................ | 75,813,765 | 73,405,432 | 72,218,299 |
| Common share equivalents applicable to stock options ........ | 434,312 | 313,492 | 98,548 |
| Total ........................................ | 76,248,077 | 73,718,924 | 72,316,847 |
| **Primary** ........................................ | $ 13.85 | $ 2.86 | $ 7.66 |
| **Fully Diluted Earnings Per Share** | | | |
| Net income ........................................ | $ 1,056 | $ 211 | $ 554 |
| Adjusted for: | | | |
| Interest expense (net of tax) on convertible subordinated debentures .............................. | — | — | 13 |
| Net income available to common shares ................... | $ 1,056 | $ 211 | $ 567 |
| Common shares ........................................ | 75,813,765 | 73,405,432 | 72,218,299 |
| Common share equivalents applicable to stock options ........ | 463,855 | 380,956 | 115,185 |
| Assumed conversion of convertible subordinated debentures ........................................ | — | — | 3,625,956 |
| Total ........................................ | 76,277,620 | 73,786,388 | 75,959,440 |
| **Fully diluted** ........................................ | $ 13.84 | $ 2.86 | $ 7.47 |

LINA 0188761

Exhibit 12

## CIGNA CORPORATION

## COMPUTATION OF RATIO OF EARNINGS TO FIXED CHARGES
### (Dollars in millions)

|  | Year Ended December 31, | | | | |
|---|---|---|---|---|---|
|  | 1996 | 1995 | 1994 | 1993 | 1992 |
| Income before income taxes and cumulative effect of accounting changes | $1,601 | $ 251 | $ 805 | $ 165 | $ 179 |
| Fixed charges included in income: | | | | | |
| Interest expense | 102 | 120 | 121 | 124 | 100 |
| Interest portion of rental expense | 86 | 99 | 102 | 114 | 113 |
| Total fixed charges included in income | 188 | 219 | 223 | 238 | 213 |
| Income available for fixed charges | $1,789 | $ 470 | $1,028 | $ 403 | $ 392 |
| Ratio of earnings to fixed charges | 9.5 | 2.1 | 4.6 | 1.7 | 1.8 |

LINA 0188762

Exhibit 21

## SUBSIDIARIES OF THE REGISTRANT

Listed below are subsidiaries of CIGNA Corporation as of December 31, 1996 with their jurisdictions of organization shown in parentheses. Those subsidiaries not listed would not, in the aggregate, constitute a "significant subsidiary" of CIGNA Corporation, as that term is defined in Rule 1-02(v) of Regulation S-X.

CIGNA Holdings, Inc. (Delaware)
I.  Connecticut General Corporation (Connecticut)
    A.  CG Trust Company (Illinois)
    B.  CIGNA Associates, Inc. (Connecticut)
    C.  CIGNA Dental Health, Inc. (Florida)
        (1)  CIGNA Dental Health of California, Inc. (California)
        (2)  CIGNA Dental Health of Colorado, Inc. (Colorado)
        (3)  CIGNA Dental Health of Delaware, Inc. (Delaware)
        (4)  CIGNA Dental Health of Florida, Inc. (Florida)
        (5)  CIGNA Dental Health of Illinois, Inc. (Illinois)
        (6)  CIGNA Dental Health of Kansas, Inc. (Kansas)
        (7)  CIGNA Dental Health of Kentucky, Inc. (Kentucky)
        (8)  CIGNA Dental Health of Maryland, Inc. (Delaware)
        (9)  CIGNA Dental Health of New Jersey, Inc. (New Jersey)
        (10)  CIGNA Dental Health of New Mexico, Inc. (New Mexico)
        (11)  CIGNA Dental Health of North Carolina, Inc. (North Carolina)
        (12)  CIGNA Dental Health of Ohio, Inc. (Ohio)
        (13)  CIGNA Dental Health of Pennsylvania, Inc. (Pennsylvania)
        (14)  CIGNA Dental Health of Texas, Inc. (Texas)
        (15)  CIGNA Dental Health Plan of Arizona, Inc. (Arizona)
    D.  CIGNA Financial Advisors, Inc. (Connecticut)
    E.  CIGNA Financial Partners, Inc. (Connecticut)
    F.  CIGNA Financial Services, Inc. (Delaware)
    G.  CIGNA Health Corporation (Delaware)
        (1)  CIGNA HealthCare of Arizona, Inc. (Arizona)
            (a)   CIGNA Community Choice, Inc. (Arizona)
        (2)  CIGNA HealthCare of California, Inc. (California)
        (3)  CIGNA HealthCare of Colorado, Inc. (Colorado)
        (4)  CIGNA HealthCare of Connecticut, Inc. (Connecticut)
        (5)  CIGNA HealthCare of Delaware, Inc. (Delaware)
        (6)  CIGNA HealthCare of Florida, Inc. (Florida)
        (7)  CIGNA HealthCare of Georgia, Inc. (Georgia)
        (8)  CIGNA HealthCare of Illinois, Inc. (Delaware) (99% with balance owned by non-affiliate)
        (9)  CIGNA HealthCare of Louisiana, Inc. (Louisiana)
        (10)  CIGNA HealthCare of Massachusetts, Inc. (Massachusetts)
        (11)  CIGNA HealthCare Mid-Atlantic, Inc. (Maryland)
        (12)  CIGNA HealthCare of New Jersey, Inc. (New Jersey)
        (13)  CIGNA HealthCare of New York, Inc. (New York)
        (14)  CIGNA HealthCare of North Carolina, Inc. (North Carolina)
        (15)  CIGNA HealthCare of North Louisiana, Inc. (Louisiana)
        (16)  CIGNA HealthCare of Northern New Jersey, Inc. (New Jersey)
        (17)  CIGNA HealthCare of Ohio, Inc. (Ohio)
        (18)  CIGNA HealthCare of Oklahoma, Inc. (Oklahoma)

LINA 0188763

      (19)   CIGNA HealthCare of Pennsylvania, Inc. (Pennsylvania)
      (20)   CIGNA HealthCare of St. Louis, Inc. (Missouri)
      (21)   CIGNA HealthCare of Tennessee, Inc. (Tennessee)
      (22)   CIGNA HealthCare of Texas, Inc. (Texas)
      (23)   CIGNA HealthCare of Utah, Inc. (Utah)
      (24)   CIGNA HealthCare of Virginia, Inc. (Virginia)
      (25)   Lovelace Health Systems, Inc. (New Mexico)
      (26)   Temple Insurance Company Limited (Bermuda)
  H.  CIGNA RE Corporation (Delaware)
  I.  Connecticut General Life Insurance Company (Connecticut)
      (1)   All-Net Preferred Providers, Inc. (Delaware)
      (2)   CIGNA Life Insurance Company (Connecticut)
      (3)   ICO, INC. (Delaware)
  J.  Disability Claim Services, Inc. (Delaware)
  K.  Global Portfolio Strategies, Inc. (Connecticut)
  L.  INA Life Insurance Company of New York (New York)
  M.  International Rehabilitation Associates, Inc. d/b/a Intracorp (Delaware)
  N.  Life Insurance Company of North America (Pennsylvania)
      (1)   CIGNA Direct Marketing Company, Inc. (Delaware)
      (2)   CIGNA Life Insurance Company of Canada (Canada)
      (3)   INA Life Insurance Co., Ltd. (Japan) (90% with balance owned by non-affiliate)
  O.  MCC Behavioral Care, Inc. (Minnesota)
      (1)   MCC Behavioral Care of California, Inc. (California)
  P.  TEL-DRUG, INC. (South Dakota)
II.  INA Corporation (Pennsylvania)
  A.  CIGNA International Holdings, Ltd. (Delaware)
      (1)   Afia Finance Corporation (Delaware)
          (a)   P.T. Asuransi CIGNA Indonesia (Indonesia) (51% with balance owned by non-affiliates)
      (2)   Century Inversiones, S.A.
      (3)   CIGNA Argentina Compania de Seguros S.A. (Argentina)
      (4)   CIGNA Brasil Empreendimentos Ltda. (Brazil)
          (a)   CIGNA Seguradora S.A. (Brazil) (85.99% with 13.7% owned by other CIGNA subsidiaries and .4% owned by non-affiliates)
      (5)   CIGNA Compania de Seguros (Chile) S.A. (Chile) (99% with balance owned by non-affiliates)
      (6)   CIGNA G.B. Holdings, Ltd. (Delaware)
          (a)   CIGNA Reinsurance Company (UK) Limited (United Kingdom)
          (b)   Insurance Company of North America (U.K.) Limited (United Kingdom)
      (7)   CIGNA Insurance Asia Pacific Limited (Australia)
      (8)   CIGNA Insurance Company Limited (Rep. of South Africa)
      (9)   CIGNA Insurance Company of Puerto Rico (Puerto Rico)
      (10)   CIGNA Insurance New Zealand Limited (New Zealand)
          (a)   CIGNA Life Insurance New Zealand Limited (New Zealand)
      (11)   CIGNA International Corporation (Delaware)
      (12)   CIGNA Overseas Insurance Company Ltd. (Bermuda)
          (a)   CIGNA Accident and Fire Insurance Company, Ltd. (Japan)
          (b)   CIGNA China Investment Fund LDC (Cayman Islands) (67% with balance owned by another CIGNA subsidiary)
          (c)   CIGNA Insurance Company of Europe S.A.-N.V. (Belgium)
          (d)   CIGNA Life Insurance Company of Europe S.A.-N.V. (Belgium)
          (e)   CIGNA Overseas Holdings, Inc. (Delaware)

LINA 0188764

    (13)   CIGNA Worldwide Insurance Company (Delaware)
- (a) P.T. Asuransi Niaga CIGNA Life (Indonesia) (60% with balance owned by non-affiliate)
- (b) PCIB CIGNA Life Insurance Corporation (Philippines) (50% with balance owned by non-affiliate)

    (14)   Delpanama S.A. (Panama)
- (a) CIGNA Compania de Seguros de Panama S.A. (Panama)

    (15)   ESIS International, Inc. (Delaware)

    (16)   INACAN Holdings, Ltd. (Canada)
- (a) CIGNA Insurance Company of Canada (Canada)

    (17)   Inversiones INA Limitada (Chile) (98.603% with balance owned by another CIGNA subsidiary)
- (a) CIGNA Compania de Seguros de Vida (Chile) S.A. (Chile) (98.64% with balance owned by non-affiliate)
- (b) CIGNA Salud Isapre S.A. (Chile) (99.20% with balance owned by another CIGNA subsidiary)

    (18)   LATINA Holdings, Ltd. (Delaware)
- (a) CIGNA Seguros de Colombia S.A. (Colombia) (85% with balance owned by other CIGNA subsidiaries and non-affiliates)
- (b) Colina Insurance Company Limited (Bahamas)
- (c) Empresa Guatemalteca CIGNA de Seguros, Sociedad Anonima (Guatemala) (97% with balance owned by non-affiliates)

    (19)   Seguros CIGNA, S.A. (Mexico) (49% with balance owned by non-affiliates)

B.  INA Financial Corporation (Delaware)

    (1)   Brandywine Holdings Corporation (Delaware)
- (a) CIGNA International Reinsurance Company, Ltd. (Bermuda)
- (b) Century Indemnity Company (Pennsylvania)
  - (i) Century Reinsurance Company (Pennsylvania)
  - (ii) CIGNA Reinsurance Company (Pennsylvania)
    - (a) CIGNA Reinsurance Company, S.A.-N.V. (Belgium)

    (2)   INA Holdings Corporation (Delaware)
- (a) Bankers Standard Insurance Company (Pennsylvania)
  - (i) Bankers Standard Fire & Marine Company (Pennsylvania)
- (b) CIGNA Property and Casualty Insurance Company (Connecticut)
  - (i) ALIC Incorporated (Texas)
    - (a) CIGNA Lloyds Insurance Company (Texas)
  - (ii) CIGNA Fire Underwriters Insurance Company (Pennsylvania)
  - (iii) CIGNA Insurance Company (Pennsylvania)
    - (a) Pacific Employers Insurance Company (Pennsylvania)
      - (i) CIGNA Insurance Company of Texas (Texas)
      - (ii) Illinois Union Insurance Company (Illinois)
  - (iv) CIGNA Insurance Company of the Midwest (Indiana)
  - (v) CIGNA Real Estate, Inc. (Delaware)
    - (a) Congen Properties, Inc. (Delaware)
- (c) ESIS, Inc. (California)
- (d) INAC Corp. (Delaware)
- (e) INAC Corp. of California (California)
- (f) INAMAR Insurance Underwriting Agency, Inc. (New Jersey)
- (g) INAPRO, Inc. (Delaware)
  - (i) Reinsurance International Solutions L.L.C. (Delaware) (50% with balance owned by non-affiliate)

     (h)    Insurance Company of North America (Pennsylvania)
- (a)    Atlantic Employers Insurance Company (New Jersey)
- (b)    CIGNA Employers Insurance Company (Pennsylvania)
- (c)    CIGNA Insurance Company of Ohio (Ohio)
- (d)    Indemnity Insurance Company of North America (Pennsylvania)
  - (i)    Allied Insurance Company (California)
  - (ii)    CIGNA Indemnity Insurance Company (Pennsylvania)
  - (iii)    CIGNA Insurance Company of Illinois (Illinois)
- (e)    INA Surplus Insurance Company (Pennsylvania)

     (i)    Marketdyne International, Inc. (Delaware)

     (j)    Recovery Services International, Inc. (Delaware)

III. CIGNA Investment Group, Inc. (Delaware)

    A.    CIGNA International Finance Inc. (Delaware)
- (1)    CIGNA International Investment Advisors, Ltd. (Delaware)
  - (a)    CIGNA International Investment Advisors Australia Limited (Australia)
  - (b)    CIGNA International Investment Advisors K.K. (Japan)

    B.    CIGNA Investment Advisory Company, Inc. (Delaware)

    C.    CIGNA Investments, Inc. (Delaware)
- (1)    CIGNA Advisory Partners, Inc. (Delaware)
- (2)    CIGNA Leveraged Capital Fund, Inc. (Delaware)

**Exhibit 23**

### CONSENT OF INDEPENDENT ACCOUNTANTS

    We hereby consent to the incorporation by reference in the Registration Statements on Form S-3 (No. 33-65396) and Form S-8 (No. 2-76445, No. 2-76444, No. 33-44371, No. 33-51791, No. 33-60053 and No. 333-22391) of CIGNA Corporation, of our report dated February 11, 1997 appearing on Page 44 of the 1996 Annual Report to Shareholders of CIGNA Corporation which is incorporated in this Annual Report on Form 10-K. We also consent to the incorporation by reference in such Registration Statements of our report on the Financial Statement Schedules, which appears on page FS-2 of this Form 10-K.

/s/ PRICE WATERHOUSE LLP

Philadelphia, Pennsylvania
March 27, 1997

LINA 0188767

**CIGNA Corporation**

One Liberty Place
Philadelphia, PA 19192-1550

LINA 0188768

Exhibit 5

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**

**FORM 10-K**

**(Mark One)**

[X]   **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**
**For the fiscal year ended December 31, 2005**

**OR**

[ ]   **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the transition period from _____ to _____**

**Commission file number 1-8323**

# CIGNA Corporation

(Exact name of registrant as specified in its charter)

| | |
|---|---|
| **Delaware** | **06-1059331** |
| (State or other jurisdiction of | (I.R.S. Employer |
| incorporation or organization) | Identification No.) |

| | |
|---|---|
| **Two Liberty Place, Philadelphia, Pennsylvania** | **19192** |
| (Address of principal executive offices) | (Zip Code) |

**Registrant's telephone number, including area code (215) 761-1000**

**Securities registered pursuant to section 12(b) of the Act:**

| **Title of each class** | **Name of each exchange on which registered** |
|---|---|
| Common Stock, Par Value $0.25; | New York Stock Exchange, Inc. |
| Preferred Stock | Pacific Exchange, Inc. |
| Purchase Rights | Philadelphia Stock Exchange, Inc. |

**Securities registered pursuant to section 12(g) of the Act:**
None

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.
Yes X No __

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act.
Yes __ No X

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes X No __

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. [ ]

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer. See definition of "accelerated filer and large accelerated filer" in Rule 12b-2 of the Exchange Act.
Large accelerated filer [X]      Accelerated filer [ ]      Non-accelerated filer [ ]

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act.) Yes __ No X

The aggregate market value of the voting stock held by non-affiliates of the registrant as of June 30, 2005, was approximately $13.4 billion.

As of January 31, 2006, 121,068,516 shares of the registrant's Common Stock were outstanding.

Parts I and II of this Form 10-K incorporate by reference information from the registrant's annual report to shareholders for the year ended December 31, 2005. Part III of this Form 10-K incorporates by reference information from the registrant's proxy statement to be dated on or about March 24, 2006.

**TABLE OF CONTENTS**

| | | | Page |
|---|---|---|---|
| **PART I** | | | |
| Item 1. | Business | | |
| | A. | Description of Business | 1 |
| | B. | Financial Information about Industry Segments | 1 |
| | C. | Health Care | 2 |
| | D. | Disability & Life | 10 |
| | E. | International | 12 |
| | F. | Other Operations | 14 |
| | G. | Investments and Investment Income | 15 |
| | H. | Run-off Retirement | 17 |
| | I. | Run-off Reinsurance | 18 |
| | J. | Regulation | 20 |
| | K. | Ratings | 23 |
| | L. | Miscellaneous | 25 |
| Item 1A. | Risk Factors | | 26 |
| Item 1B. | Unresolved Staff Comments | | 31 |
| Item 2. | Properties | | 31 |
| Item 3. | Legal Proceedings | | 31 |
| Item 4. | Submission of Matters to a Vote of Security Holders | | 32 |
| Executive Officers of the Registrant | | | 33 |
| | | | |
| **PART II** | | | |
| Item 5. | Market for Registrant's Common Equity and Related Stockholder Matters and Issuer Purchases of Equity Securities | | 34 |
| Item 6. | Selected Financial Data | | 34 |
| Item 7. | Management's Discussion and Analysis of Financial Condition and Results of Operations | | 34 |
| Item 7A. | Quantitative and Qualitative Disclosures about Market Risk | | 34 |
| Item 8. | Financial Statements and Supplementary Data | | 34 |
| Item 9. | Changes in and Disagreements With Accountants on Accounting and Financial Disclosure | | 34 |
| Item 9A. | Controls and Procedures | | 35 |
| Item 9B. | Other Information | | 35 |
| | | | |
| **PART III** | | | |
| Item 10. | Directors and Executive Officers of the Registrant | | 35 |
| | A. Directors of the Registrant | | 35 |
| | B. Executive Officers of the Registrant | | 35 |
| | C. Code of Ethics and Other Corporate Governance Disclosures | | 35 |
| Item 11. | Executive Compensation | | 35 |
| Item 12. | Security Ownership of Certain Beneficial Owners and Management and Related Stockholder Matters | | 36 |
| Item 13. | Certain Relationships and Related Transactions | | 37 |
| Item 14. | Principal Accounting Fees and Services | | 37 |
| | | | |
| **PART IV** | | | |
| Item 15. | Exhibits and Financial Statement Schedules | | 37 |
| Signatures | | | 38 |
| Index to Financial Statement Schedules | | | FS-1 |
| Index to Exhibits | | | E-1 |

LINA 0189443

## PART I

### Item 1. *BUSINESS*

#### A. Description of Business

CIGNA Corporation had consolidated shareholders' equity of $5.4 billion and assets of $44.9 billion as of December 31, 2005, and revenues of $16.7 billion for the year then ended. CIGNA Corporation and its subsidiaries constitute one of the largest investor-owned health care and related benefits organizations in the United States. Its subsidiaries are major providers of health care and related benefits offered through the workplace, including health care products and services, and group disability, life and accident insurance, and disability and workers' compensation case management and related services. CIGNA's major insurance subsidiary, Connecticut General Life Insurance Company ("CG Life"), traces its origins to 1865. CIGNA Corporation was incorporated in the State of Delaware in 1981.

As used in this document, "CIGNA" and the "Company" may refer to CIGNA Corporation itself, one or more of its subsidiaries, or CIGNA Corporation and its consolidated subsidiaries. CIGNA Corporation is a holding company and is not an insurance company. Its subsidiaries conduct various businesses, which are described in this document.

CIGNA's revenues are derived principally from premiums, fees, other revenues and investment income. The financial results of CIGNA's businesses are reported in the following segments, as shown:

- Health Care Segment

- Disability and Life Segment

- International Segment

- Run-off Reinsurance Segment

- Run-off Retirement consists of:

  - gain recognition from the 2004 sale of the retirement benefits business;

  - net results of modified coinsurance arrangements;

  - expenses associated with the run-off of the business; and

- results of the retirement benefits business prior to the sale of the business on April 1, 2004.

- Other Operations consists of:

  - deferred gains recognized from the 1998 sale of the individual life insurance and annuity business;

  - corporate life insurance (including policies on which loans are outstanding);

  - settlement annuity business; and

  - certain investment management services (a significant portion of which were sold in 2004).

Investment results produced by CIGNA Investments on behalf of CIGNA's insurance operations are reported in each segment.

*Available Information*

CIGNA's Internet address is http://www.cigna.com. CIGNA's annual report on Form 10-K, quarterly reports on Form 10-Q, current reports on Form 8-K and any amendments to those reports are available through CIGNA's website as soon as reasonably practicable after the filing or furnishing of such material with the Securities and Exchange Commission. See "Code of Ethics and Other Corporate Governance Disclosures" in Part III, Item 10 of this Form 10-K regarding additional available information.

#### B. Financial Information about Industry Segments

Financial information in the tables that follow is presented in conformity with accounting principles generally accepted in the United States of America ("GAAP"), unless otherwise indicated. Certain reclassifications have been made to prior years' financial information to conform to the 2005 presentation. Industry rankings and percentages set forth below are for the year ended December 31, 2004, unless otherwise indicated. Unless otherwise noted, statements set forth in this document concerning CIGNA's rank or position in an industry or particular line of business have been developed internally, based on publicly available information.

Financial data for each of CIGNA's business segments is set forth in Note 19 to the Financial Statements included in CIGNA's 2005 Annual Report.

LINA 0189444