## Item 1A.  *RISK FACTORS*

CIGNA's businesses face risks and uncertainties, including those discussed below and elsewhere in this report. These factors represent risks and uncertainties that could have a material adverse effect on CIGNA's business, results of operations and financial condition.  These risks and uncertainties are not the only ones CIGNA faces. Others that CIGNA does not know about now, or that the Company does not now think are significant, may impair its business or the trading price of its securities.  The following are significant risks identified by CIGNA.

***If CIGNA does not execute on its strategic initiatives, there could be a material adverse effect on CIGNA's results of operations and in certain situations, CIGNA's financial condition.***

The future performance of CIGNA's business will depend in large part on CIGNA's ability to execute effectively and implement its strategic initiatives.  These initiatives include: executing CIGNA's consumerism strategy, including designing products to meet emerging market trends and ensuring that an appropriate infrastructure is in place to meet the needs of customers and members; continuing to reduce medical costs; and further improving the efficiency of operations, including lowering operating costs and enabling higher value services.

Successful execution of these initiatives depends on a number of factors including:

- the ability to gain and retain customers and members by providing appropriate levels of support and service for CIGNA's products, as well as avoiding service and health advocacy related errors;

- the ability to attract and retain sufficient numbers of qualified employees;

- the negotiation of favorable and standardized provider contracts;

- the identification and introduction of the proper mix or integration of products that will be accepted by the marketplace; and

- the ability of CIGNA's products and services to differentiate CIGNA from its competitors and of CIGNA to demonstrate that these products and services (such as disease management and health advocacy programs, provider credentialing and other quality care initiatives) result in improved health outcomes and reduced costs.

Further, CIGNA's success will depend upon its ability to develop new systems and enhance the performance of its existing procedures and processes to adequately support CIGNA's operations, strategies and business objectives.

***If CIGNA fails to properly maintain the integrity of its data or to strategically implement new information systems, there could be a material adverse effect on CIGNA's business.***

CIGNA's business depends on effective information systems and the integrity and timeliness of the data it uses to run its business.  CIGNA's business strategy requires providing members and providers with internet or e-business related products and information to meet their needs. CIGNA's ability to adequately price its products and services, establish reserves, provide effective and efficient service to its customers, and to timely and accurately report its financial results also depends significantly on the integrity of the data in its information systems. If the information CIGNA relies upon to run its businesses was found to be inaccurate or unreliable or if CIGNA were to fail to maintain effectively its information systems and data integrity, the Company could have problems with, among other things: operational disruptions; determining medical cost estimates and establishing appropriate pricing; customers, physicians and other health care providers; regulators; increases in operating expenses; and retention and attraction of customers.

CIGNA requires an ongoing commitment of significant resources to maintain, protect and enhance existing systems and develop new systems to keep pace with continuing changes in information processing technology, evolving industry and regulatory standards, and changing customer preferences.  There can be no assurance that CIGNA's process of improving existing systems, developing new systems to support its operations, integrating new systems and improving service levels will not be delayed or that additional systems issues will not arise in the future.

***If premiums are insufficient to cover the cost of health care services delivered to members, or if CIGNA's estimates of medical claim reserves for its guaranteed cost and experience-rated businesses based upon estimates of future medical claims are inadequate, profitability could decline.***

CIGNA's profitability depends, in part, on its ability to accurately predict and control future health care costs through underwriting criteria, provider contracting, utilization management and product design. Premiums in the health benefits business are

26

LINA 0189469

generally fixed for one-year periods. Accordingly, future cost increases in excess of medical cost projections reflected in pricing cannot generally be recovered in the contract year through higher premiums. Although CIGNA bases the premiums it charges on its estimate of future health care costs over the fixed premium period, actual costs may exceed what was estimated and reflected in premiums. Factors that may cause actual costs to exceed premiums include: medical cost inflation, the introduction of new or costly treatments and technology and membership mix.

CIGNA records medical claims reserves for estimated future payments. The Company continually reviews estimates of future payments relating to medical claims costs for services incurred in the current and prior periods and makes necessary adjustments to its reserves. However, actual health care costs may exceed what was estimated.

*Unfavorable claims experience related to workers' compensation and personal accident insurance exposures in CIGNA's Run-off Reinsurance business could result in losses.*

Unfavorable claims experience related to workers' compensation and personal accident insurance exposures in CIGNA's run-off reinsurance business is possible and could result in future losses. Further, CIGNA could have losses attributable to its inability to recover amounts from retrocessionaires or ceding companies either due to disputes with the retrocessionaires or ceding companies or their financial condition. If CIGNA's reserves for amounts recoverable from retrocessionaires or ceding companies, as well as reserves associated with underlying reinsurance exposures are insufficient, it could result in losses.

*If CIGNA fails to manage successfully its outsourcing projects and key vendors, CIGNA's financial results could be harmed.*

CIGNA takes steps to monitor and regulate the performance of independent third parties who provide services or to whom the Company delegates selected functions. These third parties include information technology system providers, independent practice associations and specialty service providers. These arrangements, however, may make CIGNA's operations vulnerable if those third parties fail to satisfy their obligations to the Company, due to CIGNA's failure to adequately monitor and regulate their performance, changes in their own operations, financial condition, or other matters outside of CIGNA's control. Certain legislative authorities have in recent periods

discussed or proposed legislation that would restrict outsourcing and, if enacted, could materially increase CIGNA's costs. In recent years, certain third parties to whom CIGNA delegated selected functions, such as specialty services providers, have experienced legal and other difficulties, which may subject CIGNA to adverse publicity, increased costs, decline in quality of service and potential network disruptions, and in some cases cause the Company to incur increased claims expense. Further, CIGNA may not fully realize on a timely basis the anticipated economic and other benefits of the outsourcing projects or other relationships it enters into with key vendors which could result in substantial costs or other operational or financial problems that could adversely impact the Company's financial results.

*A downgrade in the financial strength ratings of CIGNA's insurance subsidiaries could adversely affect new sales and retention of current business, and a downgrade in CIGNA's debt ratings would increase the cost of borrowed funds.*

Financial strength, claims paying ability and debt ratings by recognized rating organizations are an important factor in establishing the competitive position of insurance companies and health benefits companies. Ratings information by nationally recognized ratings agencies is broadly disseminated and generally used throughout the industry. CIGNA believes the claims paying ability and financial strength ratings of its principal insurance subsidiaries are an important factor in marketing its products to certain of CIGNA's customers. In addition, CIGNA Corporation's debt ratings impact both the cost and availability of future borrowings, and accordingly, its cost of capital. Each of the rating agencies reviews CIGNA's ratings periodically and there can be no assurance that current ratings will be maintained in the future. In addition, a downgrade of these ratings could make it more difficult to raise capital and to support business growth at CIGNA's insurance subsidiaries.

LINA 0189470

As of February 21, 2006, the insurance financial strength ratings for CG Life, the Company's principal insurance subsidiary, were as follows:

| | CG Life Insurance Ratings[1] |
|---|---|
| A.M. Best | A- ("Excellent," 4th of 16) |
| Moody's | A3 ("Good," 7th of 21) |
| S&P | A- ("Strong," 7th of 21) |
| Fitch | A ("Strong," 6th of 24) |

_____

(1) Includes the rating assigned, the agency's characterization of the rating and the position of the rating in the agency's rating scale (e.g., CG Life's rating by A.M. Best is the 4th highest awarded in its scale of 16).

A description of CIGNA Corporation ratings, other subsidiary ratings, as well as more information on these ratings, is included in "Ratings" in Section K beginning on page 23.

**If CIGNA's program for its guaranteed minimum death benefits contracts fails to reduce the risk of stock market declines, it could have a material adverse effect on the Company's financial condition.**

As part of its run-off reinsurance business, CIGNA reinsured a guaranteed minimum death benefit under certain variable annuities issued by other insurance companies. CIGNA adopted a program to reduce equity market risks related to these contracts by selling domestic and foreign-denominated exchange-traded futures contracts and foreign currency forward contracts. The purpose of this program is to reduce the adverse effects of potential future domestic and international stock market declines on CIGNA's liabilities for these contracts. Under the program, increases in liabilities under the annuity contracts from a declining market are offset by gains on the futures contracts. However, if CIGNA were to have difficulty in entering into appropriate futures or forward contracts, or stock market declines expose CIGNA to higher rates of partial surrender (which are not covered by the program), there could be a material adverse effect on the Company's financial condition. See "Run-off Reinsurance" in Section I on page 18 for more information on the program.

**If actual experience differs significantly from CIGNA's assumptions used in estimating CIGNA's liabilities for reinsurance contracts that guarantee minimum death benefits or minimum income benefits, it could have a material adverse effect on CIGNA's consolidated results of operations, and in certain situations, could have a material adverse effect on CIGNA's financial condition.**

CIGNA's management estimates reserves for guaranteed minimum death benefit and minimum income benefit exposures based on assumptions regarding lapse, partial surrender, mortality, interest rates, volatility, reinsurance recoverables and other considerations, and, for minimum income benefit exposures, annuity income election rates. These estimates are based on CIGNA's experience and future expectations. CIGNA monitors actual experience to update these reserve estimates as necessary. CIGNA regularly evaluates the assumptions used in establishing reserves and changes its estimates if actual experience or other evidence suggests that earlier assumptions should be revised.

**Significant stock market declines could result in increased pension plan expenses and the recognition of additional pension obligations.**

CIGNA has a pension plan that covers a large number of current employees and retirees. Unfavorable investment performance due to significant stock market declines or changes in estimates of benefit costs, if significant, could adversely affect CIGNA's results of operations or financial condition by significantly increasing its pension plan expenses and obligations.

**Significant changes in market interest rates affect the value of CIGNA's financial instruments that promise a fixed return and, as such, could have an adverse effect on CIGNA's results of operations.**

As an insurer, CIGNA has substantial investment assets that support its policy liabilities. Generally low levels of interest rates on investments, such as those experienced in United States financial markets during recent years, have negatively impacted the level of investment income earned by the Company in recent periods, and such lower levels of investment income would continue if these lower interest rates were to continue. Substantially all of the Company's investment assets are in fixed interest-yielding debt securities of varying maturities, fixed redeemable preferred securities, mortgage loans and real estate. The value of these securities can fluctuate significantly with changes in market conditions.

LINA 0189471

***CIGNA faces risks related to litigation and regulatory investigations.***

CIGNA is routinely involved in numerous claims, lawsuits, regulatory audits, investigations and other legal matters arising in the ordinary course of the business of administering and insuring employee benefit programs, including benefit claims, breach of contract actions, tort claims, and disputes regarding reinsurance arrangements. In addition, CIGNA incurs and likely will continue to incur liability for claims related to its health care business, such as failure to pay for or provide health care, poor outcomes for care delivered or arranged, provider disputes, including disputes over compensation, and claims related to self-funded business. Also, there are currently, and may be in the future, attempts to bring class action lawsuits against the industry. In addition, CIGNA is involved in pending and threatened litigation arising out of its run-off reinsurance and retirement operations.

Court decisions and legislative activity may increase CIGNA's exposure for any of these types of claims. In some cases, substantial non-economic or punitive damages may be sought. CIGNA currently has insurance coverage for some of these potential liabilities. Other potential liabilities may not be covered by insurance, insurers may dispute coverage or the amount of insurance may not be enough to cover the damages awarded. In addition, certain types of damages, such as punitive damages, may not be covered by insurance, and insurance coverage for all or certain forms of liability may become unavailable or prohibitively expensive in the future.

A description of material legal actions in which CIGNA is currently involved is included under "Legal Proceedings" in Item 3 on pages 33 and 34, and Note 20 to CIGNA's 2005 Financial Statements included in its 2005 Annual Report. The outcome of litigation and other legal matters is always uncertain, and outcomes that are not justified by the evidence can occur. CIGNA believes that it has valid defenses to the legal matters pending against it and is defending itself vigorously. Nevertheless, it is possible that resolution of one or more legal matters could result in losses material to CIGNA's consolidated results of operations, liquidity or financial condition.

***CIGNA's business is subject to substantial government regulation, which, along with new regulation, could increase its costs of doing business and could adversely affect its profitability.***

CIGNA's business is regulated at the international, federal, state and local levels. The laws and rules governing CIGNA's business and interpretations of those laws and rules are subject to frequent change. Broad latitude is given to the agencies administering those regulations. Existing or future laws and rules could force CIGNA to change how it does business, restrict revenue and enrollment growth, increase health care, technology and administrative costs including pension costs and capital requirements, and increase CIGNA's liability in federal and state courts for coverage determinations, contract interpretation and other actions. CIGNA must obtain and maintain regulatory approvals to market many of its products, to increase prices for certain regulated products and to consummate some of its acquisitions and divestitures. Delays in obtaining or failure to obtain or maintain these approvals could reduce the Company's revenue or increase its costs.

For further information on regulatory matters relating to CIGNA, see "Regulation" in Section J on page 20 and "Legal Proceedings" in Item 3 on pages 31 and 32, as well as "Regulatory and Industry Developments" in the MD&A section of CIGNA's 2005 Annual Report.

***CIGNA faces competitive pressure, particularly price competition, which could reduce product margins and constrain growth in CIGNA's health care businesses.***

While health plans compete on the basis of many factors, including service quality of clinical resources, claims administration services and medical management programs, and quality and sufficiency of provider networks, CIGNA expects that price will continue to be a significant basis of competition. CIGNA's customer contracts are subject to negotiation as customers seek to contain their costs, and customers may elect to reduce benefits in order to constrain increases in their benefit costs. Such an election may result in lower premiums for the Company's products, although it may also reduce CIGNA's health care costs. Alternatively, the Company's customers may purchase different types of products from it that are less profitable, or move to a competitor to obtain more favorable premiums.

LINA 0189472

In addition, significant merger and acquisition activity has occurred in the health care industry giving rise to speculation and uncertainty regarding the status of companies, which potentially can affect marketing efforts and public perception. Consolidation may make it more difficult for the Company to retain or increase customers, to improve the terms on which CIGNA does business with its suppliers, or to maintain its position or increase profitability. Factors such as business consolidations, strategic alliances, legislative reform and marketing practices create pressure to contain premium price increases, despite increasing medical costs. For example, the Gramm-Leach-Bliley Act gives banks and other financial institutions the ability to affiliate with insurance companies, which may lead to new competitors with significant financial resources in the insurance and health benefits fields. If CIGNA does not compete effectively in its markets, if the Company sets rates too high in highly competitive markets to keep or increase its market share, if membership does not increase as it expects, or if it declines, or if CIGNA loses accounts with favorable medical cost experience while retaining or increasing membership in accounts with unfavorable medical cost experience, CIGNA's product margins and growth could be adversely affected.

***Public perception of CIGNA's products and practices as well as of the health benefits industry, if negative, could reduce enrollment in CIGNA's health benefits programs.***

The health benefits industry is subject to negative publicity, which can arise either from perceptions regarding the industry or CIGNA's business practices or products. This risk may be increased as CIGNA offers new products, such as products with limited benefits or an integrated line of products, targeted at market segments, beyond those in which CIGNA traditionally has operated. Negative publicity may adversely affect the CIGNA brand and its ability to market its products and services, which could reduce the number of enrollees in CIGNA's health benefits programs and adversely affect CIGNA's profitability.

***Large-scale public health epidemics and bio-terrorist activity could cause CIGNA's covered medical and disability expenses, pharmacy costs and mortality experience to rise significantly, and in severe circumstances, could cause operational disruption.***

If widespread public health epidemics such as an influenza pandemic or bio-terrorist or other attack were to occur, CIGNA's covered medical and disability expenses, pharmacy costs and mortality experience could rise significantly, depending on the government's actions and the responsiveness of public health agencies and insurers. In addition, depending on the severity of the situation, a widespread outbreak could curtail economic activity in general, and CIGNA's operations in particular, which could result in operational and financial disruption to CIGNA, which among other things may impact the timeliness of claims and revenue.

***CIGNA faces a wide range of risks, and its success depends on its ability to identify, prioritize and appropriately manage its enterprise risk exposure.***

As a large company operating in a complex industry, CIGNA encounters a variety of risks as identified in this Risk Factor discussion. CIGNA devotes resources to developing enterprise-wide risk management processes, in addition to the risk management processes within its businesses. Failure to appropriately identify and manage these risks, as well as the failure to identify and take advantage of appropriate opportunities, can materially affect CIGNA's profitability, its ability to retain or grow business, or, in the event of extreme circumstances, CIGNA's financial condition.

30

LINA 0189473

**Item 1B.** *UNRESOLVED STAFF COMMENTS*

None.

**Item 2.** *PROPERTIES*

As of March 1, 2006 CIGNA's headquarters will be joining CIGNA Group Insurance, CIGNA International, portions of CIGNA HealthCare and CIGNA's staff support operations in leased premises of approximately 450,000 square feet at Two Liberty Place, Philadelphia. CIGNA HealthCare is the primary occupant of a complex of buildings owned by CIGNA, aggregating approximately 1.5 million square feet of office space, located at 900-950 Cottage Grove Road, Bloomfield, Connecticut. In addition, CIGNA owns or leases office buildings, or parts thereof, throughout the United States and in other countries. CIGNA believes its properties are adequate and suitable for its business as presently conducted. For additional information concerning leases and property, see Notes 2(H) and 18 to CIGNA's 2005 Financial Statements included in its 2005 Annual Report. This paragraph does not include information on investment properties.

**Item 3.** *LEGAL PROCEEDINGS*

Multi-district health care litigation in a Florida federal court against CIGNA and several competitors, included the federal cases *Shane v. Humana, Inc., et al.* (CIGNA subsidiaries added as defendants in August 2000) and *Mangieri v. CIGNA Corporation* (filed December 7, 1999 in the United States District Court for the Northern District of Alabama), as well as the Illinois state suit *Kaiser and Corrigan v. CIGNA Corporation, et al.* (class of health care providers certified on March 29, 2001). CIGNA previously disclosed final, court-approved settlement agreements between CIGNA and both classes of plaintiffs, the physician class and the non-physician health care professional class. A dispute with a representative of certain physicians over administration of their settlement is likely to be resolved in mid 2006.

Beginning in 2004, CIGNA, other insurance companies and certain insurance brokers received subpoenas and inquiries from the New York Attorney General, the Connecticut Attorney General, the Florida Insurance Department and other state regulators relating to their investigations of broker compensation. CIGNA received a subpoena in October 2005 from the U.S. Attorney's Office for the Southern District of California and is providing information to that Office about broker, Universal Life Resources (ULR). In January 2006, CIGNA

received a subpoena from the U.S. Department of Labor and is providing information to that Office about another broker. CIGNA is cooperating with the inquiries and investigations by regulators and the U.S. Attorney's Office.

A case filed on October 14, 2004, *United Policyholders v. Universal Life Resources, Inc., et al.*, in the Superior Court of the State of California for the County of San Diego was withdrawn on April 26, 2005. This case sought injunctive and monetary relief for alleged fraudulent and deceptive business practices under section 17200 of the California Code in connection with purportedly undisclosed commissions paid by insurers to ULR, and named CIGNA Corporation and Life Insurance Company of North America as defendants. A case filed on October 20, 2004, *Ronald Scott Shirley, on behalf of himself and All Others Similarly Situated v. Universal Life Resources, et al.*, which was subsequently recaptioned *Cynthia C. Brandes, On Behalf of Herself and All Others Similarly situated vs. Universal Life Resources. et. al.* was dismissed by the plaintiffs on August 29, 2005. This case was a purported class action suit filed in the United States District Court for the Southern District of California under RICO. It alleged that hidden commissions increased the cost of employee benefit plans and sought treble damages and injunctive relief. CIGNA Corporation and its subsidiary, Life Insurance Company of North America, were named among the defendants.

On November 18, 2004, *The People of the State of California by and through John Garamendi, Insurance Commissioner of the State of California v. Universal Life Resources, et al.* was filed in the Superior Court of the State of California for the County of San Diego alleging that defendants (including CIGNA and several other insurance holding companies) failed to disclose compensation paid to ULR and that, in return for the compensation, ULR steered clients to defendants. The plaintiffs are seeking injunctive relief only.

On August 1, 2005, two CIGNA subsidiaries, Connecticut General Life Insurance Company and Life Insurance Company of North America, were named as defendants in a consolidated amended complaint filed in *In re Insurance Brokerage Antitrust Litigation*, a multi-district litigation proceeding consolidated in the United States District Court for the District of New Jersey. The complaint alleges that brokers and insurers conspired to hide commissions, increasing the cost of employee benefit plans, and seeks treble damages and injunctive relief. Numerous insurance brokers and other insurance companies are named as defendants.

31

LINA 0189474

A shareholder derivative suit, *Coustry v. Hanway, et al.* nominally on behalf of CIGNA, filed on February 25, 2005 in the United States District Court for the Eastern District of Pennsylvania was voluntarily dismissed by the plaintiff on January 10, 2006. The complaint alleged breach of fiduciary duty in connection with alleged concealment of the fact that CIGNA paid contingent commissions to brokers, and sought damages and equitable relief.

In late 2002, several purported class action lawsuits were filed against CIGNA and certain of its officers by individuals seeking to represent a class of purchasers of CIGNA securities from May 2, 2001 to October 24, 2002. The complaints allege, among other things, that the defendants violated Section 10(b) of, and Rule 10b-5 under, the Securities Exchange Act of 1934 by misleading CIGNA shareholders with respect to the company's performance during the class period. Plaintiffs seek compensatory damages and attorneys' fees. In 2003, these suits were consolidated in the United States District Court for the Eastern District of Pennsylvania as *In re CIGNA Corp. Securities Litigation*. CIGNA's motions to dismiss certain claims were granted in 2004 and 2005. In January 2006, the lead plaintiff filed an amended complaint to conform to Court Orders dismissing claims related to certain issues and statements.

On November 7, 2002, a purported shareholder derivative complaint nominally on behalf of CIGNA was filed in the United States District Court for the Eastern District of Pennsylvania by Evelyn Hobbs. The complaint alleges breaches of fiduciary duty by CIGNA's directors, including, among other things, their "failure to monitor, investigate and oversee Cigna's management information system" and seeks compensatory and punitive damages. A similar complaint, filed on November 19, 2002 in the New Castle County (Delaware) Chancery Court by Jack Scott was dismissed by the plaintiff and refiled in the United States District Court for the Eastern District of Pennsylvania. The *Hobbs* and *Scott* cases are being coordinated in the United States District Court for the Eastern District of Pennsylvania by the same judge handling the *In re CIGNA Corp. Securities Litigation*.

On December 18, 2001, Janice Amara filed a purported class action lawsuit in the United States District Court for the District of Connecticut against CIGNA Corporation and the CIGNA Pension Plan on behalf of herself and other similarly situated participants in the CIGNA Pension Plan who earned certain Plan benefits prior to 1998. The plaintiffs allege, among other things, that the Plan violated ERISA by impermissibly conditioning certain post-1997 benefit accruals on the amount of pre-1998 benefit accruals, that these conditions are not adequately disclosed to plan participants, and that the Plan's cash balance formula discriminates against older employees. The plaintiffs were granted class certification on December 20, 2002, and seek equitable relief.

On August 4, 2004, a complaint captioned *New York v. Express Scripts, Inc., ESI Mail Pharmacy Service, Inc., Connecticut General Life Insurance Company and CIGNA Life Insurance Company of New York* was filed in the Supreme Court of the State of New York. The complaint alleges certain breaches of contract and violations of civil law in connection with the management of the prescription drug benefit program under New York State's principal employee health plan, the Empire Plan. CIGNA subsidiaries filed a motion to dismiss all but the breach of contract claims.

See "Unicover and Other Run-off Reinsurance" on page 18 for a description of legal matters arising out of the run-off reinsurance operations.

CIGNA is routinely involved in numerous claims, lawsuits, regulatory audits, investigations and other legal matters arising, for the most part, in the ordinary course of the business of administering and insuring employee benefit programs. An increasing number of claims are being made for substantial non-economic, extra-contractual or punitive damages. The outcome of litigation and other legal matters is always uncertain, and outcomes that are not justified by the evidence can occur. CIGNA believes that it has valid defenses to the legal matters pending against it and is defending itself vigorously. Nevertheless, it is possible that resolution of one or more of the legal matters currently pending or threatened could result in losses material to CIGNA's consolidated results of operations, liquidity or financial condition.

**Item 4.  *SUBMISSION OF MATTERS TO A VOTE OF SECURITY HOLDERS***

None.

LINA 0189475

**Executive Officers of the Registrant**

All officers are elected to serve for a one-year term or until their successors are elected. Principal occupations and employment during the past five years are listed.

MICHAEL W. BELL, 42, Executive Vice President and Chief Financial Officer of CIGNA beginning December 2002; Chief Financial Officer-elect from October 2002 until December 2002; and President of CIGNA Group Insurance from July 2000 until October 2002.

DAVID M. CORDANI, 40, President, CIGNA HealthCare beginning July 2005; President, Health Segments, CIGNA HealthCare from June 2004 until July 2005; Senior Vice President and Chief Financial Officer, CIGNA HealthCare, from October 2002 until June 2004; Senior Vice President, Transformation and Program Management, CIGNA HealthCare from April 2002 until October 2002; and Vice President, Corporate Accounting and Planning, CIGNA Corporation from August 2000 until April 2002.

H. EDWARD HANWAY, 54, Chairman of CIGNA since December 2000; Chief Executive Officer of CIGNA since January 2000; President and a Director of CIGNA since January 1999; and Chief Operating Officer of CIGNA from January 1999 until January 2000.

PAUL E. HARTLEY, 49, President of CIGNA International beginning June 2005; and President and Chief Executive Officer, CIGNA International, Asia Pacific region from June 1999 to June 2005.

JOHN M. MURABITO, 47, Executive Vice President of CIGNA beginning August 2003, with responsibility for Human Resources and Services; and Senior Vice President, Human Resources and Corporate Services from March 2000 until August 2003 at Monsanto Company.

KAREN S. ROHAN, 43, President of CIGNA Group Insurance beginning November 2005; President of CIGNA Dental & Vision Care beginning April 2004; President of CIGNA Specialty Companies from November 2004 until November 2005; Chief Underwriting Officer, CIGNA HealthCare from January 2003 until April 2004; and Vice President and Business Financial Officer, CIGNA HealthCare from March 2000 until December 2002.

JUDITH E. SOLTZ, 59, Executive Vice President and General Counsel beginning February 2001; and Senior Vice President and Associate General Counsel from 1998 until February 2001.

SCOTT A. STORRER, 38, Executive Vice President, CIGNA Service Operations and Information Technology beginning June 2005; Interim Head of CIGNA Information Technology from November 2004 until June 2005; Senior Vice President of CIGNA HealthCare Service Operations and CIGNA Information Technology from October 2002 until November 2004; and Senior Vice President of Disability Management Solutions and Customer Service for CIGNA Group Insurance from May 2001 until October 2002.

LINA 0189476

## PART II

### Item 5. MARKET FOR REGISTRANT'S COMMON EQUITY AND RELATED STOCKHOLDER MATTERS AND ISSUER PURCHASES OF EQUITY SECURITIES

The information under the caption "Quarterly Financial Data--Stock and Dividend Data" and under the caption "Stock Listing" in CIGNA's 2005 Annual Report is incorporated by reference, as is the information from Note 15 to CIGNA's 2005 Financial Statements and the number of shareholders of record as of December 31, 2005 under the caption "Highlights" in CIGNA's 2005 Annual Report. CIGNA's common stock is listed with, and trades on, the New York Stock Exchange under the symbol "CI."

#### Issuer Purchases of Equity Securities

The following table provides information about CIGNA's share repurchase activity for the quarter ended December 31, 2005:

| Issuer Purchases of Equity Securities | | | |
|---|---|---|---|
| Period | Total # of Shares purchased[1] | Average price paid per share | Total # of shares purchased as part of publicly announced program [2] | Approximate dollar value of shares that may yet be purchased as part of publicly announced program [3] |
| October 1-31, 2005 | 1,123,353 | $114.21 | 1,123,000 | $698,126,310 |
| November 1-30, 2005 | 1,670,752 | $112.82 | 1,638,100 | $513,263,468 |
| December 1-31, 2005 | 2,236,719 | $113.13 | 2,236,100 | $260,303,106 |
| Total | 5,030,824 | $113.27 | 4,997,200 | N/A |

(1) Includes shares tendered by employees as payment of the exercise price of stock options granted under the Company's equity compensation plans. Employees tendered 33,624 shares in October, November and December.

(2) CIGNA has had a repurchase program for many years, and has had varying levels of repurchase authority and activity under this program. The program has no expiration date. CIGNA suspends activity under this program from time to time, generally without public announcement. Remaining authorization under the program was approximately $260 million as of December 31, 2005.

(3) Approximate dollar value of shares is as of the last date of the applicable month.

### Item 6. SELECTED FINANCIAL DATA

The five-year financial information under the caption "Highlights" in CIGNA's 2005 Annual Report is incorporated by reference.

### Item 7. MANAGEMENT'S DISCUSSION AND ANALYSIS OF FINANCIAL CONDITION AND RESULTS OF OPERATIONS

The information contained in the MD&A section of CIGNA's 2005 Annual Report is incorporated by reference.

### Item 7A. QUANTITATIVE AND QUALITATIVE DISCLOSURES ABOUT MARKET RISK

The information under the caption "Market Risk" in the MD&A section of CIGNA's 2005 Annual Report is incorporated by reference.

### Item 8. FINANCIAL STATEMENTS AND SUPPLEMENTARY DATA

CIGNA's Consolidated Financial Statements and the report of its independent registered public accounting firm in CIGNA's 2005 Annual Report are incorporated by reference, as is the unaudited information set forth under the caption "Quarterly Financial Data--Consolidated Results."

### Item 9. CHANGES IN AND DISAGREEMENTS WITH ACCOUNTANTS ON ACCOUNTING AND FINANCIAL DISCLOSURE

None.

LINA 0189477

## Item 9A. *CONTROLS AND PROCEDURES*

### A. Disclosure Controls and Procedures.

Based on an evaluation of the effectiveness of CIGNA's disclosure controls and procedures, CIGNA's Chief Executive Officer and Chief Financial Officer concluded that, as of the end of the period covered by this report, CIGNA's disclosure controls and procedures are effective to ensure that information required to be disclosed by CIGNA in the reports that it files or submits under the Exchange Act is recorded, processed, summarized and reported, within the time periods specified in the SEC's rules and forms.

### B. Internal Control Over Financial Reporting.

#### *Management's Report on Internal Control Over Financial Reporting*

CIGNA's management report on internal control over financial reporting under the caption "Management's Annual Report on Internal Control over Financial Reporting" in CIGNA's 2005 Annual Report is incorporated by reference.

#### *Attestation Report of the Registered Public Accounting Firm*

The attestation report of CIGNA's independent registered public accounting firm, on management's assessment of the effectiveness of CIGNA's internal control over financial reporting and the effectiveness of CIGNA's internal control over financial reporting under the caption "Report of Independent Registered Public Accounting Firm" in CIGNA's 2005 Annual Report is incorporated by reference.

#### *Changes in Internal Control Over Financial Reporting*

There have been no changes in CIGNA's internal control over financial reporting identified in connection with the evaluation described in the above paragraph that have materially affected, or are reasonably likely to materially affect, CIGNA's internal control over financial reporting.

## Item 9B. *OTHER INFORMATION*

None.

## PART III

## Item 10. *DIRECTORS AND EXECUTIVE OFFICERS OF THE REGISTRANT*

### A. Directors of the Registrant

The information under the captions "The Board of Directors' Nominees for Terms to Expire in April 2009," "Directors Who Will Continue in Office" and "Board of Directors and Committee Meetings, Membership, Attendance and Independence" (as it relates to Audit Committee disclosure) in CIGNA's proxy statement to be dated on or about March 24, 2006 is incorporated by reference.

### B. Executive Officers of the Registrant

See PART I – "Executive Officers of the Registrant."

### C. Code of Ethics and Other Corporate Governance Disclosures

CIGNA's Code of Ethics and Compliance is the Company's code of business conduct and ethics, and applies to CIGNA's directors, officers (including the chief executive officer, chief financial officer and chief accounting officer) and employees. The Code of Ethics and Compliance policies are posted on the Corporate Governance section of the Company's website, www.cigna.com. In the event the Company substantively amends its Code of Ethics and Compliance or waives a provision of the Code, CIGNA intends to disclose the amendment or waiver on the Corporate Governance section of the Company's website as well.

In addition, the Company's corporate governance guidelines (Board Practices) and the charters of its board committees (audit, corporate governance, executive, finance and people resources) are available on the Corporate Governance section of the Company's website. These corporate governance documents, as well as the Code of Ethics and Compliance policies, are available in print to any shareholder who requests them.

## Item 11. *EXECUTIVE COMPENSATION*

The information under the captions "Executive Compensation," "2005 Non-Employee Director Compensation" and "2006 Non-Employee Director Compensation" in CIGNA's proxy statement to be dated on or about March 24, 2006 is incorporated by reference.

LINA 0189478

**Item 12.** *SECURITY OWNERSHIP OF CERTAIN BENEFICIAL OWNERS AND MANAGEMENT AND RELATED STOCKHOLDER MATTERS*

The following table presents information regarding CIGNA's equity compensation plans as of December 31, 2005:

| Plan Category | (a) Securities To Be Issued Upon Exercise Of Outstanding Options, Warrants And Rights | (b) Weighted Average Exercise Price Of Outstanding Options, Warrants And Rights | (c) Securities Remaining Available For Future Issuance Under Equity Compensation Plans (Excluding Securities Reflected In Column (a)) |
|---|---|---|---|
| Equity Compensation Plans Approved By Security Holders | 8,653,000 | $ 82.57 | 11,457,000 |
| Equity Compensation Plans Not Approved By Security Holders[1] | 219,000 | $ 79.53 | -- |
| Total | 8,872,000 | $ 82.49 | 11,457,000 |

(1)    Consists of the CIGNA-Healthsource Stock Plan of 1997 discussed below under "Description of the Equity Compensation Plan Not Approved by Security Holders."

*Description of the Equity Compensation Plan Not Approved by Security Holders.* The CIGNA-Healthsource Stock Plan of 1997 was adopted by CIGNA's Board of Directors in 1997 in connection with the acquisition of Healthsource, Inc. The plan provided for CIGNA stock option grants to replace prior Healthsource stock option grants as well as new incentive compensation grants to Healthsource employees after the acquisition. The plan had terms similar to those included in other CIGNA equity compensation plans existing at the time but provided only for the grant of stock options and restricted stock. No grants were made under the plan after 1999.

The information under the caption "Stock held by Directors, Nominees and Executive Officers" and "Largest Security Holders" in CIGNA's proxy statement to be dated on or about March 24, 2006 is incorporated by reference.

LINA 0189479

**Item 13.** *CERTAIN RELATIONSHIPS AND RELATED TRANSACTIONS*

The information under the caption "Certain Transactions" in CIGNA's proxy statement to be dated on or about March 24, 2006 is incorporated by reference.

**Item 14.** *PRINCIPAL ACCOUNTING FEES AND SERVICES*

The information under the captions "Policy for the Pre-Approval of Audit and Non-Audit services" and "Fees Billed by Independent Auditors" in CIGNA's proxy statement to be dated on or about March 24, 2006 is incorporated by reference.

## PART IV

**Item 15.** *EXHIBITS AND FINANCIAL STATEMENT SCHEDULES*

(a) (1) The following financial statements have been incorporated by reference from CIGNA's 2005 Annual Report:

Consolidated Statements of Income for the years ended December 31, 2005, 2004 and 2003.

Consolidated Balance Sheets as of December 31, 2005 and 2004.

Consolidated Statements of Comprehensive Income and Changes in Shareholders' Equity for the years ended December 31, 2005, 2004 and 2003.

Consolidated Statements of Cash Flows for the years ended December 31, 2005, 2004 and 2003.

Notes to the Financial Statements.

Report of Independent Registered Public Accounting Firm.

(2) The financial statement schedules are listed in the Index to Financial Statement Schedules on page FS-1.

(3) The exhibits are listed in the Index to Exhibits beginning on page E-1.

LINA 0189480

## SIGNATURES

Pursuant to the requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by its undersigned, thereunto duly authorized.

Date: February 23, 2006

CIGNA Corporation

By: /s/ Michael W. Bell
      Michael W. Bell
      Executive Vice President and
      Chief Financial Officer
      (Principal Financial Officer)

Pursuant to the requirements of the Securities Exchange Act of 1934, this report has been signed below by the following persons on behalf of the registrant and in the capacities and on the dates indicated.

**Principal Executive Officer:**

H. Edward Hanway*
Chairman, Chief Executive Officer
and a Director

**Directors:***

Robert H. Campbell
Isiah Harris, Jr.
Jane E. Henney, M.D
Peter N. Larson
Roman Martinez IV
Louis W. Sullivan, M.D.
Harold A. Wagner
Carol Cox Wait
Donna F. Zarcone
William D. Zollars

**Principal Accounting Officer:**

/s/ Annmarie T. Hagan
Annmarie T. Hagan
Vice President and
Chief Accounting Officer
Date: February 23, 2006

*By: /s/ Carol J. Ward
      Carol J. Ward
      Attorney-in-Fact
      Date: February 23, 2006

LINA 0189481

CIGNA CORPORATION AND SUBSIDIARIES

INDEX TO FINANCIAL STATEMENT SCHEDULES

|  |  | PAGE |
|---|---|---|
| Report of Independent Registered Public Accounting Firm on Financial Statement Schedules | | FS-2 |
| **Schedules** | | |
| I | Summary of Investments--Other Than Investments in Related Parties as of December 31, 2005 | FS-3 |
| II | Condensed Financial Information of CIGNA Corporation (Registrant) | FS-4 |
| III | Supplementary Insurance Information | FS-10 |
| IV | Reinsurance | FS-12 |
| V | Valuation and Qualifying Accounts and Reserves | FS-13 |

Schedules other than those listed above are omitted because they are not required or are not applicable, or the required information is shown in the financial statements or notes thereto, which are incorporated by reference from CIGNA's 2005 Annual Report.

LINA 0189482

**Report of Independent Registered Public Accounting Firm**
**On Financial Statement Schedules**

**To the Board of Directors**
**of CIGNA Corporation**

Our audits of the consolidated financial statements, of management's assessment of the effectiveness of internal control over financial reporting and of the effectiveness of internal control over financial reporting referred to in our report dated February 22, 2006 appearing in the 2005 Annual Report to Shareholders of CIGNA Corporation (which report, consolidated financial statements and assessment are incorporated by reference in this Annual Report on Form 10-K) also included an audit of the financial statement schedules listed in Item 15(a)(2) of this Form 10-K.  In our opinion, these financial statement schedules present fairly, in all material respects, the information set forth therein when read in conjunction with the related consolidated financial statements.

/s/ PricewaterhouseCoopers LLP
Philadelphia, Pennsylvania
February 22, 2006

LINA 0189483

CIGNA CORPORATION AND SUBSIDIARIES

SCHEDULE I
SUMMARY OF INVESTMENTS — OTHER THAN INVESTMENTS IN RELATED PARTIES
DECEMBER 31, 2005
(In millions)

| Type of Investment | Cost | Fair Value | Amount at which shown in the consolidated balance sheet |
|---|---|---|---|
| Fixed maturities: | | | |
| Bonds: | | | |
| United States government and government agencies and authorities | $ 639 | $ 913 | $ 913 |
| States, municipalities and political subdivisions | 2,387 | 2,512 | 2,512 |
| Foreign governments | 780 | 818 | 818 |
| Public utilities | 785 | 859 | 859 |
| All other corporate bonds | 8,144 | 8,607 | 8,607 |
| Asset-backed securities: | | | |
| United States government agencies, mortgage-backed | 45 | 44 | 44 |
| Other mortgage-backed | 490 | 503 | 503 |
| Other asset-backed | 548 | 635 | 635 |
| Redeemable preferred stocks | 55 | 56 | 56 |
| Total fixed maturities | 13,873 | 14,947 | 14,947 |
| | | | |
| Equity securities: | | | |
| Common stocks: | | | |
| Industrial, miscellaneous and all other | 2 | 23 | 23 |
| Public utilities | 1 | 1 | 1 |
| Non-redeemable preferred stocks | 110 | 111 | 111 |
| Total equity securities | 113 | 135 | 135 |
| | | | |
| Mortgage loans on real estate | 3,934 | | 3,934 |
| Policy loans | 1,337 | | 1,337 |
| Real estate investments | 80 | | 80 |
| Other long-term investments | 502 | | 504 |
| Short-term investments | 439 | | 439 |
| | | | |
| Total investments | $20,278 | | $21,376 |

FS-3

LINA 0189484

CIGNA CORPORATION AND SUBSIDIARIES

SCHEDULE II
CONDENSED FINANCIAL INFORMATION OF CIGNA CORPORATION
(REGISTRANT)
STATEMENTS OF INCOME
(In millions)

| | For the year ended December 31, | | |
| --- | --- | --- | --- |
| | 2005 | 2004 | 2003 |
| Other revenues | $ 7 | $ 6 | $ – |
| Total revenues | 7 | 6 | – |
| Operating expenses: | | | |
| Interest | 105 | 107 | 111 |
| Intercompany interest | 162 | 73 | 64 |
| Other | 71 | 138 | 87 |
| Total operating expenses | 338 | 318 | 262 |
| Loss before income taxes | (331) | (312) | (262) |
| Income tax benefit | (126) | (138) | (71) |
| Loss of parent company | (205) | (174) | (191) |
| Equity in income of subsidiaries from continuing operations | 1,481 | 1,751 | 775 |
| Income from continuing operations | 1,276 | 1,577 | 584 |
| Income from discontinued operations, net of taxes | 349 | -- | 48 |
| Income before Cumulative Effect of Accounting Change | 1,625 | 1,577 | 632 |
| Cumulative Effect of Accounting Change, net of taxes | -- | (139) | -- |
| Net income | $1,625 | $1,438 | $632 |

See Notes to Condensed Financial Statements on pages FS–7 and FS–8

LINA 0189485

**CIGNA CORPORATION AND SUBSIDIARIES**

**SCHEDULE II**
**CONDENSED FINANCIAL INFORMATION OF CIGNA CORPORATION**
**(REGISTRANT)**
**BALANCE SHEETS**
**(In millions)**

| | | As of December 31, | | |
|---|---|---|---|---|
| | | 2005 | | 2004 |
| Assets: | | | | |
| Cash and cash equivalents | | $  1 | | $  3 |
| Investments in subsidiaries | | 12,204 | | 12,153 |
| Other assets | | 510 | | 583 |
| Total assets | | $12,715 | | $12,739 |
| | | | | |
| Liabilities: | | | | |
| Intercompany | | $ 4,711 | | $ 4,384 |
| Current portion of long-term debt | | 100 | | -- |
| Long-term debt | | 1,324 | | 1,424 |
| Other liabilities | | 1,220 | | 1,728 |
| Total liabilities | | 7,355 | | 7,536 |
| | | | | |
| Shareholders' Equity: | | | | |
| Common stock (shares issued, 160; 160) | | 40 | | 40 |
| Additional paid-in capital | | 2,385 | | 2,360 |
| Net unrealized appreciation — fixed maturities | $ 195 | | $ 390 | |
| Net unrealized appreciation — equity securities | 24 | | 17 | |
| Net unrealized depreciation — derivatives | (14) | | (16) | |
| Net translation of foreign currencies | 2 | | 2 | |
| Minimum pension liability adjustment | (716) | | (729) | |
| Accumulated other comprehensive loss | | (509) | | (336) |
| Retained earnings | | 5,162 | | 3,679 |
| Less treasury stock, at cost | | (1,718) | | (540) |
| Total shareholders' equity | | 5,360 | | 5,203 |
| Total liabilities and shareholders' equity | | $12,715 | | $12,739 |

See Notes to Condensed Financial Statements on pages FS–7 and FS–8.

LINA 0189486

CIGNA CORPORATION AND SUBSIDIARIES

### SCHEDULE II
### CONDENSED FINANCIAL INFORMATION OF CIGNA CORPORATION
### (REGISTRANT)
### STATEMENTS OF CASH FLOWS
### (In millions)

|  | For the year ended December 31, | | |
|---|---|---|---|
|  | **2005** | **2004** | **2003** |
| Cash Flows from Operating Activities: |  |  |  |
| Net Income | $1,625 | $1,438 | $ 632 |
| Adjustments to reconcile net income |  |  |  |
| to net cash provided by operating activities: |  |  |  |
| Equity in income of subsidiaries | (1,481) | (1,751) | (775) |
| Income from discontinued operations | (349) | -- | (48) |
| Cumulative effect of accounting change, net of taxes | -- | 139 | -- |
| Dividends received from subsidiaries | 1,306 | 499 | 608 |
| Other liabilities | (290) | 106 | (155) |
| Cash provided by operating activities of discontinued operations | 222 | -- | -- |
| Other, net | (68) | (10) | 53 |
| Net cash provided by operating activities | 965 | 421 | 315 |
| Cash Flows from Investing Activities: |  |  |  |
| Other, net | (9) | 5 | 10 |
| Net cash provided by (used in) investing activities | (9) | 5 | 10 |
| Cash Flows from Financing Activities: |  |  |  |
| Net change in intercompany debt | 327 | 364 | (20) |
| Repayment of long-term debt | -- | (76) | (126) |
| Issuance of common stock | 346 | 64 | 6 |
| Common dividends paid | (13) | (100) | (185) |
| Treasury stock repurchases | (1,618) | (676) | -- |
| Net cash used in financing activities | (958) | (424) | (325) |
| Net increase (decrease) in cash and cash equivalents | (2) | 2 | -- |
| Cash and cash equivalents, beginning of year | 3 | 1 | 1 |
| Cash and cash equivalents, end of year | $  1 | $  3 | $  1 |

See Notes to Condensed Financial Statements on pages FS–7 and FS–8.

LINA 0189487

CIGNA CORPORATION AND SUBSIDIARIES

SCHEDULE II
CONDENSED FINANCIAL INFORMATION OF CIGNA CORPORATION
(REGISTRANT)

NOTES TO CONDENSED FINANCIAL STATEMENTS

The accompanying condensed financial statements should be read in conjunction with the Consolidated Financial Statements and the accompanying notes thereto in the Annual Report.

Note 1—For purposes of these condensed financial statements, CIGNA Corporation's wholly owned subsidiaries are recorded using the equity basis of accounting.

Note 2—Short-term and long-term debt consisted of the following at December 31:

| (In millions) | | 2005 | | 2004 |
|---|---|---|---|---|
| **Short-term:** | | | | |
| Current maturities of long-term debt | $ | 100 | $ | - |
| Total short-term debt | $ | 100 | $ | - |
| **Long-term:** | | | | |
| Uncollateralized debt: | | | | |
| 6 3/8% Notes due 2006 | $ | - | $ | 100 |
| 7.4% Notes due 2007 | | 291 | | 291 |
| 8 ¼% Notes due 2007 | | 85 | | 85 |
| 7% Notes due 2011 | | 222 | | 222 |
| 6.375% Notes due 2011 | | 226 | | 226 |
| 7.65% Notes due 2023 | | 100 | | 100 |
| 8.3% Notes due 2023 | | 17 | | 17 |
| 7 7/8% Debentures due 2027 | | 300 | | 300 |
| 8.3% Step Down Notes due 2033 | | 83 | | 83 |
| Total long-term debt | $ | 1,324 | $ | 1,424 |

In May 2004, CIGNA entered into a three-year syndicated revolving credit and letter of credit agreement for $1.0 billion. Of this amount, up to $600 million may be used to support an internal reinsurance arrangement and the remaining portion will serve as an available line of credit commitment for CIGNA.

As of December 31, 2005 CIGNA Corporation had $500 million remaining under an effective shelf registration statement filed with the Securities and Exchange Commission, which may be issued as debt securities, equity securities or both.

Maturities of long-term debt are as follows (in millions): $100 in 2006, $376 in 2007, none in 2008 and 2009, and the remainder in years after 2010.

Interest paid on short- and long-term debt amounted to $104 million, $109 million and $114 million for 2005, 2004 and 2003, respectively.

LINA 0189488

Note 3—Intercompany liabilities consist primarily of loans payable to CIGNA Holdings, Inc. of $4.8 billion and $4.1 billion as of December 31, 2005 and 2004, respectively. Interest was accrued at an average monthly rate of 3.62% for 2005 and 1.76% for 2004.

Note 4—As of December 31, 2005, CIGNA Corporation had guarantees and similar agreements in place to secure payment obligations or solvency requirements of certain wholly owned subsidiaries as follows:

- CIGNA Corporation has arranged for bank letters of credit in support of CIGNA Global Reinsurance Company, an indirect wholly owned subsidiary domiciled in Bermuda, in the amount of $116 million. These letters of credit secure the payment of insureds' claims from run-off reinsurance operations. CIGNA Corporation has agreed to indemnify the banks providing the letters of credit in the event of any draw. As of December 31, 2005 approximately $112 million of the letters of credit are issued.

- CIGNA Corporation has provided a capital commitment deed in an amount up to $185 million in favor of CIGNA Global Reinsurance Company. This deed is equal to the letters of credit securing the payment of insureds' claims from run-off reinsurance operations. This deed is required by Bermuda regulators to have these letters of credit for the London run-off reinsurance operations included as admitted assets.

- Various indirect, wholly owned subsidiaries have obtained surety bonds in the normal course of business. If there is a claim on a surety bond and the subsidiary is unable to pay, CIGNA Corporation guarantees payment to the company issuing the surety bond. The aggregate amount of such surety bonds as of December 31, 2005 was $50 million.

- CIGNA Corporation is obligated under a $25 million letter of credit required by the insurer of its high-deductible self-insurance programs to indemnify the insurer for claim liabilities that fall within deductible amounts for policy years dating back to 1994.

- CIGNA Corporation also provides solvency guarantees aggregating $34 million under state and federal regulations in support of its indirect wholly owned medical HMOs in several states.

- CIGNA Corporation has arranged a $150 million letter of credit in support of CIGNA Europe Insurance Company, an indirect wholly owned subsidiary. CIGNA Corporation has agreed to indemnify the banks providing the letters of credit in the event of any draw. CIGNA Europe Insurance Company is the holder of the letters of credit.

- In addition, CIGNA Corporation has agreed to indemnify payment of losses included in CIGNA Europe Insurance Company's reserves on the reinsurance business transferred from ACE. As of December 31, 2005, the reserve was $452 million.

Through December 31, 2005, no payments have been made on these guarantees and none are pending. CIGNA Corporation provided other guarantees to subsidiaries that, in the aggregate, do not represent a material risk to CIGNA Corporation's results of operations, liquidity or financial condition.

LINA 0189489

(THIS PAGE INTENTIONALLY LEFT BLANK)

FS-9

LINA 0189490

## CIGNA CORPORATION AND SUBSIDIARIES

### SCHEDULE III
### SUPPLEMENTARY INSURANCE INFORMATION
### (In millions)

| Segment | Deferred policy acquisition costs | Future policy benefits and contractholder deposit funds | Medical claims payable and unpaid claims |
|---|---|---|---|
| **Year Ended December 31, 2005:** | | | |
| Health Care | $ 27 | $ 794 | $1,478 |
| Disability and Life | 12 | 973 | 2,835 |
| International | 491 | 870 | 171 |
| Run-off Retirement | -- | 2,808 | 1 |
| Run-off Reinsurance | -- | 980 | 826 |
| Other Operations | 88 | 11,877 | 135 |
| Corporate | -- | -- | -- |
| Total | $618 | $18,302 | $5,446 |
| | | | |
| **Year Ended December 31, 2004:** | | | |
| Health Care | $ 26 | $ 857 | $1,941 |
| Disability and Life | 12 | 1,022 | 2,796 |
| International | 420 | 746 | 146 |
| Run-off Retirement | -- | 10,203 | -- |
| Run-off Reinsurance | -- | 1,016 | 894 |
| Other Operations | 86 | 12,228 | 144 |
| Corporate | -- | -- | -- |
| Total | $544 | $26,072 | $5,921 |
| **Year Ended December 31, 2003:** | | | |
| Health Care | $ 25 | $ 915 | $2,563 |
| Disability and Life | 15 | 1,012 | 2,833 |
| International | 311 | 610 | 136 |
| Run-off Retirement | 146 | 19,173 | -- |
| Run-off Reinsurance | -- | 1,210 | 894 |
| Other Operations | 83 | 12,409 | 188 |
| Corporate | -- | -- | -- |
| Total | $580 | $35,329 | $6,614 |

LINA 0189491

| Unearned premiums and fees | Premiums and fees (1) | Net investment income (2) | Benefit expenses (1)(3) | Amortization of deferred policy acquisition expenses | Other operating expenses |
|---|---|---|---|---|---|
| $ 97 | $10,177 | $  275 | $ 6,652 | $  56 | $3,786 |
| 43 | 2,065 | 264 | 1,587 | 4 | 617 |
| 331 | 1,243 | 71 | 690 | 84 | 381 |
| -- | 2 | 144 | 119 | -- | 61 |
| 1 | 92 | 99 | 150 | -- | 69 |
| 43 | 116 | 465 | 448 | 5 | 59 |
| -- | -- | 41 | -- | -- | 123 |
| $515 | $13,695 | $1,359 | $ 9,646 | $ 149 | $5,096 |
| | | | | | |
| $111 | $10,868 | $  283 | $ 7,100 | $  55 | $3,835 |
| 39 | 1,923 | 253 | 1,529 | 6 | 590 |
| 325 | 1,026 | 58 | 575 | 82 | 314 |
| -- | 215 | 467 | 565 | 6 | 257 |
| 1 | 80 | 92 | 82 | -- | 36 |
| 46 | 124 | 475 | 413 | 5 | 141 |
| -- | -- | 15 | -- | -- | 210 |
| $522 | $14,236 | $1,643 | $10,264 | $154 | $5,383 |
| | | | | | |
| $119 | $12,284 | $  283 | $ 8,684 | $  62 | $4,099 |
| 39 | 1,807 | 250 | 1,458 | 6 | 579 |
| 244 | 855 | 49 | 482 | 59 | 289 |
| 2 | 271 | 1,413 | 919 | 24 | 295 |
| 2 | 84 | 82 | 116 | -- | 39 |
| 43 | 159 | 517 | 561 | 5 | 154 |
| -- | -- | -- | -- | -- | 129 |
| $449 | $15,460 | $2,594 | $12,220 | $156 | $5,584 |

(1)  Amounts presented are shown net of the effects of reinsurance.  See Note 7 to the Financial Statements included in CIGNA's 2005 Annual Report.

(2)  The allocation of net investment income is based upon the investment year method, the identification of certain portfolios with specific segments, or a combination of both.

(3)  Benefit expenses include Health Care medical claims expense and other benefit expenses.

LINA 0189492

## CIGNA CORPORATION AND SUBSIDIARIES

### SCHEDULE IV
### REINSURANCE
### (In millions)

| | Gross amount | Ceded to other companies | Assumed from other companies | Net amount | Percentage of amount assumed to net |
|---|---|---|---|---|---|
| **Year Ended December 31, 2005:** | | | | | |
| Life insurance in force | $336,705 | $43,062 | $134,989 | $428,632 | 31. |
| | | | | | |
| Premiums and fees: | | | | | |
| Life insurance and annuities | $1,728 | $330 | $417 | $1,815 | 23. |
| Accident and health insurance | 11,966 | 155 | 69 | 11,880 | . |
| Total | $13,694 | $485 | $486 | $13,695 | 3. |
| | | | | | |
| **Year Ended December 31, 2004:** | | | | | |
| Life insurance in force | $337,654 | $46,530 | $112,070 | $403,194 | 27 |
| | | | | | |
| Premiums and fees: | | | | | |
| Life insurance and annuities | $1,969 | $363 | $423 | $2,029 | 20 |
| Accident and health insurance | 12,285 | 116 | 38 | 12,207 | |
| Total | $14,254 | $479 | $461 | $14,236 | 3 |
| | | | | | |
| **Year Ended December 31, 2003:** | | | | | |
| Life insurance in force | $323,241 | $52,511 | $136,754 | $407,484 | 33 |
| | | | | | |
| Premiums and fees: | | | | | |
| Life insurance and annuities | $2,115 | $397 | $495 | $2,213 | 22 |
| Accident and health insurance | 13,328 | 122 | 41 | 13,247 | |
| Total | $15,443 | $519 | $536 | $15,460 | 3 |

LINA 0189493

## CIGNA CORPORATION
### SCHEDULE V
### VALUATION AND QUALIFYING ACCOUNTS AND RESERVES
#### (In millions)

| Description | Balance at beginning of period | Charged (Credited) to costs and expenses | Charged (Credited) to other accounts -describe(1) | Other deductions -describe(2) | Balance at end of period |
|---|---|---|---|---|---|
| **2005:** | | | | | |
| Investment asset valuation reserves: | | | | | |
| Mortgage loans | $ 2 | $ 2 | $ - | $ (2) | $ 2 |
| Allowance for doubtful accounts: | | | | | |
| Premiums, accounts and notes receivable | 78 | 8 | - | (24) | 62 |
| Deferred tax asset valuation allowance | 262 | (33) | - | (84) | 145 |
| Reinsurance recoverables | 193 | (9) | - | (26) | 158 |
| **2004:** | | | | | |
| Investment asset valuation reserves: | | | | | |
| Mortgage loans | $ 19 | $ 1 | $ - | $(18) | $ 2 |
| Allowance for doubtful accounts: | | | | | |
| Premiums, accounts and notes receivable | 81 | 20 | - | (23) | 78 |
| Deferred tax asset valuation allowance | 223 | 51 | - | (12) | 262 |
| Reinsurance recoverables | 176 | 48 | - | (31) | 193 |
| **2003:** | | | | | |
| Investment asset valuation reserves: | | | | | |
| Mortgage loans | $ 11 | $ 3 | $ 5 | $ - | $ 19 |
| Real estate | 21 | 1 | 1 | (23) | - |
| Allowance for doubtful accounts: | | | | | |
| Premiums, accounts and notes receivable | 55 | 42 | (2) | (14) | 81 |
| Deferred tax asset valuation allowance | 204 | 28 | - | (9) | 223 |
| Reinsurance recoverables | 149 | 19 | - | 8 | 176 |

(1) Change in valuation reserves attributable to policyholder contracts.
(2) Reflects transfer of reserves to other investment asset categories as well as charge-offs upon sales, repayments and other. The change in the deferred tax asset valuation allowance primarily reflects activity in discontinued operations. The change in reinsurance recoverable reflects a reclassification of the gross reinsurance recoverable, with no effect on the net reinsurance recoverable.

LINA 0189494

(THIS PAGE INTENTIONALLY LEFT BLANK)

LINA 0189495

## INDEX TO EXHIBITS

| Number | | Description | Method of Filing |
|---|---|---|---|
| 3.1 | | Restated Certificate of Incorporation of the registrant as last amended July 22, 1998 | Filed as Exhibit 3.1 to the registrant's Form 10-K for the year ended December 31, 2003 and incorporated herein by reference. |
| 3.2 | | By-Laws of the registrant as last amended and restated December 11, 2000 | Filed herewith. |
| 4 | (a) | Amended and Restated Shareholder Rights Agreement dated as of July 22, 1998 between CIGNA Corporation and First Chicago Trust Company of New York | Filed as Exhibit 4(a) to the registrant's Form 10-K for the year ended December 31, 2003 and incorporated herein by reference. |
| | (b) | Amendment No. 1 dated as of December 14, 1998 to the Amended and Restated Shareholder Rights Agreement | Filed as Exhibit 4(b) to the registrant's Form 10-K for the year ended December 31, 2003 and incorporated herein by reference. |
| | (c) | Amendment No. 2 dated as of December 31, 2001 to the Amended and Restated Shareholder Rights Agreement | Filed as Exhibit 10.1 to the registrant's Form 10-K for the year ended December 31, 2001 and incorporated herein by reference. |

Exhibits 10.1 through 10.17 are identified as management contracts or compensatory plans or arrangements pursuant to Item 15 of Form 10-K.

| Number | | Description | Method of Filing |
|---|---|---|---|
| 10.1 | | Deferred Compensation Plan for Directors of CIGNA Corporation, as amended and restated January 1, 1997 | Filed as Exhibit 10.1 to the registrant's Form 10-K for the year ended December 31, 2001 and incorporated herein by reference. |
| 10.2 | | Restricted Stock/Stock Equivalent Plan for Non-Employee Directors of CIGNA Corporation amended and restated effective January 17, 2006 | Filed as Exhibit 10.2 to the registrant's Form 8-K filed on December 13, 2005 and incorporated herein by reference. |
| 10.3 | | Description of Compensation Plan for Non-Employee Directors of CIGNA Corporation, as amended and restated effective January 1, 2006. | Filed as Exhibit 10.1 to the registrant's Form 8-K filed on December 13, 2005 and incorporated herein by reference. |
| 10.4 | | CIGNA Corporation Stock Plan, as amended and restated through July 2000 | Filed as Exhibit 10.4 to the registrant's Form 10-K for the year ended December 31, 2003 and incorporated herein by reference. |
| 10.5 | (a) | CIGNA Executive Severance Benefits Plan effective as of January 1, 1997 | Filed as Exhibit 10.7(a) to the registrant's Form 10-K for the year ended December 31, 2001 and incorporated herein by reference. |
| | (b) | Amendment No. 1 effective February 23, 2000 to the CIGNA Executive Severance Benefits Plan | Filed as Exhibit 10.5(b) to the registrant's Form 10-K for the year ended December 31, 2004 and incorporated herein by reference. |
| 10.6 | | Description of Severance Benefits for Executives in Non-Change of Control Circumstances | Filed as Exhibit 10.6 to the registrant's Form 10-K for the year ended December 31, 2004 and incorporated herein by reference. |

LINA 0189496

| | | | |
|---|---|---|---|
| 10.7 | | CIGNA Executive Incentive Plan, as amended and restated January 1, 2002 | Filed as Exhibit 10 to the registrant's Form 10-Q for the quarter ended March 31, 2002 and incorporated herein by reference. |
| 10.8 | | CIGNA Long-Term Incentive Plan, as amended and restated effective as of January 1, 2005 | Filed as Appendix B to the registrant's definitive proxy statement filed March 21, 2005 and incorporated herein by reference. |
| 10.9 | | Description of Arrangement regarding Unit-based Long-Term Incentive Compensation | Filed as Exhibit 10.5 to the registrant's Form 10-Q for the year ended September 30, 2003 and incorporated herein by reference. |
| 10.10 | | CIGNA Deferred Compensation Plan, as amended and restated October 24, 2001 | Filed as Exhibit 10 to the registrant's Form 10-Q for the quarter ended September 30, 2001 and incorporated herein by reference. |
| 10.11 | | Description of Amendments to Executive Management Compensation Arrangements | Filed as Exhibit 10.1 to the registrant's Form 10-Q for the quarter ended March 31, 2005 and incorporated herein by reference. |
| 10.12 | (a) | CIGNA Supplemental Pension Plan, as amended and restated August 1, 1998 | Filed as Exhibit 10.9(a) to the registrant's Form 10-K for the year ended December 31, 2003 and incorporated herein by reference. |
| | (b) | Amendment No. 1 to the CIGNA Supplemental Pension Plan, effective as of September 1, 1999 | Filed as Exhibit 10.10(b) to the registrant's Form 10-K for the year ended December 31, 2004 and incorporated herein by reference. |
| | (c) | Amendment No. 2 dated December 6, 2000 to the CIGNA Supplemental Pension | Filed as Exhibit 10.11(c) to the registrant's Form 10-K for the year ended December 31, 2001 and incorporated herein by reference. |
| 10.13 | | Description of CIGNA Corporation Financial Services Program | Filed as Exhibit 10.10 to the registrant's Form 10-K for the year ended December 31, 2003 and incorporated herein by reference. |
| 10.14 | | Description of Mandatory Deferral of Non-Deductible Executive Compensation Arrangement | Filed as Exhibit 10.17 to the registrant's Form 10-K for the year ended December 31, 2001 and incorporated herein by reference. |
| 10.15 | | Form of Non-Compete Agreement dated December 8, 1997 with Mr. Hanway | Filed as Exhibit 10.15 to the registrant's Form 10-K for the year ended December 31, 2002 and incorporated herein by reference. |
| 10.16 | | Special Incentive Agreement with Mr. Hanway dated March 17, 1998 | Filed as Exhibit 10.19 to the registrant's Form 10-K for the period ended December 31, 2002 and incorporated herein by reference. |

LINA 0189497

| | | |
|---|---|---|
| 10.17 | Schedule regarding Deferred Stock Unit Agreements dated August 6, 2003 with Messrs. Hanway, Bell and Ms. Soltz and Form of Deferred Stock Unit Agreement | Filed as Exhibit 10.22 to the registrant's Form 10-K for the year ended December 31, 2003 and incorporated herein by reference. |
| 12 | Computation of Ratios of Earnings to Fixed Charges | Filed herewith. |
| 13 | Portions of registrant's 2005 Annual Report to Shareholders (Entire Annual Report bound in printed versions of Form 10-K) | Filed herewith. |
| 21 | Subsidiaries of the Registrant | Filed herewith. |
| 23 | Consent of Independent Registered Public Accounting Firm | Filed herewith. |
| 24.1 | Powers of Attorney | Filed herewith. |
| 24.2 | Certified Resolutions | Filed herewith. |
| 31.1 | Certification of Chief Executive Officer of CIGNA Corporation pursuant to Rule 13a-14(a) or Rule 15d-14(a) of the Securities Exchange Act of 1934 | Filed herewith. |
| 31.2 | Certification of Chief Financial Officer of CIGNA Corporation pursuant to Rule 13a-14(a) or Rule 15d-14(a) of the Securities Exchange Act of 1934 | Filed herewith. |
| 32.1 | Certification of Chief Executive Officer of CIGNA Corporation pursuant to Rule 13a-14(b) or Rule 15d-14(b) and 18 U.S.C. Section 1350 | Furnished herewith. |
| 32.2 | Certification of Chief Financial Officer of CIGNA Corporation pursuant to Rule 13a-14(b) or Rule 15d-14(b) and 18 U.S.C. Section 1350 | Furnished herewith. |

The registrant will furnish to the Commission upon request a copy of any of the registrant's agreements with respect to its long-term debt.

Shareholders may obtain copies of exhibits by writing to CIGNA Corporation, Shareholder Services Department, 1601 Chestnut Street, TL17A, Philadelphia, PA 19192.

E-3

LINA 0189498

Exhibit 12

## CIGNA CORPORATION
## COMPUTATION OF RATIO OF EARNINGS TO FIXED CHARGES
### (Dollars in millions)

| | Year ended December 31, | | | | |
| --- | --- | --- | --- | --- | --- |
| | 2005 | 2004 | 2003 | 2002 | 2001 |
| Income (loss) from continuing operations before income taxes (benefits) | $1,793 | $2,375 | $ 848 | $(645) | $1,392 |
| Adjustments: | | | | | |
| Loss (income) from equity investees | 1 | 1 | 4 | 4 | (79) |
| Income (loss) from continuing operations before income taxes (benefits), as adjusted | $1,794 | $2,376 | $ 852 | $ (641) | $1,313 |
| Fixed charges included in income: | | | | | |
| Interest expense | $105 | $107 | $ 111 | $ 121 | $ 118 |
| Interest portion of rental expense | 36 | 43 | 54 | 52 | 50 |
| | 141 | 150 | 165 | 173 | 168 |
| Interest credited to contractholders | 1 | 446 | 877 | 1,036 | 1,071 |
| | $ 142 | $ 596 | $1,042 | $1,209 | $1,239 |
| Income available for fixed charges (including interest credited to contractholders) | $1,936 | $2,972 | $1,894 | $ 568 | $2,552 |
| Income available for fixed charges (excluding interest credited to contractholders) [1] | $1,935 | $2,526 | $1,017 | $ - | $1,481 |
| **RATIO OF EARNINGS TO FIXED CHARGES:** | | | | | |
| Including interest credited to contractholders [1] | 13.6 | 5.0 | 1.8 | - | 2.1 |
| **SUPPLEMENTAL RATIO:** | | | | | |
| Excluding interest credited to contractholders [1] | 13.7 | 16.8 | 6.2 | - | 8.8 |

[1]     Due to the loss in 2002, the ratio coverage was less than 1:1. CIGNA must generate additional earnings of $641 million to achieve a coverage of 1:1.

LINA 0189499

Exhibit 21

## SUBSIDIARIES OF THE REGISTRANT

Listed below are subsidiaries of CIGNA Corporation as of December 31, 2005 with their jurisdictions of organization shown in parentheses. Those subsidiaries not listed would not, in the aggregate, constitute a "significant subsidiary" of CIGNA Corporation, as that term is defined in Rule 1-02(w) of Regulation S-X.

CIGNA Holdings, Inc. (Delaware)
I.   Connecticut General Corporation (Connecticut)
    A.  Arbor Reinsurance Company Limited (Bermuda)
    B.  CIGNA Dental Health, Inc. (Florida)
        (1)    CIGNA Dental Health of California, Inc. (California)
        (2)    CIGNA Dental Health of Colorado, Inc. (Colorado)
        (3)    CIGNA Dental Health of Delaware, Inc. (Delaware)
        (4)    CIGNA Dental Health of Florida, Inc. (Florida)
        (5)    CIGNA Dental Health of Illinois, Inc. (Illinois)
        (6)    CIGNA Dental Health of Kansas, Inc. (Kansas)
        (7)    CIGNA Dental Health of Kentucky, Inc. (Kentucky)
        (8)    CIGNA Dental Health of Maryland, Inc. (Delaware)
        (9)    CIGNA Dental Health of Missouri, Inc. (Missouri)
        (10)   CIGNA Dental Health of New Jersey, Inc. (New Jersey)
        (11)   CIGNA Dental Health of New Mexico, Inc. (New Mexico)
        (12)   CIGNA Dental Health of North Carolina, Inc. (North Carolina)
        (13)   CIGNA Dental Health of Ohio, Inc. (Ohio)
        (14)   CIGNA Dental Health of Pennsylvania, Inc. (Pennsylvania)
        (15)   CIGNA Dental Health of Texas, Inc. (Texas)
        (16)   CIGNA Dental Health of Virginia, Inc. (Virginia)
        (17)   CIGNA Dental Health Plan of Arizona, Inc. (Arizona)
        (18)   CIGNA Dental Merger Corporation  (Maryland)
    C.  CIGNA Health Corporation (Delaware)
        (1)    Choicelinx Corporation  (Delaware)
        (2)    Healthsource, Inc.  (New Hampshire)
            (a)  CIGNA HealthCare of Arizona, Inc. (Arizona)
            (b)  CIGNA HealthCare of California, Inc. (California)
            (c)  CIGNA HealthCare of Colorado, Inc. (Colorado)
            (d)  CIGNA HealthCare of Connecticut, Inc. (Connecticut)
            (e)  CIGNA HealthCare of Delaware, Inc. (Delaware)
            (f)  CIGNA HealthCare of Florida, Inc. (Florida)
            (g)  CIGNA HealthCare of Georgia, Inc. (Georgia)
            (h)  CIGNA HealthCare of Illinois, Inc. (Delaware) (99.60% with balance owned by non-affiliate)
            (i)  CIGNA HealthCare of Indiana, Inc. (Indiana)
            (j)  CIGNA HealthCare of Maine, Inc. (Maine)
            (k)  CIGNA HealthCare of Massachusetts, Inc. (Massachusetts)
            (l)  CIGNA HealthCare Mid-Atlantic, Inc. (Maryland)
            (m) CIGNA HealthCare of New Hampshire, Inc. (New Hampshire)
            (n)  CIGNA HealthCare of New Jersey, Inc. (New Jersey)
            (o)  CIGNA HealthCare of New York, Inc. (New York)
            (p)  CIGNA HealthCare of North Carolina, Inc. (North Carolina)
            (q)  CIGNA HealthCare of Ohio, Inc. (Ohio)
            (r)  CIGNA HealthCare of Pennsylvania, Inc. (Pennsylvania)
            (s)  CIGNA HealthCare of South Carolina, Inc. (South Carolina)
            (t)  CIGNA HealthCare of St. Louis, Inc. (Missouri)
            (u)  CIGNA HealthCare of Tennessee, Inc. (Tennessee)
            (v)  CIGNA HealthCare of Texas, Inc. (Texas)

LINA 0189500

          (w) CIGNA HealthCare of Utah, Inc. (Utah)
          (x) CIGNA HealthCare of Virginia, Inc. (Virginia)
          (y) CIGNA Insurance Group, Inc. (New Hampshire)
          (z) CIGNA Insurance Services Company (South Carolina)
          (aa) Temple Insurance Company Limited (Bermuda)
    (3)     Managed Care Consultants, Inc. (Nevada)
  D.  CIGNA Behavioral Health, Inc. (Minnesota)
  E.  CIGNA Life Insurance Company of Canada (Canada)
  F.  CIGNA Life Insurance Company of New York (New York)
  G.  Connecticut General Life Insurance Company (Connecticut)
    (1)     Capstone Government Solutions, LLC (Delaware) (50% with balance owned
         by non-affiliate)
    (2)     CIGNA Government Services, LLC (Delaware)
    (3)     CIGNA Health Support, LLC (Delaware)
    (4)     Tel-Drug of Pennsylvania, LLC (Pennsylvania)
  H.  International Rehabilitation Associates, Inc. d/b/a Intracorp (Delaware)
  I.  Life Insurance Company of North America (Pennsylvania)
    (1)     CIGNA & CMC Life Insurance Company Limited (China) (50% with
         balance owned by non-affiliate)
    (2)     LINA Life Insurance Company of Korea (Korea)
    (3)     Linatex, Inc. (Delaware)
  J.  Tel-Drug, Inc. (South Dakota)
II.  CIGNA Global Holdings, Inc. (Delaware)
  A.  CIGNA Brazil Holdings, Inc. (Delaware)
    (1)     CIGNA Brasil Participacoes Ltda. (Brazil) (99.99% with balance owned by affiliate)
  B.  CIGNA International Marketing (Thailand) Limited (Thailand) (99.98% with balance
       owned by affiliates)
  C.  CIGNA Global Reinsurance Company, Ltd. (Bermuda)
    (1)     CIGNA Holdings Overseas, Inc. (Delaware)
         (a) CIGNA Europe Insurance Company S.A.-N.V. (Belgium) (99.99% with balance
           owned by affiliate)
         (b) CIGNA European Services (UK) Limited (United Kingdom)
         (c) CIGNA International Marketing Australia Limited (Australia)
         (d) CIGNA Life Insurance Company of Europe S.A.- N.V. (Belgium) (99.99%
           with balance owned by affiliate)
         (e) Empresa Guatemalteca CIGNA de Seguros, Sociedad Anonima (Guatemala)
           (97.37% with balance owned by non-affiliates)
         (f) CIGNA Seguradora S.A. (Brazil) (74.39% with balance owned by affiliate)
         (g) Inversiones CIGNA Limitada (Chile) (99.55% with balance owned by affiliate)
           (i) CIGNA Asistencia Administrativa Limitada (Chile) (98.09% with balance
             owned by affiliate)
           (ii) CIGNA Compania de Seguros de Vida (Chile) S.A. (Chile) (98.64% with
             balance owned by non-affiliates)
         (h) CIGNA International Marketing (Japan)
         (i) CIGNA Apac Holdings Limited (New Zealand)
           (i) CIGNA Life Insurance New Zealand Limited (New Zealand)
           (ii) CIGNA Taiwan Life Insurance Company Limited (New Zealand)
         (j) RHP Thailand Limited (Thailand) (25% directly owned)
    (2)     CIGNA Worldwide Insurance Company (Delaware)
         (a) PT. Asuransi CIGNA (Indonesia) (80% with balance owned by non-affiliate)
  D.  CIGNA International Corporation (Delaware)
  E.  CIGNA International Services, Inc. (Delaware)
  F.  CIGNA Stu S.A. (Poland) (7.03% with balanced owned by non-affiliates)

LINA 0189501

III. CIGNA Investment Group, Inc. (Delaware)
    A.  CIGNA International Finance Inc. (Delaware)
        (I)        CIGNA International Investment Advisors, Ltd. (Delaware)
              (a)  CIGNA Fund Managers Limited (Bermuda)
              (b)  CIGNA International Investment Advisors Limitada (Chile)
    B.  CIGNA Investments, Inc. (Delaware)
    C.  CIGNA Investment Advisors, Inc. (Delaware)
IV. CIGNA Intellectual Property, Inc. (Delaware)

LINA 0189502

**Exhibit 23**

CONSENT OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM

     We hereby consent to the incorporation by reference in the Registration Statement on Form S-3 (No. 333-41011) and Form S-8 (No. 33-44371, No. 33-51791, No. 33-60053, No. 333-22391, No. 333-31903, No. 333-64207, No. 333-90785, No. 333-107839 and No. 333-129395) of CIGNA Corporation of our report dated February 22, 2006 relating to the financial statements, management's assessment of the effectiveness of internal control over financial reporting and the effectiveness of internal control over financial reporting, which appears in the Annual Report to Shareholders, which is incorporated in this Annual Report on Form 10-K. We also consent to the incorporation by reference of our report dated February 22, 2006 relating to the financial statement schedules, which appears in this Form 10-K.

/s/ PricewaterhouseCoopers LLP
PricewaterhouseCoopers LLP
Philadelphia, Pennsylvania
February 23, 2006

**Exhibit 31.1**

CERTIFICATION

I, H. EDWARD HANWAY, certify that:

1.   I have reviewed this Annual Report on Form 10-K of CIGNA Corporation;

2.   Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.   Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.   The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

    a)   designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    b)   designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

    c)   evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

    d)   disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.   The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

    a)   all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

    b)   any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.


Date:  February 23, 2006                              /s/ H. Edward Hanway
                                                      Chief Executive Officer

LINA 0189504