# EXHIBIT C

COMMONWEALTH OF KENTUCKY
MARTIN CIRCUIT COURT
C.A. # 96-CI-00078
DIVISION NO. II

CONNECTICUT GENERAL LIFE
INSURANCE COMPANY,                                    PLAINTIFF,

                        MEMORANDUM IN RESPONSE TO
VS:                     MOTION FOR SUMMARY JUDGMENT

GROVER MURPHY                                         DEFENDANT,

AND

PAUL D. DEATON                                        INTERVENING
JOHN L. BARTON                                        PLAINTIFFS,

VS:



CONNECTICUT GENERAL LIFE                              THIRD PARTY
INSURANCE COMPANY                                     DEFENDANT.

*********************************************

## I. A. INTRODUCTION

This lawsuit is a claim for legal services rendered
by Deaton and Barton to Cigna which resulted in benefits to
Cigna of $261,768.00 for which they paid Deaton and Barton
nothing.  There was no written contract for these legal
services but Cigna requested that they be rendered; knew and
approved step by step that they were being rendered; and
accepted the benefits which resulted from them.  This
resulted in a contract implied by law which allows for
recovery quantum meruit for another's unjust enrichment.
Cigna owes Deaton and Barton the fee which is customarily

-1-

charged for them- one-third of the benefits which Cigna accepted.

## II.  B.  TESTIMONY AND DOCUMENTATION

Grover Murphy was employed by Wolfe Creek Collieries for sixteen years before he suffered an industrial injury to his back on August 11, 1980.  He testified he was "whipped on a cutting machine cable and pulled sideways"; this caused a herniated disc in his lumbar spine which required surgery and resulted in disc disease.  Complete rest and medication for pain and arthritis led to and exacerbated diverticulosis, colitis, impotence and depression.  Grover was never able to return to his Coal mine employment. Affidavit of Grover Murphy - Attached, Ex. 1

Grover's loss of wages and medical expenses were covered by Connecticut General Insurance Company (CIGNA) under a policy purchased by Grover's employer.  Under the policy CIGNA paid 50% of Grover's monthly wage at time of injury or $1,598.00 a month as Long Term Disability Benefits (LTDIB); CIGNA also paid 100% of medical expenses.  These benefits were payable for as long as Grover was eligible for employment with Wolfe Creek Collieries, or until he reached age 65 on May 2, 2015.

Under the insurance policy LTDIB would be offset by 100% of any Workers' Compensation or Social Security

-2-

Disability (SSDIB) which Grover received or was eligible to
receive.  The policy presumed eligibility and required the
beneficiary, Grover to prove otherwise:

> "The amount of monthly income otherwise
> payable for any monthly period will be
> reduced by the amount of any other Income
> Benefits... which include... the Federal
> Social Security Act... each employee who
> is covered under the Federal Social
> Security Act will be considered to be
> receiving periodic cash payments under
> such Act, in an amount equal to the
> amount he and his dependents would receive
> were they receiving such benefits, unless
> the employee submits proof to the Insurance
> Company that such payments have been applied
> for but are not payable".  "Definitions", "Other
> Income"; Attached, Ex. 2.

In 1981 Cigna threatened to reduce LTDIB payments
unless Grover hired a lawyer and pursued SSDIB.  Grover
applied twice for SSDIB and twice was denied.  In 1989 Cigna
threatened, by phone and by letter, to start deducting SSDIB
immediately from his LTDIB if Grover did not re-file his
SSDIB claim.  This demand was made despite the fact that
Grover had already twice satisfied his contractual obligation
to prove that SSDIB had been applied for but were not
payable, Affidavit of Grover Murphy, Attached EX. 1.

Initially, Grover's re-filed claim was denied in
the local office of the Social Security Administration.
While the claim was pending there, Cigna made Grover elect
whether to receive full LTDIB benefits while the claim pended
or allow Cigna to begin immediately to deduct SSDIB.  In

-3-

return for full LTDIB payments, to which he was already
entitled, Grover was told by Cigna he had to sign a
"REIMBURSEMENT AGREEMENT":

> "...I agree that I will request a re-
> consideration of my claim by the Social
> Security Administration, and if necessary,
> appeal my claim for Social Security Benefits",
> Attached, EX. 3

Grover, as agreed, requested reconsideration of his claim but
was denied benefits again.

The next stage of appeal required conduct of a
hearing before an Administrative Law Judge (ALJ) at which the
evidence must be introduced on which to base all future
appeals.  Cigna urged Grover to hire a new lawyer to help him
earn SSDIB for Cigna because the old one had 'messed-up'.
Assurances were made that all legal fees incurred by Grover
would be paid by Cigna.

Grover hired Paul Deaton to represent him.  Grover
advised Deaton that he had already been found totally
disabled by Cigna's doctors.  Deaton realized that he needed
those medical findings to support Cigna's claim for SSDIB; On
August 23, 1990 he wrote Cigna requesting medical reports and
reminding them

> "...any information you have in support
> of his claim would be beneficial to all
> parties involved." Attached, p. 1 EX. 4

On August 31, 1990 Juan Perez, Cigna Benefit
Analyst, sent Paul Deaton the following response:

-4-

"Dear Mr. Deaton:
Enclosed please find the complete copies
of the medical information we have gathered
in our processing of Mr. Murphy's claim for
long term disability benefits.
We understand that you will be representing
Mr. Grover W. Murphy on his claim for Social
Security Disability benefits.  In view, may
we ask you to keep us advised regarding the
status of his claim for the said benefits
from Social Security Administration.

Thanking you for your assistance and we
look forward in working with you in the
future."  Attached p. 2 EX. 4

Perez expressed thanks for Deaton's cooperation again on

November 5, 1990.  Perez requested:  and received a status

report from Deaton, on January 14, 1991, Attached pp. 3-4,

EX. 4.

On February 13, 1991 a hearing was held on Cigna's

claim for Grover's SSDIB by an ALJ.  Several exhibits were

entered into evidence which Deaton had received from CIGNA'S

Benefit Analyst Juan Perez.  Nevertheless, the ALJ denied

benefits, on March 29, 1991.

Deaton appealed the ALJ denial to the Appeals

Council of the SSA.  On August 27, 1991, the Appeals Council

considered Deaton's request but concluded there was no basis

under the regulations for a review and allowed the ALJ denial

of benefits to stand.

Grover Murphy and Deaton had no choice, under re-

imbursement agreement, but to appeal the Appeals Councils

decision by filing a lawsuit in the Federal District Court

-5-

against the SSA, requesting review of the Appeals Council's affirmance of ALJ Kogan's denial of SSDIB. Deaton and Grover Murphy hired John Barton to file and prosecute the lawsuit against the SSA. Cross motions for Summary Judgment in the District court resulted, on November 2, 1992, in reversal of the ALJ'S denial of benefits by the Federal District Judge and remand of Cigna's claim to the SSA for further consideration of the medical evidence. On December 28, 1993 John Barton requested latest medical reports from Cigna for the Rehearing; Attached p. 5, EX. 4.

On January 13, 1993, Andy Gaither, Cigna Benefit Analyst, got approval by Cigna Management to provide to John Barton Cigna's medical information on Grover for the re-hearing of Cigna's claim by an ALJ;

Mr. Gaither stayed in close touch with Mr. Barton requesting status reports on Cigna's claim for SSDIB on March 4, 1993; March 31, 1993; and May 13, 1993, Attached, pp. 6-8, EX. 4.

On May 21, John Barton advised Gaither that an award of SSDIB was probably forthcoming in the next two months; Attached, p. 9, EX. 4.

On July 13, 1993 Sherri Weaver, Cigna Claims Analyst, wrote John Barton:

> "Please let us know of any update
> on this subject as soon as possible.
> Thank you for your cooperation in this
> matter. If there are any questions
> please call this office."

-6-

On August 18, 1993, this request was repeated by Ms. Weaver;
Attached, pp. 10-11, EX. 4.

In the meantime, the ALJ office awarded SSDIB
eligibility commencing December 21, 1982. When notified of
this, Ms. Weaver on September 7, 1993 threatened to offset
Grover's LTDIB by an estimated amount of SSDIB unless within
60 days SSDIB became "final" Ms. Weaver's letter also said

> "There will be an overpayment amount
> from which any approved attorney coast
> (sic) will be deducted- Please send us
> a copy of award and approved attorney
> fees as soon as possible- Thank you for
> your cooperation in this matter." Attached,
> p. 12, EX. 4.

On September 10, 1993 Paul Deaton bade Grover farewell,
Attached, p. 13, EX. 4.

On September 17, 1993 Paul Deaton sent Sherrie
Weaver a demand:

> "...we would expect to receive from
> you an attorney fee of 25% of the back
> pay which is standard in this type of
> subrogation claim." Attached, p. 14, EX. 4.

On September 27, 1993 Sherrie Weaver wrote to
Grover; she threatened to cut off LTDIB if within 30 days
Grover did not send her

> "...a statement from Social Security
> Administration as to the reason for
> a delay in benefits being issued. Upon
> receipt of this statement, we will then
> determine if benefits will be continued
> accordingly."

she also warned Grover:

-7-

> "Do not spend any of the retroactive
> award that you receive from the Social
> Security Administration, we will recal-
> culate your claim and advise you of the
> overpayment amount. A major portion of
> the retroactive award will be money owed
> to Connecticut General Life Insurance Co.
> This is within your policy provisions."
> Attached, pp. 17-18, EX. 4.

On September 27, Karen Deen, Cigna Product

Consultant, wrote Paul Deaton:

> "In response to your request for
> attorney's fees, the 25% fee is
> withheld by Social Security and
> released to you if an agreement
> between you and Mr. Murphy was
> filed. We give Mr. Murphy credit
> for the attorney fees paid...
>
> When Mr. Murphy receives the actual Social
> Security Award letter, please forward a
> copy to us in order that we may calculate
> his overpayment."

On October 5, 1993, Paul Deaton wrote Karen Deen

requesting an attorney fee

> "...in addition to the attorney
> withheld by Social Security, I have
> basically secured for you monies which
> eliminates you having to pay Mr. Murphy
> certain sums past, present, and future,
> Attached, p. 20, EX. 4.

On October 15, 1993 Karen Deen wrote to Paul Deaton

> "We regret we cannot consider your
> request to pay you for your services...
> we did not make an agreement with you,
> Mr. Murphy did." Attached, p. 19, EX. 4.

On November 8, and November 15, 1993 Karen Deen

wrote letters to Paul Deaton threatening a reduction of

Grover's LTDIB based on estimated SSDIB.  pp. 22 and 23,

-8-

EX. 4.  On November 23, 1993 Paul Deaton sent Karen Deen a copy of the award of SSDIB eligibility, pp. 22-23, EX. 4.

On December 3, 1993 Karen Deen wrote Deaton and Barton suspending payments of LTDIB to Grover because they had not sent

"...a copy of the actual award."  p. 25, EX. 4.

On December 23, Deaton sent Karen Deen another notice of favorable opinion on eligibility, p. 26, EX. 4.

On January 11, 1994 Linda Galloway, Cigna Products Consultant, wrote Paul Deaton:

"We regret we cannot consider your
request for payment of services...
we did not make an agreement with
you, Mr. Murphy did."

On February 9, 1994 Linda Galloway wrote Deaton expressing a willingness to give Grover Murphy credit for any approved attorney fee, pp. 27-31, EX. 4.

On February 18, 1994 Karen Deen wrote Barton:

"Mr. Murphy has been approved for SSDIB
retroactive to December 21, 1982 our
overpayment will be from that date.
We have estimated the monthly benefit
we feel his award will be nearest.  All
applicable attorney fees will be reduced
from the overpayment once we have received
a copy of the approved authorization to
charge a fee."  p. 32, EX. 4.

On March 2, 1994 Paul Deaton wrote Linda Galloway

"...where (sic) it not for the efforts
of myself and Mr. Barton, CIGNA would
not have profited (sic) by being relieved
of their responsibilities under the plan.
P. 33, EX. 4.

-9-

On March 18, 1994 Pattie Holt, Cigna Product

Manager, wrote to Paul Deaton

> "we will be more than happy to give
> Mr. Murphy credit for the attorney fee
> that is approved by Social Security.  We
> will deduct this amount from the over-
> payment on his claim...please send us a
> copy of the actual award letter that
> shows entitlement date and amount of
> initial award.  We also need a copy
> of the approval of the attorney's fee
> from Social Security and we will deduct
> that amount from the over-payment, "
> P. 34, EX. 4.

On May 23, 1994 Karen Deen wrote John Barton

> "Please promptly provide us with a
> certified or cashier's check in the
> amount of $44,178.00.  If we do not
> receive your reimbursement of this
> overpayment within the 21 day period
> following this letter, further action
> will result in our attempting to collect
> this overpayment..."  P. 35, EX. 4.

On June 29, 1994 Grover Murphy received a dunning

letter from Accent Insurance Recovery Service for $40,277.00.

P. 36, EX. 4.

On March 27, 1996 Cigna sued Grover Murphy for

$28,025.00 plus pre and post judgment interest under the

insurance policy.

On April 24, 1996 Paul Deaton filed a Counterclaim

for one-third of the SSDIB benefits he and Barton recovered

for Cigna beginning January 1, 1989 and continuing through

May 2, 2015.  Cigna had a summary judgment against Murphy

under their contract of insurance leaving only the claim of

Deaton against Cigna.

-10-

Cigna removed Deatons claim to the Bankruptcy Court but it was remanded by the Bankruptcy Judge to Martin Circuit Court for the following reason:

> "While the present proceeding is arguably related to the bankruptcy proceeding, it appears that the present litigation between the attorneys for the debtor and Connecticut General, which arose under state law, should be decided by courts of the Commonwealth of Kentucky." Attached, EX. 5, Opinion and Order.

### III. ARGUMENT

#### A). IMPLIED CONTRACT

The law implies a contract for legal services when services are rendered for Defendant with his knowledge and he accepts the benefits; Haynes Ky Jur "Contracts" Secs. 1-4. 66 Am Jur 2d "Restitution and Implied Contracts," Secs. 1; and 3.

The law allows for this recovery quantum meruit for another's unjust enrichment. It is not based upon a contract but a legal fiction invented to permit recovery where the law of natural justice says there should be a recovery as if promises were made. Recovery quantum meruit may be had irrespective of the intentions of the parties and sometimes even in violation of them, Fayette Tobacco Warehouse Company v. Lexington Tobacco Board of Trade, Ky, 299 S.W. 2d 640, 643-44. (1957). Perkins v. Daugherty, Ky, 722 S.W. 2d 907, 909 (1987).

Cigna provided the circumstances which led to their

-11-

unjust enrichment by devising a scheme to shift the burden of
paying disability benefits to the public generally and to
have this done by attorneys whose fees would be limited as
though they were representing a poor disabled person rather
than a rich insurance company.  Cigna encouraged the
Plaintiffs Deaton and Barton to get SSDIB benefits awarded to
Grover Murphy who would, under a policy drafted by Cigna, be
required to turn them over to Cigna.  By this conduct Cigna
is estopped from pretending that the legal fees earned by
Deaton and Barton were earned for Grover and were limited to
a percentage of Grover's back pay by arranging for Deaton and
Barton to recover SSDIB which under Cigna's policy were a
total offset to the LTDIB they owed Grover.  Grover Murphy,
was forced, by the contract of insurance drafted by Cigna, to
file a claim for SSDIB.  Grover was forced by threat from
Cigna of loss of benefits, to hire Deaton and Barton to
obtain SSDIB (Grover Murphy Reimbursement Agreement) which
would in their entirety go to Cigna.

Cigna was 100% subrogated to the Social Security
Disability Benefits due Grover; They received through
Deaton's and Barton's legal services a benefit of
$261,768.00.  This is a situation common in the practice of
disability insurance subrogation law and attorneys who
recover such "windfalls" for insurers are commonly
compensated at a percentage of the windfall, 7 Am Jur

-12-

"Attorneys at Law" Sec. 241 and see <u>Common</u> <u>Health</u> <u>Care</u> <u>Corp.</u>
<u>v.</u> <u>Croslin</u>, Ky 920 S.W. 2d 46, 47, (1996).

### B.   UNJUST ENRICHMENT AND QUANTUM MERUIT

Cigna claims that they were not unjustly enriched
at the expense of Deaton and Barton; and Cigna claims that
Deaton and Barton performed no services which benefited Cigna
and hence they are not entitled to be paid quantum meruit.
Deaton's and Barton's Services earned $261,768.00 for Cigna
for which Cigna refuses to pay a penny.

Deaton gathered evidence and presented it to a
Social Security ALJ at two hearings:  one in 1990 and another
1993.  Deaton appealed denial of benefits to the Kentucky
Disability Department of the Cabinet for Human Resources and
to the Social Security Council of appeals in Virginia.   In
the meantime, Barton filed a lawsuit in the Federal District
Court in Eastern Kentucky and prepared a brief in support of
a motion for summary judgment in that case.

From early 1990 until late 1993 Deaton and Barton
were called upon by telephone and letters from Cigna to
justify their efforts on Cigna's behalf and to collect for
Cigna, Murphy's retroactive check and future SSDIB to which
Murphy might be eligible.  Cigna knew that Deaton and Barton
were litigating for Cigna's sole benefit, attempted to
control the litigation services of Deaton and Barton, and
denied any obligation to pay for the services; these

-13-

services, when Deaton demanded payment they said "Your deal was with Murphy."

Cigna sold a policy of insurance of disability insurance under which they devised a scheme to shift Cigna's burden of payment of disability benefits from Cigna to the taxpayers generally. They required their beneficiaries to apply for SSDIB, under the threat of unilaterally terminating benefits. This scheme required Grover Murphy to travel to the local office, apply, appear for medical examinations, and attend hearings. To these "duties" Cigna added a requirement that Grover appealing denials of benefits, which as a practical matter required him to do as Cigna urged, under threat of cutting off benefits: hire a lawyer. Under this scheme the lawyer's fees, whatever the services on behalf of Cigna, and however great the benefits to Cigna, would be limited to the statutory maximum of $4,000.00 out of the beneficiaries back pay. As a result of this scheme Cigna received $261,718.00 worth of services for $4,000.00 (assuming they have reimbursed Murphy). Attached, EX. 6, 42 U.S.C.S. Sec. 406.

This scheme may be legal, but it is inequitable in the extreme. There has been unjust enrichment of Cigna at the expense of Deaton and Barton for their legal services and that part of their federal taxes which went to, go to, and will go to reduce Cigna's obligation to pay Grover LTDIB.

-14-

Deaton and Barton worked over a period of years in the Social Security Administration and the Federal Courts to earn Cigna hundred of thousands of dollars. Their fees for this is a question for the jury under instruction from the Court. Haynes, Contracts, <u>Kentucky Jurisprudence</u> Sec. 31-6 66 <u>Am Jur</u> 2d Implied Contracts 3, 21, and 28, <u>Perkins v. Daugherty,</u> Ky., 722 S.W. 2d 907, 909.

C). **Barton and Deaton not Barred by S.S. Act.**

Cigna's scheme to receive free legal services and to shift the burden of paying disability benefits to taxpayers generally is based in part upon Cigna hiding behind the protections afforded applicants for SSDIB. Section 406 of the Social Security Act limits attorneys fees in a SSDIB claim to $4,000.00. Sec. 406 (ii) II (2) (A). This protection against fee overcharges is for the protection of the Claimant not his disability insurer who is subrogating to his claim. In fact, the attorneys are not precluded by Section 406 or any legal or equitable principle from proceeding against the subrogating disability insurer for fees, customarily charged. Cigna was not a party to the claim for SSDIB and their interests in the claim were not adjudicated by the Commissioner of Social Security they were secured by the insurance policy. Cigna's attorneys, Deaton and Barton, were not required to and did not submit their

-15-

claims for legal services for Cigna to the Social Security Commissioner.

### D). **Erisa does not preempt this claim:**

The Erisa Act does not preempt this claim, since the claim does not arise from the act, neither on the basis of the parties to the claim, nor on the basis of the subject matter of the claim, <u>Franchise</u> <u>Tax</u> <u>Bd</u> <u>v.</u> <u>Construction</u> <u>Labor</u> <u>Vacation</u> <u>Trust</u> (1983) 463 U.S. 1; 77 Ed 2d 420; 103 S.Ct. 2841 of <u>Common</u> <u>Health</u> <u>Corp</u> <u>v.</u> <u>Croslin,</u> Ky, 920 S.W. 2d 46 (1996).

Cigna argues that the Martin Circuit Court has no jurisdiction to decide Deaton and Barton's claim for attorney's fees because either, the claim is preempted by its relation to an Erisa plan, or jurisdiction is exclusively vested in the Federal Court by the Jurisdiction statute by the Erisa Act.

Cigna filed this lawsuit, for whatever reason, in the Martin Circuit Court. After they had summary judgment against Grover Murphy, they removed this counter claim to the Federal Bankruptcy Court where Grover was attempting to discharge the judgment the Federal Bankruptcy Judge returned it to the Martin Circuit Court. He Held:

> "While the present proceeding is arguably
> related to the bankruptcy proceeding, it
> appears that the present litigation between
> the attorneys for the debtor and Connecticut

-16-

General, which arose under state law, should
be decided by courts of the Commonwealth of
Kentucky."  Attached, EX. 5.

The Federal Judges order of abstention is final and was not

appealed; it is therefore controlling and dispositive of

Cigna's "related to" argument.

Deaton's and Barton's claims are based on Kentucky

common law of contracts.  Disposition of this claim does not

require interpretation of Cigna's Erisa plan but merely a

pencil and paper computation of the extent of Cigna's unjust

enrichment under the plan.  This relation to Cigna's Erisa

plan is too remote and peripheral to <u>require</u> it to be filed

in the Federal Court, its relation to Cigna's Erisa plan is

incidental, <u>Firestone Tire and Rubber, Co. v. Neuser,</u> (1987-

CA 6) 810 F 2d 550, 60A <u>Am Jur</u> 2d, "Pensions and Retirement

Funds, Secs. 118 and 121."

The Jurisdiction Statute of the Erisa does not

apply to this counter-claim:

> **"Jurisdiction** (1) Except for actions under
> subsection (a)(1)(B) of this section,
> the district courts of the United States
> shall have exclusive jurisdiction of civil
> actions under this title brought by the
> Secretary or by a participant, beneficiary,
> or fiduciary.  State Courts of competent
> jurisdiction and district courts of the
> United States shall have concurrent
> jurisdiction of actions under subsection
> (a)(1)(B) of this section."   29 U.S.C.S.
> Sec. 1132 (e)(1) Attached as authority.

Cigna cites the case of **Common Health Corp. v. Croslin, Ky,**

-17-

920 S.W. 46 ( 96) as controlling this c ) and requiring
dismissal under the Erisa Jurisdiction statute cited above.

Croslin was a participant in an Erisa plan (Common
Health) and her attorney's derived their claim for fees from
her and asserted it in her name against Common Health.
Deaton and Barton do not derive claim for fees from anybody
or from the Erisa statute.

Cigna who could have filed their claim in the
Federal Court, chose to sue Grover Murphy in the Martin
Circuit Court under their Erisa plan scheme of their own
devising. Cigna has summaried Grover out of their lawsuit so
he is no longer a party defendant; and he never brought any
claim and none have been made in his name. The Erisa Act
conferred no cause of action or protection of any kind on
Cigna. Deaton and Barton do not claim under the Erisa Act
but under Kentucky Common Law. Grover Murphy brought no
civil actions and none have been commenced in his name. The
Erisa Act, the Erisa Jurisdiction statute, and the case of
Common Health Corp v. Croslin Ky, 920 S.W. 2d 46 (1996) do
not require Deaton and Barton to file their claim for
attorney's fees in the Federal Court.

Respectfully Submitted,

HON. GARIS L. PRUITT
ATTORNEY AT LAW
P.O. BOX 352
CATLETTSBURG, KENTUCKY   41129
(606) 739-8434

-18-

## CERTIFICATION

This is to certify that a true and correct copy of the foregoing instrument was mailed this _5th_ day of October, 1998 to the following:

HON. LEE KESSINGER, III
BEN L. KESSINGER, JR.
STITES & HARBISON
LEXINGTON FINANCIAL CENTER
SUITE 2300, 250 WEST MAIN STREET
LEXINGTON, KY   40507


HON. JAMES A. KNIGHT
JUDGE, MARTIN CIRCUIT COURT
MARTIN COUNTY COURTHOUSE
INEZ, KENTUCKY  41224
(CHAMBERS COPY)

HON. GARIS L. PRUITT
ATTORNEY AT LAW
P.O. BOX 352
CATLETTSBURG, KENTUCKY   41129
(606) 739-8434

**CONTENTS OF EXHIBITS:**

EX 1.   GROVER MURPHY AFFIDAVIT

EX 2.   CONNECTICUT GENERAL LIFE
        INSURANCE COMPANY CERTIFICATE
        OF INSURANCE

EX 3.   "REIMBURSEMENT AGREEMENT"

EX 4.   CORRESPONDENCE BETWEEN CIGNA,
        DEATON, BARTON, & MURPHY

EX 5.   OPINION AND AWARD JUDGE HOWARD
        U.S. BANKRUPTCY COURT FOR EASTERN
        DISTRICT OF KENTUCKY

EX 6.   CIGNA COMPUTER PRINTOUT

**CONTENTS OF AUTHORITY:**

ex. 7   Franchise Tax Bd. v. Const. Laborers Voc. Trust

        463 U.S. 1, 103 S. Ct. 2841, 77 L.Ed 2d 420

        29 USCS SECS. 1132

        42 USCS SEC 406


        EX. 8: Affidavit of Leonard Stayton