# EXHIBIT D

DEPARTMENT OF
HEALTH AND HUMAN SERVICES
SOCIAL SECURITY ADMINISTRATION
OFFICE OF HEARINGS AND APPEALS

TRANSCRIPT

In the case of

Grover Murphy
(Claimant)

Claim for

Period of Disability
Disability Insurance Benefits

_____
(Wage Earner) (Leave blank
    in Title XVI Cases or
    if name is same as
    above)

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
(Social Security Number)

Hearing Held

at

Prestonsburg, Kentucky
(Room No., Building, Street Address, City,State)

on

February 13, 1991
(Month, Day, Year)

by

William J. Kogan
(Administrative Law Judge)


APPEARANCES:   Grover Murphy, Claimant
               Paul Deaton, Attorney for Claimant
               Ann O. Jones, Vocational Expert

43

## INDEX OF TRANSCRIPT

In the case of

Grover Murphy

Account Number

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

|                                | |          | Page |
|--------------------------------|-|----------|------|
| Testimony of Grover Murphy     | | commencing | 2    |
| Testimony of Ann O. Jones      | | commencing | 22   |

(The following is a transcript in the hearing held before William J. Kogan, Administrative Law Judge, Office of Hearings and Appeals, Social Security Administration, Department of Health and Human Services on February 13, 1991 at Prestonsburg, Kentucky in the case of Grover Murphy, Social Security Number 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. The claimant appeared in person and was represented by Paul Deaton, attorney. Also present was Ann O. Jones, Vocational Expert.)

(The hearing commenced at 8:30 a.m. on February 13, 1991.)

OPENING STATEMENT BY ADMINISTRATIVE LAW JUDGE:

ALJ:  Good morning, Mr. Murphy.  My name is William Kogan.  I'm the Administrative Law Judge assigned to your hearing.  Since you are represented by Mr. Deaton, I shall assume that you have had explained to you what we do at these hearings and what we need to find out. However, if there's any question in your mind that you'd like to ask me before we begin, you may do so at this time.  If you have no question, I'll just ask you to speak up clearly when you're testifying so that we can make a good tape recording of the proceeding.

CLMT:  Yes, sir.

ALJ:  In addition, I'll mention to you at this time that it's my understanding of this case that you've applied for disability insurance benefits and your coverage for such benefits expired in December of 1986, which in simple English means that if you are going to establish entitlement to benefits under this program you must show that you were disabled on or before the end of that year.  Counselor, if you have any disagreement with what I just stated or anything else you'd like to state, please feel free to do so at this time.

ATTY:  No, Your Honor.

ALJ:  You've examined the exhibit file.  Have you objection to any of the documents?

ATTY:  No, I do not, Your Honor.

2

ALJ:  Very well then.  We shall admit Exhibits B-1 through B-40 into evidence at this time.

(Exhibits B-1 through B-40, previously identified, were received into evidence and made a part of the record thereof.)

ALJ:  Mr. Murphy, would you raise your right hand, please?

(The claimant, GROVER MURPHY, having been first duly sworn, testified as follows:)

EXAMINATION OF CLAIMANT BY ADMINISTRATIVE LAW JUDGE:

Q  State your full name and address, please.

A  Grover William Murphy, 8-C63, Box 505, Inez, Kentucky.

Q  How old are you?

A  40.

Q  What is your date of birth?

A  May the 2nd of 1950.

Q  How tall are you?

A  5' 11".

Q  And how much do you weigh?

A  205, I guess.

Q  Is that about average for you for the past couple of years?

A  I've been down to 150-some.  This is about the highest I've ever been.

Q  When were you down to 150?

A  It's been a few years ago.  I don't remember exactly.

Q  So you've put on considerable weight in a few years.

A  (No audible answer).

Q  Due to inactivity, I suppose?

A  Inactivity and I can't eat salads and stuff like that.

3

- 46

Q  Mr. Murphy, there is a statement in Exhibit B-9 in your exhibit file which is the green form, the disability report form, that you signed in January of last year.  And there's a statement in there that says, and I refer to box 18-C, and I quote, "Only filing because insurance company requires him to".  Is that correct, sir?

A  No, sir.

Q  Did you know that statement's in that form?

A  No.

Q  You weren't aware of that --

A  I don't remember.

Q  -- when you signed that form?

A  I don't remember.

Q  All right, sir.  Are you working now?

A  No, I'm not.

Q  Are you right-handed or left-handed?

A  I'm right-handed.

Q  Do you have a driver's license?

A  Yes.

Q  Are you driving a vehicle these days?

A  Very little bit.

Q  About how much would you say you drive in a week on average?

A  Maybe 20 miles.

Q  How long a trip was it to get here this morning?

A  I guess probably, probably 25 from Inez.

Q  How did you get here?  Did you drive or someone else drive you?

4

A   No, my wife drove.

Q   Did you drive straight through without stopping to get out?

A   Yes.

Q   What's the highest grade you completed in school?

A   Twelfth.

Q   Am I correct in understanding that you haven't worked since June of 1981?

A   '80 or '81, whichever it was.  I'm not sure.

Q   Have you tried to get any other work since that time?

A   No, I've not been able to.

Q   And you were a coal miner at that time?

A   Yes, sir.

Q   General underground mining?

A   Yeah.  A foreman in the base.

Q   Was this a foreman job where you had to do every other task in the mine as well as supervise?

A   Yes.

Q   Did you operate the equipment?

A   If it was required.  In charge of anything from the tail face to the face.

Q   And how many men did you supervise?

A   About, about ten on the average.

Q   Did you have to file reports as part of your work?

A   (INAUDIBLE) report consisted of telling how much hours in the face and everything was safe and so on.  Take about a half a page, if that.

5

Q   And why did you stop working?

A   I hurt my back.  I was whipped on a cutting machine cable and pulled me sideways.  And made my whole insides sore.  Messed up a disk in the back.

Q   Have you done any other kind of work in the last 15 years?

A   No, sir.

Q   All right.  Now I'd like to talk with you about the problems you have, but I want to reinforce the statement I made earlier.  We want to know how you are now but more importantly how you were when you were last insured in December of 1986.  First tell me do you feel your condition is about the same as then or is it better or worse?

A   I guess it's bad, as bad if not worse than it was then.

Q   Uh-huh, okay.

A   At least as bad.

Q   And what was your number one problem in '86 that kept you from working?

A   My back.  I'm -- like I said, I hurt all through my insides. In the last part of '86 or first part of '87 I was diagnosed as having signs of back problem and I've got the colitis, bronchitis.  I've got ulcers, diverticulosis.  My nerves give me an awful lot of trouble.

Q   Dr. Arnett (Phonetic) says you have lumbar and disk disease. Has he ever recommended surgery?

A   I had an injection once in the inside of a disk.  It helped a short length of time, but then it got worse again.

Q   This pain you have, could you describe it for us, where it is and what it feels like?

49

6

A  Lower back here hurts across my back and into my hips and legs. My whole legs will ache.  Muscles, everything in here hurts. Through here all the way up in here.  And I have pains down in here and (INAUDIBLE) into my, my nuts.  And I pass blood all the time.

Q  Is that like an aching pain or a stabbing pain or a burning pain?

A  Hurts all the time.  My back will take times -- just sharp pain hurts all the time.  But times, you know, just like a sharp stabbing pain that tear my whole insides up.  And my legs --

Q  And you are taking medicine for the pain.

A  Yes, sir.

Q  You're taking Darvocets?

A  Yes.

Q  How often are you taking them?

A  Three times a day (INAUDIBLE).

Q  Have you been doing that since '86?

A  I took Darvocets, I took Talwins, different pain medication.

Q  Do you ever go to -- are you ever able to go days without taking the medicine?

A  No.

Q  Does the medicine you take have any bad side effects?

A  Not that I know of.

Q  Do you wear a brace?

A  I can't -- my insides stay too sore and hurts.

Q  How about a TENS unit?  Have you ever used that?

A  A what?

Q    TENS unit.

A    TENS unit.

Q    I guess not. You would recognize the name. And does this pain put a limit on how much you can lift?

A    Yes, sir. Very little bit of lifting. I try to lift cartons of (INAUDIBLE) and end up on the floor with it. I can't.

Q    And it was like that in '86, was it?

A    Yes, sir.

Q    How about standing and walking? Can you be on your feet for an hour at a time?

A    No, sir. I -- if I stand -- like I stand still or something, hurt all through here. I swell and bloat. My back, my lower back hurts real bad and my legs go to aching.

Q    How long do you have to be standing for that to happen?

A    I can probably stand still for ten minutes. Sitting here, I everytime I'm sitting here my muscles on the side pull, hurting, get to burning in here.

Q    You may stand at any time during this hearing if you care to. How long are you able to sit before you get so uncomfortable you have to get up?

A    Not very long at all.

Q    Ten minutes? Half hour?

A    Probably ten or fifteen minutes. Move around while I'm sitting.

Q    Why -- I understand that you filed for benefits in 1982. Is that correct?

8

A   Yes, sir.

Q   Why did you not file for these benefits between then and now?

A   I thought that was the end of it.  I come to a hearing or something and I thought that was the end of it.  I didn't, didn't know I could.  And when I come to the hearing, I had Leonard Staton (Phonetic) come with me.  He'd never been to a Social Security hearing.  He didn't bring no medical report or nothing.  And I thought -- he never told me to do it different.

Q   Now you also have problems with colitis and diverticulosis, is that right?

A   Yes, sir.

Q   And what kind of trouble does that give you?

A   I'm either constipated or dysentery all the time.

Q   You mean diarrhea?

A   Diarrhea.  Inside will swell or bloat.  My stomach will cut my breathing off.  I know when I first hurt myself, I'd swell and bloat.  But I don't know how you'd explain it to a doctor to find out what it is, so I can't --

Q   Do these problems manifest themselves in frequent bowel movements?

A   Yes.

Q   How often does that happen?

A   Well, I was constipated yesterday (INAUDIBLE).  I got up twice during the night, diarrhea like.  I don't, don't move very much when I do it.  I just -- if I don't get to the bathroom, I squirt.

Q   How, how frequently does that happen?

9

A   Quite often.  Several days a week.  Maybe like $\frac{1}{1}$ and I went -- when I tried to work, I went as much as two weeks without a bowel movement.  I get constipated real bad.

Q   And you've been diagnosed as having a nervous condition.

A   Yes, sir.

Q   You're taking BuSpar for your nerves?

A   Yes, sir.

Q   Are you being given any psychiatric or psychological counsel-ing at this time?

A   No.

Q   Have you ever been hospitalized for a nervous condition?

A   No.  My nerves have bothered me ever since I hurt myself.

Q   Your nerves getting worse or are they about the same or better?

A   Ain't getting no better, I don't know.  I know it was awful bad in '85 I know I found my father back then.  And I wouldn't call an ambulance for him.

Q   I'm sorry.  I don't understand that.

A   He was laying on the floor in his vomit.  And I lost confi-dence in doctors.

Q   Are you receiving Worker's Compensation benefits at this time?

A   No.

Q   Are you receiving any kind of disability benefits?

A   From Connecticut General, long-term disability.

Q   Is there any other problem you'd like to tell us about?

A   I have prostate troubles.  (INAUDIBLE) down in my nuts and

10

stuff all the time.  My nuts will swell.  That will put blood through urine all the time.  I think I was in (INAUDIBLE) twice because that last year I had my -- cleaned out in there, prostate where they do check your insides.  Or I know it's probably --

Q    What do you do during an ordinary day?

A    I just sit around the house and watch television.

Q    Do you hunt or fish?

A    No.  Can't.

Q    Do you do any chores inside or outside the house?

A    No.  Now, I'll keep the fire built this time of year, put some wood on the fire.

Q    Do you bring the wood into the house?

A    Off the patio.  I lay the stubs in front of the doors on the patio.  Brother hauls it in in the fall, stacks it up next to the patio out back --

Q    Um-hum.

A    -- back porch.

Q    So you bring it from the patio to the fireplace?

A    Lay it in inside the door.  Stand on the porch and patio and stick it through the door in the fire.

Q    Do you -- did you do any gardening this summer?

A    No.

Q    Do any yard work of any kind?

A    Very little bit I done.  If the back and stuff doesn't hurt me -- I tried -- I've got a riding mower but I don't have any luck with it.  I just about killed myself a couple years ago on it, trying to

54

11

mow when I was hurting.  I couldn't raise my leg to stop it.  I just about (INAUDIBLE).

Q  Do you ever go grocery shopping or to a shopping mall?

A  Once in a while I go with my wife.

Q  Do you ever go to meetings of any kind, a lodge or --

A  No.

Q  -- religious service or a --

A  No.

Q  -- civic group?

A  Never believed in it.  Didn't believe in the church much.

Q  Do you go visit family or friends?

A  No.

Q  Do you have family or friends come over to visit you?

A  I have a sister-in-law and a brother-in-law come in once in a while.  It's been quite some time since I had a brother or sister stop in.

Q  Do you have any hobbies or any things you do for fun?

A  No.

Q  Did you have any hobbies, do anything for recreation back in '86?

A  No.

Q  Are you able to dress and bathe yourself?

A  Yes.

ALJ:  Mrs. Jones, are there any questions you'd like to have asked?

VE:  No, sir.

55

12

ALJ:  Counselor, you may question.

ATTY:  Just a few things, Your Honor.  I think the Court has covered it quite thoroughly.

EXAMINATION OF CLAIMANT BY ATTORNEY:

Q  One thing I don't understand, Grover, you indicated that if you picked up a carton of pop, are you talking like Coca-Cola?

A  Maybe something like that --

Q  But you couldn't lift that, but you're able to lift a log. Now explain that to the Judge.

A  It's not a log.  I got little chunks of wood from a sawmill. Haul it -- my brother hauls it and lays it.

Q  Uh-huh.

A  They're just little square pieces, ends off of (INAUDIBLE).

Q  Okay.  Just ends off of lumber, little light --

A  Yeah.

Q  -- pieces of lumber.  So you're not talking about a log which you --

A  No, uh-uh.

Q  -- would put in the fire to lift.

A  No.

Q  Okay.  Now, I noticed that you seem to tremble a tad.  Do you take any -- you said you take nerve medication?

A  Yeah.

Q  Does that help you any?  Does that help your trembling?

A  I don't know really.

Q  How often do you take the nerve medication?

13

A   Three times a day.

Q   Three times a day.

A   Um-hum.

Q   What makes you most nervous?  What kind of a situation makes you nervous?  I know you're nervous today --

A   Well --

Q   -- because you're here at court, but ordinarily --

A   Well, if I'm around doctors or when my back's hurting bad (INAUDIBLE) hurting.

Q   Why do doctors make you so nervous?

A   Well, I went to them and I think twist and pulling and hurting.

Q   Now, the Judge asked you about a long-term disability policy --

A   Um-hum.

Q   -- from Connecticut Insurance Company.  You started that when you first became disabled.

A   Yes.

Q   And during the period that you've received that, have you undergone periodic examinations from --

A   Yes --

Q   -- their particular doctors?

A   -- as often as they want to see me.

Q   And you have to remain permanently and totally disabled in order to receive that benefit.

A   Yes.

- 57

14

Q  What about vocational rehabilitation?  Have they ever sent you
to anybody and said, Grover, we're going to try to train you for
another job?

A  They sent Crawford (Phonetic) Rehabilitation to the house and
run a bunch of tests and sent me to the doctor.  They told me --

Q  Now, Crawford, Crawford Insurance Company or --

A  Rehabilitation.

Q  Rehabilitation.  They came to your house.

A  Run tests on me.

Q  What did they decide?

A  I got a letter stating to forget about rehabilitation.

Q  Okay.  Now, after you were told by Crawford forget about that,
they continued you on this long-term disability policy that you were
hurt way back in 1981, I guess it was?

A  Yes.

Q  So you've had that all these years.

A  Yes, I have.

Q  Okay.  If you should receive Social Security, is there some
sort of an offset?  Did they ever tell you anything about that?

A  Yes.  It will be deducted from the --

Q  Okay.  So I believe it is one of their requirements that you
must at least pursue, actively pursue your Social Security.

A  Yes.  Like I said, I didn't know back --

Q  That's something that wasn't -- the Judge asked you a question
about what was on that form.  So you're telling the Court that it was
on your, your understanding that you had to pursue this, this claim.

A   Yes.

Q   Okay.   When's the last time you talked with Crawford or with anyone from the long-term disability insurance company?

A   I talked to them last week.

Q   And have they made any arrangements for another attempt to rehabilitate or anything of that sort?

A   I supposed to went to outfit last week for another doctor's exam on it.   And the doctor refused to see me because they didn't have X-rays.   They're trying to reschedule now.

Q   Okay.   So you do whatever they tell you to.

A   Yes.

Q   If they tell you to come in and be evaluated, you do.   If they want to be rehabilitated, you do.

A   Yes.

Q   Okay.

A   If they can rehabilitate me, I have to go towards rehabilitation.

Q   Um-hum.

A   Rehabilitation outfit says to do it.

Q   Okay.   Now your back, you indicated that you hurt yourself on a lawn mower.   You leg gave way, is that what you're telling the Court?

A   If I sit, I can't raise my legs or something.   Takes -- they go to sleep and back hurting.

Q   Uh-huh.

A   Go to raise my legs, my back will hurt.

16

Q   Okay.  How far can you walk without having any real problems?

A   Not very far at all.  (INAUDIBLE) on my feet very much, my back will hurt and stomach and everything will bloat and swell.

Q   You're indicating it would give you problem walking up here over to that Social Security office?

A   No, I could do that.

Q   If you walk too far, what happens to you?

A   My back will give out and I hurt in my lower back.  My legs will go to aching.

Q   The nerve pills, does that stop your hands from shaking?  Or is that just something that's been with you for a while?

A   That's been with me --

Q   Do you use your hands?

A   My right hand's not as strong as it should be (INAUDIBLE).

Q   But you are able to use it.  I notice you --

A   Yeah.

Q   -- keep them together like that.

A   Yeah.

Q   You, you said moving around in your chair --

A   Um-hum.

Q   -- helps you.  What would be the absolute maximum you could sit without having pain that would cause you to not be able to do anything?

A   Well, to where I couldn't concentrate, like say 15 minutes or something, sitting trying to do work or anything like that bent over.

60

17

Q  Okay.  Can you stoop at all?

A  Not without it hurting.  Like I said, something like that hurts my --

Q  Do you drive a car?

A  Like I said maybe 25 miles a week or something.

Q  Okay.  Do you have a driver's license?

A  Yes.

Q  I believe you indicated to me prior to the hearing that you were color blind.

A  Yes.

Q  How long've you had that problem?

A  All my life.

Q  Okay.  Did that affect you when you worked in the coal mines?

A  Well, yeah, when I'd have to use glass cables or anything, I'd have to have somebody else do it.

Q  Okay.  You couldn't tell the color of the cables?

A  No.  It's -- and the lighting and stuff.

Q  Did the rehabilitation people ever mention that to you --

A  Yes.

Q  -- that that's a problem?

A  And I forgot to tell them at first in the examination, mentioned my eyes again.  And I got to thinking the service wouldn't let me re-enlist because of it.

Q  Um-hum.  The Judge asked you if any of the doctors had ever recommended any surgery to you, and you didn't really answer that question.  You said that you had had some sort of a shot.

61

18

A   Yes.

Q   Has any doctor ever told you that maybe surgery might help you on your back?

A   No.  They give me a shot inside the disk, you know, that kind of surgery.

Q   So they've never, they've never -- it's never been a doctor sat you down and said, Grover --

A   No.

Q   -- we'd like to have surgery on your back, we think we can cure your --

A   No.

Q   -- (INAUDIBLE).

A   I think it helped.

Q   Did a doctor tell you that?  What doctor told you that?

A   I don't, I don't remember.

Q   Who is your regular treating physician, Dr. Arnett?

A   Dr. Arnett.

Q   Okay.  Is he the main treating physician you've seen all these years for your Connecticut insurance policy, your long-term disability policy?

A   Yes.

Q   Okay.  And you indicated to the Judge that you were not receiving any Workmen's Compensation.

A   No.

Q   Did you ever apply for Workmen's Compensation?

A   I received 40 or 45 percent once.

19

Q   You did receive --

A   And I -- yes.  On my back.

Q   Okay.

A   And I -- told me -- never reapplied or nothing.

Q   Okay.  So you, you did receive an award, a settlement.

A   Yes.

Q   Was it an award or a settlement?

A   An award.

Q   From the Compensation Board.

A   Yeah.

Q   And they awarded you 45 percent disability.

A   Yes.

Q   What year was that, sir?  Do you remember?

A   I imagine it was about '83 or '84.

Q   '83 or '84.

A   Yes.

Q   Okay.  But your condition, you've said it's gotten worse.  Has it gotten a lot worse since '86 or is about the same or is it better?

A   It's, it's not a lot worse.  No, it's -- I've had tremendous -- a lot of trouble ever since I hurt myself.

Q   That's what I'm getting at.

A   To explain it to doctors, I don't -- I get nervous and can't

Q   Do people make you nervous?

A   Yeah.

Q   Have you ever worked at anything else at all other than the

63

20

coal mines?

A   I took two years in the Army.

Q   Okay.  You were in the service?

A   Yeah.

Q   And you were a cook?

A   Yes.

Q   Did you do anything other than that?

A   Worked in a factory in Columbus Ohio.

Q   Okay.

A   Assembly.

Q   On an assembly line.

A   Yes.

Q   How long did you do that?

A   A year or two, I guess.  And I worked Capital Manufacturing (Phonetic) (INAUDIBLE).

Q   Was that a factory, too?

A   Yes.

Q   Was that up in Columbus?

A   Yes.

Q   Okay.

A   I hurt my back.  I'd had a job ever since I graduated.

Q   Okay.  So you'd worked ever since you were what age?

A   18, 17 or 18.

Q   Now, let me just ask you one more question.  On this rehabili-tation that you say that the insurance company, Crawford Companies, tried to have you do, did they actually try anything or just evaluate

your medical and say there's nothing you can do?  Or were you in some sort of a program?

A  They come and evaluated me and sent me to a doctor, discussed it and decided they couldn't do anything with me.

Q  Okay.  So they, they made a decision not to have you try anything like a vocational rehab center or anything of that sort.

A  Yes.

ATTY:  I believe that's all I have.

RE-EXAMINATION OF CLAIMANT BY ADMINISTRATIVE LAW JUDGE:

Q  Mr. Murphy, it's not clear to me when these other problems of yours first became apparent, when you started suffering from them. And in that regard, I refer to your prostatitis and your diverticulosis, colitis.  Dr. Arnett's letters going back to '87 don't talk about them.  Was he treating you for those problems back then or not?

A  No.  I couldn't find them.  I would hurt.  I know the doctor -- I'd go to the back doctor and they'd ignore it when you tell stuff like that.

Q  You had the problem but it hadn't been diagnosed --

A  Hadn't been diagnosed.

Q  Oh, I see.

A  I think it was diagnosed in -- it was either late-'86 or early-'87, I think Arnett --

Q  Yeah.  In '87, he says he has developed colitis and diverticulosis.

A  And maybe in '86 I was diagnosed -- like I said, since I hurt myself, swollen and bloated (INAUDIBLE).  My muscles (INAUDIBLE) will

22

swell.  My stomach, my back will give out on me.  But you go to a doc-
tor and they ask you how you're feeling right then, right that minute.
You tell them you're hurting like that and what's -- they ignore it if
you tell them something inside your back's hurting.

ALJ:  Thank you.  We'll take the vocational expert's testimony at
this time.

(The Vocational Expert, ANN O. JONES, having been first duly
sworn, testified as follows:)

EXAMINATION OF VOCATIONAL EXPERT BY ADMINISTRATIVE LAW JUDGE:

Q  State your full name and your business address, please.

A  Ann Owings (Phonetic) Jones, Ashland, Kentucky.

ALJ:  Counselor, will you stipulate to Mrs. Jones' qualifica-
tions?

ATTY:  Oh, yes, Your Honor.

ALJ:  Thank you.

BY ADMINISTRATIVE LAW JUDGE:

Q  Ms. Jones, please define the terms heavy, medium, light and
sedentary work.

A  All right.  Well, heavy work is work that involves lifting up
to 100 pounds.

CLMT:  No.  Oh, you mean in the past work?

ALJ:  That's all right, sir.

VE:  Yeah.  That's Social Security definition.

ALJ:  You can just listen to Mrs. Jones.

CLMT:  All they jobs they've worked.

ATTY:  She's testifying now.

VE:  50 pounds is medium work, lifting up to 50 pounds.  Light work involves lifting up 20 pounds.  And sedentary work, which is seated work, has a lifting range up to 10 pounds.

BY ADMINISTRATIVE LAW JUDGE:

Q  And how would you classify the work the claimant performed?

A  It was heavy work.

Q  Was that skilled, semi-skilled or unskilled?

A  It's skilled work.

Q  Would he have developed skills transferable to lighter levels of work?

A  No.  That work is only found in the mines.

Q  Let us assume a hypothetical individual in 1986 of the claim-ant's age or approximately 36 years with his twelfth-grade education and his training and work experience.  And assume that he has exer-tional impairments limiting him to light work.  And assume that he also had non-exertional limitations in that he could only occasionally crouch, crawl, stoop.  He would have to have the opportunity to change postures at approximate hour intervals.  And he would've had a mental impairment which on a scale of slight to moderate to marked imposed a moderate limitation on the ability to maintain attention and concen-tration for extended periods and interact appropriately with the general public.  If those were the pertinent limitations, Mrs. Jones, what percentage of the light and sedentary unskilled jobs recognized under the grid rules could such an individual be expected to perform?

A  Well, under these circumstances with only moderate ability to pay attention and concentrate, plus the other factors of the light

- 67

24

jobs, no more than 15 percent of the sedentary, the same 15 percent.

Q  Would you please identify jobs in each category and the numbers in which they can be found in, at that time in Kentucky, West Virginia and Ohio?

A  All right.  It would have to be work that does not include dealing with the public, to any large extent anyway.  And so that we're going to find something that'll fit the category.  I can't find the particular category I'm looking for.  However, one that could be performed under these circumstances at the light level is general office type work.  And one of these office-type jobs is called expeditor clerk.  And that particular job in Kentucky 3,000; West Virginia, 2500; Ohio, 12,500; the national level, over half a million.

Q  Do you have another light-level job --

A  Yes.  I --

Q  -- Mrs. Jones?

A  -- can't find the one I'm looking for.  There's information gathering or dispensing or verifying work that could be performed under this hypothetical.  And one of them is call out operators, is mostly calling in crews to work or giving information.  And for that kind of work, there are not very many.  Kentucky, 3,000; West Virginia, 2,000; Ohio, 5,000; at the national level, a quarter of a million.  I've lost the one that I was looking for.  You want me to go to some sedentary work?

Q  Yes, please.

A  Some sedentary work that could be done -- here's that other category of light work I was looking for, if you want me to name it.

Q   Would you, please?

A   Yes.  It's called routine checking and recording work.  This is office work -- no independent judgment required.  Just do whatever one is told, but no production levels.  And that's general office clerk, delivery clerk or mail clerk.  Now there are more of these kinds.  Kentucky, 15,000; West Virginia, 10,000; Ohio, 40,000; and at the national level, over two million.  And then for some sedentary work, some of that work is in classifying and filing, manufacturing order clerk or clerical compiler.  And for these, Kentucky, 8500; West Virginia, 7,000; Ohio, 17,500; and nationally, over one million of those.  There are a couple more categories --

Q   That will suffice.

A   Okay.

Q   You've heard the claimant testify here today that he has difficulty handling a six-pack of pop.  Let us assume that his maximum lifting capability in addition to, or modifying the previously given assumptions, is ten pounds, and that he can sit for approximately a half hour at a time approximately four hours a day and stand for approximately a half hour at a time approximately four hours a day.  His concentration is often moderately diminished as the result of pain from multiple sources, and that he has slightly diminished fine fin-gering that he previously mentioned.  Mentals would be still present.  Under those circumstances, what percentage of these light and seden-tary unskilled jobs recognized under the grid rules could such an individual perform?

A   Well, the light work would be ruled out completely.  And the

sedentary work, with this hypothetical in my opinion there are just
not enough jobs to be significant if concentration is often dimin-
ished.

Q    By not significant, do you mean --

A    Not enough --

Q    -- few than two percent?

A    Two percent, no more than that.

ALJ:  Um-hum.  All right.  Thank you.  Counselor, you may ques-
tion.

ATTY:  I have no questions, Your Honor.  Go ahead, I'm sorry.  I
just had one thing I wanted to mention but not to Ms. Jones.

ALJ:  Did you say you have a question for Mrs. Jones?

ATTY:  No, no, I have nothing for Ms. Jones.  I just want --
something I wanted to mention to the Court before we --

ALJ:  All right.  And before you do that, let me just express to
you, as though I'm sure you're already aware of it, we are bound to
find medical support for our conclusions of disability.  And that
means not only a doctor's conclusory statements but laboratory and
diagnostic clinical studies.  Have you any additional support to offer
at this time in that regard?

ATTY:  The only other thing that I have that might be helpful,
and I apologize and I, I had overlooked it was a report where he was
referred August the 15th of 1983 by the insurance carrier to a
Dr. Dinkar Bole (Phonetic) in Lexington evidently through
Dr. Arnett with supporting documents.  And I evidently overlooked this
somewhere another.  I don't know how I did and I apologize.  I was

27

going through my files and see it.  And I think it would be helpful to
the Court.

ALJ:  Very well.

ATTY:  I know the Court's policy and I don't like bringing
reports in here on the date of the hearing.  And so I just simply
overlooked this one.  I've tried to send you everything I had prior to
this hearing.

ALJ:  All right.  We'll accept that into evidence if it pertains
to claimant's physical or mental condition --

ATTY:  It's a, it's a very well-reasoned report concerning his
physical condition and limitations.  And I really don't know how I
overlooked it.  I also noticed on the exhibits list back on
August 22nd, 1990 I had submitted a letter from Cigna, the insurance
carrier, to -- I thought I submitted it to the Judge but I'd sent it
to the Social Security Administration and asked that it be made a part
of the record from Crawford Rehabilitation, which is in -- just simply
in support of the claimant's testimony, wherein they have basically
said that he was not subject at that time to rehabilitation.  That was
tendered timely, but I did not tender it to the ALJ.  I tendered it to
Social Security.  And I do not know why I do not see it on the exhibit
list.

ALJ:  Yes.  I don't recall having seen it.  And it's possible
that it just wasn't processed.

ATTY:  It may -- I may have tendered it prior to the time that
the case was assigned to the Court.  I'd like to offer that.  And
again I apologize.

28

ALJ:  We'll accept that as B-42.

(Exhibit B-42, previously identified, was received into evidence and made a part of the record thereof.)

ATTY:  I had done another one of those, and it made it to the file, the cumulative information from Dr. Arnett.  So I guess they just forgot to send, send this one.  But Dr. Arnett's are just the insurance --

ALJ:  These could indeed be quite significant, Counselor.

ATTY:  I call those progress notes, Your Honor.  Is that, is that the same thing?  I'm referring to Exhibit Number B-28.  Is that the same thing as B-28?  It appears to be.

ALJ:  Yes.

ATTY:  Okay.

ALJ:  The Cigna form --

ATTY:  Yes.

ALJ:  -- and Dr. Arnett's letter of October, '90 and the Cigna form for July of '84 and December of '83 are all already in the record.

ATTY:  Okay.  I just wanted to, to make sure none of these -- make sure they were on there.

ALJ:  All right.  If there's nothing further, we will close the hearing at this time and close the record.  And I'll get a decision out to you as soon as I can.  Good luck to you, sir.

CLMT:  Thank you.

(The hearing closed at 9:18 a.m. on February 13, 1991.)

ALJ:  Back on the record for a further statement by counsel.

ATTY:  Yes, Your Honor.  Again, I apologize and I don't mean to be nitpicking the Court.  But on September the 12th of 1990, again I submitted a very well-reasoned report from Dr. Param, (Phonetic), E. Param from the Social Security Administration.  And I don't recall seeing that in the file.  I don't recall seeing that in the Court file.

ALJ:  When did you submit that, Counselor?

ATTY:  September the 12th of 1990.  Would you show that to the Court, please?  It's my cover letter with the report.

ALJ:  That will be marked Exhibit B-43 for identification.

ATTY:  I've been trying to get these as early as I can.  Maybe I cut too early.

ALJ:  Yeah.  And it might be that the file hasn't even reached the hearing office that far back.  I don't know, but I will try to check into that.

ATTY:  One of the judges though was getting me pretty good about being real late with it, so --

ALJ:  B-43 is a September 12th cover letter from counsel, enclosing a handwritten letter pertaining to the claimant signed by Dr. Param.  The document appears to be undated and it relates to the claimant's medical history since 1980.  We'll receive that in evidence as B-43.

(Exhibit B-43, previously identified, was received into evidence and made a part of the record thereof.)

ALJ:  Is that it now, Counselor?

ATTY:  That's it, Your Honor.

73

30

ALJ: All right. Very well. Thank you.

(The hearing closed at 9:22 a.m. on February 13, 1991.)

C E R T I F I C A T I O N

I have read the foregoing and hereby certify that it is a true and complete transcription of the testimony recorded at the hearing held in the above case before Administrative Law Judge William J. Kogan.


_Patti M. Carty_
Patricia M. Carty, Transcriber
Free State Reporting, Inc.


_Brent Garlow_
Brent Garlow          , Proofreader
Free State Reporting, Inc.

DEPARTMENT OF HEALTH AND HUMAN SERVICES
Social Security Administration

Form Approved
OMB No. 0960-0141

## DISABILITY REPORT

- 91

PLEASE PRINT, TYPE, OR WRITE CLEARLY AND ANSWER ALL ITEMS TO THE BEST OF YOUR ABILITY. If you are filing on behalf of someone else, enter his or her name and social security number in the space provided and answer all questions. COMPLETE ANSWERS WILL AID IN PROCESSING THE CLAIM.

**PRIVACY ACT/PAPERWORK REDUCTION ACT NOTICE:** The Social Security Administration is authorized to collect the information on this form under sections 205(a), 223(d) and 1633(a) of the Social Security Act. The information on this form is needed by Social Security to make a decision on your claim. While giving us the information on this form is voluntary, failure to provide all or part of the requested information could prevent an accurate or timely decision on your claim and could result in the loss of benefits. Although the information you furnish on this form is almost never used for any purpose other than making a determination on your disability claim, such information may be disclosed by the Social Security Administration as follows: (1) to enable a third party or agency to assist Social Security in establishing rights to Social Security benefits and/or coverage; (2) to comply with Federal laws requiring the release of information from Social Security records (e.g., to the General Accounting Office and the Veterans Administration); and (3) to facilitate statistical research and audit activities necessary to assure the integrity and improvement of the Social Security programs (e.g., to the Bureau of the Census and private concerns under contract to Social Security). These and other reasons why information about you may be used or given out are explained in the Federal Register. If you would like more information about this, any Social Security office can assist you.

| A. NAME OF CLAIMANT | B. SOCIAL SECURITY NUMBER | C. TELEPHONE NUMBER where you can be reached (include area code) |
|---|---|---|
| Grover Murphy | 407 / 70 / 4363 | (508) 08 4113 |

D. WHAT IS YOUR DISABLING CONDITION? *(Briefly explain the injury or illness that stops you from working.)*

back

## PART I — INFORMATION ABOUT YOUR CONDITION

| 1. When did your condition first bother you: | MONTH | DAY | YEAR 60 |
|---|---|---|---|

| 2A. Did you work after the date shown in item 1? *(If "no" go on to items 3A and 3B.)* | ☑ YES | ☐ NO |
|---|---|---|

2B. If you did work since the date in item 1, did your condition cause you to change —

| Your job or job duties? ................................................ | ☐ YES | ☑ NO |
|---|---|---|
| Your hours of work? ................................................ | ☐ YES | ☑ NO |
| Your attendance? ................................................ | ☐ YES | ☑ NO |
| Anything else about your work? ................................................ | ☐ YES | ☑ NO |

(If you answered "no" to **all** of these, go to items 3A and 3B.)

2C. If you answered "yes" to **any** item in 2B, explain below what the changes in your work circumstances were, the dates they occurred, and how your condition made these changes necessary.

| 3A. When did your condition finally make you stop working? | MONTH 06 | DAY | YEAR 61 |
|---|---|---|---|

3B. Explain how your condition now keeps you from working.

Pain in back, hip, legs Experience tightness in back. Frequent urinary tract infection. Have pain in stomach Have colitis also.

Form SSA-3368-BK (1-89)    1

EXHIBIT B-9

## PART II — INFORMATION ABOUT YOUR MEDICAL RECORDS

| 4. List the name, address and telephone number of the doctor who has the latest medical records about your disabling condition. DDS 2 Owen | If you have **no** doctor check ☐ |
|---|---|

CHARLES F ARNETT, MD

ADDRESS
ARCHER CLINIC
PRESTONS BURG KY 41635-

TELEPHONE NUMBER (include area code)
606 886 8187

| HOW OFTEN DO YOU SEE THIS DOCTOR? As needed | DATE YOU **FIRST** SAW THIS DOCTOR 1980 | DATE YOU **LAST** SAW THIS DOCTOR 1989 |
|---|---|---|

REASONS FOR VISITS *(show illness or injury for which you had an examination or treatment)*
BACK PROBLEMS          HAS MEDICAL RECORDS OF
STOMACH PROBLEMS       OTHER DOCTORS -
BOWEL PROBLEMS

TYPE OF TREATMENT OR MEDICINES RECEIVED (such as surgery, chemotherapy, radiation, and the medicines you take for your illness or injury, if known. If no treatment or medicines, show "NONE".)
LOPRESSOR      DARVOCET-N      ZANTAC
LOFID          VALIUM
ELAVIL         NAPROSYN

**5A.** Have you seen any other doctors since your disabling condition began? *If "yes", show the following:* req'd thru C Arnett          ☑ YES  ☐ NO

NAME  PEDRO ARRIOLA, MD

ADDRESS
PO BOX 1516, 713
BROADWAY AVE
PAINTSVILLE KY 41240

TELEPHONE NUMBER (include area code)
606 789 5010

| HOW OFTEN DO YOU SEE THIS DOCTOR? as needed | DATE YOU **FIRST** SAW THIS DOCTOR 1987- 88 | DATE YOU **LAST** SAW THIS DOCTOR 1989 |
|---|---|---|

REASONS FOR VISITS *(show illness or injury for which you had an examination or treatment)*
URINARY TRACT PROBLEMS

TYPE OF TREATMENT OR MEDICINES RECEIVED (such as surgery, chemotherapy, radiation, and the medicines you take for your illness or injury, if known. If no treatment or medicines, show "NONE".)
MARTIN N. SHAH M.D.
ANTIBIODICS

**5B.** Identify below any other doctor you have seen since your illness or injury began.
req'd thru C Arnett

NAME  MARTIN N. SHAH, MD

ADDRESS
BROADWAY MEDICAL CENTER
PAINTSVILLE KY 41240

TELEPHONE NUMBER (include area code)
606 789 8353

| HOW OFTEN DO YOU SEE THIS DOCTOR? as needed | DATE YOU **FIRST** SAW THIS DOCTOR 87 88 | DATE YOU **LAST** SAW THIS DOCTOR 12/89 |
|---|---|---|

REASONS FOR VISITS *(show illness or injury for which you had an examination or treatment.)*
STOMACH, BOWEL, GAS PROBLEMS

TYPE OF TREATMENT OR MEDICINES RECEIVED (such as surgery, chemotherapy, radiation, and the medicines you take for your illness or injury, if known. If no treatment or medicines, show "NONE".)
FASTAN
DONNATOL

**6A.** Have you been hospitalized or treated at a clinic for your disabling condition?    ☑ YES    ☐ N
If "yes", show the following: _medical road_

| NAME OF HOSPITAL OR CLINIC | ADDRESS |
|---|---|
| Highlands Reg Med Ctr | Prestonburg KY 41653 |

- 93

PATIENT OR CLINIC NUMBER

unk

| WERE YOU AN INPATIENT? (stayed at least overnight?) | WERE YOU AN OUTPATIENT? |
|---|---|
| ☑ YES    ☐ NO  (If "yes", show:) | ☐ YES    ☐ NO - (If "yes", show:) |

| DATES OF ADMISSIONS | DATES OF DISCHARGES | DATES OF VISITS |
|---|---|---|
| 1988 | | |

REASON FOR HOSPITALIZATION OR CLINIC VISITS (show illness or injury for which you had an examination or treatment.)

urinary tract infection

TYPE OF TREATMENT OR MEDICINES RECEIVED (such as surgery, chemotherapy, radiation, and the medicines you take for your illness or injury, if known. If no treatment or medicines, show "NONE".)

medication, tests

---

**6B.** If you have been in other hospital or clinic for your illness or injury, identify it below.

| NAME OF HOSPITAL OR CLINIC | ADDRESS |
|---|---|
| | |

PATIENT OR CLINIC NUMBER

| WERE YOU AN INPATIENT? (stayed at least overnight?) | WERE YOU AN OUTPATIENT? |
|---|---|
| ☐ YES    ☐ NO  (If "yes", show:) | ☐ YES    ☐ NO  (If "yes", show:) |

| DATES OF ADMISSIONS | DATES OF DISCHARGES | DATES OF VISITS |
|---|---|---|
| | | |

REASON FOR HOSPITALIZATION OR CLINIC VISITS (show illness or injury for which you had an examination or treatment.)

TYPE OF TREATMENT OR MEDICINES RECEIVED (such as surgery, chemotherapy, radiation, and the medicines you take for your illness or injury, if known. If no treatment or medicines, show "NONE".)

---

If you have been in other hospitals or clinics for your illness or injury, list the names, addresses, patient or clinic numbers, dates and reasons for hospitalization or clinic visits in Part VI.

**7.** Have you been seen by other agencies for your disabling condition?
(VA, Workmen's Compensation, Vocational Rehabilitation, Welfare, etc.)    ☑ YES    ☐ N
(If "yes," show the following:)

| NAME OF AGENCY | ADDRESS |
|---|---|
| Cigna Ins Co | Hampoint Ct #1  13225 Granville Ave.  Dallas TX 75243 |

YOUR CLAIM NUMBER

unk

DATE OF VISITS    yearly

TYPE OF TREATMENT, EXAMINATION OR MEDICINES RECEIVED (such as surgery, chemotherapy, radiation, and the medicines you take for your illness or injury, if known. If no treatment or medicines, show "NONE".)

Exam to continue long-term disability pmts

If more space is needed, list the other agencies, their addresses, your claim numbers, dates, and treatment received in Part VI.

Form SSA-3368-BK (1-89)                    3

94

8. Have you had any of the following tests in the last year?

| TEST | CHECK APPROPRIATE BLOCK OR BLOCKS | IF "YES" SHOW | |
|---|---|---|---|
| | | WHERE DONE | WHEN DONE |
| Electrocardiogram | ☐ YES ☑ NO | | |
| Chest X-Ray | ☐ YES ☑ NO | | |
| Other X-Ray (name body part here) _back_ | ☑ YES ☐ NO | Cigna Ins | 10/07 |
| Breathing Tests | ☐ YES ☑ NO | | |
| Blood Tests | ☐ YES ☑ NO | | |
| Other (Specify) _colonogon_ | ☑ YES ☐ NO | Dr Shah | 9/07 |

9. If you have a medicaid card, what is your number  (some hospitals and clinics file your records by your medicaid number.)

## PART III — INFORMATION ABOUT YOUR ACTIVITIES

10. Has your doctor told you to cut back or limit your activities in any way?    ☑ YES   ☐ NO
If "yes", give the name of the doctor below and tell what he or she told you about cutting back or limiting your activities.

Dr Arnett.    No lifting, squatting, bending

11. Describe your daily activities in the following areas and state what and how much you do of each and how often you do it:

● **Household maintenance** (including cooking, cleaning, shopping, and odd jobs around the house as well as any other similar activities):

● **Recreational activities and hobbies** (hunting, fishing, bowling, hiking, musical instruments, etc.):

Watch TV

● **Social contacts** (visits with friends, relatives, neighbors):

● **Other** (drive car, motorcycle, ride bus, etc.)

wyfe does most all driving

## PART IV — INFORMATION ABOUT YOUR EDUCATION

95

12. What is the highest grade of school that you completed and when?   12th → 1969

13. Have you gone to trade or vocational school or had any type of special training?  If "yes", show:   ☐ YES   ☑ NO

  ● The type of trade or vocational school or training:

  ● Approximate dates you attended:

  ● How this schooling or training was used in any work you did:

## PART V — INFORMATION ABOUT THE WORK YOU DID

14. List all jobs you have had in the last 15 years before you stopped working, beginning with your usual job. Normally, this will be the kind of work you did the longest. (If you have a 6th grade education or less, AND did only heavy unskilled labor for 35 years or more, list all of the jobs you have had since you began to work. If you need more space, use Part VI.)

| JOB TITLE (Be sure to begin with your usual job) | TYPE OF BUSINESS | DATES WORKED (Month and Year) FROM | TO | DAYS PER WEEK | RATE OF PAY (Per hour, day, week, month or year) |
|---|---|---|---|---|---|
| laborer | coal mining | 1973 | 1981 | 6 | $12 an hr |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

15A. Provide the following information for your usual job shown in item 14, line 1.

In your job did you:  ● Use machines, tools, or equipment of any kind?   ☑ Yes   ☐ No

  ● Use technical knowledge or skills?   ☐ Yes   ☑ No

  ● Do any writing, complete reports, or perform similar duties?   ☑ Yes   ☐ No

  ● Have supervisory responsibilities?   ☑ Yes   ☐ No

15B. Describe your basic duties (explain what you did and how you did it) below. Also, explain all "Yes" answers by giving a FULL DESCRIPTION of: the types of machines, tools, or equipment you used and the exact operation you performed; the technical knowledge or skills involved; the type of writing you did, and the nature of any reports; and the number of people you supervised and the extent of your supervision:

Fire boss reports daily, attendance reports daily,
supervised 15 men.
Roof bolted, ran scoop track motor

15C. Describe the kind and amount of physical activity this job involved during typical day in terms of:                    96

- **Walking** (circle the number of hours a day spent walking) — ⓪ 1 2 3 4 5 6 7 8
- **Standing** (circle the number of hours a day spent standing) — ⓪ 1 2 3 4 5 6 7 8
- **Sitting** (circle the number of hours a day spent sitting) — 0 1 2 3 4 5 6 7 ⑧
- **Bending** (circle how often a day you had to bend) — Never · Occasionally · Frequently · Ⓒonstantly
- **Reaching** (circle how often a day you had to reach) — Never · Occasionally · Frequently · Ⓒonstantly
- **Lifting and Carrying:** Describe below what was lifted, and how far it was carried. Check heaviest weight lifted, and weight frequently lifted and/or carried:

| HEAVIEST WEIGHT LIFTED | WEIGHT FREQUENTLY LIFTED/CARRIED |
|---|---|
| ☐ 10 lbs. | ☐ Up to 10 lbs. |
| ☐ 20 lbs. | ☐ Up to 25 lbs. |
| ☐ 50 lbs. | ☐ Up to 50 lbs. |
| ☐ 100 lbs. | ☒ Over 50 lbs. |
| ☒ Over 100 lbs. | |

## PART VI — REMARKS

Use this section for additional space to answer any previous questions. Also use this space to give any additional information that you think will be helpful in making a decision in your disability claim, (such as information about other illnesses or injuries not shown in Parts I and II.) Please refer to the previous items by number.

*Ht 5'11     10 - 200. lbs*

Public reporting burden for this collection of information is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to the Social Security Administration ATTN: Reports Clearance Officer, 1-A-21 Operations Bldg., Baltimore, MD 21235 and to the Office of Management and Budget, Paperwork Reduction Project (OMB #0960-0141), Washington, D.C. 20503.

Knowing that anyone making a false statement or representation of a material fact for use in determining a right to payment under the **Social Security Act commits a crime punishable under Federal law, I certify that the above statements are true.**

NAME (Signature of claimant or person filing on the claimant's behalf)

SIGN HERE ▶ _Chris murphy_                    DATE · 1-20-90

Witnesses are required ONLY if this statement has been signed by mark (X) above. If signed by mark (X), two witnesses to the signing who know the person making the statement must sign below, giving their full addresses.

| 1. Signature of Witness | 2 Signature of Witness |
|---|---|
| Address (Number and street, city, state, and ZIP code) | Address (Number and street, city, state, and ZIP code) |

**PART VII — FOR SSA USE ONLY - DO NOT WRITE BELOW THIS LINE**    97

| NAME OF CLAIMANT | SOCIAL SECURITY NUMBER |
|---|---|
| Grover Murphy | 407 / 70 / 9363 |

16. Check any of the following categories which apply to this case:

PRESUMPTIVE DISABILITY CONSIDERATION
(If any of these boxes are checked, DO's (and DDS's) should be alert to the possibility of a presumptive disability determination in SSI claims per DI 11055.240 and 23535.005.

A. ☐ Amputation of two limbs

B. ☐ Amputation of a leg at the hip

C. ☐ Allegation of total deafness

D. ☐ Allegation of total blindness

E. ☐ Allegation of bed confinement or immobility without a wheelchair, walker, or crutches, allegedly due to a longstanding condition — exclude recent accident and recent surgery.

F. ☐ Allegation of a stroke (cerebral vascular accident) more than 3 months in the past and continued marked difficulty in walking or using a hand or arm.

G. ☐ Allegation of cerebral palsy, muscular dystrophy or muscular atrophy and marked difficulty in walking (e.g., use of braces), speaking or coordination of the hands or arms.

H. ☐ Allegation of diabetes with amputation of a foot.

I. ☐ Allegation of Down's Syndrome (Mongolism).

J. ☐ An applicant filing on behalf of another individual alleges severe mental deficiency for claimant who is at least 7 years of age. The applicant alleges that the individual attends (or attended) a special school, or special classes in school, because of his mental deficiency, or is unable to attend any type of school (or if beyond school age was unable to attend), and requires care and supervision of routine daily activities.

L. ☐ Allegation of Acquired Immune Deficiency Syndrome (AIDS)

| | | |
|---|---|---|
| 17A. Does the claimant speak English? .............................................<br>*If "no," what language does he speak?* | ☑ Yes | ☐ No |
| 17B. Does the claimant need assistance in prosecuting his or her claim? .................<br>*If "yes," show name, address, relationship, and telephone number of an interested party willing to assist the claimant.* | ☐ Yes | ☑ No |

| NAME | ADDRESS | RELATIONSHIP | TELEPHONE NUMBER (area code) |
|---|---|---|---|
| | | | |

| | | |
|---|---|---|
| 17C. Can the claimant (or his representative) be readily reached by telephone with no communication problems due to language, speech or hearing difficulties? *If "no", DO should complete SSA-3369-F6.* | ☑ Yes | ☐ No |

Form SSA-3368-BK (1-89)                    7

98

18A. Check each item to indicate if any difficulty was observed:

| | Yes | No | | Yes | No |
|---|---|---|---|---|---|
| Reading | ☐ | ☑ | Using Hands | ☐ | ☑ |
| Writing | ☐ | ☑ | Breathing | ☐ | ☐ |
| Answering | ☐ | ☑ | Seeing | ☐ | ☐ |
| Hearing | ☐ | ☑ | Walking | ☐ | ☑ |
| Sitting | ☐ | ☑ | | | |
| Understanding | ☐ | ☑ | Other (Specify): _____ | | |

18B. If any of the above items were checked "yes," describe the exact difficulty involved:

18C. Describe the claimant fully (e.g., general build, height, weight, behavior, any difficulties that add to or supplement those noted above, etc.):

Only *his medical condition requires him to*

19. Medical Development — Initiated by District or Branch Office

| SOURCE | DATE REQUESTED | DATE(S) OF FOLLOW-UP | CAPABILITY DEVELOPMENT REQUESTED |
|---|---|---|---|
| C Arnett | 1-29-90 | | |
| | | | |
| | | | |

20. DO or BO curtailed completion of Parts III - V per DI 11005.035
(DI 20501.005)     ☐ YES   ☑ NO

21. Is capability development by the DDS necessary?
If "yes"; show "DDS capability development needed" in item 11 of the SSA-831-U5    ☐ YES   ☑ NO

22. Is development of work activity necessary? .................................    ☐ YES   ☑ NO

   If "yes", is an SSA-820-F4 or SSA-821-F4 .........................................    ☐ Pending ☐ In File

23. SSA-3368-BK taken by:     ☑ Personal Interview ☐ Telephone ☐ Mail

24. Form supplemented: ☐ Yes   ☑ No
If "yes" by: ☐ Personal Interview ☐ Telephone ☐ Mail

SIGNATURE OF DO OR BO INTERVIEWER OR REVIEWER    *Vernon Smith*

TITLE    CR

DATE    1-29-90

☆ U.S. Government Printing Office: 1989-241-313/00024