# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN G. KELLY | : | CIVIL ACTION |
| vs. | : | |
| CONNECTICUT GENERAL LIFE | : | |
| INSURANCE COMPANY | : | NO.  03-315 |

## O R D E R

AND NOW, this        day of                        , 2003, upon consideration of the

Cross-Motions for Summary Judgment of the parties hereto, together with answers in

opposition thereto, it is hereby:

ORDERED and **DECREED** that Plaintiff's Motion for Summary Judgment is

**GRANTED** and Defendant's Motion for Summary Judgment is **DENIED**. Defendant is

ordered to tender all past long term disability benefits to Plaintiff to the present, plus

interest.

**BY THE COURT:**

_____

                                                                    **J.**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN G. KELLY | : | CIVIL ACTION |
| vs. | : | |
| CONNECTICUT GENERAL LIFE INSURANCE COMPANY | : : | NO. 03-315 |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT

Plaintiff, John G. Kelly, by and through his attorney, Daniel J. Zucker, Esquire, pursuant to Federal Rule of Civil Procedure 56, hereby moves this Honorable Court to enter summary judgment in his favor and against Defendant, Connecticut General Life Insurance Company (hereinafter CGLIC). Alternatively, if this Honorable Court concludes that genuine issues of material fact exist, then Plaintiff respectfully requests that this Honorable Court deny both Cross Motions for Summary Judgment.

This is an ERISA action by which Plaintiff challenges the denial of his long term disability benefits and the subsequent denial of his administrative appeals by the Defendant. The denial was arbitrary, capricious, without any reasonable basis and/or tainted by a conflict of interest inherent to this circumstance as the long term disability Plan is funded and administered by the same entity, A&P. (See page 446 and 460-461 of the Administrative Record.) Plaintiff incorporates by reference the Administrative Record (referred to herein as "AR") produced by Defendant (Tabs 1-967). The Plan at issue defines Disability as follows:

1.   *For the first two years that LTD benefits are payable, you must be*

2

*unable to perform any and all duties of your job. During this two-year
period, you must not be engaged in any other job where you are paid
or where you make a profit except "rehabilitative employment";*

2.     *After the first two years of benefit payment you must be unable to perform
any job for which you are qualified or for which you become qualified.*

From June, 2001 to December, 2001, Plaintiff received sick leave benefits gfrom

A&P based upon documented medical evidence of obstructed sleep apnea (OSA) which

disabled him from performing his requested duties as night co-manager of the A&P store.

Plaintiff was first diagnosed with OSA in 1998, but the condition is progressive and it

became totally disabling as of May 18, 2001.[1]   A&P tendered  Plaintiff benefits up until

December, 2001.    The Defendant, _without_ even an IME, denied long term disability

benefits, despite the fact that Plaintiff's condition had never improved. In fact, Plaintiff's

disabling impairments have deteriorated and will continue to deteriorate. Further, upon

denial, Plaintiff requested that Defendant reconsider its position and appealed the denial

decision. Prior to and during the appeal period, Plaintiff had been treating with numerous

physicians, including but not limited to Brian Carnavil, D.O., Kevin Lax, M.D., cardiologist

and Martha F. Donner, M.D., board-certified in Internal Medicine.

Plaintiff was admitted to the emergency room and then as an inpatient to Holy

Redeemer Hospital from August 14, 2002 through August 20, 2002.  His discharge

diagnoses were: (1) Congestive heart failure; (2) Cor pulmonale; (3) Atrial flutter; (4)

Hypertension; (5) Obstructive sleep apnea (hereinafter "OSA") and (6) Benign prostatic

hypertrophy.  (See AR 10-11).  During the Holy Redeemer Hospital hospitalization,

---

[1]  Plaintiff has not worked at any job since May 18, 2001.

3

cardiologist, Kevin Lax, M.D. notes evidence, "obese, shortness of breath on very minimal activity; EKG showed atrial flutter, possibility of heart failure and/or hypertensive heart disease". (AR 13-15). The Holy Redeemer Hospital progress notes confirm Plaintiff has "severe life threatening potential OSA". (AR35). Thereafter, Plaintiff was transferred from Holy Redeemer Hospital directly to Abington Memorial Hospital from August 20, 2002 to September 5, 2002. (AR 501). The primary diagnosis from Abington Memorial Hospital on discharge was "Atrial fibrillation for ablation and cardioversive." The secondary diagnoses were (1) Congestive heart failure, (2) Sick sinus syndrome with tachbrady syndrome; (3) OSA, (4) Morbid obesity, (5) Hypertension and (6) benign prostatic hypertrophy. (AR 501).

On August 26, 2002, by certified mail, Plaintiff's counsel provided to Defendant the August 16, 2002 letter from Plaintiff's primary physician, Brian Carnavil, D.O. confirming disability which states:

> I can inform you at this point that Mr. Kelly is getting more and more disabled from his obstructive sleep apnea. I think we need to allow everyone involved to understand that he right now has been admitted to Holy Redeemer Hospital on the Telemetry Unit with an atrial rhythm disturbance. The patient is being seen by a pulmonologist as well as a cardiologist for his current medical problems. It appears that he has significant obstructive sleep apnea with high pulmonary pressures causing atrial rhythm disturbances and heart rates up into the 160's. At this point, he is in congestive heart failure and needs aggressive medical treatment and we are even considering a transesophageal echo, an electrophysiologic study, because of a significant rhythm disturbance that is all due to his obstructive sleep apnea. At this point I can tell you that he wasn't able to walk five feet without getting short of breath with a heart rate in the 170's and worsening congestive heart failure. He is presently still in the hospital and when he is out of the hospital I can gladly inform you of other things that are going on but I want you to understand that his pulmonologists are Dr. Donner and Dr. Reinach, his cardiologist is Dr.

<u>Kevin Lax and all of us involved realize that this gentleman is disabled.</u>
[emphasis added]. (See AR 156)


On December 15, 2002 the Social Security Administration, by Administrative Judge

Law Henry Oliver, issued a ruling finding Mr. Kelly totally disabled retroactive as of May 18,

2001.  Specifically the findings of fact by Judge Oliver were:

1) The claimant met the disability insured status requirements of the Act on May 18, 2001, and continues to meet then at least through the date of this decision.

2) The claimant has not performed any substantial gainful activity since May 18, 2001.

3) The claimant suffers from severe congestive heart failure with attendant surgery, a heard rhythm disorder, obstructive sleep apnea, hypertension, and obesity.

4) The claimant's impairments have not been of sufficient severity such as to meet or equal the severities of any of the relevant impairment contained in Appendix 1 to Subpart P of Regulations No. 4.

5) The claimant's impairments preclude him from performing work at any exertional level on a sustained, regular basis.

6) The claimant has been unable to perform his past relevant work.

7) Irrespective of the claimant's age, education, and past relevant work experience, there have not existed a significant number of jobs in the national economy that the claimant has been capable of performing.

8) The claimant has been under a "disability" as defined in the Social Security Act, as amended, since May 18, 2001.  (AR 476-483)

The record, when applied to the law, mandates that Plaintiff's Motion for Summary

Judgment be granted and Defendant's Cross-Motion for Summary Judgment be denied.[2]
This Honorable Court, exercising either the heightened arbitrary and capricious standard
of review, or the arbitrary and capricious standard of review should enter an Order directing
Defendant to tender all past long term disability benefits to the present plus punitive
damages, attorneys fees and costs. Alternatively, at a minimum, a genuine issue of
material fact exists as to whether the Defendant's denial was arbitrary and capricious.

For the reasons set forth herein, it is respectfully requested that this Honorable
Court enter an Order in the form attached granting Plaintiff's Motion for Summary
Judgment and denying Defendant's Cross-Motion for Summary Judgment.

LAW OFFICES OF DANIEL J. ZUCKER,

BY: _____

DANIEL J. ZUCKER, ESQUIRE,
Attorney for Plaintiff

---

[2]    As a result of the recent US Supreme Court Opinion in _Kentucky Association_
_of Health Plans, Inc. v. Miller_, 123 S.Ct. 147 (4/2/03) and Judge Newcomer's recent
September, 2003 opinion in _Rosenbaum v. Unum_, 2003 WL 22078557 (E. D. Pa.),
Plaintiff filed a Motion for Permission to file an Amended Civil Action to include a bad
faith count under 42 Pa. C.S.A. §8317 which statute permits punitive damages,
attorneys fee and costs.

6

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN G. KELLY | : | CIVIL ACTION |
| vs. | : | |
| CONNECTICUT GENERAL LIFE INSURANCE COMPANY | : : | NO. 03-315 |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

I.    **STATEMENT OF FACTS**

Plaintiff, John G. Kelly, was at all relevant times an employee of The Great A & P Tea Co.,Inc. (hereinafter "A&P"). Specifically, Plaintiff had been employed by A&P for thirty-three (33) years. As an A&P employee, Plaintiff was covered under A&P's welfare benefit plan which provides for various ERISA benefits, including long term disability. A&P both funds **and** administers the ERISA benefits at issue in this case. The Summary Plan Description (SPD) (AR-446) provides the following definitions:

> *Plan Administrator:* The Plan is administered by The Great Atlantic & Pacific Teas Co. Inc.....and has the sole final authority...
>
> *Plan Funding:* The Long Term Disability Plan is self funded and claims are administered through CGLIC.

Similarly, the A&P Long Term Disability Benefit Plan itself (AR 460-461) provides as follows:

> COMPANY: The Great Atlantic & Pacific Tea Company, Inc.....
>
> ADMINISTRATION: The Company is the administrator of the Plan as the term is used in ERISA...
>
> FUNDING POLICY AND PAYMENTS TO AND FROM THE PLAN. The

1

Plan shall be funded by, and benefits under the Plan shall be paid from, contributions made by the Company.

Plaintiff had been a thirty three year faithful employee with A&P who was covered under the Plan. On February 20, 1998 Plaintiff was first diagnosed with OSA by Dr. Donner (AR 148). The condition progressively deteriorated and as of May 18, 2001, Plaintiff was unable to work his reassigned job as co-manager since he was unable to perform any and all the duties. Specifically, A&P had reassigned plaintiff to a new location and new night shift (4 PM to 11PM) (see AR-335). Plaintiff's primary treating physician, Dr. Carnavil, advised the District Manager that "Mr. Kelly is unable to perform those duties of a Co-Manager. His Obstructed Sleep Apnea (OSA) disables him from working the shift that has been assigned. The prognosis for his OSA is continuous disability for a period longer than 12 months." (AR-379, 396). A&P refused to reassign Plaintiff to any other position.

As such on March 28. 2002 Plaintiff submitted his application for LTD benefits indicating the onset of his disability to be May 18, 2001. (AR-423). His primary physician, Dr. Carnival, on February 1, 2002 submitted the required Attending Physician Statement in support of LTD benefits. (AR- 424-425). Plaintiff had been receiving benefits directly from A&P from June 2001 until December 2001. This is the reason he waited until March of 2002 to request long term disability benefits.

Defendant, CGLIC, on April 22, 2002, acknowledged receipt of Plaintiff's application for LTD benefits and advised Mr. Kelly to "apply for Social Security Benefits..." (AR-408-410). CGLIC's own claims examiner, upon review of the medical records, on May

14, 2002 and June 4, 2002 concluded that "based on the information so far, he is able to perform his job *but not for his employer* (AR- 429) and that "Claimant only *unable to work a specific shift."* (AR- 428.). His employer had NO other shifts for him to work.

By way of letter dated June 10, 2002 CGLIC informed Plaintiff his LTD application was denied. The denial letter states " although you may be unable to work the new shift assigned to you and are unwilling to work at the new location due to the length of the commute, you have not established your inability to perform any and all the duties of your job as store manager." (AR-334-336).

These stated reasons for denial are flatly contradicted by the claims examiner's own internal notes of May 14, 20092 and June 4, 2002 where she admits Plaintiff is unable to work the assigned night shift at the new location as co-manager (AR 428-429). On May 17, 2002, Dr. Donner, the OSA specialist wrote to Dr. Carnival and confirmed "certainly, Mr. Kelly will have significant exacerbation of symptomoatology with the change in his job situation. Shift work is difficult for people with normal sleep, but exacerbates any underlying sleep disorder such as obstructive sleep apnea syndrome, causing sleep quality increasingly suboptimal. In addition, the long commute represents a significant hazard in terms of possible reduced alertness while driving." (AR 940-941).

On August 14, 2002 Plaintiff lapsed into a life threatening condition with congestive heart failure. He was rushed to the emergency room of Holy Redeemer Hospital and admitted for six days. The Holy Redeemer Hospital records confirm the following discharge diagnoses: (1) Congestive Heart Failure; (2) Cor pulmonale, (3) Atrial flutter, (4) Hypertension, and) (5) OSA. He was morbidly obese with a weight of 370 lbs. (AR 10-11).

3

The records from Holy Redeemer Hospital confirm shortness of breath, very minimal activity, uncontrolled atrial flutter, morbid obesity (AR-13-15,27, 32) and severe life threatening potential OSA (AR- 35). In fact, the consulting cardiology record confirms "over last month, if he walks from one room to another at home, or if he walks more than 50 feet, he needs to stop. (AR 13).

Plaintiff's condition continued to worsen necessitating transfer from Holy Redeemer Hospital on August 20, 2002 to Abington Memorial Hospital for ablation (AR- 11). He was admitted to Abington Memorial Hospital from August 20, 2002 until September 5, 2002 (AR 501).    Plaintiff's discharge diagnosis were: (1) Atrial fibrillation for ablation and cardioversion;(2) Congestive Heart Failure; (3) Sick sinus sydrome with tachybrady syndrome; (4) OSA; (5) Morbid Obesity; (6) Hypertension. (AR 501).

His primary treating physician Dr. Carnival submitted a report on August 16, 2002 again opining as to Mr. Kelly's disability. The report states (AR 156)

> I can inform you at this point that Mr. Kelly is getting more and more disabled from his obstructive sleep apnea.  I think we need to allow everyone involved to understand that he right now has been admitted to Holy Redeemer Hospital on the Telemetry Unit with an atrial rhythm disturbance.  The patient is being seen by a pulmonologist as well as a cardiologist for his current medical problems.  It appears that he has significant obstructive sleep apnea with high pulmonary pressures causing atrial rhythm disturbances and heart rates up into the 160's. At this point, he is in congestive heart failure and needs aggressive medical treatment and we are even considering a transesophageal echo, an electrophysiologic study, because of a significant rhythm disturbance that is all due to his obstructive sleep apnea. At this point I can tell you that he wasn't able to walk five feet without getting short of breath with a heart rate in the 170's and worsening congestive heart failure.  He is presently still in the hospital and when he is out of the hospital I can gladly inform you of other things that are going on <u>but I want you to understand that his pulmonologists are Dr. Donner and Dr. Reinach, his cardiologist is Dr.</u>

4

<u>Kevin Lax and all of us involved realize that this gentleman is disabled".</u>
[emphasis added] (See AR 156).

On November 20, 2002, CGLIC by way of letter, advised Plaintiff's counsel that he

was NOT eligible for disability benefits. (AR 485-487). The stated reasons are arbitrary,

capricious and flatly contradict the records contained in Defendant's administrative record.

Page two of the letter states

> There is no medical documentation of a diagnosis and treatment for
> congestive heart failure from June 3, 2001 to the August, 2001
> hospitalization. The records on file at the time Mr. Kelly stopped working
> as a Store Manager indicate his employment status was changed and he
> did not want to work the hours offered or travel the distance to get to the
> store. There is no medical documentation of treatment for any of Mr.
> Kelly's diagnosis or certification of total disability from his job as a store
> Manager from the date he stopped working on June 3, 2001,..

In fact, as set forth hereinabove, all treating physicians state that Plaintiff's condition

precluded him from performing the duties required in the only employment A&P made

available. See Dr. Carnival's records and reports (AR 424,143,379 ); Dr. Lax's record (AR

13 ); Dr. Donner's letters and records, (AR 143-144; 172-173 ). Defendant never obtained

any IME and never had Plaintiff examined. This failure, in and of itself, constitutes arbitrary

and capricious conduct. See *Lemarre v. Hartford Life Ins. Co.*,2003 U.S. App. LEXIS

13421 (3d Cir, June 30, 2003), wherein the Court affirmed the District Court's granting of

summary judgement in favor of Plaintiff-insured in the insured's ERISA action challenging

the denial of long term disability benefits. The Court, in affirming the district court's findings

of arbitrary and capricious conduct, relied on the fact that the defendant never sent the

insured for an IME prior to any final determination. Rather, Defendant chose to rely on its

own medical director's record review. Here, Defendant does not even provide any in-

5

house record medical review.

On December 15, 2002 Social Security Disability benefits were awarded Mr. Kelly retroactive as of May 18, 2002. Social Security Administrative Judge Oliver ruled as follows (AR- 476-483):

1)   The claimant met the disability insured status requirements of the Act on May 18, 2001, and continues to meet then at least through the date of this decision.

2)   The claimant has not performed any substantial gainful activity since May 18, 2001.

3)   The claimant suffers from severe congestive heart failure with attendant surgery, a heard rhythm disorder, obstructive sleep apnea, hypertension, and obesity.

4)   The claimant's impairments have not been of sufficient severity such as to meet or equal the severities of any of the relevant impairment contained in Appendix 1 to Subpart P of Regulations No. 4.

5)   The claimant's impairments preclude him from performing work at any exertional level on a sustained, regular basis.

6)   The claimant has been unable to perform his past relevant work.

7)   Irrespective of the claimant's age, education, and past relevant work experience, there have not existed a significant number of jobs in the national economy that the claimant has been capable of performing.

8)   The claimant has been under a "disability" as defined in the Social Security Act, as amended, since May 18, 2001.

The Decision was forwarded to CGLIC, by Plaintiff's counsel, by certified letter dated December 19, 2002. CGLIC advised counsel for Plaintiff that the Social Security decision would not change its denial. Therefore a Civil Action was filed on or about January 24,

6

2003.

## II.   ARGUMENT

Defendant's refusal to tender  long term disability benefits constitutes an arbitrary and capricious denial.  Insofar as A&P both funds **and** administers the ERISA plan at issue, this Honorable Court should apply a heightened form of the arbitrary and capricious standard of review. "Arbitrary and capricious" has been defined as "unsupported by substantial evidence or erroneous as a matter of law." *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377 (3rd Cir. 2000); *Cimino v. Reliance Standard*, 2001 U.S. Dist., LEXIS 2643 (E.D. Pa. 2001).   There is **no** substantial evidence supporting Defendant's decision to deny long term disability benefits. Defendant has breached its duty to determine benefit entitlement subject to the purpose of "protecting the interest of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 90, 77 L.Ed. 2d 490, 103 S.Ct. 2890 (1983) and be "protecting contractually defined benefits" *Mass. Mutual Life. Ins. Co. V. Russol*, 473 U.S. 134, 148, 87 L.Ed. 2d 96, 135 S.Ct. 3085 (1985).

In this case, it is clear that Defendant's denial is unsupported by "substantial evidence" since all of the evidence clearly reveals that Plaintiff remains disabled and his condition is deteriorating. In fact, CGLIC's record is devoid of any medical report from any source opining that Plaintiff is NOT disabled.

## A.   The Award by Social Security of Disability Benefits Compels Reversal of Defendant's Denial

The arbitrary and capricious nature of this denial is obvious and made in bad faith,

7

that is without any reasonable basis. The Social Security Act, 42 USCS §423(d)(1) defines

Disability as follows:

> (d)     Disability defined.
>
> (1)     The term "disability" means–
>         (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; or
>
> (2)     For purposes of paragraph (1)(A)--
>         (A) An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his pervious work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the county.
>         (B) In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity to such impairment or impairments could be the basis of eligibility under this section, the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity. If the Commissioner of Social Security does find a medically severe combination of impairments, the combines impact of the impairments shall be considered throughout the disability determination process.

The Plan at issue defines Disability as follows:

> 1.    *For the first two years that LTD benefits are payable, you must be unable to perform any and all duties of your job. During this two-year*

*period, you must not be engaged in any other job where you are paid or where you make a profit except "rehabilitative employment";*

2.    *After the first two years of benefit payment you must be unable to perform any job for which you are qualified or for which you become qualified.*

By suggesting Plaintiff apply for social security disability benefits (AR408-410), Defendant is estopped from denying that Plaintiff is not disabled under its plan. *Ladd v. ITT*, 148 F.3rd 753, 756-58 (7th Cir. 1998, J. Posner).

There exists precedent from the Pennsylvania District Federal Courts in favor of Plaintiff's position. Specifically, the Court in *Pierce v. American Waterworks Co.*, 683 F. Supp. 996, 1000-01 (W.D.Pa. 1998) held that an ERISA decision to deny disability benefits was arbitrary and capricious due to a contradictory social security opinion; *Ferguson v. Greyhound Retirement & Disability Trust*, 683 F.Supp 323, (W.D. Pa. 1985) (relying on Social Security Administration's determination of disability, among other things, to deny defendant's motion for summary judgement). As such, the precedent in this jurisdiction is that the adjudication in SSA cases are binding and if not, highly persuasive in ERISA matters. [1]

*Assuming* arguendo, this Court does not estop Defendant or accept the SSA determination as binding, other courts have consistently relied upon the instructive nature of SSA decisions in disability cases. The bad faith of Defendant's position is self-evident.

---

[1] Both the *Pierce* and *Ferguson* cases have been cited in other jurisdictions for the  proposition that "A district court may consider the SSA determination of disability in reviewing a plan administrator's determination of benefits." See *Kirwan v. Marriott Corporation*, 10F.3d 784, 789 (11th Cir. 1994)

9

It is more difficult for a claimant to prove that he is disabled from any occupation (the social security standard) than to prove that he is disabled from his regular occupation (Defendant's initial two year standard).

See generally: _Halpin v. W.W. Grainger, Inc._, 962F.2d 685, 695 and n.11 (7th Cir. 1992). (Seventh Circuit found the SSA's review of a claim and subsequent decision to continue benefits to be a significant factor in determining ERISA disability benefits); _LaBarge v. Life Ins. Co. of North America_, 2001 U.S. Dist. LEXIS 1033, No. 00 C 512, 2001 WL 109527,at **8 (N.D.ILL. Feb. 6, 2001) ("The findings of the Social Security Administration is [sic] compelling evidence of (plaintiff's) disability."). _Kirwan v. Marriott Corporation_, 10 F.3d 784 (1st Cir. 1994), (the court rules that a social security decision may be considered by a court reviewing an ERISA claim for disability benefits.) _Wilkes v. UNUM Life Ins. Co._, 2002 U.S. Dist. LEXIS 8763; 27 E.B.C. 2079 (W.D. Wis. 2002). (The fact that the SSA determined that Plaintiff is disabled is additional reinforcement of continuing disability.. . . A determination of disability under the SSA can be considered when applicable"). _Reidl v. General Am. Life Ins. Co._, 248 F.3d 753 (8th Cir. 2001) (SSA determination is an admissible evidentiary factor for ERISA determination of LTD disability); _Torix v. Ball Corp._, 802 F.2d 1428, 1431 (10th Cir. 1988) (noting that although social security cases are not precedential in the ERISA context, they may be used for guidance; _Duffie v. Deere & Co._, 111 F.3d 70, 74 n.5 (8th Cir. 1997) (Although the SSA determination is not binding, it is admissible evidence to support an ERISA claim of LTD benefits).

Despite the more stringent social security disability definition, Defendant apparently

10

gave no weight to Judge Oliver's determination of disability.  This, in and of itself, is
evidence of arbitrary and capricious conduct.

**B.**     **The Decision Based On The Administrative Record is Arbitrary and Capricious
and Compels Reversal of Defendant's Denial**

Even a cursory review of the administrative records evidences the capricious
unfounded nature of this denial. In prior cases, where the ERISA Plan insurer relied on in-
house medical specialists or hired physicians, courts have granted the employees' motions
and denied the insurers' cross motions. Here, CGLIC fails to even produce any healthcare
provider's report on its behalf. Defendant fails to produce even the minimal "captive
consultant" of which  reviewing courts are highly suspicious upon review of a plan
administrator's decision. *See, Davies v. Paul Revere Ins. Co.*, *supra.*, 10 A. 360. This is
precisely the arbitrary and capricious type of review rejected in *Cohen v. Standard Ins. Co.*,
200 U.S. Dist. LEXIS 6604 (E.D. Pa. 5-17-01), when Judge Newcomer ruled "looking at
defendant's final decision, this court sees a selectivity that appears self serving, not only
when it adopted its non-treating physicians' opinions, but also when it rejected medical
evidence that plaintiff submitted to support his contention." *Id.*, citing *Pinto*, 214 F.30 377.
As such, Defendant's denial of Plaintiff's disability benefits fails under the "arbitrary and
capricious" standard of review.  Here, there is no non-treating physician opinion on which
Defendant relies.  *A fortiori*, the denial is arbitrary and capricious.

In *Pinto v. Reliance Standard Life Ins.. Co. supra.*, the Court  ruled that a
heightened scrutiny is required when a company both funds and administers ERISA
benefits on account of the inherent conflict of interest in the competing fiduciary and non-

fiduciary roles. As such, in reviewing the decision of the administrator to deny or terminate disability benefits, the Federal Court must employ something more than the highly deferential "arbitrary and capricious" test. Chief Circuit Judge Becker, writing for the unanimous three judge panel in *Pinto*, followed the lead of five other appellate courts adopting a "sliding scale" standard under which the federal court must "consider the nature and degree of apparent conflicts with a view to sharing their arbitrary and capricious review of the benefits determinations of discretionary decision maker." *See also Friess v. Reliance Standard Life Ins. Co.*, 122 F.Supp. 2d 566 (E.D. Pa. 2000).

Recently, in *Cohen supra.*, Senior Judge Newcomer, applied the *Pinto* standard in granting the employee's and denying the employer's cross motions for summary judgement in an ERISA disability denial claim. Specifically, the Court in *Cohen* ruled that since the same company funded and administered the Plan, an inherent conflict of interest existed. Thus, the court ruled that it "must apply a heightened form of the arbitrary and capricious standard of review... Accordingly, the Court in reviewing the facts before the administrator did so 'with a high degree of skepticism.'" Citing *Pinto*, 214 F.3d 365. In *Cohen*, the Court ruled that the denial of benefits was arbitrary and capricious and refused to remand the case, but rather, ordered that the employer tender all past and future benefits. *See also, Goldstein v. Johnson & Johnson*, U.S. App. LEXIS 10834, No. 00-5149, slip op. at 3 (3d Cir. 2001); *Cimino v. Reliance Ins. Co.*, 2001 U.S. Dist. LEXIS 2643 (3/12/001) (safest route is to track closely the analysis of this court of appeals in *Pinto* and automatically apply a heightened arbitrary and capricious standard). *See also, Friess, supra* ("while Reliance has discretion, if its judgment is compromised by conflicts of interest, the

12

heightened deferential standard of review must be adopted."). _Id._, 122 F.Supp. 3d 566, 573 (E.D. Pa. 2001).

This heightened standard of review, on account of the conflict of interest, requires the Court to engage in a "deferential", but not an absolutely deferential, standard of review. In applying this "sliding scale", the _Pinto_ Court's heightened standard of review looked not only at the result reached by the fiduciary's decision (that is, whether it is supported by reason), but also at the process by which the result was achieved.

Also instructive is Judge Newcomer's decision in _Cohen_ ,_supra_. Plaintiff in _Cohen_ was a labor lawyer who claimed disability because of serious coronary artery disease. Benefits were denied on the basis of two consulting physicians, who reviewed evidence of record. Employing the heightened arbitrary and capricious standard established in _Pinto_, Judge Newcomer found in the record a selective appraisal of the evidence that appeared to be self-serving. He further found that the rejection of plaintiff's claim in the face of evidence that work stress increased the risk of heart complication was arbitrary and capricious.

In the matter sub judice, CGLIC's reliance on out of context excerpts from medical records, when presented with contrary evidence from Plaintiff's treating doctors, as well as contradictions within its own internal records and the stated basis for denial connected to Plaintiff, indicates that it "offered an explanation that runs counter to the evidence before it." _Postma v. Paul Revere Life Ins.. Co.,_ 1988 U.S. Dist. LEXIS 14458, No 95-c-6575, 1998 WL 641335, * 8 (N.D. Ill, Sept 10, 1998). The documentation shows that CGLIC operated "in a mode more properly described as adversarial rather than evaluative."

13

*Davies v. The Paul Revere Life Ins.. Co., supra.* Under these circumstances, it was unreasonable for Defendant to deny Plaintiff long term disability benefits.*) See, Pierce v. American Waterworks, Co.*, 683 F. Supp. 996, 1000 (W.D. Pa 1988) (denial of long term disability benefits based upon the report of a non-examining consulting physician was arbitrary and capricious).*See also, Mitchell v. Eastman Kodak Co.*, 113 F.3rd 433 (3rd Cir. 1997). In *Mitchell,* the Third Circuit concluded that the plaintiff had submitted sufficient evidence of his disability claim when he provided copies of his medical records, his medical history, and his treating physicians' opinions that he was disabled. *Mitchell* applied the pre-*Pinto* arbitrary and capricious standard. Here, regardless of the standard of review Defendant's unsupported denial of benefits should be reversed.

Recently, the Supreme Court in *Black & Decker Disability Plan v. Nord*. 123 S. Ct. 1965 (2003), ruled that the "treating physician rule" which gives deference and compelling weight to the claimant's treating physician, does NOT apply in ERISA cases. Therefore the Court reversed the Ninth Circuit's Order which had granted the employee's motion for summary judgment awarding long term disability benefits. The issue in *Nord* involved the weight which should have been given to the insurance IME neurologist report. That neurologist reviewed all the records, examined the claimant, and concluded he was able to perform employment duties. Here, unlike *Nord*, CGLIC did not obtain any IME, did not have Plaintiff examined. Courts after *Nord* have ruled that the Plan administrator may not arbitrarily refuse to credit a claimant's reliable evidence, including the treating physicians. See, e.g. *LeStrange v. Fortis Benefits Ins. Co.*, 2003 U.S. Dist. LEXIS 10045 (N.D. Ia. June 13, 2003).

14

There is no basis in the record on which reasonable minds could rely to reach a contrary conclusion. Under these circumstances, Plaintiff is entitled to an award of past benefits from June 1, 2001 up through the present and tender payments into the future as they become due. *See Cohen, supra,* at *6 (after finding that the denial of disability benefits was arbitrary and capricious, the court concluded that remand was inappropriate as the record before the ERISA plan administrator established plaintiff's eligibility for further disability benefits*); Grady,* 10 F. Supp 2d at 115 (record before trial court established not only that the denial of ~~benefits was arbitrary~~ and capricious, but also that plaintiff was entitled to future benefits); *Kozar v. Paul Revere Life Ins. Co.* 1996 U.S. Dist. LEXIS 18106, No. 96-CV-70280, (E.D. Mich. Oct 23, 1996 ) (same); *Levinson v. Reliance Standard Life Ins. Co.,* 245 F.3d 1321, 1327-28 (11th Cir. 2001) (holding the district court's decision not to remand was appropriate where the administrative record was complete, the administrator reached an arbitrary and capricious result, and the district court concluded that the claimant was disabled).

At an absolute minimum, Defendant's summary judgment motion must be denied. Here, the filing of Cross-Motions for Summary Judgment do **not** constitute a concession by the parties that summary adjudication of dispositive issues is appropriate. *Transportes Ferreos DeVenezuela v. NKK, Corp.,* 239 F.3d 555, 560 (3rd Cir., 2001); *Davies v. Paul Revere, supra.,* at 354. Here, there are, at a minimum, genuine issues of material fact as to whether Defendant may have acted arbitrarily and capriciously in making its determination on the basis of the record.

15

III     <u>CONCLUSION</u>

For all the reasons detailed herein, it is respectfully requested that this Honorable Court enter summary judgment in favor of Plaintiff and against Defendant, CGLIC. Alternatively, if this Honorable Court concludes that genuine issues of material fact exist, then Plaintiff respectfully requests that this Honorable Court deny both Cross Motions for Summary Judgment.

LAW OFFICES OF DANIEL J. ZUCKER,

BY: _____

DANIEL J. ZUCKER, ESQUIRE,
Attorney for Plaintiff

16

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN G. KELLY | : | CIVIL ACTION |
| vs. | : | |
| CONNECTICUT GENERAL LIFE | : | |
| INSURANCE COMPANY | : | NO. 03-315 |

## CERTIFICATE OF SERVICE

Daniel J. Zucker, Esquire, attorney for Plaintiff, hereby certifies that I caused a true and correct copy of the foregoing Motion for Summary Judgment to be served upon all counsel, as listed below, via first class United States mail, on **September 22, 2003** as follows:

Peter J. Hoffman, Esquire
McKISSOCK & HOFFMAN
Suite 3000
1700 Market Street
Philadelphia, PA 19103-3933
*Atty. for Defendant*

LAW OFFICES OF DANIEL J. ZUCKER

BY: _____
DANIEL J. ZUCKER, ESQUIRE
Attorney for Plaintiff

Dated: September 22, 2003

**Amy King**
Case Manager
Disability Management Solutions
(800)352-0611 Ext. 5652

April 22, 2002

**CIGNA** Group Insurance
Life · Accident · Disability

John G. Kelly
110 Hidden Creek Drive
Hatboro, PA 19040

Routing  D063
12225 Greenville Avenue
Suite 1000 LB#179
Dallas, TX 75243-9384
Telephone  (800)352-0611
Extension 5652
Facsimile  860-687-9357

| | |
|---|---|
| Claimant's Name: | John G. Kelly |
| Social Security Number: | 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 |
| Policy Number: | 2512702 |
| Policyholder: | Great A&P Tea Company |
| Administered by: | Connecticut General Life Insurance Co. |

Dear Mr. Kelly:

Your application for Long Term Disability benefits has been received. We will do everything possible to assist you with the claim process during this difficult time. Please be advised that although you may be entitled to Long Term Disability benefits, we are in need of some additional information.

We must obtain eligibility information from your employer.  We are also requesting additional medical information from DR. Carnavil and Dr. Donner. We must obtain your physician's treatment plan, as well as medical information regarding your diagnosis and functional abilities.  We also ask that you please sign and return the enclosed Disability Questionnaire and provide valid proof of your age, such as a Driver's License or Birth Certificate.

We expect to receive all of this information from either you or those sources directly within 30 days from the date that we received your claim.  We hope to be able to make a decision on your claim at that time.  If we are unable to make the decision within 30 days of the day we received your claim, we will contact you and explain the reason for the delay.

Please note that we are pursuing the information needed to make a decision on your claim. In the event that we are unable to obtain this information, however, it is your responsibility to provide us with the required information.

Please contact your physicians and ask that they cooperate with us and respond to our requests as soon as possible.  If we do not receive the information needed by **June 6, 2002**, we will make a decision based on the information in our file.

We would like to provide you with some information about Social Security benefits and their impact on your Long Term Disability claim, if it is determined to be payable.

CIGNA Group Insurance products and services are provided exclusively by underwriting subsidiaries of CIGNA Corporation, including Life Insurance Company of North America and Connecticut General Life Insurance Company. "CIGNA" is used to refer to these subsidiaries and is a registered service mark.

Page 2

The Long Term Disability benefits provided by the contract are reduced by any other benefits you and your dependents receive (if applicable under your contract), including Social Security Benefits.

The contract allows us to estimate, beginning with the 6th month of disability, the amount of Social Security benefits you and your dependents would be entitled to receive and to reduce your Long Term Disability benefits accordingly.

However, to avoid financial hardship, we will agree not to deduct an estimated Social Security benefit prior to your receipt of a Social Security Award if you:

1.  Sign and return the enclosed Reimbursement Agreement. This Agreement will agree to reimburse Connecticut General Life Insurance Company for any Long Term Disability benefits overpaid. (If you have already submitted a signed Reimbursement Agreement, you do not have to complete a second one.)

2.  Apply for Social Security Disability benefits. In certain instances, our Social Security Assistance Team (SSAT) will be able to assist you with the filing process. We ask that you extend your full cooperation to the consultant, if contacted.

3.  Send a copy of your receipt of application for Social Security Disability.

If you have already applied for Social Security, please send us a copy of any correspondence you receive from the Social Security Administration, including any approval or denial notices. This will help to keep our file up-to-date with regard to your social security claim.

Please remember that your policy indicates that you must fully cooperate with us regarding the status of these benefits. Your lack of cooperation may result in a reduction of your Disability benefits by an estimated amount that we will assume you are receiving.

Please keep me up-to-date on your condition by calling me after each of your doctor's visits. Also, notify me immediately if you are released to return to work or if you actually do return to work.

If you have other types of coverage that may pay benefits for this condition, you may submit a claim. For example, if your life insurance plan includes a waiver of premium for disability, you may be eligible to submit a waiver claim. Please review the provisions of your booklet or certificate. Please review your Summary Plan Description or benefit booklet for more information on your benefits and to determine if you are eligible for additional benefits.

Please notify me if you begin to receive **any** other sources of income. This may include, but is not limited to: Social Security Disability or Retirement, Worker's Compensation, No-Fault disability insurance, pension, State Disability, Veteran's benefits or any other disability payments from another group insurance policy.

Thank you for your assistance. Should you have any questions regarding your claim, please feel to contact this office.

Sincerely,

Amy King
Case Manager
Disability Management Solutions
(800) 352-0611 ext. 5652
Fax (860) 687-9357
Cc: A&P



CIGNA Group Insurance
Life · Accident · Disability

## DISABILITY QUESTIONNAIRE
## ACTIVITIES OF DAILY LIVING

| Name: John G. Kelly | Social Security No: 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 |
|---|---|
| Address: | Telephone No: |

1. In your own words, tell us why you cannot work in your own or in any occupation.
   _____
   _____

2. What is the primary physical and/or mental condition preventing you from working now?
   _____
   _____
   _____

3. Can you drive? Yes____  No____  How far?  _____

4. What time do you get up in the morning?  _____
   What time do you go to bed?  _____

5. Where do you live?          Apartment _____ House _____

   How many floors in the apartment/house?  _____
   Does it have an elevator?  Yes _____ No _____

   Do you use any special equipment - ramps, handrails, wheelchair? Yes _____ No _____
   If yes, describe _____

6. Do you own a personal computer?  Yes _____ No_____
   Is it connected to the Internet?  Yes _____ No _____
   What computer programs or software can you use?_____
   _____

   How often do you use the computer? _____

7. Check the things you do regularly:

|  | How many hours a day? | How many days a week? |
|---|---|---|
| Cook | ____ _____ | _____ |
| Clean | ____ _____ | _____ |
| Shop | ____ _____ | _____ |
| Laundry | ____ _____ | _____ |
| Yardwork | ____ _____ | _____ |
| Gardening | ____ _____ | _____ |
| Read | ____ _____ | _____ |
| Watch TV | ____ _____ | _____ |

Please list any other activities you engage in (school, attend religious services, volunteer work, etc.)

_____

_____

How many hours per week do you spend on these activities?

What do you do for recreation?

_____

_____

8. Are there things you attend to with regard to your personal needs (grooming, dressing, etc.)? _____

_____

_____

_____

9. Do you go for walks?        Yes _____ No _____
   How often?                  _____
   How far do you walk?        _____
   For how long?               _____

10. Do you engage in a regular exercise program?        Yes _____ No _____
    Where (home, gym, etc)          _____
    How often?                      _____
    Describe your exercise program  _____

11. Please circle the highest grade you completed in school:

    1  2  3  4  5  6  7  8  9  10  11  12        GED        High School Diploma

    College?    1yr    2yrs    3yrs    4yrs    BA/BS Degree    Master's Degree    Other

    Type of degree? (Business, History, Social Sciences, etc.) _____

    Date Received _____

    List any professional/educational certificates, licenses, etc. awarded_____

List any vocational programs you have attended/completed_____

In the last 3 years, what type of certificates or licenses have you received? _____
_____

12. Are you taking any professional/educational/vocational classes now?
Yes ____ No____
Please list them _____
_____

## Employment History

| | |
|---|---|
| 1.  Job Title: | Employed date:  From:          Through: |
| Major Duties: | Minor duties: |
| Tools/Equipment used: | Machinery/Computers used: |

| | |
|---|---|
| 2.  Job Title: | Employed date:  From:          Through: |
| Major Duties: | Minor duties: |
| Tools/Equipment used: | Machinery/Computers used: |

| | |
|---|---|
| 3.  Job Title: | Employed date:  From:          Through: |
| Major Duties: | Minor duties: |
| Tools/Equipment used: | Machinery/Computers used: |

13. Have you ever owned or operated your own business?  Yes ____ No ____
Do you own, operate or have ownership interest in a business now?
Yes ____ No ____
Business Name _____
Address _____
City _____ State _____ ZIP _____
Telephone Number (     ) _____
Date business began _____
Describe the business _____

14. Are you married?                                    Yes ____ No ____
    Do you have any children under age 18?        Yes ____ No ____

Please list their dates of birth in order:

_____

_____

_____

Do you have any handicapped children over 18?  Yes _____ No _____

15. List any doctor(s) you see regularly. Use the other side if you need more room.

| Doctor's Name: | Doctor's Name: |
|---|---|
| Address: | Address: |
| Telephone # | Telephone # |
| Fax # | Fax # |
| Frequency of Visits | Frequency of Visits |
| Date of last visit | Date of last visit |

| Doctor's Name: | Doctor's Name: |
|---|---|
| Address: | Address: |
| Telephone # | Telephone # |
| Fax # | Fax # |
| Frequency of Visits | Frequency of Visits |
| Date of last visit | Date of last visit |

16. List any prescription medications you take: Use other side if you need more space.

| Medication | Dose | Frequency | Medication | Dose | Frequency |
|------------|------|-----------|------------|------|-----------|
|            |      |           |            |      |           |
|            |      |           |            |      |           |
|            |      |           |            |      |           |

17. Are you right handed or left handed?   Right _____ Left _____
    What is your height        _____
    What it your weight       _____
    What is your date of birth   _____

18. What other types of income/money/compensation/benefits do you receive (or might be entitled to receive)?

Social Security _____   Monthly Amount _____

Worker's Comp _____   Amount _____   Monthly or Weekly _____

Pension _____   Monthly Amount _____

Government _____   Monthly Amount _____

Other _____   Monthly Amount _____

I certify that the information in this document is true and correct.

Signature _____ Date _____

## DISCLOSURE AUTHORIZATION

Insured's Name(Please Print)_____

I AUTHORIZE: any doctor, physician, healer, health care practitioner, hospital, clinic, other medical facility, professional, or provider of health care, medically related facility or association, medical examiner, or pharmacy to give the Insurance Company named below (Company) or their employees and authorized agents or authorized representatives, any medical and nonmedical information or records that they may have concerning my health condition, or health history, or regarding any advice, care or treatment provided to me. This information and/or records may include, but is not limited to: I) cause, treatment, diagnoses, prognoses, consultations, examinations, tests or prescriptions or advice of my physical or mental condition of information concerning me which may be needed to determine policy claim benefits with respect to Insured. This may also include (but is not limited to) information concerning: mental illness, psychiatric, drug or alcohol use and any disability, and also HIV related testing, infection, illness, and AIDS (Acquired Immune Deficiency Syndrome). I understand that I may choose whether to receive the results of any laboratory tests or medical examinations performed.

I AUTHORIZE: any financial institution, accountant, tax preparer, insurer or reinsurance consumer reporting agency, insurance support organization, Insured's agent, employer, group policyholder, business associate, benefit plan administrator, family members, friends, neighbors or associates, governmental agency including the Social Security Administration or any other organization or person having knowledge of me to give the Company or their employees and authorized agents, or authorized representatives, any information or records that they have concerning me, my occupation, my activities, employee/employment records, earnings or finances, applications for insurance coverage and prior claim history, work history and work related activities.

I UNDERSTAND: the information obtained will be included as part of the proof of claim and will be used by the Company to determine eligibility for claim benefits and any amounts payable with respect to the Claimant. This authorization shall remain valid and apply to all records, information and events that occur over the duration of the claim. A photocopy of this form is as valid as the original and I or my authorized representative may request one. I or my representative may revoke this authorization at any time as it applies to future disclosures by writing the Company. Prompt notice of revocation will then be given to all persons to whom the Company has disclosed protected information in reliance to the original authorization as required by law. The information obtained will not be released to anyone else EXCEPT: a)reinsuring companies; b)the Medical Information Bureau, Inc., which operates Health Claim Index (HCI); c)fraud or overinsurance detection bureaus; d)anyone performing business, medical or legal functions with respect to the claim; e)for audit or statistical purposes; f)as may be required by law; g)as I may further authorize. A valid authorization or court order for information does not waive other privacy rights.

Claimant's Signature Date:

_____

(Claimant or Claimant's authorized representative)

_____

Relationship, if other than Claimant:

_____

Claimant's Social Security Number: _____

**Insurance Company Name_____Connecticut General Life Insurance Company ____**