# EXHIBIT J

# (1 of 2)

UNITED STATES DISTRICT COURT **NIGHT BOX**
SOUTHERN DISTRICT OF FLORIDA **FILED**

DIANNE HARKER,

      Plaintiff,

vs.

LIFE INSURANCE COMPANY
OF NORTH AMERICA,

      Defendant.

_____/

MIAMI DIVISION

OCT   2003

CLARENCE MADDOX
CLERK, USDCT SDFL / MIA

CASE NUMBER: 03-CIV-20587-MARTINEZ/DUBE

## PLAINTIFF'S MOTION FOR FINAL SUMMARY JUDGMENT
## AND INCORPORATED MEMORANDUM OF LAW

    COMES NOW Plaintiff, DIANNE HARKER, [HARKER] by and through her undersigned

counsel, and files her Motion for Final Summary Judgment in this matter, and in support states:

### BACKGROUND

    This action was filed to obtain a final judgment against Defendant, LIFE INSURANCE

COMPANY OF NORTH AMERICA [LINA] to collect disability insurance benefits. LINA'S

conduct in this matter, as established by the record, beginning with its decision to terminate benefits

is disingenuous and factitious. LINA selected certain medical records and ignored those which

clearly establish HARKER'S disability. LINA intentionally misrepresented clear insurance policy

language, and LINA simultaneously facilitated representations of HARKER'S total disability to the

U.S. Government, and told HARKER she was not disabled. In addition, LINA refused to render a

timely decision on HARKER'S "appeal" of the termination decision, and in the same process

stubbornly and deliberately disobeyed settled law requiring a "full and fair" review. LINA has been



Harker vs. Life Ins. Co. of North America
Case Number: 03-CIV-20587-MARTINEZ/DUBE

repeatedly dishonest, and has sought to benefit financially at the expense of HARKER who LINA knows suffers from a terminal, incurable liver disease. The evidence compels a ruling for HARKER. The relief HARKER seeks includes reinstatement of her disability benefits, including all past unpaid benefits, prejudgment interest, attorney fees, and costs.

HARKER is insured by LINA under a long-term disability policy [the policy] ( Ex.1), which provides occupation-specific[1] disability insurance coverage to HARKER. Beginning in 1995, HARKER began to experience liver problems, and during the late 1990's she was diagnosed with a terminal disease known as Primary Sclerosing Cholangitis [PSC]. There is no cure for PSC, and the only treatment that may become available would be a liver transplant. PSC is the disease which killed football great, Walter Payton. PSC is relatively rare. A common symptom of PSC is debilitating fatigue.

In 2000, HARKER was repeatedly hospitalized, and in December of 2000, she was advised by her principal treating physician, board-certified gastroenterologist, Howard Schwartz, M.D. that she would no longer be able to work. In December of 2000, HARKER was hospitalized for pneumonia which was a direct result of the PSC.

---

[1] There are generally two types of disability insurance, and the difference is significant. An "occupational" disability policy provides benefits if the claimant is unable to perform her regular job; a "general" disability provision provides benefits if the claimant is unable to perform any job for which she is qualified by reason of education, training or experience. See, Smith v. Equitable Life Assur. Soc. 67 F.3d 611 (7th Cir. 1995). Florida, in particular, recognizes entitlement to occupational disability benefits when the regular job cannot be performed but the claimant can work in another, even very similar job. Berkshire Life Ins. Co. v. Adelberg, 698 So. 2d 828 (Fla. 1997).

-2-

Harker vs. Life Ins. Co. of North America
Case Number: 03-CIV-20587-MARTINEZ/DUBE

In addition to PSC, HARKER was diagnosed in the late 1990's with Ulcerative Colitis and Asthma. Asthma is a well known pulmonary obstructive condition, and HARKER has experienced periods of suffering from severe obstructive pulmonary function. Ulcerative Colitis is essentially an inflamation of the lining of the colon, is painful and causes significant difficulty with the function of the lower intestines.

In January 2001, because HARKER was unable to continue to work she submitted a claim for benefits to LINA. LINA accepted the claim, and effective April 2001, HARKER began to receive total disability benefits. LINA paid those benefits for exactly one (1) year then terminated the benefits. Under the policy HARKER is eligible to receive benefits for 42 months beginning with April 2001. HARKER retained counsel and submitted an appeal packet to LINA seeking a reinstatement of the benefits. LINA refused to reinstate the benefits, and affirmed its own decision to terminate the benefits. Thereafter, HARKER through counsel, filed the pending action.

In this action, HARKER has alleged, and LINA has agreed to the application of the Employee Retirement Income Security Act of 1974 [ERISA]. Pursuant to the mechanics of ERISA, the administrative record[2] in this matter was completed and closed as of the date that LINA was due to render its final decision on HARKER'S appeal. That date is January 16, 2003. Thus, the Court may now determine as a matter of law whether LINA'S decision to terminate HARKER'S benefits was correct.

---

[2] HARKER has filed, along with this Motion her Statement of Material Facts, and a complete, Bates numbered copy of the 408 page administrative record of this matter.

-3-

Harker vs. Life Ins. Co. of North America
Case Number: 03-CIV-20587-MARTINEZ/DUBE

Because there is no genuine issue of material fact remaining to be determined here, HARKER is convinced that once the Court considers the record, including all facts and information presented in the record, the applicable law, and in particular the clear and unambiguous language in the insurance policy, this Court will rule as a matter of law that LINA was wrong in its decision to deny benefits to HARKER, and that HARKER should recover her retroactive benefits together with pre-judgment interest, attorney's fees, costs, and expenses of litigation.

## SUMMARY JUDGMENT STANDARD

Summary Judgment is appropriate where "there is no genuine issue as to any material fact and ...the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). See, Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). The Court must view the evidence in a light most favorable to the non-moving party. See, Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. If the movant meets its burden, the burden then shifts to the non moving party to establish that a genuine dispute of material fact exists. See, Hairston v. Gainesville Sun Publishing Co., 9 F. 3d 913, 918 11th Cir. (1993). Mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment. See, Anderson, 477 U.S. at 252. If the evidence is merely collateral or is not significantly probative, summary judgment is proper. See, id at 249-50. Here the combined effect of the records and reports from HARKER'S treating physicians, the terms and provisions of the subject insurance policy and the applicable law

-4-

Harker vs. Life Ins. Co. of North America
Case Number: 03-CIV-20587-MARTINEZ/DUBE

compels the granting of HARKER'S Motion for Summary Judgment.

## THE STANDARD OF REVIEW OF LINA'S DECISION IS DE NOVO

The action brought by HARKER is essentially a challenge to the denial of benefits pursuant

to 28 U.S.C. 1132(a)(1)(B). As a result of the fact that the insurance policy issued by LINA

covering Plaintiff does not have any express reservation of discretion for any claim or benefit

decisions rendered by LINA, the standard of review to be applied by this Court in examining the

decisions made by LINA on HARKER'S claim is de novo. Firestone Tire and Rubber Co. v. Bruch,

489 U.S. 101, 109 S. Ct. 948 (1989). Bruch holds that a "denial of benefits challenged under

Section 1132 (a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the

administrator or fiduciary discretionary authority to determine eligibility for benefits, or to construe

the terms of the plan." Bruch at 111-115. Further, the requisite plan discretion must come from the

plan itself and not merely from a plan decision makers exercise of discretion. Bruch at 112-13;

Chevron Chemical Co. v. Oil, Chemical and Atomic Workers Local Union 4-47, 47 F. 3d 139 (5th

Cir. 1995). Since Bruch, the 11th Circuit has consistently held to the same principle, namely that

in the absence of an express reservation of discretion to the plan fiduciary or plan administrator, the

courts are to review the disputed decision de novo, Whatley v. CNA Insurance Cos., 189 F.3d 1310

(11th Cir. 1999); Florence Nightingale Nursing Service v. Blue Cross/Blue Shield, 41 F. 3d 1476

(11th Cir. 1995); Kirwan vs. Marriott Corp., 10 F. 3d 784, 788 (11th Cir. 1994); Moon v. American

Home Assurance Co., 888 F. 2d 86, 88 (11th Cir. 1989). In Kirwan, the 11th Circuit said:

> "This circuit has interpreted *Bruch* to mandate *de novo* review unless the
> plan expressly provides the administrator discretionary authority to make
> eligibility determinations or to construe the plan's terms."

-5-

Law Offices John J. Spiegel Professional Association
700 Concord Building • 66 West Flagler Street • Miami, Florida 33130 • Telephone (305) 539-0700

Harker vs. Life Ins. Co. of North America
Case Number: 03-CIV-20587-MARTINEZ/DUBE

District courts in the Southern District of Florida have also held to the same principle and

applied a de novo standard of review when there was no reservation of discretion. Grant v. Provident

Life and Accident Insurance Company, 2001 U.S. Dist. LEXIS 2001 (S.D. Fla. 2001); See, Lutton

v. Prudential Ins. Co. of America, 488 F. Supp. 2d 1364, 1369, 1370 (S.D. Fla. 2000). Here there

can be no dispute over whether the insurance policy contains any such reservation of discretionary

authority as by its very terms it does not. Thus, LINA'S decision to refuse benefits to HARKER is

subject to a review of de novo.

## ARGUMENT

### A.    LINA Misrepresents the Disability Definition in the Policy.

HARKER is entitled to be granted summary judgment for one simple reason, namely that

LINA intentionally ignored the fact that in April 2002, when LINA terminated HARKER'S benefits,

HARKER remained disabled as defined in the policy by virtue of the fact that she was "unable to

perform all the material and substantial duties of her **regular occupation**." Thereafter, when LINA

reached its own self-serving decision on the appeal in February 2003, it clearly disregarded the "own

occupation" definition of disability set forth in the policy, declaring:

> "...MS. HARKER does not meet the definition of disability from any
> occupation as outlined in her policy.  Therefore, we are affirming our
> previous denial of continuing benefits." (*Emphasis added*).

LINA made no reference in that letter to the disability definition in the insurance policy, and

LINA appeared to take its cue from the report of its reviewing physician, Dr. Cohen.[3]  In that report,

---

[3] Either that, or Dr. Cohen took his cue from LINA.

-6-

Law Offices John J. Spiegel Professional Association
700 Concord Building • 66 West Flagler Street • Miami, Florida 33130 • Telephone (305) 539-0700

Harker vs. Life Ins. Co. of North America
Case Number: 03-CIV-20587-MARTINEZ/DUBE

Dr. Cohen sets forth his ultimate opinion:

> "Based on the reviewed information, it is my conclusion that there is no
> severity of any medical condition that would render this claimant unable to
> function in a full time sedentary work from 4/11/02, and beyond." (H 33-35).

Dr. Cohen thus offered no opinion at all as to whether the Plaintiff remained disabled from

her own, regular occupation as of the date of termination of benefits in April 2002. LINA also did

not provide Dr. Cohen with the definition of disability in the subject insurance policy, so he offers

no opinion as to that. Consequently, this court should not hesitate to reject Dr. Cohen's opinion,

as it is inapplicable here.

LINA reached its "appeal" decision despite the undeniable fact that of the termination of

Plaintiff's benefits in April 2002, she remained well within the thirty-six (36) month **regular**

**occupation** period under the express terms of the insurance policy. At page 5 of the insurance

policy (Ex. 1), the following language appears:

**Definition of Disability/Disabled**

An employee is disabled if, because of Injury or Sickness,

1.     He or she is unable to perform all the material and substantial
duties of his or **her regular occupation**, or solely due to
injury or sickness, he or she is unable to earn more than 80%
percent of his or her Index Covered Earnings; and

2.     **After** Disability Benefits have been payable for **36 months**,
he or she is unable to perform all the material and substantial
duties of **any occupation** for which he or she may reasonably
become qualified based on education, training or experience,
or solely due to Injury or Sickness, he or she is unable to earn
more than 80% of his or her Index Covered Earnings.
(*Emphasis added*).

-7-

Given that HARKER'S claim became "payable" in April 2001, she would be entitled to the "regular occupation" definition of disability to, and including, April 2004.

Because LINA'S final decision on appeal to deny HARKER disability benefits was based on the wrong definition of disability, this Court could and should enter its ruling on that basis alone. In fact, LINA should respond to this Motion by conceding its error and acknowledging HARKER'S entitlement to benefits, based on the "regular occupation" definition of disability in the insurance policy.

**B.      LINA Ignored Evidence from HARKER'S Treating Physicians When it Terminated Benefits in April 2002.**

The record in this matter is replete with evidence of HARKER'S disability from her regular occupation, and arguably would also permit HARKER to prevail if in fact she was now subject to the "any occupation" disability definition.  A comparison of LINA'S benefit termination letter of April 1, 2002 (H 100-103 ), with the evidence submitted to LINA by HARKER'S treating physicians shows a pattern of selective review, misrepresentation and refusal to consider evidence supporting HARKER'S claim.

On page 2 of the letter, LINA states:

> "On the physical abilities assessment dated March 15, 2002, Dr. Schwartz did not indicate any limitations/restrictions of your functional ability."

LINA makes this statement after receiving the following information from Dr. Schwartz **prior to April 1, 2002** in response to LINA'S inquiry:

1.      Is your patient ready to return to the work force at this time?

-8-

Harker vs. Life Ins. Co. of North America
Case Number: 03-CIV-20587-MARTINEZ/DUBE

Answer:        No.

If not, what prevents your patient from returning to employment at this time?

Answer:        Asthma/liver failure/colitis.

LINA'S conclusion that these responses are not an indication of limitations/restrictions of

HARKER'S functional ability is disingenuous, at best.  How could HARKER simultaneously have

no functional restrictions or limitations, but not be ready to return to the work force?  If asthma,

liver failure, and colitis prevent HARKER from returning to employment, isn't that clear evidence

of functional restrictions and limitations?

It gets worse.  LINA again completely ignored what Dr. Schwartz submitted to LINA on

March 19, 2002.

At H 104 of the record, LINA asked Dr. Schwartz the following:

1.        What are the symptoms that **significantly** impact the patient's

functionality? (*Emphasis original*).

Answer:        Respiratory and liver failure.

Dr. Schwartz was also asked to clarify what prevents HARKER from returning to work at

this time.  Dr. Schwartz responded, "multiple problems cause her to be tired easily."  Yet, LINA is

brazen enough to falsely state that Dr. Schwartz "did not indicate any limitations/restrictions of your

functional capacity." (H 101).

## C.        LINA Also Ignored All Evidence Submitted in Support of HARKER'S Appeal.

In support of her "appeal" HARKER submitted extremely supportive documentation and

-9-

Harker vs. Life Ins. Co. of North America
Case Number: 03-CIV-20587-MARTINEZ/DUBE

reports from HARKER'S two (2) principal treating physicians, Howard Schwartz, M.D. and Jeremy Tabak, M.D. In addition, HARKER was evaluated, at her own expense, by an independent vocational assessment specialist, Gary Fannin. Mr. Fannin's report is also included in the record before this Court. (H 62-74).

Dr. Schwartz told LINA in no uncertain terms that HARKER is totally disabled due to the collective effects of Primary Sclerosing Cholangitis (PSC), Ulcerative Colitis, and Asthma. Dr. Schwartz also made clear that he has provided specialty care to DIANNE HARKER since 1995, knows her condition well, that PSC inflames and destroys the biliary system of the liver, is not curable, and that HARKER'S main symptom is fatigue, is overwhelming, intractable and debilitating. Dr. Schwartz pointed out that fatigue is the hallmark of PSC. (H 58, 59, 60). Significantly, LINA'S own reviewing physician, Dr. Cohen agreed that HARKER "truly does have Primary Sclerosing Cholangitis." (H 34). Dr. Schwartz also made reference to HARKER suffering from difficulty concentrating, sleep disturbance and nausea among other symptoms attributable to PSC. (H 58).

Dr. Schwartz also pointed out that MS. HARKER suffers from ulcerative colitis which is chronic inflamation of the lining of the colon, and that the symptoms that HARKER has realized from the colitis include pain, bloating, bloody stool, change in bowel habits, excessive gas, indigestion, food intolerance, and fatigue. Dr. Schwartz also explained to LINA that HARKER suffers from Sjogern's Syndrome, which causes her to have problems with her salivary glands and the lachrymal glands (which keep the eyes moist), and this is another incurable and progressive

-10-

Harker vs. Life Ins. Co. of North America
Case Number: 03-CIV-20587-MARTINEZ/DUBE

condition. HARKER, according to Dr. Schwartz also suffers from respiratory disease, including severe asthma, eosinophilic pneumonia, and immune compromise which puts her at risk of increase incidents of infections. According to Dr. Schwartz' report, HARKER also suffers from Pruritis, which is the medical term for itching. This is a symptom of PSC, and Dr. Schwartz put it into its own category because it is such an annoying symptom. Pruritis is relentless, but the mechanism for it is poorly understood. This itching problem has a definite effect on one's ability to concentrate and one's psychiatric hygiene according to Dr. Schwartz. Again, significantly, LINA'S reviewing physician, Dr. Cohen did not dispute any of these findings of Dr. Schwartz. Dr. Schwartz' ultimate opinion quite simply is that HARKER is 100% completely and permanently disabled from her occupation. As HARKER'S treating physician, Dr. Schwartz opined that for HARKER, **"work is contraindicated."** (H 59).

This opinion from Dr. Schwartz, while blown off by LINA, raises the "common care and prudence rule" which is well recognized, and means that if work would be harmful to the insured's health, she is disabled, even if capable of physical activity. Honeysucker v. Bowen, 649 F. Supp 155, 1162 (N.D. Ill. 1986); 1C Appleman, Insurance Law & Practice § 651 at 241 (1981).

Jeremy Tabak, M.D., another treating and examining physician of HARKER, submitted a report to LINA dated September 12, 2002. Dr. Tabak's ultimate opinion expressed in that report:

> "It is my opinion that this patient is completely and permanently disabled. Her symptom complex makes employment impossible. I do not expect this situation to improve; in fact, she is facing steady deterioration in her well-being." (H 61).

HARKER underwent an independent vocational assessment performed by Gary R. Fannin,

-11-

Harker vs. Life Ins. Co. of North America
Case Number: 03-CIV-20587-MARTINEZ/DUBE

M.S., C.V.E., C.C.M.  Following Mr. Fannin's evaluation, he prepared a report concerning his

evaluation findings and opinions.  As part of his evaluation, Mr. Fannin reviewed records from

CIGNA/LINA, medical records from Dr. Tabak and Dr. Schwartz, and personally met, interviewed

and evaluated the Plaintiff, HARKER.  Mr. Fannin's report contains the following significant

conclusion:

> "According to the Department of Labor, both occupations held by MS.
> HARKER require above average cognitive (reasoning and judgment) ability.
> Fatigue causes both physical and/or mental exhaustion.  Physically,
> individuals experiencing fatigue will show limitations performing such work
> related functions as: walking, standing and lifting on a frequent base. Fatigue
> also causes mental work-related limitations such as the ability to understand,
> remember and carry out detailed instructions, the ability to use appropriate
> judgment, the ability to respond appropriately to others, inability to manage
> multiple projects and tasks.  Persistent fatigue can cause a lack of mental
> clarity (or feeling of mental fuzziness), difficulty concentrating and memory
> loss.  According to Dr. Schwartz, Ms. Harker's fatigue will also require
> complete freedom to rest frequently without restriction, "...at any time, she
> has to be prepared to stop her activity and rest."  Taking this into
> consideration, it will be no doubt be difficult, if not impossible for Ms.
> Harker, whose level of energy fluctuates dramatically from day to day, and
> from week to week, to maintain a regular work routine 8 hours a day, 5 days
> a week." (H 66,67).

Mr. Fannin then expressed his ultimate opinion:

> "...it is my professional opinion that Ms. Harker has been unable to perform
> the "material duties" of either a controller or vice president of operations and
> administration since April 2002.  It can be further stated that based on my
> experience in evaluation the work potential of disabled individuals, Ms.
> Harker's vocational prognosis to return to this or any job in the foreseeable
> future is poor at best." (H 67).

When LINA rejected HARKER'S appeal pursuant to its February 11, 2003 (H 31), letter, it

makes no reference to Mr. Fannin's report, and nothing in the record of this matter indicates that

-12-

Harker vs. Life Ins. Co. of North America
Case Number: 03-CIV-20587-MARTINEZ/DUBE

LINA had its own vocational expert evaluate the work circumstances of HARKER. There is no evidence in this record of any sort which refutes or rebuts Mr. Fannin's review and opinions.

Yet, despite all of the evidence from Dr. Schwartz, Dr. Tabak, and vocational expert Mr. Fannin, LINA summarily discarded it, without comment. Instead, LINA compounds its determined and illegal campaign to deny benefits by asserting in its February 13, 2003 letter that if HARKER can work in "any occupation," she is not disabled. A mere suggestion of the possibility of returning to work, as has been offered in Dr. Cohen's report, in the face of overwhelming evidence of disability, is an insufficient basis to deny HARKER'S claim for LTD benefits. See, Mein v. Pool Co. Disabled Int'l LTD Benefit Plan, 989 F. Supp. 1337, 1350 (D. Colo. 1998).

The only reasonable inference to be drawn from LINA'S February 2003 letter is that either the writer of that letter, a Ms. Brenda Bartlett, falsely reported the results of her review of the matter, or she did not read the evidence, and did not even read the insurance policy. In either event, the evidence in this record shows at minimum, a willful and calculated disregard of substantial, competent evidence which establishes HARKER'S entitlement to the insurance benefits.

Ignoring evidence, while an apparently popular method of claims handling, has been frequently recognized as wrong. Williams v. Int'l Paper Co., 227 F.3d 706 (6th Cir. 2000); Rosen v. Provident Life, 2003 U.S. Dist. LEXIS 17402 (E.D. Pa. Sept. 30, 2003). (Administrator improperly selectively relied on evidence supporting denial of disability claim and ignored and failed to explain evidence which plainly supported the claim.). And, see, Shreck v. Reliance Stndrd. Life Ins., 104 F.Supp 2d 1373 (S.D. Fla. 2000). (It is bad faith to ignore facts supportive of insured's

-13-

Harker vs. Life Ins. Co. of North America
Case Number: 03-CIV-20587-MARTINEZ/DUBE

claim when denying benefits in an ERISA matter); <u>Holzchuh v. Unum Life Ins. Co. of America</u>,

2002 U.S. Dist LEXIS 13205 (E.D. Pa. 2002); <u>Davies v. Paul Revere Life Ins. Co.</u>, 147 F. Supp. 2d

347 (M.D. Pa. 2001).

### D. HARKER did not get a Full and Fair Review.

There can also be no doubt that LINA utterly failed to satisfy the requirement that

HARKER'S claim for benefits be given a "full and fair review." Not only did LINA repeatedly

ignore evidence and grossly misconstrue evidence, it violated ERISA regulations by not timely

deciding HARKER'S appeal, as discussed in more detail below. That failure alone establishes that

HARKER was denied a "full and fair review." 29 C.F.R. 2560.503-1 (2002).

HARKER'S review request was received by LINA'S "Appeals Office" on October 18, 2003.

(H 54). Pursuant to ERISA regulation 29 C.F.R. § 2560.503-1, LINA had 45 days to render its

decision, but could extend that time by another 45 days if it had a valid reason and if it timely

advised of the need for the additional time. LINA never asked for additional time under this rule,

and even if it had, its decision was due no later than January 16, 2003. LINA'S letter *affirming* its

own decision to refuse benefits was dated February 11, 2003. And, consistent with LINA's

wholesale disregard for facts, law and good faith, LINA did not obtain the report from Dr. Cohen

(LINA'S reviewing physician[4]) until sometime after January 18, 2003, the date of his report. (H 33).

---

[4] Dr. Cohen's report is not only untimely, but it makes no specific reference to which
medical records LINA chose to send to him, and LINA either never noted what it sent to Dr.
Cohen or removed that information from the claim file before releasing the file to counsel for
HARKER, as there is nothing in the claim file which indicates what Dr. Cohen was - or perhaps
more interesting - was not sent to Dr. Cohen.

-14-

Harker vs. Life Ins. Co. of North America
Case Number: 03-CIV-20587-MARTINEZ/DUBE

### E. LINA has the Burden of Proof and Cannot Meet It.

Since LINA accepted and paid HARKER benefits for an entire year before terminating the

claim, LINA has the burden of establishing[5] that HARKER was no longer disabled as defined by the

policy. In <u>Levinson v. Reliance Stndrd Life Ins. Co.</u>, 245 F.3d 1321, 1331 (11th Cir. 2001), the

Eleventh Circuit said:

> "[The insured] submitted documents in this litigation that showed he still had
> a heart condition that two physicians agreed precluded him from performing
> the material duties of his occupation on a full-time basis. Thus, he submitted
> proof that he was still "Totally Disabled" under Reliance's plan. Because
> [the insured] satisfied his obligations under the terms of the plan, Reliance
> had to produce evidence showing that [insured] was no longer disabled in
> order to terminate his benefits."

Here, LINA has completely failed to satisfy its burden to show that HARKER was "no longer

disabled" when her benefits were terminated.

### F. LINA Speaks with Forked Tongue.

As further compelling evidence of LINA'S bad faith conduct, LINA made arrangements for

HARKER, through counsel selected by LINA, to represent to the U.S.Government that HARKER

was totally disabled from any gainful employment. Immediately after approving HARKER'S claim

for benefits, LINA sent HARKER to a Social Security attorney with whom LINA has an ongoing

relationship. LINA told HARKER that under the arrangement with this attorney, her representation

would be free of any out-of-pocket expense to HARKER. LINA clearly wanted this attorney to

---

[5] This insurance policy expressly states that it is to be governed by Florida law. (Ex. 1).
Thus, as further support for the proposition that the burden of proof has shifted to LINA since it
accepted and paid benefits before terminating them, see the clear pronouncement by the 11th
Circuit applying Florida law to a disability insurance policy case in <u>Shaps v. Provident Life</u>, 317
F.3d 1326 (11th Cir. 2003).

Law Offices John J. Spiegel Professional Association

Harker vs. Life Ins. Co. of North America
Case Number: 03-CIV-20587-MARTINEZ/DUBE

protect the interest of LINA since only LINA would benefit from any social security award. By the very terms of the insurance policy, LINA is entitled to reduce its payments to HARKER by any amount she received from Social Security. HARKER'S benefits, however, would not increase a nickel, due to this dollar for dollar set-off. So, in effect, HARKER'S Social Security Disability award of $1,443.70 per month goes to LINA, not HARKER.

LINA knew and expected that the Social Security attorney would tell the Social Security Administration administrative law judge that, not only that was HARKER disabled from her regular occupation, but that HARKER satisfied the disability standard of the Social Security Administration which requires that HARKER be disabled from any occupation.[6] This Court can certainly take judicial notice that the standard of disability utilized by the Social Security Administration is objectively far more restrictive than the definition of disability contained in the subject LINA insurance policy.

Yet, during the pendency of the SSDI claim, LINA terminated HARKER'S benefits, telling HARKER that she was fit to return to work! Two-faced shenanigans just like this have been severely criticized by other courts. See, Ladd v. ITT Corp., 148 F.3d 753 (7th Cir. 1998). (Welfare plan encouraged and supported plaintiff to claim SSDI, provided her with SSDI counsel, then wrongfully turned around and denied Plaintiff was totally disabled. The spirit of the doctrine of judicial estoppel, which is designed to reduce fraud on the court, is applicable). Darland v. Fortis Benefits Ins. Co., 317 F.3d 516 (6th Cir. 2003). ( "As in Ladd, it is totally inconsistent for Fortis to

---

[6] 42 U.S.C. § 416 defines disability to mean: "(A) inability to engage in any gainful activity by reason of any medically determined physical or mental impairment...[which lasts] not less than 12 months."

Law Offices John J. Spiegel Professional Association
700 Concord Building • 66 West Flagler Street • Miami, Florida 33130 • Telephone (305) 539-0700

Harker vs. Life Ins. Co. of North America
Case Number: 03-CIV-20587-MARTINEZ/DUBE

request that Darland apply for Social Security disability benefits... [and] contend, at the same time,

that he is not disabled."). Here, LINA is guilty of the same misconduct.

Just as LINA had hoped, the Social Security Administration has deemed HARKER disabled,

dating back to May 1, 2001. (Ex. 2). This Court may and should accept this evidence as further

proof of HARKER'S disability and entitlement to these insurance benefits. Other courts have ruled

that a favorable social security outcome, coupled with a treating physician report affirming disability

entitles a claimant to long term disability award under an ERISA LTD policy. Pierce v. American

Waterworks Co., Inc. 683 F.Supp 996 (W.D. Pa. 1988); Rowell v. Life Ins. Co. of N.America

[LINA], 1997 U.S. Dist. LEXIS 12507 (N.D. Ill. 1997).

## CONCLUSION

The combined effect of the weight of the evidence which supports HARKER'S claim for

disability benefits coupled with LINA'S selective review of information it liked, and repeated

disregard of information and evidence it did not like, together with the ERISA requirements that

HARKER be given a full and fair review, compels a ruling in favor of HARKER, awarding her past

unpaid benefits, prejudgment interest, attorney's fees, costs, and expenses of litigation as a result

of the inexplicable bad faith behavior by LINA. HARKER urges this Court to grant this Motion and

to enter a final judgment in her favor and against LINA.

Respectfully submitted this 21 day of October, 2003.

BY: _____
JOHN J. SPIEGEL
Counsel for Plaintiff

-17-

Harker vs. Life Ins. Co. of North America
Case Number: 03–CIV–20587–MARTINEZ/DUBE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been hand delivered

by a Federal Express courier to SHARI GERSON, ESQUIRE of the Law Offices of Steven M.

Ziegler, P.A., Attorneys for Defendant at Presidential Circle, 4000 Hollywood Blvd., Suite 375 S,

Hollywood, FL  33021, on this 21st day of October, 2003.


                              JOHN J. SPIEGEL, ESQUIRE
                              Attorney for Plaintiff
                              700 Concord Building
                              66 West Flagler Street
                              Miami, Florida 33130
                              (305) 539-0700
                              (305) 539-1894 Fax

                    By: _____
                         JOHN J. SPIEGEL, ESQ.


-18-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

DIANNE HARKER,

       Plaintiff,

MIAMI DIVISION

vs.

CASE NUMBER: 03-CIV-20587-MARTINEZ/DUBE

LIFE INSURANCE COMPANY
OF NORTH AMERICA,

       Defendant.

_____/

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS FOR WHICH THERE IS NO GENUINE ISSUE TO BE TRIED

    COMES NOW Plaintiff, DIANNE HARKER, by and through her undersigned counsel, and pursuant to Local Rule 7.5 C, and Federal Rule of Civil Procedure 56, files this her Statement of Material Facts for Which There is no Genuine Issue to be Tried, and states further:

### BACKGROUND

    As this action is subject to the Employee Retirement Security Act of 1974 [ERISA], there is an "administrative record" which the parties created during the insurance claim of HARKER and during the "appeal" or review of the decision of LINA to terminate disability insurance benefits. LINA, through counsel provided to counsel for HARKER, a copy of this "record". Upon receipt of the record, HARKER undertook to have the documents bates stamped. The numbering of the record, also commonly referred to as the insurance "claim file", commences with "H 001" and ends with "H 408". A complete copy of the entire paginated claim file has been filed with the court together with all moving papers related to Plaintiff's Motion for Summary Judgment. In addition, for the convenience of the court, selected portions of the claim file are included in the Appendix to HARKER'S Motion for Final Summary Judgment as individual exhibits.

### STATEMENT OF MATERIAL FACTS

    Plaintiff hereby files the following Statement of Material Fact as a companion to her Motion for Final Summary Judgment:

HARKER vs. LINA
CASE NUMBER: 03-CIV-20587-MARTINEZ/DUBE

1.       Defendant, LIFE INSURANCE COMPANY OF NORTH AMERICA [LINA][1]

issued a group disability insurance policy bearing SGD-110795 to Codina Group, Inc. This policy

was in full force and effect at all times material to this action, and is applicable to the disability

claim of HARKER. The insurance policy states: "This policy describes the terms and conditions

of coverage. It is issued in Florida **and shall be governed by its laws**." (*Emphasis added*). There

is no express reservation of discretion in the insurance policy.

2.       Plaintiff, HARKER was a full time employee of Codina Group, Inc., and was a

beneficiary under the above-described group disability insurance policy. HARKER was a "Class

1" employee as described in the policy. HARKER began her employment with Codina in 1985.

(H 11). HARKER'S date of birth is May 26, 1939.

3.       HARKER'S last day at work with Codina was January 12, 2001. (H 385). LINA

assigned a disability commencement date for HARKER'S claim as January 12, 2001. (H 381). The

subject insurance policy has a "benefit waiting period" of three (3) months during which no benefits

are payable. Policy Page 5. HARKER'S benefits thus had a commencement date of April 12, 2001.

Pursuant to the subject policy at Page 6, given that HARKER was sixty two (62) years of age as of

the commencement of the disability, the maximum benefit period under this policy is "...the date

the 42nd monthly benefit is payable..." Pursuant to the policy then the last monthly benefit would

be payable to HARKER for the month of September 2004.

4.       LINA determined that HARKER'S basic monthly salary was $28,881.40, or

$346,576.80 per year. ( H 406). The maximum monthly benefit available to HARKER under this

policy is $10,000.00 per month, less Social Security Disability Benefits [SSDI] collected by

---

[1] Throughout this action and many of the associated documents, the brand name
"CIGNA" appears. CIGNA is an entity affiliated with LINA, however LINA is the insurance
company which issued the insurance policy that is the subject of the within action. There are
many insurance companies affiliated with CIGNA.

-2-

HARKER vs. LINA
CASE NUMBER: 03-CIV-20587-MARTINEZ/DUBE

HARKER. Thus, due to her illnesses and disability, HARKER has realized an annual reduction of her income of at least $246,576.80, or more than $20,000.00 per month, while collecting benefits from LINA.

5.    The subject disability insurance policy is attached hereto as Exhibit "1," and contains a definition of disability (policy page 5) as follows:

**"Definition of Disability/Disabled**

An employee is disabled if, because of Injury or Sickness,

1.    He or she is unable to perform all the material and substantial duties of his or **her regular occupation**, or solely due to injury or sickness, he or she is unable to earn more than 80% percent of his or her Index Covered Earnings; and

2.    **After** Disability Benefits have been payable for **36 months**, he or she is unable to perform all the material and substantial duties of **any occupation** for which he or she may reasonably become qualify based on education, training or experience, or solely due to Injury or Sickness, he or she is unable to earn more than 80% of his or her Index Covered Earnings."
(*Emphasis added*).

6.    Prior to the Plaintiff stopping work due to her medical condition, Plaintiff had been diagnosed with illnesses including Primary Sclerosing Cholangitis, and Pruritis (itching) in September 1999 (H201), was hospitalized during July 2000 to treat her Ulcerative Colitis (H 168), and in July 2000, Plaintiff reported to her primary attending physician, Howard Schwartz, M.D. that she was unable to work a full day. (H 181)  In October 2000, Plaintiff was diagnosed as suffering from Acute Asthmatic Bronchitis, as well as Sclerosing Cholangitis and Ulcerative Colitis (H 174, 175, 176). She was admitted to Baptist Hospital in December 2000, with pneumonia (H 192), and Dr. Schwartz determined that Plaintiff was unable to work due to pneumonia. (H 165).

7.    On or about January 25, 2001, Plaintiff made application to LINA for long term

-3-

HARKER vs. LINA
CASE NUMBER: 03-CIV-20587-MARTINEZ/DUBE

disability benefits under the above-captioned disability insurance policy. (Exhibit 5).

8.  Plaintiff's initial claim for disability benefits (H 8-12) was accompanied by an
Attending Physician Statement (H 393). completed by her primary treating specialist, Howard
Schwartz, M.D., a board-certified gastroenterologist, who indicated that Plaintiff, HARKER had
"end stage liver disease, colitis, asthma, cannot work." (H 393).

9.  HARKER'S job title with Codina was Vice-President, Operations and
Administration.  A job description was submitted by Codina for LINA'S consideration.  The job
description is three (3) pages in length and appears in the Administrative Record at H 386-388.
Among other things, the requirements of this executive position listed on the job description
includes "ability to simultaneously manage multiple tasks, disciplines and personalities while
maintaining focus on accuracy, details and deadlines." "Excellent communication skills and the
ability to manage multiple projects and disciplines."  With respect to the physical demands of the
job, the job description also indicates "while performing the duties of this job, the employee is
frequently required to sit, stand, walk, and operate telephones and other office equipments. Duties
may require local travel and the operation of a motor vehicle.  The employee is occasionally
required to stoop or kneel, and lift and/or move up to twenty (20) pounds in the work environment.

11.  On or about April 10, 2001, LINA informed Plaintiff, in writing, that her claim for
long term disability benefits had been approved. (H 407).  HARKER accepted LINA'S invitation
to have her monthly disability checks deposited directly into her checking account. (H 397, 398).

12.  On April 17, 2001, following approval of the claim, LINA offered to assist Plaintiff
in the collection of Social Security Disability benefits (H 404).

13.  The Plaintiff made application to the Social Security Administration for disability
benefits, and was initially rejected by Social Security (H 403).

14.  LINA wrote to HARKER on April 17, 2001, offering to refer HARKER to an

– 4 –

attorney who specializes in Social Security matters, telling HARKER that *"These services will be provided at no out of pocket cost to you."* (Emphasis in original). (H 404, 405). On May 15, 2001, LINA referred Plaintiff to a law firm in Massachusetts, "The Social Security Law Group" (SSLG), to represent Plaintiff in the Social Security Disability Benefits appeal.

15.     SSLG wrote to LINA on or about June 4, 2001, confirming that that law firm was representing the Plaintiff with the Social Security Administration, and that SSLG would keep LINA advised as to the progress of the claim. (H 370). LINA expected SSLG to represent to Social Security that HARKER was totally disabled.

16.     A history of action taken by LINA on the claim of HARKER, titled "CURRENT CASE PLAN" [CCP] is part of the claim file record. (H 1 through H 6). The CCP reveals brief references to information received from various sources during the time that LINA paid benefits to HARKER. In March, 2002, nearly one year after the claim was approved for payment, LINA sent specific questions to Dr. Tabak, and to Dr. Schwartz. These physicians are HARKER'S principal doctors. The CCP entries for March, 2002 mention part of the information received from Dr. Tabak, but no information is mentioned as having been received from Dr. Schwartz. (H 6). The following questions were faxed to Dr. Schwartz, and Dr. Schwartz faxed back these answers:

           1.     Is your patient ready to return to the work force at this time?
                Answer:     No.

                If not, what prevents your patient from returning to employment at this time?
                Answer:     Asthma, liver failure, colitis.

In March 2002, Dr. Schwartz submitted another completed form via fax to LINA, and indicated that the symptoms that significantly impact HARKER'S functionality are respiratory and liver failure, and indicated that because of her multiple medical problems, she is easily tired (H 104).

These responses from Dr. Schwartz are also not mentioned in LINA'S claim history, CCP.

17.     Also in March 2002, an inquiry was faxed by LINA to Dr. Schwartz. (H 104).

Among the questions asked and answered are as follows:

> 1.     What are the symptoms that **significantly** impact the patient's functionally?
> Answer:     Respiratory and liver failure.

18.     LINA terminated HARKER'S benefits effective April 11, 2002, exactly one year after approving the claim and paying benefits. HARKER was advised of the termination in a letter dated April 1, 2002. LINA'S letter makes no mention of the fact that in March, 2002, Dr. Tabak reported to LINA that HARKER was **not ready to return to the work force due to asthma, liver failure and colitis.** Also, LINA'S letter claims that Dr. Schwartz, on March 15, 2002, "did not indicate any limitations/restrictions of your functional ability." Dr. Schwartz did tell LINA that **"respiratory and liver failure"...significantly impact [HARKER'S] functionality... [and] "multiple problems cause her to be tired easily."**

19.     The April 1, 2002 letter also asserted that the period of time that the "own occupation" definition of total disability the policy was 24 months. The policy clearly states that period is 36 months. A year earlier when informing HARKER that her claim had been approved, LINA wrote a letter setting forth the 36-month "own occupation" period. (H 407).

20.     HARKER retained counsel to assist her in undertaking an "appeal" of LINA'S decision to terminate benefits. (H 100). On or about October 15, 2002, HARKER, through counsel submitted a formal request for review of LINA'S decision to deny benefits, enclosing numerous documents, reports and information in support of the appeal, (H 54 through 87), and supplemented the documents by submitting a copy of the curriculum vitae of Howard Schwartz, M.D. (H 47 -53). LINA received HARKER'S "appeal" on October 18, 2003 at its "Appeals Office." (H 54).

21.     Among the documents HARKER submitted to LINA for her administrative appeal is a report dated September 13, 2002, from her principal attending physician, Howard Schwartz,

-6-

HARKER vs. LINA
CASE NUMBER: 03-CIV-20587-MARTINEZ/DUBE

M.D. (H 58- 60). Dr. Schwartz is a board certified gastroenterologist. (H  48). Dr. Schwartz

reported to LINA among other things the following:

- He has provided specialty care to DIANNE HARKER since 1995, and knows her condition quite well.

- MS. HARKER is 100% permanently and completely disabled.

- MS. HARKER suffers from Primary Sclerosing Cholangitis (PSC). This disease inflames and destroys the biliary system of the liver, and ultimately ends with liver failure.  It is not curable.

- HARKER'S main symptom is fatigue, which is overwhelming, intractable and debilitating.  Fatigue is the hallmark of PSC.

- Other symptoms included abdominal pain, bloating, nausea, disturbance of sleep, difficulty concentrating and cramping.

- MS. HARKER also suffers from ulcerative colitis.  This is chronic inflamation of the lining of the colon.  Symptoms that HARKER has from the colitis include pain, bloating, bloody stool, change in bowel habits, excess gas, indigestion, food intolerance and fatigue.

- Ulcerative colitis and PSC have a high rate of co-existence, and are believed to be auto immune diseases where the body's own immune system sees part of itself as foreign and attempts to destroy it.

- HARKER also suffers from Sjogern's Syndrome.  This is another auto immune condition.  The salivary glands and lachrymal glands (keep eyes moist) are systemically destroyed.  This condition has no cure and is progressive.

–7–

HARKER vs. LINA
CASE NUMBER: 03-CIV-20587-MARTINEZ/DUBE

- MS. HARKER suffers from respiratory disease including severe asthma, eosinophilic pneumonia and severe mucus plugging requiring mechanical/surgical cleaning out of her bronchi.

- HARKER suffers from immune compromise which these combine elements put her at risk from increase incidents of infections and increase incidents of malignancies.

- Pruritis (itching) is a symptom and such an annoying symptom that Dr. Schwartz felt it warranted its own category. Dr. Schwartz explained that pruritis is one of the symptoms of PSC, it is relentless, yet the mechanism for it is poorly understood. Pruritis has a definite affect on one's ability to concentrate and on one's psychiatric hygiene. (H 59).

22.    Dr. Schwartz also offered the following:

"I have read the "Definition of Disability" which you had provided to Ms Harker. I have also read a description of her job duties; it is clear that she had an extremely stressful work environment. Her occupation obviously required a high degree of intellectual function. **I find Ms Harker 100% completely and permanently disabled for her occupation.** In fact, she is most likely 100% completely and permanently disabled from her occupation. It is extremely unlikely that she will see improvement. Fatigue, itching, inability to concentrate, pain and other symptoms make **gainful employment unrealistic** for this unfortunate woman. Although stress does not cause these conditions, stress is well known to exacerbate these conditions. Hence, I have advised her to avoid stressful situations. **Her symptom complex would make the high degree of cognitive performance, key to her job, impossible**. Hence, it is probable that she could not perform her duties and probable that any attempt to perform these duties would lead to a deterioration in her medical condition. **Work is contraindicated**." (*Emphasis added*).

23.    Jeremy Tabak, M.D., also prepared a report dated September 12, 2002, to LINA. Dr. Tabak opined:

– 8 –

HARKER vs. LINA
CASE NUMBER: 03-CIV-20587-MARTINEZ/DUBE

"It is my opinion that this patient is completely and permanently
disabled. Her symptom complex makes employment impossible. I do not
expect this situation to improve; in fact, she is facing steady deterioration in
her well-being." (H 61). (*Emphasis added*).

24.   Plaintiff, HARKER was evaluated from a vocational standpoint by Gary R. Fannin,

M.S., C.V.E., C.C.M., a vocational assessment specialist.  Mr. Fannin's curriculum vitae appears

in the claim file at H 68-74.  Mr. Fannin's c.v. indicates among other things that he is a certified

vocational evaluator (C.V.E.) from the Commission on Certification of Work Adjustment and

Vocational Evaluation.  He is also a certified vocational expert in the Social Security hearings

program, a vocational evaluator for the Florida Department of Labor and Employment Security

Division of Worker's Compensation and a certified case manager, certification of Insurance

Rehabilitation Commission.  Mr. Fannin conducted a vocational assessment of the Plaintiff and

rendered a report dated October 10, 2002.  Mr. Fannin's report appears in the claim file from Pages

H 62 through 67.

25.   Mr. Fannin's review of the Plaintiff's vocational circumstances included a personal

meeting and evaluation of the Plaintiff together with review of records from LINA/CIGNA, and

from Drs. Tabak and Schwartz.  Mr. Fannin's report includes the following:

- It is Mr. Fannin's opinion is that MS. HARKER will not be able to
perform her occupation as a Vice President of Operations and
Administration as of the date of his report, or in the foreseeable
future.

- Mr. Fannin also determined that given HARKER'S medical
circumstances, it would be difficult, if not impossible for HARKER
to maintain a regular work routine 8 hours a day, 5 days a week.

- It is Fannin's professional opinion that HARKER has been unable to
perform the material duties of either a comptroller or vice president

–9–

HARKER vs. LINA
CASE NUMBER: 03-CIV-20587-MARTINEZ/DUBE

of operations and administration since April 2002, and that her

vocational prognosis to return to her own or any occupation in the

foreseeable future is poor at best.

26.      LINA retained a Dr. Steven Cohen of Richboro, Pennsylvania, and forwarded partial

medical records and other data for Dr. Cohen' review. (H 27-29). Dr. Cohen's ultimate opinion is:

> "Based on the reviewed information, it is my conclusion that there is no
> severity of any medical condition that would render this claimant unable to
> function in a full time sedentary work from 4/11/02 and beyond."

27.      Dr. Cohen's report makes no reference to having reviewed the definition of disability

in the subject insurance policy, and offers no opinion as to whether HARKER is or is not "totally

disabled,"from her "own occupation", as defined in the subject insurance policy. Dr. Cohen agrees

"that this patient does truly have Primary Sclerosing Cholangitis."

28.      At no time did LINA ever meet with, personally interview, or seek any clarification

from Plaintiff, DIANNE HARKER, nor did LINA ever request HARKER to submit to a medical

examination by a physician chosen by LINA, as permitted by the insurance contract at page 17.

29.      At no time did LINA contact personally any of MS. HARKER'S superiors, co-

workers, or family members prior to or after LINA'S decision to terminate disability benefits.

30.      The issue to be decided regarding HARKER'S appeal was whether she was disabled

as defined in the policy as of when the benefits were terminated. In a letter dated February 11, 2003,

(H 33), LINA affirmed its own decision to terminate benefits. LINA'S decision on appeal contains

the following ultimate statement:

> "Based on the above, Ms. Harker does not meet the definition of disability
> from **any occupation** as outlined in the policy therefore, we are affirming
> our previous denial of continuing benefits." (*Emphasis added*).

Respectfully submitted this _21_ day of October, 2003.

BY: _____
JOHN J. SPIEGEL
Counsel for Plaintiff

-10-

Law Offices John J. Spiegel Professional Association
700 Concord Building • 66 West Flagler Street • Miami, Florida 33130 • Telephone (305) 539-0700

Harker vs. Life Ins. Co. of North America
Case Number: 03-CIV-20587-MARTINEZ/DUBE

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been hand delivered

by a Federal Express courier to SHARI GERSON, ESQUIRE of the Law Offices of Steven M.

Ziegler, P.A., Attorneys for Defendant at Presidential Circle, 4000 Hollywood Blvd., Suite 375 S,

Hollywood, FL 33021, on this 2 1 day of October, 2003.

JOHN J. SPIEGEL, ESQUIRE
Attorney for Plaintiff
700 Concord Building
66 West Flagler Street
Miami, Florida 33130
(305) 539-0700
(305) 539-1894 Fax

By:
JOHN J. SPIEGEL, ESQ.

-11-

Page 2

It does not include amounts received as bonus, commissions, overtime pay or other extra compensation.

Any increase in an Employee's Covered Earnings will not be effective during a period of continuous Disability.

Except for the above, this amendment does not change the Policy in any way.

FOR THE COMPANY:

By:

Michael W. Bell, President

Date: February 1, 2001