# EXHIBIT T

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br>ex. rel. PATRICK J. LOUGHREN,<br><br>        Plaintiff<br><br>v.<br><br>UNUMPROVIDENT CORPORATION<br>and GENEX SERVICES, INC.,<br><br>        Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Civil Action No. 03-11699-PBS |

**DECLARATION OF SUSAN DANIELS IN SUPPORT
OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I, Susan Daniels, under penalty of perjury, declare:

1.  I served as the Deputy Commissioner for Disability and Income Security

Programs (ODISP) in the Social Security Administration (SSA) from April 1998 through

December 2000.

2.  In that role, I reported directly to the Commissioner of Social Security and

oversaw an administrative budget of more than $2 billion and over 18,000 employees in

the SSA.

3.  As Deputy Commissioner of ODISP, I was the principal advisor to the

Commissioner of Social Security on program policy issues and was involved in strategic

planning, policy development, and analysis of SSA program policy.  My office was

responsible for planning, development, issuance, and evaluation of operational policies,

standards, and instructions for the Retirement and Survivors Insurance, Disability

Insurance, Supplemental Security Income (SSI) program, and other SSA programs.

4.      As Deputy Commissioner, I managed SSA's disability and SSI policy and research agendas and long-term disability initiatives. Under my leadership, ODISP was involved in analyses of legislative and regulatory specifications and budgetary impacts of legislation on various SSA programs, was involved in the development of demonstrations and studies that provide recommendations on program improvements and was responsible for developing and implementing policies and procedures to coordinate activities relating to the operation of Social Security programs outside of the United States.

5.      As Deputy Commissioner, I oversaw the Disability Insurance program operated under Title II of the Social Security Act, commonly known as the Social Security Disability Insurance or SSDI program. In that role, I was responsible for overseeing the development and issuance of operational and administrative appeals process policies, standards and instructions for the SSDI program, and SSA program policy and guidelines for use by State, Federal or private contractor providers which implement the SSDI provisions of the Social Security Act. Administratively, I oversaw the Administrative Law Judges who are involved in disability determinations under the SSDI process.

6.      Prior to my appointment as Deputy Commissioner, I served as Associate Commissioner of the Office of Disability Programs within the SSA, from April 1994 through April 1998.

7.      In that role, I had executive responsibility for the policy and program direction of Social Security disability programs with an administrative budget of more

than $1.4 billion and over 14,000 employees. Within the agency, the Office of Disability Programs is located in the ODCDISP.

8.      Prior to my service at SSA, I served in Associate Commissioner positions in the Department of Health and Human Services and the Department of Education from July 1988 through March 1994 with responsibility for a variety of disability- and rehabilitation-related Federal programs.

9.      I therefore am familiar with the SSDI program and the SSA's rules and procedures for processing, evaluating and rendering decisions on SSDI claims. I submit this declaration in support of Defendants' Motion for Summary Judgment. I make the statements in this declaration based upon my own personal knowledge.

10.     To apply for SSDI benefits, an individual is required to submit several related forms, including the Application for Disability Insurance Benefits (Form SSA-16-F6) (the "application form"), the Disability Report – Adult (Form SSA-3368-BK) (the "disability report"), and the Work History Report (Form SSA-3369-BK).

11.     An individual can apply for SSDI by going to his local SSA office and apply in person, either as a walk-in or after making an appointment by telephone.

12.     An individual can apply for SSDI over the telephone by speaking with an SSA representative.

13.     An individual can arrange for an SSA employee to come to the individual's home or other convenient location to conduct a field interview to apply for SSDI.

14.     An individual can retain an attorney or other representative to assist with completing and filing the SSDI application forms.

15.     The SSA also has created an on-line SSDI application process through the agency's website.

16.     When completing the application on-line, an applicant also has the option to speak with an SSA employee to discuss the forms and go over any questions related to answering and submitting the information requested on the forms.

17.     In most cases, SSDI applicants discuss their applications and their responses to the questions on the SSA application forms with an SSA employee before filing the applications.

18.     The SSDI application is used by the SSA as a means to initiate a claim and to compile basic background information about an application.

19.     Many claimants misunderstand certain questions asked on the SSDI forms, resulting in inaccurate responses.

20.     The SSA makes its substantive determination of whether an applicant is disabled for purposes of the Social Security Act after the applicant's medical records and other pertinent materials have been compiled.  The SSA does not base its decision solely on the fact that an applicant has inserted a date when he alleges he became unable to work on the SSDI application forms.

21.     The SSA historically has operated on the presumption that anyone who wants to apply for SSDI is entitled to do so, and is entitled to have the agency make a determination of eligibility or ineligibility on any claim.

22.     Every individual who meets the non-disability requirements of the SSDI program is entitled to a substantive determination of whether she is disabled.

{W0710026.1}                                    4

23.    SSA employees are instructed to encourage, rather than discourage, anyone who wants to apply for SSDI to do so.

24.    The decision making process employed by the SSA in evaluating SSDI claims is separate and distinct from the review process at Unum for an applicant's pending LTD or IDI claim.

25.    The standards for awarding disability benefits under private insurance and the government's SSDI program are different.

26.    The SSDI program is subject to underlying regulations that guide and control the SSA's decision-making process.

27.    Any decision by Unum on an individual's claim under an LTD policy or social insurance rider does not control the SSA's decision making process on an SSDI claim.

28.    Under current regulations, the SSA does not require SSDI applicants or their representatives to submit adverse evidence that contradicts their claim for SSDI benefits. Instead, applicants are only required to submit evidence that supports their claim for SSDI.

29.    Attached hereto as Exhibit A is a true and correct copy of a memorandum entitled "The Ethics Hour:  Responsibilities, Obligations, and Expectations," (the "Memorandum") by Sarah A.L. Humphreys of the SSA's Office of General Counsel.

30.    The Memorandum states that the SSA has concluded that the Social Security Act "and regulations only require claimants to prove their *disability*, not their *ability*." Ex. A at 2.

31.     The SSA "expects claimants to bring to the Agency's attention everything that shows how they are disabled, including medical evidence that we can use to reach conclusions about their impairments." Ex. A at 2.

32.     The Memorandum states: "Thus, traditionally there has been no requirement for representatives to voluntarily disclose adverse evidence to the Agency, even in the face of an ALJ's request for all the evidence in the representative's possession." Ex. A at 2-3.

33.     According the to the Memorandum:

> Neither the Act nor the regulations place an absolute or clear obligation on claimants to submit all evidence they have or disclose all sources of available information, even when asked to do so by an ALJ, because SSA has interpreted the law to require only the submission of evidence that supports the disability claim.

Ex. A at 3.

34.     There is no obligation under the SSA's rules requiring Unum to inform the SSA of its own disability benefit determinations or other developments in an individual's LTD or IDI claim.

35.     The SSA has been aware of the common forms of private disability insurance in effect across the country, such as the LTD policies and IDI riders issued by Unum.

36.     The SSA is aware that those policies and riders often include language providing for an offset of any SSDI benefits obtained by claimants.

37.     The SSA has been aware of the common practice in the disability insurance industry of encouraging or even requiring claimants with pending private

disability claims to file for SSDI as a means of reducing the amount of private disability

benefits payable under those policies.

38.    The SSA has never stated that those widespread practices in the private

disability insurance industry are improper or inconsistent with the SSA's own rules.

39.    The SSA and the private disability insurance industry, including Unum,

have worked together on a number of collaborative projects over the past decade

designed to improve the efficiencies of both programs.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the
United States of America that the foregoing is true and correct.

Executed on April 11,  2007

*Susan M Daniels*

_____

Susan Daniels

PENGAD·Bayonne, N. J.

EXHIBIT

A

# THE ETHICS HOUR: RESPONSIBILITIES, OBLIGATIONS, AND EXPECTATIONS

*SARAH A.L. HUMPHREYS* [1]

Office of the General Counsel/Office of General Law
Social Security Administration
February 24-25, 2005

The Social Security Administration's (SSA or Agency) expectations vis-à-vis representatives' duties and responsibilities are stated at 20 C.F.R. §§ 404.1740(a) and 416.1540(a) — the Rules of Conduct and Standards of Responsibility for Representatives (Conduct Rules). SSA requires all representatives, attorney and nonattorney alike, to be faithful agents and fiduciaries on behalf of their clients; to provide competent assistance; to be forthright in their dealings with clients and with SSA; and to comply with the Agency's laws, regulations, and policies.

One area that causes a significant amount of confusion for representatives, and in which Agency policy may be evolving based on recent statutory amendments, is the subject of adverse evidence — whether representatives have a duty to disclose potentially adverse evidence about their clients to SSA, either on their own initiative, or in response to a request from an Administrative Law Judge (ALJ) or other Agency adjudicator. Another area of confusion for both ALJs and representatives involves communications between representatives, adjudicators, and other Agency personnel. These areas are addressed below, in relation to SSA's authority to disqualify or suspend representatives from practice before the Agency for violations of SSA's laws or regulations pertaining to representation.

## ADVERSE EVIDENCE

What exactly do we mean when we refer to "adverse evidence?" It is information or evidence that does not prove, or that may raise a doubt about whether, the claimant is disabled. Historically, there has been tension between Agency

---

[1] The author wishes to express her sincere gratitude to Attorney Scott C. Anderson for his sharp intellect and keen eye, and to SSA Law Librarian Keith A. Searls for his prowess in researching legislative histories.

GEN0000833

adjudicators, who may want to have everything that the claimant and representative have relating to the claimant's claim, whether favorable or unfavorable, and the representative's interests in zealously promoting the client's position and protecting client confidences.

The Agency's Conduct Rules address a representative's affirmative duty to comply with Agency requests for information as follows:

> "A representative shall . . . [a]ssist the claimant in complying, as soon as practicable, with our requests for information or evidence at any stage of the administrative decisionmaking process . . . [and shall] [a]ct with reasonable diligence and promptness in representing a claimant. This includes providing prompt and responsive answers to requests from the Agency for information pertinent to processing of the claim."[2]

*Prohibitions* Representatives also are prohibited from knowingly making or presenting, or participating in the making or presentation of, false or misleading oral or written statements, assertions, or representations about a material fact or law concerning a matter within the Agency's jurisdiction.[3]

The Agency has interpreted these obligations within the context of the Agency's expectations in relation to claimants. In general, the Social Security Act (the Act) and regulations only require claimants to prove their *disability*, not their *ability*. SSA expects claimants to bring to the Agency's attention everything that shows how they are disabled, including medical evidence that we can use to reach conclusions about their impairments.[4]

Claimants' representatives stand in the same position as the claimant, and have the same rights and responsibilities with respect to submitting evidence as the claimants they represent.[5] Thus, traditionally there has been *no requirement* for representatives to voluntarily disclose adverse evidence to the Agency, even in the

---

[2] 20 C.F.R. §§ 404.1740(b)(2) & (3)(ii) and 416.1540(b)(2) & (3)(ii). *See also* GEORGIA RULES OF PROF'L CONDUCT R. 1.3.
[3] 20 C.F.R. §§ 404.1740(c)(3) and 416.1540(c)(3).
[4] 20 C.F.R. §§ 404.1512 and 416.912.

GEN0000834

face of an ALJ's request for all the evidence in the representative's possession. Neither the Act nor the regulations place an absolute or clear obligation on claimants to submit all evidence they have or disclose all sources of available information, even when asked to do so by an ALJ, because SSA has interpreted the law to require only the submission of evidence that supports the disability claim.

Does this position change if the ALJ has requested a specific piece of information? For example, an ALJ learns that two cardiac specialists have treated the claimant, but the representative has submitted only one cardiologist's report. If the ALJ asks for the second cardiologist's report, does the representative have a duty to turn it over, even if it doesn't support the disability claim?

This situation is less about disclosing adverse evidence than it is about being honest with the Agency. SSA expects representatives to answer truthfully and avoid committing a fraud on the tribunal.[6] If the representative responds to the ALJ by stating that the claimant declines to provide the requested evidence because it does not support the disability claim, the Agency has said there is no violation of the Conduct Rules related to representatives' obligations to respond to Agency requests for information.[7] Where representatives risk a violation of the Conduct Rules is when they make a false or misleading statement about the requested information, e.g., by claiming that the cardiologist never wrote a report about the examination, or even that there was no second cardiac examination. Such a misrepresentation could result in a violation of the prohibition against making false or misleading statements about a material fact concerning a matter

---

[5] *See* 63 Fed. Reg. 41,404, 41,412 (1998).

[6] State bar rules have similar requirements. *See generally* GEORGIA RULES OF PROF'L CONDUCT R. 1.2(d), 3.1(b), 3.3, and 4.1.

[7] Recognize, however, that ALJs have a duty to develop the record fully and inform themselves of the facts relevant to their decision. If the ALJ is not inclined to pay the case on the basis of the existing record, the ALJ must develop the claimant's complete medical history for at least the twelve months preceding the date of the application. 20 C.F.R. §§ 404.1512(d) and 416.912(d). The ALJ also has authority to request a consultative examination or issue a subpoena if he or she thinks relevant evidence exists that the representative has not provided, despite the ALJ's request. Ultimately, the ALJ will decide the case on the basis of the existing record, which might result in a denial for lack of persuasive evidence or for the failure of the claimant to cooperate with the Agency's request for additional evidence of the alleged disability.

within SSA's jurisdiction, which could lead to the representative's disqualification or suspension from representing claimants before SSA.

Since 1994, there also have been administrative and civil penalties applicable to both claimants and representatives for knowingly making statements or representations that are incorrect, incomplete, false, or misleading; that omit material facts or conceal material information; or that are made in knowing disregard for the truth.

**Civil Monetary Penalties – Penalties Apply to Representatives and Claimants**
The Social Security Independence and Program Improvements Act of 1994[8] gave SSA the authority to impose civil monetary penalties against any person, organization, agency, or other entity who makes, or causes to be made, a statement or representation of a material fact for use in determining any initial or continuing right to or the amount of benefits under Titles II and XVI, that the person knows, or should know:

> (1) Is false or misleading, or
> (2) **Omits** a material fact.[9]

SSA also may impose civil monetary penalties for statements or representations made in knowing disregard for the truth.[10]

A "material fact" is defined as one that the Commissioner "may consider" in evaluating whether an applicant is entitled to or eligible for benefits.[11] For **each** statement or representation, the Agency may impose a civil monetary penalty of up to $5,000.[12] SSA also may impose an assessment of up to twice the amount of benefits or payments that SSA paid as a result of the statement or representation.[13]

---

[8] Pub. L. No. 103-296, 108 Stat. 1464 (codified as amended in scattered sections of 42 U.S.C.).
[9] § 1129(a)(1) of the Social Security Act, 42 U.S.C. § 1320a-8(a)(1).
[10] *Id.*
[11] *Id.* at § 1129(a)(2), 42 U.S.C. § 1320a-8(a)(2).
[12] *Id.* at § 1129(a)(1), 42 U.S.C. § 1320a-8(a)(1).

GEN0000836

### Exclusion – Penalties Apply to Representatives

Because "[p]rofessionals and others who play a role in helping individuals apply for Social Security and SSI have a special responsibility to maintain high standards of truthfulness[, and] [t]he evidence, opinions, advice, and recommendations they provide are often crucial in the eligibility determination process,"[14] Congress amended the Social Security Act by a provision in the Foster Care Independence Act of 1999 that requires the Agency to exclude from participation in SSA's programs any representative[15] who:

(1) Is convicted of violating §§ 208 or 1632 of the Social Security Act;
(2) Is convicted of any violation of Title 18 of the United States Code pertaining to an initial application for or continuing entitlement to or eligibility for benefits under Titles II or XVI; or
(3) The Commissioner determines has committed an offense under Social Security Act § 1129(a)(1) (i.e., one for which civil monetary penalties could be imposed).[16]

Exclusion is defined as a prohibition against representing "an applicant for, or recipient of, benefits," or otherwise serving "as a representative, in any hearing or other proceeding relating to entitlement to benefits."[17] The minimum period of exclusion is five years for one of the above three offenses, ten years for two, and permanent exclusion for three or more.[18]

If SSA excludes a representative from participation in SSA's programs under this section, the Agency also will notify the representative's State or local licensing agency, such as the State bar, and provide the facts and circumstances that led to the exclusion.[19] As part of the notification, SSA will ask the State or local agency to investigate and impose sanctions, as appropriate under State law.[20]

---

[13] Id.
[14] H.R. REP. No. 106-182 at 41-42 (1999).
[15] This section also pertains to health care providers.
[16] § 1129(a) of the Social Security Act, 42 U.S.C. § 1320b-6(a). See Notice of Proposed Rulemaking, 69 Fed. Reg. 40,338 (July 2, 2004).
[17] Id. at 42 U.S.C. § 1320b-6(j).
[18] Id. at 42 U.S.C. § 1320b-6(b).
[19] Id. at 42 U.S.C. § 1320b-6(d).
[20] Id.

GEN0000837

### Fraud and Similar Fault – Penalties Apply to Claimants[21]

The Social Security Independence and Program Improvements Act of 1994 also
permits SSA to redetermine entitlement to and eligibility for benefits, and to
disregard evidence, if fraud or similar fault is involved in the application for
benefits under Titles II and XVI.[22]  "Similar fault" is involved if the individual
knowingly makes an incorrect or incomplete statement, or **knowingly conceals**
from a statement,[23] information that is material to the Agency's determination.[24]
The statement, information, or omission from the statement is "material" if it
"could influence SSA in determining" entitlement to or eligibility for benefits.[25]

### Penalties for False or Misleading Statements – Penalties Apply to Claimants[26]

The Foster Care Independence Act of 1999 also authorized SSA to impose penalties
on Titles II and XVI claimants who make, or cause to be made, a statement or
representation of a material fact for use in determining any initial or continuing
right to or the amount of benefits that the person knows or should know:

> (1) Is false or misleading; or

---

[21] Note, however, that while the penalties apply only to claimants and beneficiaries, the statement(s) that constitutes similar fault can be made by anyone, including the representative. Thus the representative's actions alone, even without the claimant's complicity, can result not only in sanctions against the representative (civil monetary penalties, exclusion), but also can have serious consequences for the representative's client.

[22] 42 U.S.C. §§ 405(u) and 1383(c)(7).

[23] The exact language of this section states that it is similar fault if "information that is material to the determination is knowingly concealed." §§ 405(u)(2)(B) and 1383(c)(7)(B)(ii). Although this would seem to be directed at the withholding of information, not just at omissions from statements, Social Security Ruling (SSR) 00-2p, 65 Fed. Reg. 10,140 (Feb. 25, 2000), clarifies that the omission must be from a statement actually made to SSA. The SSR says that the term "material" is "[u]sed to describe a statement or information, or an omission from a statement or information, that could influence SSA." 65 Fed. Reg. at 10,141. "Knowingly" describes "how a person acts in furnishing information that he or she knows is false or incomplete." *Id*. Given these constructions, it appears that SSA contemplates that an individual must conceal information from a statement actively made to the Agency.

[24] *Id*.

[25] *Id*.

[26] Note the similarity between this section and the civil monetary penalty provisions. Both target the same misconduct (making statements of material fact that are false or misleading, omit a material fact, or making such statements in knowing disregard for the truth). The civil monetary provisions are slightly broader, however; they define "person" to include organizations, agencies, and other entities, and they also apply to benefits or payments under subchapter VIII (§§ 801-813 of the Social Security Act, 42 U.S.C. §§ 1001-1013), pertaining to special benefits for certain World War II veterans.

(2) **Omits** a material fact.[27]

SSA also may impose penalties for such statements or representations that the claimant or beneficiary makes in knowing disregard for the truth.[28] The penalties apply as follows:

(1) Nonpayment of Title II benefits that otherwise would be payable; and
(2) Ineligibility for Title XVI benefits.[29]

SSA will impose a six-month penalty for a first offense; a twelve-month penalty for a second; and twenty-four months for three or more offenses.[30]

**Statutory Amendments Potentially Affecting the Duty to Disclose Adverse Evidence**

As seen in the above summaries, the various penalty rules have only placed a duty on representatives and claimants not to actively make statements or representations that are false or misleading either because of what they say, or what they fail to say.[31] Because Congress viewed this as a "loophole in the current law,"[32] it recently amended the Social Security Act to expand the Agency's authority; following the effective date of the amendments, SSA will be able to impose penalties on representatives and claimants who withhold information from the Agency, even in the absence of an affirmative statement.[33] These revisions also may have a significant impact on representatives as they decide what information and evidence to provide to SSA on behalf of their clients.

---

[27] § 1129A(a) of the Act, 42 U.S.C. § 1320a-8a(a).
[28] Id.
[29] Id. at 42 U.S.C. § 1320a-8a(b).
[30] Id. at 42 U.S.C. § 1320a-8a(c).
[31] Congress noted that under the existing (pre-amended) law, "[i]n order for the penalty or assessment to be imposed, the law requires an affirmative act on the part of the individual of making (or causing to be made) a statement that omits a material fact or is false or misleading." H.R. REP. NO. 108-46, at 33 (2003).
[32] Id.
[33] In the House Report, Congress stated that the purpose of the amendments was to provide SSA "with the enhanced tools it needs to fight waste, fraud and abuse in Social Security programs." Id. at 23.

GEN0000839

8

### Civil Monetary Penalties (revised)

Congress revised the civil monetary penalty rules to give SSA the ability to impose monetary penalties against anyone who not only omits material facts from a statement or representation, but who **"otherwise withholds disclosure of, a fact which the person knows or should know is material to the determination** of any initial or continuing right to or the amount of" benefits.[34] This revision will apply to violations that occur after the date that the Commissioner implements the centralized computer file described in section 202 of the Social Security Protection Act of 2004.[35] The Commissioner is statutorily mandated to implement the centralized file by March 2, 2005.

### Penalties for False or Misleading Statements (revised)

The changes in the rules pertaining to the making of false or misleading statements mirror the civil monetary penalty revisions. After March 2, 2005, anyone who omits material facts from a statement or representation or **"otherwise withholds disclosure of, a fact which the person knows or should know is material to the determination** of any initial or continuing right to or the amount of" benefits, is subject to nonpayment of Title II benefits or ineligibility for Title XVI benefits.[36]

### Impact of Statutory Revisions on the Conduct Rules

These new revisions may resolve what some have seen as a dichotomy in the Agency's position about adverse evidence: we haven't required claimants and their representatives to provide to the Agency, on their own initiative, information or evidence that does not support their claim of disability, even if an Agency adjudicator wants access to everything available to the representative, but we do prohibit representatives from lying to or otherwise intentionally misleading Agency

---

[34] Section 201(a)(1) of the Social Security Protection Act of 2004, amending § 1129 of the Social Security Act, 42 U.S.C. § 1320a-8 (emphasis added).
[35] Sections 201(d) and 202 of the Social Security Protection Act of 2004.
[36] Section 201(a)(2) of the Social Security Protection Act of 2004, amending § 1129A of the Social Security Act, 42 U.S.C. § 1320a-8a (emphasis added).

GEN0000840

Case 1:03-cv-12382-MLW    Document 143-37    Filed 08/22/2008    Page 17 of 26
Case 1:03-cv-11699-PBS    Document 143-2    Filed 04/25/2007    Page 9 of 18

Chapter 5
9 of 19

9

adjudicators about material facts.[37] Under the revised civil monetary penalty and false or misleading statements rules, it may no longer be advisable for representatives to withhold adverse evidence in their possession (or to which they have access) if the information can be considered material to the determination and its withholding is misleading.

The circumstances under which a failure to disclose information or evidence not establishing disability, either voluntarily or in response to a request "from the Agency for information pertinent to processing of the claim,"[38] could result in civil monetary penalties or nonpayment of/ineligibility for benefits, or constitute a violation of the Conduct Rules, is not yet settled. The distinction may turn on what SSA considers to be a "material fact," defined as one that SSA "may consider" in evaluating a claim. If SSA continues to take the position that claimants need only prove their disability and not their ability, then evidence of ability is not something that SSA "may consider," and withholding it would neither constitute withholding of a material fact nor misleading the Agency.

However, if by "may consider" the statute refers only to any facts or information that Agency adjudicators would find useful in evaluating a claim, then withholding adverse evidence, especially in light of an adjudicator's request for the information, could constitute withholding disclosure of a material fact that has misled the Agency, in violation of the civil monetary penalty and false or misleading statement rules. This interpretation also could lead to a reinterpretation of the Conduct Rules requirement to comply with Agency requests for information, and result in the disqualification or suspension of a representative who failed to provide a prompt and responsive answer to an adjudicator's request for claim-related information.

---

[37] Sections 208(a) and 1632(a) of the Act, 42 U.S.C. §§ 408(a) and 1383a(a); 20 C.F.R. §§ 404.1740(c)(3) and 416.1540(c)(3).
[38] 20 C.F.R. §§ 404.1740(b)(3)(ii) and 416.1540(b)(3)(ii).

GEN0000841

## COMMUNICATIONS

Another recurring issue involves the propriety of communications between representatives, adjudicators, and other Agency personnel while a claim is pending before the Agency. ALJs have expressed concern about what they identify as improper ex parte communications between representatives and ALJs or hearing office staff. They cite to the provisions in the Administrative Procedure Act (APA) relating to ex parte communications in support of the position that any discussion between the representative and the ALJ (or hearing office staff) on the merits of a claim needs to be in the presence of the claimant.

The APA provisions at issue are:

> Except to the extent required for the disposition of ex parte matters as authorized by law,[39] [an ALJ] may not . . . consult a person or party on a fact in issue,[40] unless on notice and opportunity for all parties to participate . . . .[41]

> In any agency proceeding . . . , except to the extent required for the disposition of ex parte matters as authorized by law –
>
> (A) no interested person outside the agency shall make or knowingly cause to be made to any . . . administrative law judge, or other employee who is or may reasonably be expected to be involved in the decisional process . . . , an ex parte communication relevant to the merits of the proceeding;
>
> (B) no . . . administrative law judge, or other employee who is or may reasonably be expected to be involved in the decisional process . . . , shall make or knowingly cause to be made to any interested person outside the agency an ex parte communication relevant to the merits of the proceeding.[42]

---

[39] Permissible ex parte communications include acting on requests for adjournments, continuances, and subpoenas. Attorney General's Manual on the Administrative Procedure Act at 55 (Dep't of Justice 1947) (hereinafter "Attorney General's APA Manual").

[40] According to the Attorney General, the term "fact in issue" is used in its "technical, litigious sense." Appendix to Attorney General's Statement Regarding Revised Committee Print of October 5, 1945, at 130.

[41] 5 U.S.C. § 554(d)(1).

[42] 5 U.S.C. § 557(d)(1).

GEN0000842

Case 1:03-cv-12382-MLW    Document 142-37    Filed 08/22/2008    Page 19 of 26
Case 1:03-cv-11699-PBS    Document 148-2    Filed 04/25/2007    Page 11 of 18

Chapter 5
11 of 19

11

It first is important to recognize that the Supreme Court has never ruled on the applicability of the APA to SSA's hearings, and SSA has long taken the position that the Commissioner's procedural rules and regulations provide equal or even greater Due Process protections in comparison to those provided by the APA.[43] Thus, the APA provisions are not controlling on SSA.

Secondly, for an *improper* ex parte communication to exist, there must of necessity be more than one party in the case. Ex parte means "[o]n one side only; by or for one party; done for, in behalf of, or on the application of, one party only. [An action] is said to be *ex parte* when it is taken or granted at the instance and for the benefit of one party only, and **without notice to, or contestation by, any person adversely interested.**"[44]

By their very nature, the vast majority of claims adjudicated by SSA involve only one party – the claimant. Therefore, any communication between the claimant (or the claimant's authorized representative) and the ALJ would constitute an ex parte communication. However, these communications cannot be considered *improper* ex parte communications, because in this predominantly one-party process, the Agency recognizes the claimant's attorney or nonattorney representative as the claimant's alter ego for all intents and purposes. By regulation, the representative may, on the claimant's behalf:

(1) Obtain information about the claimant to the same extent as the claimant;
(2) Submit evidence;
(3) Make statements about facts and law; and
(4) Make any request or give any notice about the proceedings before SSA.[45]

Therefore, any communication between the representative and the ALJ on the merits of a case cannot constitute an improper ex parte communication, because the representative is authorized to speak on the merits to the same extent that the

---

[43] *See generally Richardson v. Perales*, 402 U.S. 389, 400-01 (SSA's administrative proceedings provide procedures which meet or exceed Due Process or APA protections).
[44] BLACK'S LAW DICTIONARY 576 (6th ed. 1990) (emphasis added).
[45] 20 C.F.R. §§ 404.1710 and 416.1510.

GEN0000843

Case 1:03-cv-12382-MLW    Document 142-37    Filed 08/22/2008    Page 20 of 26
Case 1:03-cv-11699-PBS    Document 148-2    Filed 04/25/2007    Page 12 of 18

Chapter 5
12 of 19
12

claimant is. There is no party left out of the discussion. The same holds true for other hearing office staff.[46]

Finally, it is important to remember the purpose underlying the ex parte communication rules, which is to ensure that hearings are "conducted by hearing officers who have not received or obtained factual information outside the record. . . . To achieve fairness and independence in the hearing process . . . the officer is prohibited from obtaining or receiving evidentiary or factual information bearing on the issues unless, after notice, **all parties** are permitted to participate."[47] Hearing fairness and independence are rights belonging to the claimant, not the adjudicator; if the claimant, or the claimant's appointed representative, wants to engage the ALJ or other Agency staff in a discussion of the merits, the discussion cannot constitute an *improper* ex parte communication.[48]

Where representatives need to exercise caution, however, is with direct communications to ALJs or others involved in the adjudicative process, when those communications may constitute an "[a]ttempt to influence, directly or indirectly, the outcome of a decision, determination or other administrative action by offering or granting . . . anything of value to a presiding official, Agency employee or witness who is or may reasonably be expected to be involved in the administrative

---

[46] ALJs also are free to obtain advice from or consult with Agency personnel, such as management officials, staff attorneys, and other decision writers, without the conversations being considered improper ex parte communications. "The availability to the hearing officer of appropriate assistance and advice will result normally in a more accurate . . . decision and one that better reflects the views of the agency on questions of law and policy. Attorney General's APA Manual at 55.

[47] *Id.* at 54 (emphasis added). It is important to note, however, that even in nonadversarial one-party proceedings, it would constitute an improper ex parte communication for an ALJ to "informally obtain evidentiary material from . . . experts either during or after the hearing . . . .," without providing notice to the claimant. *Id.*

[48] This does not mean, however, that representatives should submit evidence or discuss the merits of claims with Agency personnel unless the ALJ has authorized such communications. Representatives are expected to respect ALJ authority to control the proceedings in pending claims and "[c]onduct [their] dealings in a manner that furthers the efficient, fair and orderly conduct of the administrative decisionmaking process." 20 C.F.R. §§ 404.1740(b)(3) and 416.1540(b)(3).

Case 1:03-cv-12383-MLW    Document 142-37    Filed 08/22/2008    Page 21 of 26
Case 1:03-cv-11693-PBS    Document 148-2    Filed 04/25/2007    Page 13 of 18

decisionmaking process . . . .[49]  Such conduct has nothing to do with the concept of improper ex parte communications, however.

## CONCLUSION

The preamble to SSA's Conduct Rules acknowledges the tension inherent in the role of a representative before SSA when it states that representatives shall "faithfully execute their duties as agents and fiduciaries of a party," and "shall comport themselves with due regard for the non-adversarial nature of the proceedings by complying with our rules and standards, which are intended to ensure orderly and fair presentation of evidence and argument."[50]  The representative must act in the best interests of his or her client while maintaining a nonadversarial posture in the representative's dealings with SSA.  This concept may be unnatural for attorneys who are enjoined by bar disciplinary rules to be zealous advocates for their clients.  SSA also expects that attorneys will zealously advocate on behalf of their clients; however, representatives must modify their understanding of the meaning of that term in light of the Social Security Act and SSA's regulations.  Further, even zealous advocates must always be honest.  The preamble to the Conduct Rules emphasizes this duty when it states representatives must be "forthright in their dealings with [SSA]."[51]

In regard to evidence that a representative perceives as adverse to his or her client's chances of obtaining benefits, the representative must consider whether the failure to inform SSA of this evidence would be considered misleading or an omission that could cause the representative and/or the claimant to be subject to sanctions.  Further, while representatives, ALJs, and other Agency personnel are not prohibited by the general rule against ex parte communications from

---

[49] 20 C.F.R. §§ 404.1740(c)(6) and 416.1540(c)(6).  *See also* GEORGIA RULES OF PROF'L CONDUCT R. 3.5.
[50] 20 C.F.R. §§ 404.1740(a) and 416.1540(a).
[51] *Id.*

14

discussing the merits of individual claims, representatives should always act in a manner that acknowledges the ALJ's responsibility to provide a fair and impartial hearing.

PREPARED FOR THE SOCIAL SECURITY TRIAL INSTITUTE
INSTITUTE OF CONTINUING LEGAL EDUCATION IN GEORGIA
STATE BAR OF GEORGIA HEADQUARTERS
FEBRUARY 24-25, 2005

GEN0000846

Chapter 5
15 of 19

**Attachment A**

| ORIGINAL STATUTE | REVISIONS TO STATUTE | APPLIES TO CLAIMANT | APPLIES TO REP | COMBINES WITH OTHER PENALTIES |
|---|---|---|---|---|
| Fraud and Similar Fault (FSF) – Social Security Independence and Program Improvements Act of 1994, §§ 205(u) & 1631(e)(7) of the Social Security Act (Act); 42 USC §§ 405(u) & 1383(e)(7); SSR 00-2p<br><br>For Titles II & XVI, SSA may:<br><br>(1) redetermine entitlement to and eligibility for benefits and<br><br>2) disregard evidence,<br><br>If FSF is involved in the application.<br><br>Similar fault is involved if the individual:<br><br>(1) knowingly makes an incorrect or INCOMPLETE statement or<br>(2) KNOWINGLY CONCEALS information that is "material" to the determination.<br><br>It is "material" if the statement or information, or omission from a statement or information, "could influence SSA in determining" entitlement to or eligibility for benefits. | | Yes | No | Yes |

1

GEN0000847

**Attachment A**

| ORIGINAL STATUTE | REVISIONS TO STATUTE | APPLIES TO CLAIMANT | APPLIES TO REP | COMBINES WITH OTHER PENALTIES |
|---|---|---|---|---|
| Administrative Procedure for Imposing Penalties for False or Misleading Statements – Foster Care Independence Act of 1999, § 1129A of the Act; 42 USC § 1320a-8a; 20 CFR §§ 404.459 and 416.1340<br><br>For Titles II & XVI, any person:<br><br>Who makes or causes to be made a statement or representation of a material fact for use in determining any initial or continuing right to or amount of benefits that the person knows or should know:<br><br>(1) is false or misleading or<br><br>(2) OMITS a material fact, or<br><br>Who makes such a statement with knowing disregard for the truth,<br><br>Shall be subject to:<br><br>(1) nonpayment of title II benefits otherwise payable or<br>(2) ineligibility for title 16 benefits.<br><br>Six months for 1st offense; 12 months for 2d offense, 24 months for 3d or more. | Administrative Procedure for Imposing Penalties for False or Misleading Statements – Section 201 of the Social Security Protection Act of 2004, amending § 1129A of the Act; 42 USC § 1320a-8a (effective 3/2/05)<br><br>For Titles II & XVI, any person who:<br><br>(1) Makes or causes to be made:<br><br>(a) a statement or representation of a material fact,<br>(b) for use in determining any initial or continuing right to or amount of benefits,<br>(c) that the person knows or should know is false or misleading;<br><br>(2) Makes such a statement in knowing disregard for the truth, or<br><br>(3) OMITS FROM A STATEMENT OR REPRESENTATION OR OTHERWISE WITHHOLDS DISCLOSURE OF, a fact that the person knows or should know is material to the determination, if the person knows or should know that the statement with such omission is false or misleading or that the nondisclosure is misleading, is subject to nonpayment or ineligibility for benefits. | Yes | No | Yes |

| ORIGINAL STATUTE | REVISIONS TO STATUTE | APPLIES TO CLAIMANT | APPLIES TO REP | COMBINES WITH OTHER PENALTIES |
|---|---|---|---|---|
|  | REVISIONS TO STATUTE<br>Civil Monetary Penalties (CMP) for False Statements or Representations of Material Fact – Section 201 of the Social Security Protection Act of 2004, amending § 1129 of the Act; 42 USC § 1320a-8 (effective 3/2/05)<br><br>For Titles II & XVI, SSA may impose CMP against any person, organization or entity who:<br><br>(1) makes or causes to be made a | Yes | Yes | Yes |

2

**Attachment A**

| ORIGINAL STATUTE | REVISIONS TO STATUTE | APPLIES TO CLAIMANT | APPLIES TO REP | COMBINES WITH OTHER PENALTIES |
|---|---|---|---|---|
| Civil Monetary Penalties (CMP) for False Statements or Representations of Material Fact – Social Security Independence and Program Improvements Act of 1994, § 1129 of the Act, 42 USC § 1320a-8; 20 CFR Part 498 (especially § 498.102)  For Titles II & XVI, SSA may impose CMP against any person, organization, or entity:  Who makes or causes to be made a statement or representation of a material fact for use in determining any initial or continuing right to or amount of benefits that the person knows or should know:  (1) is false or misleading, or  (2) OMITS a material fact, or  Who makes such a statement with knowing disregard for the truth.  A "material fact" is one that the Commissioner may consider in evaluating whether an applicant is entitled to or eligible for benefits.  CMP – $5,000 per statement, plus assessment of up to twice the amount of benefits paid because of such statement. | Civil Monetary Penalties (CMP) for False Statements or Representations of Material Fact – Section 201 of the Social Security Protection Act of 2004, amending § 1129 of the Act, 42 USC § 1320a-8 (effective 3/2/05)  For Titles II & XVI, SSA may impose CMP against any person, organization, or entity who:  (1) Makes or causes to be made a statement or representation of a material fact for use in determining any initial or continuing right to or amount of benefits, that the person knows or should know is false or misleading, or  (2) Makes such a statement or representation for such use with knowing disregard for the truth, or  (3) OMITS from a statement or representation for such use, OR OTHERWISE WITHHOLDS DISCLOSURE OF, a fact which the person knows or should know is material to the determination of any initial or continuing right to or amount of benefits, if the person knows, or should know, that the statement or representation with such OMISSION is false or misleading or that the WITHHOLDING OF SUCH DISCLOSURE is misleading.  (The penalties and the definition of "material fact" remain the same.) | Yes | Yes | Yes |

GEN0000849

Case 1:03-cv-12382-MLW    Document 142-37    Filed 08/22/2008    Page 26 of 26
Case 1:03-cv-11699-PBS    Document 148-2    Filed 04/25/2007    Page 18 of 18

Chapter 5
18 of 19

Attachment A

| ORIGINAL STATUTE | REVISIONS TO STATUTE | APPLIES TO CLAIMANT | APPLIES TO REP | COMBINES WITH OTHER PENALTIES |
|---|---|---|---|---|
| **Exclusion of Representatives and Health Care Providers Convicted of Violations from Participation in Social Security Programs** – Foster Care Independence Act of 1999, § 1136 of the Act; 42 USC § 1320b-6; Proposed Rule published July 2, 2004, 69 Fed. Reg. 40,338<br><br>SSA shall exclude from participation in the Social Security programs any representative or health care provider who:<br><br>(1) Is convicted of violating Social Security Act §§ 208 or 1632 (making false statements or representations to SSA in an application for any payment or for a disability determination, or for use in determining right to or eligibility for benefits, or concealing or failing to disclose the occurrence of any event affecting any initial or continuing right to payments, etc.); or<br><br>(2) Is convicted of any violation of 18 USC pertaining to an initial application for or continuing entitlement to or eligibility for Titles II or XVI benefits (e.g., 18 USC § 287 – false, fictitious or fraudulent claims; 18 USC § 1001 – statements or entries generally); or<br><br>(3) The Commissioner determines has committed an offense under Social Security Act § 1129(a)(1) (i.e., has been assessed a CMP).<br><br>Exclude means SSA will prohibit a representative from representing claimants or serving as a representative payee.<br><br>**Length of Exclusion:**<br><br>(1) Minimum exclusion is 5 years for one conviction or CMP;<br>(2) 10 years for 2 convictions or CMPs; or<br>(3) Permanent exclusion for 3 or more convictions or CMPs. | | No | Yes | Yes |

4