# Exhibit 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* DAWN BARRETT,<br><br>Plaintiff,<br><br>v.<br><br>CIGNA CORPORATION and LIFE<br>INSURANCE COMPANY OF NORTH<br>AMERICA,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 03-12382-MLW |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS FOR LACK OF JURISDICTION
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT
DUE TO LACK OF *SCIENTER***

Mitchell H. Kaplan
R.J. Cinquegrana
Richard C. Abati
Choate, Hall & Stewart LLP
Two International Place
Boston, MA 02110
(617) 248-5000

## TABLE OF CONTENTS

SUMMARY OF ARGUMENT ...................................................................................1

PROCEDURAL HISTORY...................................................................................3

FACTUAL ALLEGATIONS ...................................................................................4

    I.    Barrett's Claim that CIGNA Knowingly Causes Its Long-Term
          Disability Claimants to File Patently Ineligible SSDI Applications with
          the SSA. ....................................................................................................4

    II.    Barrett's Claim that CIGNA Violates the False Claims Act by
          Knowingly Failing to Disclose Adverse Evidence to the SSA................7

STANDARD OF REVIEW ...................................................................................7

ARGUMENT...................................................................................8

    I.    The Court Must Dismiss or Enter Summary Judgment on Barrett's
          Claim that CIGNA Violates the False Claims Act by Knowingly
          Causing Its LTD Claimants to File Ineligible SSDI Applications with
          the SSA. ....................................................................................................9

        A.    The Claim Must Be Dismissed For Lack of Subject Matter
            Jurisdiction Under the False Claims Act's Public Disclosure
            Jurisdictional Bar. ..............................................................................9

            1.    The Definition of a "Public Disclosure."........................................11

            2.    Barrett's Allegation that CIGNA Imposes Its SSDI
                 Application Requirement on "All" Its LTD Claimants
                 Was Publicly Disclosed Before She Filed This Action
                 in November 2003....................................................................13

                 a.    CIGNA-Specific Public Disclosures...................................14

                 b.    Public Disclosures of the Industry-Wide
                     Practice...............................................................................21

                 c.    The Essential Elements of Barrett's Claim Have
                     Been Publicly Disclosed. ...................................................25

             3.    This Action Is Based Upon the Publicly Disclosed
                 Allegations or Transactions. ........................................................27

             4.    Barrett Cannot Prove that She Falls Under the "Original
                 Source" Exception to the Public Disclosure Bar. ..........................29

i

a.    Barrett Cannot Prove that She Has Direct and Independent Knowledge of the Information on Which Her Allegations Are Based.....................30

(1)    Relator Must Have Obtained Her Knowledge Directly and Not Through an Intervening Agency, Such as Her Lawyer. ...............................................31

(2)    The Relator's Information Must Be Something More than What the Public Already Knows. .....................................32

(3)    Relator Must Have Obtained Her Knowledge Not Only Before She Filed Her Original Complaint, but Also Before the Date the Information Was Publicly Disclosed.................................................33

(4)    Barrett Cannot Establish Any Of the Elements Of "Direct and Independent Knowledge." .........................................33

(5)    As A Matter of Law, Barrett Cannot Have Direct and Independent Knowledge of False Claims Made Before June 2002. ...................................37

b.    Barrett Cannot Prove that She Disclosed the Information on Which Her Allegations Are Based to the Government Before She Filed Her Sealed Complaint, Much Less Before the Information Was Publicly Disclosed. ...............................38

B.    In the Alternative, CIGNA Is Entitled to Summary Judgment Because the SSA Has Long Known About and Acquiesced to the Allegedly Unlawful Practice, and, Therefore, It Did Not Act With Its *Scienter*...............................................................40

II.    The Court Must Dismiss Barrett's Claim that CIGNA Violates the False Claims Act by Failing to Disclose Adverse Evidence to the SSA Because the SSA Has Expressly Rejected Such a Requirement...........................49

CONCLUSION...............................................................................................54

## TABLE OF AUTHORITIES

CASES

Allison Engine Co. v. U.S. ex rel. Sanders,
    128 S. Ct. 2123 (2008)......................................................................................8

Ardolino v. Metro. Life Ins. Co.,
    No. Civ. A. 00-12115, 2001 WL 34563168 (D. Mass. July 2, 2001)......................................24

Boisjoly v. Morton Thiokol, Inc.,
    706 F. Supp. 795 (D. Utah 1988)......................................................................................41

Buck v. Fries & Fries, Inc.,
    953 F. Supp. 896 (S.D. Ohio 1996)......................................................................................23

Calloway v. Pacific Gas & Elec. Co.,
    800 F. Supp. 1444 (E.D. Tex. 1992)......................................................................................23

Cooper v. Blue Cross and Blue Shield of Fla., Inc.,
    19 F.3d 562 (11th Cir. 1994)......................................................................................27

Cox v. Mid-America Dairymen, Inc.,
    965 F.2d 569 (8th Cir. 1992)......................................................................................23

Deaton v. Conn. Gen. Life Ins. Co.,
    17 S.W.3d 896 (Ky. Ct. App. 2000)......................................................................................16-17

DiGiovanni v. Guardian Life Ins. Co.,
    No. CIV. A. 98-10908, 2002 WL 1477175 (D. Mass. June 28, 2002)......................................24

Edwards v. Life Insurance Co. of North America,
    245 F.3d 791 (5th Cir. 2000)......................................................................................17-18

Estades Negroni v. Assocs. Corp. of N. Am.,
    208 F. Supp. 2d 144 (D.P.R. 2002), aff'd, 377 F.3d 58 (1st Cir. 2004)......................................24

Fed. Recovery Servs. v. U.S.,
    72 F.3d 447 (5th Cir. 1995)......................................................................................27

Frost v. Mihm,
    No. 95-CA-38, 1995 WL 737914 (Ohio App. Nov. 15, 1995)......................................23

Garst v. Wal-Mart Stores, Inc.,
    30 Fed. Appx. 585 (6th Cir. 2002)......................................................................................24

Geiszler v. Comm'r of Internal Revenue,
    No. 4600-01S, 2002 WL 31427006 (U.S. Tax Ct. Oct. 29, 2002)......................................24

Greig v. Metro. Life Ins. Co.,
    980 F. Supp. 169 (W.D. Va. 1997) ........................................................23

Hackett v. Xerox Corp. Long-Term Disability Income Plan,
    177 F. Supp. 2d 803 (N.D. Ill. 2001)
    rev'd on other grounds, 315 F.3d 771 (7th Cir. 2003) ................................. 22-23, 46

Harris v. Marathon Oil Co.,
    948 F. Supp. 27 (W.D. Tex. 1996) ........................................................23

Hughes v. Reinsurance Group,
    957 F. Supp. 1097 (E.D. Mo. 1996) ......................................................23

In re Pharma. Indus. Average Wholesale Price Litig.,
    478 F. Supp. 2d 164 (D. Mass. 2007) ....................................................40

In re Pharma. Indus. Average Wholesale Price Litig.
    538 F. Supp. 2d 367 (D. Mass. 2008) ................................................ Passim

Kokkonen v. Guardian Life Ins. Co.,
    511 U.S. 375 (1994) ........................................................................7

Lolos v. Solutia, Inc.,
    193 F. Supp. 2d 364 (D. Mass. 2002) ....................................................24

MAPCO Coal Inc. v. Godwin,
    786 N.E.2d 769 (Ind. App. 2003) ........................................................24

Marx v. Meridian Bancorp.,
    No. CIV. A. 99-CV-4484, 2001 WL 706280 (E.D. Pa. June 20, 2001) ................23

Matz v. Sisters of Providence,
    No. CIV. 98-1598, 1999 WL 1201682 (D. Or. Dec. 8, 1999) ........................23

Mays v. Ins. Co. of N. Am.,
    284 N.W.2d 256 (Mich. 1979) ........................................................15, 39

Meinze v. Holmes,
    532 N.E.2d 170 (Ohio App. 1987) ........................................................23

Metro. Life Ins. Co. v. Glenn,
    128 S. Ct. 2343 (2008) .....................................................................14

Minn. Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.,
    276 F.3d 1032 (8th Cir. 2002) ........................................................27, 29

Myers v. Hercules, Inc.,
    253 F.3d 761 (4th Cir. 2001) ..............................................................23

Napier v. Hartford Life Ins. Co.,
  282 F. Supp. 2d 531 (E.D. Ky. 2003) ....................................................................24

Picinich v. UPS,
  321 F. Supp. 2d 485 (N.D.N.Y. 2004) ..................................................................18

Pikora v. Blue Cross & Blue Shield,
  970 F. Supp. 591 (E.D. Mich. 1997).....................................................................23

Quast v. Square D Co.,
  No. 02:01-CV-1135, 2003 WL 23415018 (S.D. Ohio July 15, 2003)....................24

Rigel v. Rigel,
  No. CT98-0021, 1999 WL 436824 (Ohio App. June 23, 1999) .............................23

Rocca v. Standard Ins. Co.,
  No. 01-2069, 2001 WL 1667807 (E.D. Pa. Dec. 20, 2001)....................................23

Rockwell Int'l Corp. v. U.S.,
  127 S. Ct. 1397 (2007) ................................................................................. Passim

Rowell v. Life Ins. Co. of N. Am.,
  No. 96 C 8076, 1997 WL 529556 (N.D. Ill. Aug. 18, 1997)..................................15

Scott v. Shalala,
  No. 94-50096, 1994 WL 725034 (5th Cir. Dec. 19, 1994).....................................23

State of Vt. v. G.S. Blodgett Co.,
  656 A.2d 984 (Vt. 1995) ........................................................................................23

Sumner v. Michelin N. Am., Inc.,
  966 F. Supp. 1567 (M.D. Ala. 1997) .....................................................................23

Thompson v. E.I. DuPont de Nemours & Co.,
  140 F. Supp. 2d 764 (E.D. Mich. 2001).................................................................23

Thornley v. Penton Publ'g, Inc.,
  104 F.3d 26 (2d Cir. 1997).....................................................................................23

Trevan v. Office of Personnel Mgmt.,
  69 F.3d 520 (Fed. Cir. 1995)............................................................................ 24-25

U.S. ex rel. Barth v. Ridgedale Elec., Inc.,
  44 F.3d 699 (8th Cir. 1995) ...................................................................................31

U.S. ex rel. Becker v. Westinghouse Savannah River Co.,
  305 F.3d 284 (4th Cir. 2002) .................................................................................40

U.S. ex rel. Berge v. Bd. of Trustees of Univ. of Ala.,
    104 F.3d 1453 (4th Cir. 1997) ...................................................................50

U.S. ex rel. Biddle v. Bd. of Trustees of Leland Stanford Jr. Univ.,
    161 F.3d 533 (9th Cir. 1998) ....................................................................27

U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.,
    342 F.3d 634 (6th Cir. 2003) ....................................................................33

U.S. ex rel. Boothe v. Sun Healthcare Group, Inc.,
    496 F.3d 1169 (10th Cir. 2007) ................................................................39

U.S. ex rel. Butler v. Hughes Helicopters, Inc.,
    71 F.3d 321 (9th Cir. 1995) ......................................................................41

U.S. ex rel. Costner v. U.S.,
    317 F.3d 883 (8th Cir. 2003) ............................................................... 40-41

U.S. ex rel. Dick v. Long Island Lighting Co.,
    912 F.2d 13 (2d Cir. 1990).........................................................................33

U.S. ex rel. Dingle v. BioPort Corp.,
    388 F.3d 209 (6th Cir. 2004) ....................................................................13

U.S. ex rel. Doe v. John Doe Corp.,
    960 F.2d 318 (2d Cir. 1992).......................................................................27

U.S. ex rel. Durcholz v. FKW Inc.,
    189 F.3d 542 (7th Cir. 1999) ....................................................................40

U.S. ex rel. Duxbury v. Ortho Biotech Prods., L.P.,
    551 F. Supp. 2d 100 (D. Mass. 2008) (Zobel, J.).............................. Passim

U.S. ex rel. Englund v. Los Angeles County,
    2006 WL 3097941 (E.D. Cal. 2006)..........................................................41

U.S. ex rel. Ervin & Assocs. v. Hamilton Secs. Group, Inc.,
    370 F. Supp. 2d 18 (D.D.C. 2005) ...........................................................50

U.S. ex rel. Feingold v. AdminaStar Fed., Inc.,
    324 F.3d 492 (7th Cir. 2003) ............................................................ 10-11, 26

U.S. ex rel. Findley v. FPC-Boron Employees' Club,
    105 F.3d 675 (D.C. Cir. 1997)...........................................................12, 26, 33

U.S. ex rel. Fine v. Advanced Sciences, Inc.,
    99 F.3d 1000 (10th Cir. 1996) .......................................................... 31-32

U.S. ex rel. Fried v. West Indep. Sch. Dist.,
   527 F.3d 439 (5th Cir. 2008) ................................................................13, 32

U.S. ex rel. Gear v. Emergency Med. Assocs. of Ill.,
   436 F.2d 726 (7th Cir. 2005) ..................................................................21

U.S. ex rel. Gilligan v. Medtronic, Inc.,
   403 F.3d 386 (6th Cir. 2005) ..................................................................13

U.S. ex rel. Glaser v. Wound Care Consultants, Inc.,
   No. 1:05-CV-573, 2007 WL 4285367 (S.D. Ind. Dec. 3, 2007)...........................31

U.S. ex rel. Grynberg v. Praxair, Inc.,
   389 F.3d 1038 (10th Cir. 2004) ............................................................ 30-31

U.S. ex rel. Hagood v. Sonoma County Water Agency,
   929 F.2d 1416 (9th Cir. 1991) ................................................................40

U.S. ex rel. Hochman v. Nackman,
   145 F.3d 1069 (9th Cir. 1998) ................................................................49

U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp.,
   498 F. Supp. 2d 25 (D.D.C. 2007)................................................... Passim

U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.,
   360 F.3d 220 (1st Cir. 2004)...................................................................33

U.S. ex rel. Kennedy v. Aventis Pharms., Inc.,
   No. 03 C 2750, 2007 WL 3145010 (N.D. Ill. Oct. 23, 2007)....................................9

U.S. ex rel. Kreindler & Kreindler v. United Techs. Corp.,
   985 F.2d 1148 (2d Cir. 1993)............................................................10, 40

U.S. ex rel. LaValley v. First Nat'l Bank,
   707 F. Supp. 1351 (D. Mass. 1988) (Wolf, J.)................................................28

U.S. ex rel. LeBlanc v. Raytheon Co.,
   874 F. Supp. 35 (D. Mass. 1995) (Lindsay, J.) ..............................................28

U.S. ex rel. Luckey v. Baxter Healthcare Corp.,
   183 F.3d 730 (7th Cir. 1999) ..................................................................50

U.S. ex rel. Mathews v. Bank of Farmington,
   166 F.3d 853 (7th Cir. 1999) ..................................................................28

U.S. ex rel. McElmurray v. Consol. Gov't of Augusta-Richmond County,
   501 F.3d 1244 (11th Cir. 2007) ...............................................................14

U.S. ex rel. McKenzie v. BellSouth Telecomm., Inc.,
    123 F.3d 935 (6th Cir. 1997) .................................................................14, 27, 33

U.S. ex rel. Mistick PBT v. Housing Auth.,
    186 F.3d 376 (3d Cir. 1999)...................................................................................27

U.S. ex rel. O'Keeffe v. Sverdup Corp.,
    131 F. Supp. 2d 87 (D. Mass. 2001) .................................................. 4, 11-12, 28

U.S. ex rel. Paranich v. Sorgnard,
    286 F. Supp. 2d 445 (M.D. Pa. 2003) ................................................................32

U.S. ex rel. Precision Co. v. Koch Indus., Inc.,
    971 F.2d 548 (10th Cir. 1992) .............................................................. Passim

U.S. ex rel. Quinn v. Omnicare Inc.,
    382 F.3d 432 (3d Cir. 2004).................................................................................50

U.S. ex rel. Rost v. Pfizer, Inc.,
    446 F. Supp. 2d 6 (D. Mass. 2006),
    vacated on other grounds, 507 F.3d 720 (1st Cir. 2007).................................. Passim

U.S. ex rel. Settlemire v. District of Columbia,
    198 F.3d 913 (D.C. Cir. 1999) ............................................................................33

U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn,
    14 F.3d 645 (D.C. Cir. 1994) ........................................................... 11-13, 27

U.S. ex rel. Watson v. Conn. Gen. Life Ins. Co.,
    2003 WL 303142 (E.D. Pa. 2003),
    aff'd, 87 Fed. Appx. 257, 2004 WL 234970 (3d Cir. 2004)....................................41

U.S. ex rel. Werner v. Fuentez Sys. Concepts, Inc.,
    319 F. Supp. 2d 682 (N.D. W. Va. 2004) ............................................................41

U.S. ex rel. Wilkins v. N. Am. Constr. Corp.,
    173 F. Supp. 2d 601 (S.D. Tex. 2001) ................................................................50

U.S. ex rel. Willard v. Humana Health Plan of Tex Inc.,
    336 F.3d 375 (5th Cir. 2003) ...............................................................................50

U.S. ex rel. Wilson v. Graham County Soil & Water Conservation Dist.,
    528 F.3d 292 (4th Cir. 2008) ...............................................................................28

U.S. v. Alcan Elec. & Eng'g, Inc.,
    197 F.3d 1014 (9th Cir. 1999) .........................................................................33, 39

U.S. v. N.Y. Med. Coll.,
  252 F.3d 118 (2d Cir. 2001)..................................................................................31

Van Meter v. Smith,
  14 S.W.3d 569 (Ky. App. 2000) ............................................................................23

Wallace v. Transport Life Ins. Co.,
  841 P.2d 613 (Okla. App. 1992)............................................................................23

Wang v. FMC Corp.,
  975 F.2d 1412 (9th Cir. 1992) ........................................................................33, 41

Whiteaker v. Metro. Life Ins. Co.,
  No. CIA 0:00-2693-24, 2002 WL 32333147 (D.S.C. Nov. 13, 2002) ...................24

## STATUTES

5 U.S.C. § 8957.......................................................................................................24

31 U.S.C. § 3729(a)(1), (2), (3) ...............................................................................40

31 U.S.C. § 3730(e)(4)...........................................................................................1, 9

31 U.S.C. § 3730(e)(4)(A) ........................................................................................11

31 U.S.C. § 3730(e)(4)(B) ....................................................................... 29-30, 33, 38

False Claims Act, 31 U.S.C. §§ 3729(a)(1) and (a)(2) ..............................................3

Kan. Stat. Ann. § 74-4927(1)(B) ..............................................................................25

Me. Rev. Stat. Ann. Tit. 5, § 17925(3) ....................................................................25

Mo. Rev. Stat. § 104.110(5)......................................................................................25

Mo. Code Regs. Ann. Tit. 16, § 40-3.050(2) ............................................................25

Or. Rev. Stat. § 656.727(1)......................................................................................25

Va. Code Ann. § 51.1-1112(F) .................................................................................25

## REGULATIONS

5 C.F.R. § 84.201(b)(1)...........................................................................................................24

20 C.F.R. § 404.1505 ..............................................................................................................6

20 C.F.R. § 404.1512 ........................................................................................................ 50-51

20 C.F.R. § 404.1512(c)..................................................................................................... 52-53

68 Fed. Reg. 51,153, 51,161 ...................................................................................................52

70 Fed. Reg. 43,590, 43,602 ...................................................................................................52

71 Fed. Reg. 16,424, 16,444 ...................................................................................................53

## OTHER AUTHORITIES

John T. Boese, *Civil False Claims and Qui Tam Actions* (3d ed. 2007) ...........................14, 30, 38

Kalman Rupp & David C. Stapleton, *Growth in Disability Benefits: Explanations and
    Policy Implications 310*, (eds. 1998) ..............................................................................21, 46

Paul Verkuil & Jeffrey Lubbers, *Alternative Approaches to Judicial Review of Social
    Security Disability Cases: A Report to the Social Security Advisory Board*, ADMIN. L.
    REV., vol. 17 (2003)...............................................................................................................43

Paul Verkuil & Jeffrey Lubbers, *Alternative Approaches to Judicial Review of Social
    Security Disability Cases: A Report to the Social Security Advisory Board*, ADMIN. L.
    REV., vol. 55 (2003)...............................................................................................................22

Robert E. Rains, *Professional Responsibility and Social Security Representation: The
    Myth of the State-Bar Bar to Compliance with Federal Rules on Production of
    Adverse Evidence*, 92 CORNELL L. REV. 363, 380 (2006-2007)...............................................52

Sarah A.L. Humphreys, Office of the SSA General Counsel, *The Ethics Hour:
    Responsibilities, Obligations, and Expectations* at 2-3 (Feb. 24-25, 2005) ...........................53

## SUMMARY OF ARGUMENT

The relator, Dawn Barrett ("Barrett"), filed this *qui tam* action alleging violations of the False Claims Act ("FCA") in November 2003 against CIGNA Corporation and one of its wholly owned subsidiaries, Life Insurance Company of North America ("LINA"), a private disability insurer.[1] Like all *qui tam* actions, this litigation was filed on behalf of a federal agency, here the Social Security Administration ("SSA"). After review, the government declined to intervene and Barrett has proceeded on her own.

CIGNA now moves to dismiss for lack of subject matter jurisdiction, or, in the alternative, for summary judgment due to Barrett's inability to establish *scienter*, an essential element of any *qui tam* action. These two separate bases for dismissal have been joined because the facts on which they are based are much the same.

Barrett's complaint must be dismissed because subject matter jurisdiction is absent due to the public disclosure jurisdictional bar. See 31 U.S.C. § 3730(e)(4). This claim is based on the allegation that CIGNA requires all of its long-term disability ("LTD") claimants to file applications for Social Security Disability Insurance ("SSDI") benefits. However, CIGNA, and virtually all other private disability insurers and many public providers of disability benefits, including the federal government, have for decades required their claimants to apply for SSDI benefits. This requirement has been openly publicized, well known by the government, and never discouraged, let alone declared unlawful, by SSA. In consequence, for purposes of the FCA, this "allegation" has been "publicly disclosed" numerous times. This memorandum will identify a host of public disclosures plainly pointing out this routine practice.

---

[1] CIGNA Corporation does not write insurance. Insurance is written by LINA and other of CIGNA Corporation's wholly-owned subsidiaries. For simplicity, the Defendants will collectively be referred to as "CIGNA" unless it is necessary to distinguish between them.

Once CIGNA establishes public disclosure, Barrett must prove that she was an original source of the information on which her allegations are based. This she cannot do. Her knowledge of the information was not "direct and independent," because she did not obtain it directly. One of her attorneys, Patrick Loughren, himself the relator in the parallel and largely identical *qui tam* action filed against Unum (the "*Unum* case") a few months before the CIGNA case, furnished her with the legal theory around which she wraps her publicly disclosed allegations – allegations about which she has little knowledge or understanding.

The publicly disclosed fact that CIGNA coordinates the disability benefits it offers with the availability of federal SSDI benefits for many disabled workers, leads inexorably to the second ground on which this motion is predicated: the absence of any evidence that CIGNA acted with *scienter*. As will be seen, the SSA has long known about, met with the private disability insurance industry to discuss, and accepted the practice openly engaged in by CIGNA, as well as virtually all other private and many public providers of disability benefits, which Barrett characterizes as fraud. In fact, nearly five years after the *Unum* and *CIGNA* cases were filed under seal by Barrett's lawyers and presented to the government for its review, and notwithstanding numerous meetings between SSA and LTD insurers concerning coordination of benefits, the SSA has not told CIGNA to modify its practices and prescreen its claimants before encouraging them to apply for SSDI benefits. Indeed, the SSA's rules and regulations have never required pre-screening and the SSA does not even know what pre-screening guidelines could be applied. Because CIGNA has not been and is not now "knowingly" defrauding the government, it is manifest that *scienter* is absent as a matter of law.[2]

---

[2] Further to the *scienter* issue, the SSA has already produced documents and its designated representative has been deposed. There is no additional discovery Barrett requires regarding the state of SSA's knowledge of the practice at issue in this case. Therefore, although discovery is not closed, this *scienter* issue is ripe for the Court's consideration.

Finally, Barrett has a tag along allegation that may be described as her "adverse evidence" claim. In this claim Barrett asserts that CIGNA does not volunteer information to the SSA when an applicant for SSDI is denied LTD benefits. There is, however, no legal requirement that SSDI applicants, much less third parties such as CIGNA, voluntarily provide the SSA with such information. As will be seen, the SSA has actually expressly considered, and rejected, imposing just such a requirement on SSDI applicants; a fact well known to Barrett's attorneys. In consequence, if it is Barrett's position that the "adverse evidence" claim constitutes a separate, stand alone, violation of the FCA, it should be dismissed pursuant to Fed. R. Civ. P. 12(c), because it cannot possibly state a cause of action.

## PROCEDURAL HISTORY

Barrett filed her original Complaint under seal on November 25, 2003. In December 2004, shortly after the government declined to intervene, but before the Defendants were served, Barrett filed an Amended Complaint. In both the original Complaint and the Amended Complaint, Barrett alleged that CIGNA had violated the False Claims Act, 31 U.S.C. §§ 3729(a)(1) and (a)(2), by causing false or fraudulent claims for SSDI benefits to be presented to the SSA for payment or approval, and by causing the use of false records or statements in order to get false or fraudulent claims paid by SSA. CIGNA moved to dismiss. The Court granted this motion, but gave Barrett leave to file a Second Amended Complaint, which she did in April 2006. In her Second Amended Complaint Barrett identified, for the first time, four alleged exemplar false claims. She also added an allegation that CIGNA Corporation and LINA conspired to engage in the actions prohibited by Sections 3729(a)(1) and (a)(2), in purported violation of Subsection 3729(a)(3).

Thereafter, CIGNA filed a motion for phased discovery, asking that discovery on the public disclosure issue proceed first, as the discovery of a public disclosure could establish that the Court lacked jurisdiction over the action. The Court denied the motion in January 2007 but stated

3

that CIGNA could seek a discovery stay, if it found a public disclosure: "if I had serious concerns about whether there was subject matter jurisdiction, I would stay what was going on until I decided that issue. . . . The one that might give you the best basis to come back to me and say, 'Stay the case' would be the jurisdictional issue if you find something that you don't yet have." Tr. of Jan. 4, 2007 hearing, at 22-23; see also, e.g., U.S. ex rel. O'Keeffe v. Sverdup Corp., 131 F. Supp. 2d 87, 88 (D. Mass. 2001) (Saris, J.) (court stayed discovery in *qui tam* action pending decision on motion to dismiss for lack of jurisdiction under the public disclosure bar).

CIGNA submits that it has found numerous pre-November 2003 public disclosures of the allegations on which Barrett's case is based, and, therefore, subject matter jurisdiction is lacking. Further, it is equally clear that the government was aware of CIGNA's and the LTD industry's practice and therefore CIGNA did not act with *scienter* to defraud the government. Therefore, CIGNA has also filed a motion to stay discovery until the Court has had the opportunity to consider and rule on this dispositive motion.

## FACTUAL ALLEGATIONS

For purposes of this motion only, CIGNA assumes that all of the factual allegations in the Second Amended Complaint ("Complaint" or "Compl.") are true. These assumed facts are supplemented with undisputed facts developed during discovery. Barrett's two claims, and the factual allegations supporting them, will be described in turn.

**I.    Barrett's Claim that CIGNA Knowingly Causes Its Long-Term Disability Claimants to File Patently Ineligible SSDI Applications with the SSA.**

CIGNA sells private disability insurance to employers and individuals. Compl. ¶ 18. It also administers claims under disability plans that are self-funded by large employers. Id. ¶ 23. After sick or injured individuals exhaust their short-term disability ("STD") benefits (meaning

4

they have already been disabled for three to six months depending on the language of the applicable policy) they may become eligible for LTD benefits. Id. ¶¶ 54, 57.

Typically, LTD policies underwritten and/or administered by CIGNA contain a coordination-of-benefits provision allowing the company to reduce the claimant's LTD benefits by certain other income received by the claimant, including SSDI benefits (the "Received SSDI Offset" provision). Id. ¶¶ 62-63, 65. The policies allow CIGNA to require LTD claimants to apply for SSDI benefits. Id. ¶¶ 64, 66, 101, 132. Claimants must sign a "Reimbursement Agreement" agreeing to turn over to CIGNA any SSDI benefits they receive, if CIGNA has already paid them 100% of their LTD benefits without any offset. Id. ¶¶ 101, 120, 126-29. If claimants are directed to apply for SSDI benefits but fail or refuse to do so, the policies permit CIGNA to reduce the claimants' LTD benefits by the amount of SSDI benefits that CIGNA estimates they would receive if they did apply (the "Estimated SSDI Offset" provision). Id. ¶¶ 64, 122.

Barrett asserts that "CIGNA requires *all*[3] of the [LTD] claimants on its disability policies and those written by its subsidiaries, to apply for SSDI" (emphasis added), regardless of apparent eligibility or ineligibility under the SSA's definition of "disability,"[4] and "coerces" some

---

[3] Barrett's Complaint is not a model of clarity. In some parts she alleges that CIGNA requires "all" LTD claimants or "every" LTD claimant to apply for SSDI. E.g., Compl. ¶¶ 5, 77, 136. In other parts she alleges that CIGNA imposes this requirement only after "CIGNA determines … that the LTD claimant may be eligible for SSDI." Id. ¶¶ 64, 66. In other parts she alleges that CIGNA imposes this requirement on all LTD claimants with the sole exception of those with simple pregnancy claims. Id. ¶¶ 67, 71-72, 135. Moreover, she alleges that, in deciding which claimants to refer to SSDI assistance vendors (who, in turn, inform the claimants that they must apply for SSDI), CIGNA excepts not only claimants with simple pregnancy claims but also those with a firm return-to-work date within nine months following the onset of disability. Id. ¶¶ 67, 100-03. For the purposes of this motion, CIGNA accepts as true the broad allegation that it requires "all" LTD claimants to apply for SSDI -- although in fact, none of these allegations accurately describes CIGNA's screening protocols.

[4] Under LTD policies underwritten and/or administered by the CIGNA Companies, the claimant must be unable to perform his/her "own occupation," even if he/she can perform other work. Compl. ¶¶ 46, 58. The definition of disability under the relevant SSA regulation is "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. To meet this definition, you must have a

5

claimants into applying for SSDI even when "the nature and expected duration of their disability" allegedly make clear that they "cannot possibly qualify" for SSDI benefits. Id. ¶¶ 5, 31, 134. Barrett claims that, based on medical and vocational information in CIGNA's files at the time it directs claimants to apply for SSDI, CIGNA knows or should know that "many" claimants are patently ineligible for SSDI (id. ¶¶ 7, 8(b)), and asserts that if CIGNA would only undertake a "good faith assessment or review" of the information in its files, it would realize that "many" of the claimants cannot meet the SSA's stringent definition of "disability." Id. ¶ 7. In other words, Barrett's theory is that CIGNA causes the filing of SSDI applications that would *never,* under any circumstances, be granted by any SSA disability examiner, the SSA Appeals Council, any Administrative Law Judge or any federal district court judge reviewing an SSDI denial on appeal.

CIGNA's alleged "economic duress" is its enforcement of the Estimated SSDI Offset provision in the policies it insures and under the plans for which it administers claims. According to Barrett: "CIGNA instructs these financially stressed [claimants] that, unless they file for [SSDI], their disability checks will be reduced by the *estimated* Social Security benefit. This leaves most insureds with no option other than to file false or fraudulent claims with the Government." Id. ¶ 123 (emphasis contained in original); see also, id. ¶¶ 64, 66. Tellingly, Barrett never identifies any statement, true or false, in any claimant application for SSDI benefits. Barrett also conspicuously fails to allege that any claimants misrepresent their condition to the SSA, let alone that CIGNA instructs them to do so.

---

severe impairment(s) that makes you unable to do your past relevant work . . . or any other substantial gainful work that exists in the national economy." 20 C.F.R. § 404.1505. The distinction between these two definitions of disability is sometimes referred to as the "own occupation" versus "any occupation" distinction.

II.    **Barrett's Claim that CIGNA Violates the False Claims Act by Knowingly Failing to Disclose Adverse Evidence to the SSA.**

Barrett's tag along claim is that CIGNA "knowingly conceals" information (i.e., "adverse evidence") from the SSA which purportedly would show that its LTD claimants are ineligible for SSDI benefits. Id. ¶ 139. Specifically, Barrett alleges that, if CIGNA denies an LTD claim and the claimant has a pending SSDI application, CIGNA has a legal obligation (which it fails to meet) to notify the SSA of its denial and to give the SSA medical or vocational evidence in its claims file that is adverse to the claimant. Id. ¶¶ 142, 145. In other words, Barrett maintains that CIGNA is legally required to torpedo an insured's application for SSDI benefits if, because CIGNA has denied the insured's LTD claim, CIGNA will not benefit financially from an SSDI award to the applicant. As discussed below, Barrett knows full well that there has never been any such legal obligation.

## STANDARD OF REVIEW

"The threshold question in a False Claims Act case is whether the statute bars jurisdiction." U.S. ex rel. Rost v. Pfizer, Inc., 507 F.3d 720, 727 (1st Cir. 2007) (citing Rockwell Int'l Corp. v. U.S., 127 S. Ct. 1397, 1405-07 (2007)). "Federal courts are courts of limited jurisdiction" and "it is to be presumed that a cause lies outside this limited jurisdiction." Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994). The False Claims Act is to be "'strictly construed, and doubts resolved against federal jurisdiction.'" U.S. ex rel. Duxbury v. Ortho Biotech Prods., L.P., 551 F. Supp. 2d 100, 105 (D. Mass. 2008) (Zobel, J.) (quoting U.S. ex rel. Precision Co. v. Koch Indus., Inc., 971 F.2d 548, 552 (10th Cir. 1992)).

Further, the relator must establish that the Court has jurisdiction over each of her claims. Therefore, the Court must conduct a claim-by-claim review. See Rockwell, 127 S. Ct. at 1408-09. As it examines each claim for jurisdiction, the Court is not constrained to review only the

7

pleadings. "When evaluating a 12(b)(1) motion to dismiss, the court may conduct a 'broad inquiry' and may consider extrinsic materials, including exhibits attached to the pleadings and the evidentiary materials submitted by the parties." In re Pharma. Indus. Average Wholesale Price Litig. ("In re AWP Litig."), 538 F. Supp. 2d 367, 375 (D. Mass. 2008) (Saris, J.) (quoting Hernandez-Santiago v. Ecolab, Inc., 397 F.3d 30, 33 (1st Cir. 2005)).[5]

## ARGUMENT

Barrett's Complaint contains three counts asserting, respectively, violations of subsections (1), (2), and (3) of 31 U.S.C. § 3729(a). Those provisions state that a civil penalty must be paid to the federal government by any person who:

    (1)    knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;

    (2)    knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; [or]

    (3)    conspires to defraud the Government by getting a false or fraudulent claim allowed or paid . . .[6]

Although Barrett has organized her Complaint into three counts, her Complaint does not allege three separate theories of liability, rather it alleges only two: a failure to prescreen LTD

---

[5] A court may dismiss some claims for lack of subject matter jurisdiction and others, over which it does have jurisdiction, for other reasons, e.g., failure to state a claim. Id. at 392 (granting Rule 12(b)(1) motion to dismiss FCA allegations "to the extent they relate to best price violations"; denying motion to the extent the FCA claim was based on other theories; and granting motion to dismiss claims as to a particular defendant).

[6] In addition to failing for the jurisdictional and substantive reasons stated in this motion, Barrett's second and third counts, alleging violations of § 3729(a)(2) and (3) fail for the reasons stated in the Supreme Court's recent decision in Allison Engine Co. v. U.S. ex rel. Sanders, 128 S. Ct. 2123 (2008). In Allison Engine, the Court held that, in order to prove a violation of (a)(2), "it is . . . necessary for the defendant to intend that a claim be 'paid . . . by the Government,'" and in order to prove a violation of (a)(3), "it must be shown that the conspirators had the purpose of 'getting' the false record or statement to bring about the Government's payment of a false or fraudulent claim." Id. at 2129, 2130. Barrett does not allege that CIGNA's intent is to "get" the government to pay any allegedly false SSDI application. To the contrary, her Complaint focuses on SSDI applications that SSA denies. She alleges that CIGNA's motive is to decrease its loss reserves during the pendency of allegedly false SSDI applications that are later denied. See Compl. ¶ 227 (SSA's damages are not benefits wrongly paid out, but administrative costs that SSA incurs in processing allegedly false SSDI applications, which it then denies). Because there is no allegation that CIGNA intends to cause SSA to pay the SSDI applications which Barrett characterizes as "false claims," her counts under § 3729(a)(2) and (3) fail as a matter of law under Allison Engine.

claimants directed to apply for SSDI benefits, and, to the extent deemed a stand alone claim, the "adverse evidence" claim. See, e.g., U.S. ex rel. Kennedy v. Aventis Pharms., Inc., No. 03 C 2750, 2007 WL 3145010, at *1 (N.D. Ill. Oct. 23, 2007) (stating that allegations which "relate to [a] single scheme" state a single FCA claim, regardless of how the relator breaks out the counts in the complaint). Her two claims are addressed below.

**I.      The Court Must Dismiss or Enter Summary Judgment on Barrett's Claim that CIGNA Violates the False Claims Act by Knowingly Causing Its LTD Claimants to File Ineligible SSDI Applications with the SSA.**

Barrett's first theory of liability fails for two independent reasons. First, the Court lacks subject matter jurisdiction under the FCA's public disclosure bar, found in 31 U.S.C. § 3730(e)(4). In the alternative, assuming *arguendo* that jurisdiction exists, summary judgment should enter because the SSA has long known about and accepted CIGNA's practice, and, therefore, *scienter* is lacking.

**A.      The Claim Must Be Dismissed For Lack of Subject Matter Jurisdiction Under the False Claims Act's Public Disclosure Jurisdictional Bar.**

The False Claims Act contains the following subject matter jurisdictional bar for *qui tam* actions based on publicly disclosed allegations:

> (A)    No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

> (B)    For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C. § 3730(e)(4).

The purpose of the public disclosure jurisdictional bar is to discourage "parasitic suits, in which opportunistic plaintiffs sue based upon information already publicly disclosed or that they did not otherwise discover." U.S. ex rel. Duxbury v. Ortho Biotech Prods., L.P., 551 F. Supp. 2d 100, 103 (D. Mass. 2008) (Zobel, J.); accord, e.g., U.S. ex rel. Rost v. Pfizer, Inc., 507 F.3d 720, 729 (1st Cir. 2007); see also, U.S. ex rel. Kreindler & Kreindler v. United Techs. Corp., 985 F.2d 1148, 1158 (2d Cir. 1993) (the public disclosure jurisdictional bar is "designed to preclude *qui tam* suits based on information that would have been equally available to strangers to the fraud transaction had they chosen to look for it as it was to the relator") (internal citation omitted); U.S. ex rel. Feingold v. AdminaStar Fed., Inc., 324 F.3d 492, 496 (7th Cir. 2003) ("the purpose of a public disclosure is to alert the responsible [government] authority that fraud may be afoot").

"[C]ourts . . . read the public disclosure prong broadly, as a quick trigger, and the original source prong searchingly, because this mode of analysis construes the jurisdiction under the statute narrowly, and jurisdictional provisions are to be construed narrowly." U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp., 498 F. Supp. 2d 25, 44-45 (D.D.C. 2007); accord, e.g., U.S. ex rel. Precision Co. v. Koch Indus., 971 F.2d 548, 552 (10th Cir. 1992) ("the threshold 'based upon' analysis is intended to be a quick trigger for the more exacting original source analysis").

The jurisdictional inquiry proceeds in four steps. See Rost, 507 F.3d at 728. The Court must determine:

> (1) whether there has been public disclosure of the allegations or transactions in the relator's complaint; (2) if so, whether the public disclosure occurred in the manner specified in the statute; (3) if so, whether the relator's suit is "based upon" those publicly disclosed allegations or transactions; and (4) if the answers to these questions are in the affirmative, whether the relator falls within the "original source" exception as defined in § 3730(e)(4)(B).

Id. These questions will be examined in turn, with questions (1) and (2) collapsed and considered together.

1.    **The Definition of a "Public Disclosure."**

The fact that (i) CIGNA, specifically, and (ii) virtually all other private LTD insurers, as well as public providers of disability benefits, have routinely required all their LTD applicants also to apply for SSDI benefits has been publicly disclosed dozens of times and for decades. We begin by briefly examining what constitutes a public disclosure.

A public disclosure is one that is made in "a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media . . . ." 31 U.S.C. § 3730(e)(4)(A). The information must be "in the public domain in some capacity." U.S. ex rel. Rost v. Pfizer, Inc., 507 F.3d 720, 730 (1st Cir. 2007) (internal citation omitted). The disclosure need not be so broad as to extend to the general public. Id. at 728 n.6. "There is no requirement that a certain number of people read or receive the information." Id. at 730 n.7 (internal citation omitted).

Additionally, a public disclosure need not contain every allegation in a relator's complaint. Rather, a public disclosure has occurred if the "'general practice'" alleged in the complaint has been publicly disclosed. U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp., 498 F. Supp. 2d 25, 46 (D.D.C. 2007) (quoting U.S. ex rel. Settlemire v. District of Columbia, 198 F.3d 913, 919 (D.C. Cir. 1999)); see also, U.S. ex rel. Feingold v. AdminaStar Fed., Inc., 324 F.3d 492, 495 (7th Cir. 2003) (a public disclosure exists when "the critical elements exposing the transaction as fraudulent" are put into the public domain).

In a decision followed by several other courts, including Judge Saris in In re AWP Litig. and U.S. ex rel. O'Keeffe v. Sverdup Corp., the D.C. Circuit adopted a formula to determine whether allegations or transactions in a *qui tam* complaint have been publicly disclosed. U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn, 14 F.3d 645, 653-54 (D.C. Cir. 1994) ("Quinn"). The test is $X + Y = Z$, where $Z$ is the allegation of fraud and $X$ and $Y$ are the "essential elements." Id.

11

at 654; In re AWP Litig., 538 F. Supp. 2d at 383 (quoting Quinn). "'In order to disclose the

fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers

or listeners may infer Z, *i.e.*, the conclusion that fraud has been committed.'" U.S. ex rel.

O'Keeffe v. Sverdup Corp., 131 F. Supp. 2d 87, 94 (D. Mass. 2001) (Saris, J.) (quoting Quinn, 14

F.3d at 654). As the Quinn court explained:

> Obviously, if the elements of the fraudulent transaction (X + Y) are already public,
> plaintiff's additional information, even if nonpublic, cannot suffice to surmount the
> jurisdictional hurdles. Thus, a *qui tam* action cannot be sustained where all of the
> material elements of the fraudulent transaction are already in the public domain and
> the *qui tam* relator comes forward with additional evidence incriminating the
> defendant.

Quinn, 14 F.3d at 655 (citations omitted).

Notably, "[a] relator's ability to recognize the legal consequences of a publicly disclosed

fraudulent transaction does not alter the fact that the material elements of the violation already

have been publicly disclosed." U.S. ex rel. Findley v. FPC-Boron Employees' Club, 105 F.3d

675, 688 (D.C. Cir. 1997); accord O'Keeffe, 131 F. Supp. 2d at 97 (the relator's "unique expertise

which permits him to understand the significance of publicly disclosed statements does not" create

jurisdiction).

Further "[it] is well established that 'a relator's ability to reveal specific instances of

fraud,'" *e.g.*, exemplar claims, "'where the general practice has already been publicly disclosed is

insufficient to prevent operation of the jurisdictional bar.'" Hockett, 498 F. Supp. 2d at 50

(quoting U.S. ex rel. Settlemire v. Dist. of Columbia, 198 F.3d 913, 919 (D.C. Cir. 1999)); see

Hockett, 498 F. Supp. 2d at 49 (the jurisdictional bar will apply if the general practice has been

publicly disclosed, even if the complaint adds "the who, when, and where of . . . specific

instance[s]" that have not been publicly disclosed). Moreover, a relator cannot defeat the

jurisdictional bar merely by establishing that she has more or "better" information in her complaint

than already exists in the public domain.  See, e.g., U.S. ex rel. Precision Co. v. Koch Indus., 971

F.2d 548, 553 (10th Cir. 1992).

> **2.     Barrett's Allegation that CIGNA Imposes Its SSDI Application Requirement on "All" Its LTD Claimants Was Publicly Disclosed Before She Filed This Action in November 2003.**

The factual allegations that form the "material elements" of Barrett's claim, using the

Quinn formulation, are that CIGNA:  (x) requires all of its LTD insurance claimants[7] to apply for

SSDI without reviewing the information in its claim files to screen out those claimants who

allegedly "cannot possibly qualify" under the SSA's stringent definition of "disability;" (y)

enforces this requirement through the Estimated SSDI Offset provision in its policies; and (z)

therefore causes the filing of "thousands" of patently ineligible claims.

Therefore, if CIGNA's alleged practice of requiring *all* LTD claimants to apply for SSDI,

and its use of the Estimated SSDI Offset provision to enforce that requirement, was publicly

disclosed before Barrett filed her sealed complaint in November 2003, then the "essential

elements" of the claim were publicly disclosed.  See, e.g., U.S. ex rel. Dingle v. BioPort Corp.,

388 F.3d 209, 214 (6th Cir. 2004) (finding that public disclosure jurisdictional bar applied where

there were public disclosures of enough facts from which government could infer fraud); U.S. ex

rel. Gilligan v. Medtronic, Inc., 403 F.3d 386, 391 (6th Cir. 2005) (same, where the publicly

disclosed "allegations were sufficient to put the government on notice of the possibility of fraud");

U.S. ex rel. Fried v. West Indep. Sch. Dist., 527 F.3d 439, 442 (5th Cir. 2008) (same, where

---

[7] It is axiomatic that requiring "all" claimants to apply for SSDI benefits presupposes that CIGNA is not screening any out – including those who are, in theory, ineligible.  The fact that private disability insurers, including CIGNA, generally provide coverage when a worker is disabled from performing his "prior occupation" and that the "any occupation" SSDI standard is more restrictive is well known.  (See, supra at p. 5 n.4).  In consequence, if all LTD claimants are allegedly required to apply for SSDI benefits, workers meeting the "prior occupation" standard but in theory not the "any occupation" standard are not screened out.

alleged fraud on SSA had been publicly disclosed, even though relator "uncovered some nuggets of new, *i.e.*, nonpublic, information").

In the present case, all essential facts were indisputably disclosed. Indeed, the sheer volume of disclosures described in the next sections of this brief demonstrates that SSA, as well as anyone else interested in worker disability issues, was well aware of the practices employed by CIGNA and the industry generally – practices that SSA has never questioned over several decades of open use, and which even the Supreme Court has recently acknowledged,[8] but which one employee in one insurance company, following conversations with her attorney, suddenly decided constitute fraud. In other words, all Barrett adds to X plus Y is the novel contention that they equal fraud. This is insufficient as a matter of law.

### a.    CIGNA-Specific Public Disclosures

CIGNA's policies and practices regarding the requirement that LTD claimants apply for SSDI benefits has been plainly disclosed and discussed in numerous prior litigations.[9] The first

---

[8] The MetLife v. Glenn case recently decided by the Supreme Court concerned an LTD plan that both allowed for the offset of estimated SSDI benefits and required claimants to apply for SSDI: "As for MetLife's referral of Glenn to the agency, the plan itself required MetLife to deduct an estimated amount of Social Security disability benefits 'whether or not [Glenn] actually appl[ied] for and receive[d] those amounts,' and to assist plan participants like Glenn in applying for Social Security benefits, see *id.* Hence, it was not the conflict that prompted MetLife to refer Glenn to the agency, but the plan itself, a requirement that any administrator, whether conflicted or not, would be obligated to enforce." Metro. Life Ins. Co. v. Glenn, 128 S. Ct. 2343, 2355 (2008) (Roberts, C.J., concurring) (citations omitted). None of the Justices criticized these plan requirements, much less implied that they were somehow unlawful.

[9] In Rost, the First Circuit stated in dictum that a public court filing might constitute a public disclosure. Rost, 507 F.3d at 728 n.5. Judges Zobel and Saris recently examined the issue and both determined that "'any information disclosed through civil litigation and on file with the clerk's office'" can constitute a public disclosure. U.S. ex rel. Duxbury v. Ortho Biotech Prods., L.P., 551 F. Supp. 2d 100, 105-06 (D. Mass. 2008) (Zobel, J.) (dismissing *qui tam* action for lack of jurisdiction because the case was based upon allegations that had been asserted in a prior civil lawsuit) (quoting U.S. v. Northrop Corp., 59 F.3d 953, 966 (9th Cir. 1995)); accord In re AWP Litig., 538 F. Supp. 2d 367, 377 (D. Mass. 2008) (Saris, J.) ("Although the First Circuit has not addressed the issue, it is generally accepted that publicly available documents, such as a complaint filed in conjunction with a civil lawsuit, qualify as public disclosures under the statute."). Every appellate court to examine the issue has reached the same conclusion. See, e.g., U.S. ex rel. McElmurray v. Consol. Gov't of Augusta-Richmond County, 501 F.3d 1244, 1253 (11th Cir. 2007); U.S. ex rel. McKenzie v. BellSouth Telecomm., Inc., 123 F.3d 935, 939 (6th Cir. 1997); John T. Boese, CIVIL FALSE CLAIMS AND *QUI TAM* ACTIONS § 4.02[B] at 4-61 (3d ed. 2007) ("Every appellate court to consider the issue has concluded that discovery materials and other documents that are actually *filed* with a court are publicly disclosed.") (citing cases).

presently identified public disclosure occurred in a 1977 case called <u>Mays v. Ins. Co. of N. Am.</u>
filed against Insurance Company of North America ("INA"), which was a predecessor company to
CIGNA Corporation. John Mays claimed the insurer had wrongly offset his SSDI benefits against
his LTD benefits. In his Motion for Rehearing, he asserted that the insurer could require claimants
to apply for SSDI: **"As to Social Security, the insurer can ... insist upon prompt application
and pursuit of such benefit by its insured."** (emphasis added.) (<u>Mays v. Ins. Co. of N. Am.</u>, No.
77-2604, Mot. for Reh'g p. 3 (Mich. App. Ct. Sept. 8, 1978)) (copy of Motion for Rehearing
attached to Affidavit of Richard C. Abati ("Abati Aff.") as Exhibit A). Mays based his argument
on the Estimated SSDI Offset provision in the INA policy, which stated: "'The Weekly Benefit
Amount shall be reduced by the weekly pro-rata portion of . . . the primary disability monthly
benefit payable under the Federal Social Security Act regardless of actual receipt of such benefit
due to the Insured's failure to apply therefor . . . .'" <u>Mays v. Ins. Co. of N. Am.</u>, 284 N.W.2d 256,
257 (Mich. 1979) (quoting policy).

Another public disclosure occurred in <u>Rowell v. CIGNA</u>, C.A. No. 96C 8076 (N.D. Ill.).
The complaint was filed in December 1996 by an employee of The Pullman Company. Attached
to the complaint as an exhibit was the Summary Plan Description ("SPD") for Pullman's LTD
plan, which was insured by LINA. Page 27 of the SPD states, **"You Must Apply for Social
Security."** (emphasis added). (Copy of Complaint and LTD Plan attached to Abati Aff. as Exhibit
B). <u>See</u>, also, <u>Rowell v. Life Ins. Co. of N. Am.</u>, No. 96 C 8076, 1997 WL 529556, at *6 (N.D.
Ill. Aug. 18, 1997) (final pre-trial order discussing "the social security offset applicable to the
payment of disability benefits").

A third set of public disclosures occurred in a 1996 Kentucky state court action entitled:
<u>Deaton v. Conn. Gen. Life Ins. Co.</u>, C.A. 96-CI-00078 (Martin Circuit Ct. Ky.). The action

15

concerned an LTD insurance policy issued by a CIGNA subsidiary, Connecticut General Life

Insurance Company ("CGLIC").  The plaintiffs were two lawyers who represented an LTD

claimant, Grover Murphy, pursue SSDI benefits.  After the SSDI benefits were awarded, CGLIC

invoked the SSDI offset provision in its policy and demanded that Mr. Murphy submit the

overpayment.  The plaintiff lawyers demanded that CGLIC pay their legal fees, but the company

declined to do so.  The lawyers sued CGLIC for quantum meruit.  The trial court entered summary

judgment for CGLIC, holding that the lawyers' claim was preempted by ERISA.  The Kentucky

Court of Appeals affirmed.  Deaton v. Conn. Gen. Life Ins. Co., 17 S.W.3d 896 (Ky. Ct. App.

2000).

Many of Barrett's specific factual allegations in this case are identical to the allegations

that were publicly disclosed in the plaintiff lawyers' opposition to Connecticut General's motion

for summary judgment in Deaton, filed in October 1998 (the "Deaton Opp.") (copy attached to

Abati Aff. as Exhibit C).  The following comparisons are examples:

- The Deaton plaintiffs alleged of CGLIC:  *They required their beneficiaries to apply for SSDIB* . . . ."  Deaton Opp. at 14 (emphasis added); see also, id. (admitting that "[t]his scheme may be legal").  Cf. Barrett Compl. ¶ 5 ("CIGNA requires all [LTD] claimants . . . to apply for SSDI").

- Grover Murphy's SSDI application, admitted in evidence as part of the administrative hearing, stated that he was **"only filing because insurance company requires him to."**  Deaton Transcript from hearing before the ALJ, at 3 (Feb. 13, 1991) (emphasis added) and Claimant's SSDI application, Box 18C (copies attached to Abati Aff. as Exhibit D).  Cf. Barrett Compl. ¶ 123 (because their LTD benefits will be reduced if they do not apply for SSDI benefits, "most insureds [are left] with no option other than to file" SSDI applications).

- The LTD policy issued by CGLIC contained an Estimated SSDI Offset provision.  See Deaton Opp. at 2-3 **"Under the insurance policy LTDIB [long-term disability insurance benefits] would be offset by 100% of any . . . Social Security Disability (SSDIB) which Grover received or was eligible to receive.  The policy presumed eligibility and required the beneficiary, Grover[,] to prove otherwise . . ."** (emphasis added.)  Cf. Barrett Compl. ¶¶ 63, 64, 66 (policies issued or administered by CIGNA "entitle CIGNA to reduce the LTD claimant's LTD benefits by . . . the

*estimated* SSDI benefit to which CIGNA determines the LTD claimant would be entitled if [he/she] applied for SSDI") (emphasis contained in original).

- The plaintiffs in Deaton alleged: **"Cigna threatened to reduce LTDIB payments unless Grover hired a lawyer and pursued SSDIB . . . . [Later,] Cigna threatened, by phone and by letter, to start deducting SSDIB immediately from his LTDIB if Grover did not re-file his SSDIB claim."** (emphasis added.) Deaton Opp. at 3; id. at 7, 8 (Connecticut General "threatened" to reduce the claimant's LTD benefits "based on [an] estimated [amount of] SSDIB"). Cf. Barrett Compl. ¶¶ 67 (CIGNA "threaten[s] claimants that if they refuse to file, they will lose a substantial portion of their disability benefits"), 101 (a CIGNA case manager "contacts the claimant, by letter and/or by telephone, and makes the following points [ ]: . . . if the claimant refuses to cooperate with CIGNA and does not apply for SSDI, CIGNA will . . . offset an estimated benefit amount from the claimant's disability benefit"), 131 ("[m]any . . . policies issued by CIGNA subsidiaries . . . require that LTD claimants not only file for SSDI benefits, but that they continue to appeal if the SSDI claim is denied").

- **CGLIC required Grover to choose between receiving lower LTD benefits while his SSDI application was pending, or receiving the full amount of LTD benefits and then repaying to CGLIC any overpayment that accrued as a result of SSDI benefits which he later received**. (emphasis added) Deaton Opp. at 3-4. Cf. Barrett Compl. ¶ 101 (claimants must choose between not applying for SSDI, in which case their LTD benefits are reduced by their estimated SSDI benefits, or applying for SSDI benefits, in which case, if SSDI is awarded, "the claimant must notify CIGNA and will owe that 'overpayment' to CIGNA").

- The Deaton plaintiffs alleged: **"Grover was told by Cigna he had to sign a 'REIMBURSEMENT AGREEMENT' [which stated] 'I agree that I will request a reconsideration of my claim by the [SSA], and if necessary, appeal my claim for Social Security benefits . . .'"** (emphasis added.) Deaton Opp. at 4. Cf. Barrett Compl. ¶ 128 ( "The Reimbursement Agreement . . . provides that . . . CIGNA's agreement not to reduce benefits is valid only if the claimant provides proof that . . . he or she has applied for [SSDI] benefits . . . [and] 'any and all appeals were made for these benefits'").

- CGLIC made Grover sign the Reimbursement Agreement although he was "already entitled" to "full LTDIB payments." Deaton Opp. at 4. Cf. Barrett Compl. ¶ 5 ("CIGNA requires all . . . claimants . . . to apply for SSDI as a condition of receiving the full LTD benefits which the claimants are entitled to receive").

- After an ALJ denied the claimant's SSDI application and the SSA Appeals Council affirmed, the claimant "had no choice . . . but to appeal [to] . . . the Federal District Court" in light of the Reimbursement Agreement he had signed. Deaton Opp. at 5-6. Cf. Barrett Compl. ¶ 123 (CIGNA's offset of estimated SSDI benefits "leaves most insureds with no option other than to" apply for SSDI benefits and appeal any denials).

A fourth set of public disclosures occurred in Edwards v. Life Insurance Co. of North

America, 245 F.3d 791 (5th Cir. 2000). Faye Edwards challenged Life Insurance Company of

North America's (LINA's) decision to deny her LTD claim. The district court entered summary judgment for LINA and the Fifth Circuit affirmed. In her brief to the appeals court, Ms. Edwards claimed that LINA should be estopped from denying her claim "by its conduct in demanding that [Edwards] seek [SSDI] under a [ ] claim of total disability." Appellant's Brief (filed July 11, 2000), *available at* 2000 WL 34215785, at *5-6. She asserted that LINA's finding that she was not totally disabled under the LTD policy was "[s]trange[]" given that LINA had sent her a letter telling her that "in order to obtain [LTD] benefits ... she would be required to file a claim for [SSDI] in which she would have to assert that she was totally disabled." Id. at *5. LINA's letter, she asserted, "not only suggest[ed], but demand[ed] that she file an application for [SSDI] on the premise that she was totally disabled." Id. at *13. In the letter, LINA "went so far as to threaten to estimate her potential Social Security benefits, and deduct [the] amount ... from her [LTD] benefits." Id. at *13-14.[10]

A fifth set of public disclosures occurred in an Americans with Disabilities Act lawsuit filed in 2001 called Picinich v. United Parcel Service. Plaintiff was an employee who filed for LTD benefits under a Plan self-funded by his employer but where claims were administered by LINA. He filed for SSDI because the plan required him to. Specifically, the plan required every claimant "*to apply, reapply, and appeal any denials of Social Security Disability insurance benefit[s] . . . to which you may be entitled, until all such applications and appeals are exhausted.*" Picinich v. UPS, 321 F. Supp. 2d 485, 497 (N.D.N.Y. 2004) (quoting plan) (emphasis added). This requirement in the LINA-administered Plan was publicly disclosed on November 13, 2003, when plaintiff in Picinich filed a copy of the plan as an exhibit in support of his motion for summary judgment. See Picinich v. UPS, C.A. No. 5:01-CV-01868 (N.D.N.Y.),

---

[10] Obviously, LINA had not prescreened Ms. Edwards.

Exhibit 22 attached to List of Plaintiff's Exhibits, Responses to Interrogatories, and Deposition

Transcripts filed in support of Plaintiff's Motion For Summary Judgment (filed Nov. 13, 2003)

(copy attached to Abati Aff. as Exhibit E). Page 113 of the Plan stated: *"It is a requirement of*

*the Plan that you apply for the Social Security disability insurance benefit* . . . . You are also

required to appeal any denials. If you do not apply or appeal denials, the claims administrator

[CIGNA] will estimate the Social Security amount that you could have received and offset your

benefit by that amount" (emphasis added).

A sixth set of public disclosures occurred in a case filed in federal court in Pennsylvania in

January 2003. Kelly v. Conn. Gen. Life Ins. Co., Case No. 03-CV-00315 (E.D. Pa.). The action

concerned an LTD plan where claims were administered by CIGNA Corporation subsidiary

CGLIC. The plaintiff, John Kelly, alleged that CGLIC had acted arbitrarily and capriciously when

it had denied his claim for LTD benefits after requiring him to apply for SSDI, which he had done

successfully. See Kelly Am. Compl. ¶¶ 12, 13, 24, 35 (filed Apr. 15, 2003) ("Upon the instruction

and demand of Defendant, Plaintiff applied for Social Security Disability."); Exhibit A to Kelly

Am. Compl. (SPD for LTD plan) at p.10 ("You should apply for Social Security benefits at the

same time that you apply for LTD benefits.") (copies attached as Exhibit F to Abati Aff.).[11] In the

form letter it sent Mr. Kelly when he filed his LTD claim, CGLIC informed him that it would

offset estimated SSDI benefits unless he applied for SSDI and signed a Reimbursement

Agreement. The letter stated in relevant part:

> The contract allows us to estimate, beginning with the 6th month of disability, the
> amount of Social Security benefits you and your dependents would be entitled to
> receive and to reduce your [LTD] benefits accordingly.
>
> However, to avoid financial hardship, we will agree not to deduct an estimated
> Social Security benefit prior to your receipt of a Social Security Award if you:

---

[11] Again, this demonstrates that CGLIC performed no prescreening.