UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| *ex rel.* DAWN BARRETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 03-12382-MLW |
| | ) | |
| CIGNA CORPORATION and LIFE | ) | |
| INSURANCE COMPANY OF NORTH | ) | |
| AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## RELATOR'S OPPOSITION TO DEFENDANTS' MOTION TO STAY DISCOVERY

Relator Dawn Barrett respectfully opposes Defendants' motion to stay. As explained below, the Court should deny any stay of discovery and should postpone further briefing or consideration of Cigna's "Motion to Dismiss" until the parties have completed fact discovery.

## I.     Introduction

Defendants offer no justification for staying discovery, pending resolution of their motion to dismiss the complaint, let alone the good cause required for such extraordinary relief. Cigna's motion to dismiss is utterly lacking on the current record and fails to present the public disclosure "silver bullet" this Court said *might* justify a stay of discovery. *See* January 4, 2007 Hearing Transcript, at 15. Moreover, the motion to dismiss is premature exactly because discovery is ongoing and must be completed to afford Relator a fair opportunity to respond to both arguments Cigna offers in support of dismissal.[1]

---

[1] Relator served a comprehensive 30(b)(6) deposition notice on May 19, 2008. To date, despite Relator's repeated requests, Cigna has provided dates for only one series of topics, on the now largely undisputed issue of Cigna's electronic data production. *See* Letter from R. Abati to

*(Footnote continued)*

Should the Court decide to proceed to the merits of Defendants' motion to dismiss at this time, Relator will file a timely opposition to the motion on September 30. But because the motion's complete lack of merit is relevant to the court's consideration of the Defendant's present request to stay discovery pending resolution of that motion, Relator responds to the motion to dismiss here.

**Public Disclosure.** Cigna's motion to dismiss first asserts that Relator's suit is barred by the so-called "public disclosure bar" of the False Claims Act ("FCA"), which deprives a Court of jurisdiction over parasitic suits based upon allegations or transactions of fraud publicly disclosed in statutorily specified fora. But the "disclosures" relied on by Cigna do not address the transactions alleged in Relator's complaint, much less the key fact that makes Cigna's conduct fraudulent: that it ***knowingly caused ineligible claimants to apply for SSDI***. Accordingly, Defendants make no showing of any colorable public disclosure.

Of course, even if Defendants had made such a showing — and they have not — dismissal still would be inappropriate because Relator is plainly an "original source" under the FCA. The Relator has direct and independent knowledge of the fraudulent transactions disclosed in the Complaint which she gained as an employee of the Defendant, and which she voluntarily provided to the government before filing suit.

**Government Knowledge.** Alternatively, Cigna asks the Court to rule *as a matter of law* that Cigna lacked the requisite scienter under the FCA because the Social Security Administration was aware of Cigna's "practices." But nowhere does Cigna suggest that the

---

C. Nadler, July 10, 2008 (Nadler Decl. Ex. A). Cigna's delay in providing deposition dates is but the latest example of Cigna's deliberately dilatory tactics which is further detailed in Relators' pending motions to compel. *See* Relator's Mot. for an Order Compelling Disclosure of Claimant Files and Information, Docket No. 110; Relator 's Mot. to Compel, Docket No. 118.

Government was aware that Cigna was knowingly coercing ineligible persons to submit claims (something Cigna denies it was doing) and the Social Security Administration's own testimony about what it knew of Cigna's practices demonstrates that the Government did not have such knowledge.

Moreover, government knowledge is not a defense to a False Claims Act allegation. At most, it is one fact the jury can weigh in determining whether Cigna acted with actual knowledge, reckless disregard, or deliberate ignorance of the falsity of the claims. Government knowledge is only relevant to the scienter question, moreover, if Cigna can show that: (a) the government was fully informed that Cigna was causing insureds they knew to be ineligible to make claims for SSDI; (b) the government approved Defendants' causing the submission of knowingly ineligible claims; *and* (c) Cigna was aware of this and acted in reliance on it. *See, e.g.*, *United States v. Southland Mgmt. Corp.*, 288 F.3d 665, 682, n.27 (5th Cir. 2002) (concurring opinion). Cigna has made no such showing. Indeed, the very "evidence" upon which Cigna relies establishes exactly the opposite.

In considering scienter, moreover, the jury will not be limited to considering any government knowledge argument Cigna might offer. The jury will weigh all evidence of Cigna's state of mind, including ample evidence from Cigna's own files demonstrating that it knowingly caused the submission of false claims.

**Redacted**

3

**Redacted**

Cigna's claim of government knowledge is an issue for the Court and the jury to consider — together with all evidence bearing on scienter — when fact discovery has closed and the case progresses to summary judgment and trial.

**II.    The Court Should Deny Cigna's Motion to Stay Discovery**

Staying discovery for pending dispositive motions is the exception, rather than the rule. *Cotracom Commodity Trading Co. v. Seaboard Corp.*, No.97-2391, 1999 U.S. Dist. LEXIS 13537, at *4-5 (D. Kan. Aug. 12, 1999).  "Unnecessary stays delay litigation.  Stays encourage dilatory motions and  frustrate the purposes of Fed. R. Civ. P. 1 'to secure the just, speedy, and inexpensive determination of every action.'"  *Id. at *4; Coca-Cola Bottling Co. v. Grol*, No. 92-7061, 1993 U.S. Dist. LEXIS 3734, at *6 (E.D. Pa. Mar. 3, 1993) ("Motions to stay discovery are not favored because when discovery is delayed or prolonged it can create case management problems which impede the court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems.").  Accordingly the moving party must make a strong showing of "good cause" by demonstrating a particular need for protection.  *Simpson v. Specialty Retail Concepts, Inc.*, 121 F.R.D. 261, 263 (M.D.N.C. 1988); *see also Coca-Cola Bottling Co.*, 1993 U.S. Dist LEXIS 3734, at * 9 ("A Party moving for a protective order under Rule 26(c) must make a strong showing of 'good cause' by demonstrating a particular need for protection.").

Cigna makes no such showing.  ***First***, Cigna's motion to dismiss is wholly without merit. The motion does not articulate a public disclosure of the allegations or transactions of fraud described in the Relator's complaint; even if it did, the complaint is not based upon any such disclosures, and even if it were, the Relator is clearly the original source of the information underlying the complaint.  *See Simpson*, 121 F.R.D. at 263 (stay inappropriate unless motion

appears sufficiently meritorious to justify belief that ruling will eliminate need for further

discovery). The alternative ground for dismissal — that Cigna lacked scienter because the

government had knowledge of what it was doing — is both wrong as a matter of law, and a

contested factual issue that is not appropriate for resolution prior to the completion of discovery.

*Second*, even if Cigna had made a colorable claim that the public disclosure bar was

implicated, which it has not, resolution of that issue at this time would be inappropriate because,

as explained in Section III, *below*, the Relator has not had the full and fair opportunity to develop

a factual record needed to oppose Cigna's motion. Accordingly, the requested stay would

*prevent* the parties from completing the discovery necessary for the Court to address Cigna's

dispositive motion. *See Valedon Martinez v. Hosp. Presbiteriano de la Comunidad, Inc.*, 806

F.2d 1128, 1132 (1st Cir. 1986) ("while the Court may look to evidence outside of the pleadings

in deciding a motion to dismiss based on lack of jurisdiction, it must "afford the nonmoving

party an 'ample opportunity to secure and present evidence relevant to the existence of

jurisdiction'") (citations omitted); *see also Padilla-Mangual v. Pavia Hosp.*, 516 F.3d 29, 34 (1st

Cir. 2008) (reversing dismissal based on lack of subject matter jurisdiction because district court

did not permit plaintiff opportunity to fully develop the factual record).

### III. The Court Should Postpone Further Briefing or Consideration of the Motion to Dismiss and Alternative Summary Judgment Motion Until the Close of Discovery

In its August 26, 2008 Order, the Court asked whether briefing on Cigna's underlying

motion should go forward. It should not. Briefing and an evidentiary hearing on Defendant's

motion to dismiss would be pointless before Relator has been given a full and fair opportunity to

develop this evidence and present it to the Court. *See Pavia Hosp.*, 516 F.3d at 34; *Hosp.*

*Presbiteriano*, 806 F.2d at 1132. Similarly, briefing on Cigna's alternative motion for summary

judgment is also premature. Rule 56(f) recognizes that the Court "should refrain from

entertaining summary judgment motions until after the parties have had a sufficient opportunity to conduct necessary discovery." *Velez v. Awning Windows, Inc.*, 375 F.3d 35, 39 (1st Cir. 2004).

Relator has noticed a timely Rule 30(b)(6) deposition of Cigna.[2] To date, Cigna has not provided the person most knowledgeable on any of the noticed topics and has provided dates for only one series of topics. Indeed, Cigna did not produce a single witness for deposition in this case until today, September 5, 2008 (and that witness will testify concerning electronic records, not public disclosure). Cigna, moreover, has not completed its document production, and has not made available any of the claims files requested by Relator in order to perform an analysis of a sample of Cigna's claims files.[3] Cigna's delay in providing discovery and attempt to "run out the clock" should not be rewarded by considering a motion for summary judgment masquerading as a motion to dismiss on an incomplete and insufficient record.[4]

The ongoing fact discovery will corroborate that Cigna knowingly caused ineligible claimants to submit claims for SSDI. Thus, Cigna's motion, based on an assertion that it lacked the requisite "scienter" must certainly wait until Relator has, at the very least, been given the opportunity to take full discovery on what Cigna knew when it caused claimants to submit

---

[2] *See* Relator's Deposition Notice of Defendant Cigna Corporation and Life Insurance Company of North America Pursuant to Fed. R. Civ. Pro. 30(b)(6) (Nadler Decl. Ex. E). Nine of Relator's subject matters for deposition address public disclosure issues, including Cigna's contentions that Relator is not an original source and that the Social Security Administration has been aware of Cigna's practices.

[3] Relator has also had to file motions to compel discovery from Cigna, which the Court will hear at the September 15, 2008 hearing. *See* Electronic Notice of Hearing on Motion (July 10, 2008).

[4] It took Cigna more than six months and five different attempts to even produce electronic data for some of its claims files. Due to the delay in producing usable data, Relator was only able to begin selecting her statistical sample on August 21, 2008.

claims to the Social Security Administration. To be sure, even the limited evidence Cigna has produced to date speaks volumes of what Cigna really "knew" about the claims it was causing claimants to submit. *See* Email from Manager of Offset Operations to Assistant Vice President of Metrics and Outcomes (LINA 0226245 at LINA 0226246 (Nadler Decl. Ex. B))

**Redacted**

Similarly, while there is no need to reach the question whether the Relator is the original source of the information in the complaint because Cigna has failed to identify any public disclosures, if the Court elects to address that issue, a full factual record has yet to be developed in this case further corroborating (through discovery of Cigna's employee training materials as well as possible testimony from Ms. Barrett's co-workers) that Relator is an original source of the allegations in the Second Amended Complaint. For all of these reasons, briefing should be postponed until after the close of discovery.

**IV.    Cigna's Motion to Dismiss is Meritless**

Should the Court decide to go ahead with briefing on Cigna's motion to dismiss prior to the close of discovery, Relator will submit a full opposition on September 30, 2008. *See* Order on Motion for Extension of Time (Aug. 29, 2008). Nevertheless, the weakness of Cigna's motion is relevant both to the motion to stay as well as to whether the Court should even consider the motion before the close of discovery.

**A.    Cigna's "Public Disclosure" Motion is Meritless**

Section 3730(e) of the False Claims Act bars a *qui tam* case that is "based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless . . . the person bringing the action is an original

source of the information." 31 U.S.C. § 3730(e)(4)(A). It is well-settled that a *qui tam* case may

be dismissed pursuant to Section 3730(e) only if the movant demonstrates three distinct

requirements. **First**, the movant must demonstrate that the allegations of fraud, as set out in the

complaint, were "publicly disclosed" within the meaning of the statute before plaintiff filed the

action. *See United States ex rel. LaValley v. First Nat'l Bank of Boston*, 707 F. Supp. 1351, 1366

(D. Mass. 1988) (Wolf, J.). **Second**, the movant must demonstrate that plaintiff's allegations are

"based upon" the publicly disclosed allegations. *See United States ex rel. Rost v. Pfizer, Inc.*,

446 F. Supp. 2d 6, 15 (D. Mass. 2006) (*overruled on other grounds*) ("*Rost I*"). "If the answer to

either of these questions is 'no,' then the inquiry ends and [the] court has jurisdiction over

Plaintiff's claims." *Id*. "If the answers to the first two questions are 'yes,' then the court must

consider [the **third** requirement:] whether Plaintiff is an 'original source' of the information in

his complaint. If Plaintiff is an 'original source,' [she] may prosecute [her] *qui tam* action before

this court." *Id*.; *see also LaValley*, 707 F. Supp. at 1366. Cigna's motion does not establish any

of these requirements.

### 1.    Cigna Has Not Identified a Public Disclosure

To constitute a "public disclosure" within the meaning of 31 U.S.C. § 3730(e)(4), the

disclosure must identify the "allegations or transactions of fraud" identified in the Relator's

complaint. *See A-1 Ambulance Serv., Inc. v. California*, 202 F.3d 1238, 1243 (9th Cir. 2000).

None of the so-called "disclosures" identified by Cigna actually disclose one of the key elements

of Cigna's fraud: that Cigna caused to be submitted claims for SSDI *it knew to be without merit.*

*See, e.g.*, Second Amended Complaint ("SAC") ¶ 68 ("CIGNA routinely directs its insureds that

they should apply for SSDI even if it is known or readily foreseeable that they are or will be

eligible to return to work shortly after their SSDI claim is filed."); SAC ¶ 78 ("At the time

CIGNA causes the submission of claims for SSDI benefits, CIGNA has relevant information in

8

each of the LTD claimants' files that demonstrates that many thousands of LTD claimants are not eligible for SSDI under well established law."). For this reason alone, the Court should deny Cigna's motion to dismiss. *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 653-54 (D.C. Cir. 1994).[5]

Moreover, the suggestion that *certain* paragraphs of Relator's complaint appear similar to those filed in other lawsuits with fundamentally different allegations is not relevant to the public disclosure analysis. ("[T]he courthouse doors do not swing shut merely because innocuous information *necessary though not sufficient* to plaintiff's suit has already been made public." *Id.* at 657 (emphasis added)). To ascertain whether each of the essential elements of fraud have been disclosed, courts follow the simple test originally articulated by the D.C. Circuit: "If X + Y = Z, Z represents the *allegation* of fraud and X and Y represent its essential elements. In order to disclose the fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, *i.e.*, the conclusion that fraud has been committed." *Id.* at 653–54 (emphasis in original); *see also In re Pharm. Indus. Average Wholesale Price Litig.*, 538 F. Supp. 2d 367, 383 (D. Mass. 2008) (adopting *Springfield Terminal* analysis to determine whether a public disclosure of the allegations or transactions had occurred).

All of the statements identified in Cigna's motion are facially insufficient to raise the public disclosure issue because, at a minimum, none of them disclose the false state of affairs — the "Y" in the formula — that Cigna causes ineligible insureds to submit claims for SSDI

---

[5] In the related action *United States ex rel. Patrick J. Loughren v. UnumProvident Corp.*, Civ. Action No. 03-11699-PBS, Unum Provident Corporation argued at summary judgment that similar "disclosures" were sufficient to defeat jurisdiction, and that summary judgment motion was withdrawn. *See* Defendants' Mem. in Support of Their Mot. for Summ. J., Docket No. 147-1. Judge Saris has not found any public disclosure of the very similar allegations made in the *Unum* case, has indicated that the Court will deny summary judgment in that matter, and has set the trial for later this month.

*knowing* that its insureds do not meet the statutory definition of disability. To the contrary, each of these alleged "disclosures" reveal only offsets for payments to eligible claimants, or refer to payments for which a person *would have been eligible*:

- The *Mays* case (Mot. to Dismiss, at 15), notes expressly that "there is absolutely no specific language" in the policy "that obligates an employee to apply . . . for social security disability benefits." *Mays v. Ins. Co. of N. Am.*, 284 N.W.2d 256, 258 (Mich. 1979). However, if the employee refused to apply for SSDI, the policy provided that "the benefit which *would have been payable* may be set off." *Id. at 259* (emphasis added).

- The *Rowell* case (Mot. to Dismiss, at 15), involved an employee who *received* SSDI but claimed he was denied private benefits by his employer and by Cigna. *Rowell v. Life Ins. Co. of N. Am.,* No. 96 C 8076, 1997 WL 529556, at *2-*4 (N.D. Ill. Aug. 18, 1997). Because the employee *received* SSDI it disclosed nothing about Cigna's practices with respect to a claimant Cigna knew to be ineligible for SSDI.

- The *Deaton* case (Mot. to Dismiss, at 15-16 ), similarly involved Cigna's actions in seeking an offset of private disability payments "after the SSDI benefits were awarded." *Id.,* at 16; *Deaton v. Connecticut Gen. Life Ins. Co.*, C.A. No. 96-CI-00078 (Ky. Cir. Ct.). Because the case involved a meritorious claims for SSDI benefits, it is irrelevant to this lawsuit.

- With respect to *Edwards* (Mot. to Dismiss, at 17-18), Cigna now cites to an insured's appellate brief complaining that Cigna subsidiary Lina encouraged the insured to apply for SSDI but then denied private disability benefits. *Id.* Cigna fails to advise the Court that it prevailed in that appeal by filing a response advising that "[a]lthough Edwards claims that LINA encouraged her to file a claim for social security benefits, ***the record only serves to prove that LINA was wholly indifferent on the subject.***" Br. of Appellee, *Edwards v. Life Ins. Co. of N. Am.*, No. 00-10500, 2000 WL 34215781, at *24 (5th Cir. Aug. 9, 2000) (emphasis added). Cigna explained that its letter on the subject "can hardly be construed as an effort to take the position that Edwards was entitled to benefits or to assist in procuring such benefits." *Id.*

- The *Picinich* case (Mot. to Dismiss, at 18), disclosed at most that UPS had a Cigna-administered insurance plan that required every claimant to apply for SSDI benefits ***"to which you may be entitled."*** *Id.* (emphasis in original); *Picinich v. United Parcel Serv.*, 321 F. Supp. 2d 485, 497 (N.D.N.Y. 2004). Here, Relator challenges Cigna's knowingly causing ***ineligible*** claimants to make claims, and thus it is irrelevant that *Picinich* disclosed a requirement that claimants pursue SSDI claims to which they may be entitled.

- The purported disclosure in the *Kelly* case (Mot. to Dismiss, at 19), similarly involved a Cigna letter indicating that if the insured refused to make a claim for SSDI, the company could estimate and offset "the amount of Social Security Benefits you and your dependents ***would be entitled to receive.***" *Id.* (emphasis added). In *Kelly*, moreover, the plaintiff claimed he *was* totally disabled. *See, e.g.*, Amended Civil Action, *Kelly v.*

10

*Connecticut Gen. Life Ins. Co.*, No. 03-315, at 2 (E.D. Pa. Aug. 22, 2008) (where Mr. Kelly alleged that "Plaintiff became totally disabled . . . ."). Accordingly, the *Kelly* material discloses nothing about the cases at issue here, where Cigna knows the insured is *not* eligible for SSDI.

- Finally, the *Harker* case (Mot. to Dismiss, at 20) involved a claimant who was *awarded* SSDI who sued after Cigna terminated private disability benefits because she was no longer disabled. *Id.*; *Harker v. Life Ins. Co. of N. Am.*, No. 03-20587 (D. Fla. Mar. 14, 2003). The policy in question in *Harker* stated that Cigna would "assume the Employee . . . [is] receiving Other Income Benefits *if they may be eligible for them*." *Id.*, at 21 (emphasis added). Again, the *Harker* "disclosures" have nothing to do with Relator's claim that Cigna knowingly requires *ineligible* claimants to make claims for SSDI.

Each of the seven "Cigna-specific" documents thus concerns conduct with respect to individual claimants — most of whom had been determined to be *eligible* for SSDI — as opposed to any systematic practice of Cigna to, in the words of the Complaint, to knowingly cause SSDI claims by "claimants . . . not eligible for SSDI under well established law." SAC ¶ 78. None of the purported Cigna-specific disclosures indicate that Cigna knowingly required all insureds, including those known to be ineligible for SSDI benefits, to submit claims to the Social Security Administration.

Cigna's remaining "disclosures" — these purportedly of a so-called "Industry-Wide Practice" — similarly fail to reveal the key element of Ms. Barrett's allegations. These "disclosures" indicate, at most, that offset provisions are not uncommon in LTD policies offered by employers and private insurers, and that LTD benefit providers may require claimants to submit claims for SSDI benefits to which they are entitled.[6] Nothing more is revealed by the

---

[6] Some of Cigna's identified "disclosures" struggle even to make this innocuous point. *See, e.g.,* Paul Verkuil & Jeffrey Lubbers, "Alternative Approaches to Judicial Review of Social Security Disability Cases," 55 Admin. L. Rev. 731, 734 (Fall 2003) (discussed at Mot. to Dismiss at 22) (the number of disability claims is expected to rise due, in part, to "the possibility" that private insurers will require claimants to pursue offsetting SSDI benefits); (Mot. to Dismiss, Aff. of Richard C. Abati, Ex. K (Celeste Hemingson, "The View from SSA's Concord, New Hampshire, District Office," in Growth in Disability Benefits: Explanations and

*(Footnote continued)*

laundry list of case citations provided by Cigna, nor by the offset provisions codified in the cited federal and state retirement plans. Thus, these "disclosures" nowhere reveal an industry-wide practice of requiring insureds to submit false claims, let alone one that "clearly implicates" such a fraudulent practice by Cigna.

In any event, Cigna's suggestion that its policy of knowingly submitted SSDI claims with no chance of approval by the SSA was an "industry practice" is undermined by Cigna's own documents, which admit that its "aggressive" policy of "throw[ing] all claims into the pool" for an SSA application was *unusual for the industry*:

**Redacted**

      (LINA 0226245 at LINA 0226246 (Nadler Decl. Ex. B); LINA0219844
(Nadler Decl. Ex. C)).

Accordingly, Section 3730(e)(4) does not bar the Court's jurisdiction over this matter.

    **2.    Cigna's Argument That the Action Is "Based Upon" Public
        Disclosures Is Contrary to the Statute's Plain Meaning**

Even if Cigna did identify "public disclosures"— and as explained above it has not done so — Cigna's motion would fail because it makes no showing that Ms. Barrett's lawsuit was based in any way on such disclosures. The public disclosure bar prohibits *qui tam* actions only when a Relator's allegations are "based upon the public disclosure of allegations or transactions in [the specifically enumerated fora]." 31 U.S.C. § 3730(e)(4)(A). Although Cigna discusses at

---

Policy Implications 310 (Kalman Rupp & David C. Stapleton eds., 1998) ("more" employers are requiring a disability claim)).

length the split of authority concerning the meaning of the words "based upon,"[7] the better view — and the only view consistent with the plain language of the statute — is that a *qui tam* action is "based upon" a public disclosure only where the relator has actually derived her allegations from the public disclosure. *See United States ex rel. Fowler v. Caremark Rx, LLC*, 496 F.3d 730, 737-38 (7th Cir. 2007) (acknowledging the split of authority but concluding the proponents of the "actually derived" standard hold "the trump card, the plain language interpretation").

Recognizing this, this Court and two other judges in this district have held that a relator must actually derive her allegations from the public disclosure for the jurisdictional bar to apply. *See LaValley*, 707 F. Supp. at 1366 (Wolf, J.); *Rost I*, 446 F. Supp. 2d at 15 (Tauro, J.); *United States ex rel. LeBlanc v. Raytheon Co.*, 874 F. Supp. 35, 41 (D. Mass. 1995) (Lindsay, J.) (finding claim was based upon public disclosures where Relator only knew of Patriot missile system's faults from Congressional reports, but claimed special knowledge as ex-employee allowed him to interpret the disclosed materials). These courts are in accord with the Fourth and Seventh Circuits, which have both recently reaffirmed their adherence to the "actually derived" standard. *See United States ex rel. Wilson v. Graham Cty. Soil & Water Conservation Dist.*, 528 F.3d 292, 307-08 (4th Cir. 2008); *Fowler*, 496 F.3d at 737-38.

Courts generally rely on two rationales to embrace the "actually derived" standard. First, as stated above, the "actually derived" standard comports with the statute's plain language. *See United States ex rel. Siller v. Becton Dickinson & Co.*, 21 F.3d 1339, 1348 (4th Cir. 1994) (a "reading of 'based upon' as meaning 'derived from' is the *only fair construction* of the statutory

---

[7] As the Eighth Circuit noted, "[t]he split of authority is not quite as lopsided as it seems, for the issue has provoked spirited disagreements in some circuits that have adopted the majority view." *Minn. Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.*, 276 F.3d 1032, 1044 n.8 (8th Cir. 2002).

phrase") (emphasis added); *see also U.S. ex rel. Mathews v. Bk. of Farmington*, 166 F.3d 853, 863 (7th Cir. 1999) (noting that "'based upon' is not synonymous with 'identical to' or 'similar to,' but can be substituted for 'derived from' wherever it occurs"); *accord Rost I*, 446 F. Supp. 2d at 19. This alone should end the inquiry in favor of the "actually derived" standard. *See Fowler*, 496 F.3d at 738 (declining to "jettison a standard when that standard includes an appropriate plain language interpretation of the statute," despite arguments in support of an alternative interpretation).

Second, the "actually derived" standard is better tailored to serve the undisputed objective of the FCA: to prevent *parasitic* lawsuits. *Siller*, 21 F.3d at 1348; *see also United States ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 729 (1st Cir. 2007) ("*Rost II*") (identifying the goals of the 1986 amendments to the FCA to be "discouraging 'parasitic' or 'free-loading' *qui tam* suits while also encouraging productive private enforcement suits"). "[A] lawsuit based upon information which happens to be similar or identical to publicly disclosed allegations or transactions, but which derives from some other source than the public disclosure, is not parasitic, and should not be barred by a provision meant to bar parasitic lawsuits." *Mathews*, 166 F.3d at 863; *accord Siller*, 21 F.3d at 1348; *Rost I*, 446 F. Supp. 2d at 20.

Cigna does not address the merits of the "actually derived" standard, nor explain why this Court should disregard what courts have overwhelmingly agreed is the plain meaning of the statute. Rather, Cigna suggests that the "actually derived" standard was undermined by the Supreme Court's decision in *Rockwell Int'l Corp. v. United States*, 127 S. Ct. 1397 (2007). But Cigna concedes that Rockwell did not address the "based upon" requirement, (Mot. to Dismiss at 28-29.) and Cigna does not point to anything in Rockwell that would support its reading of the phrase based upon. Indeed both the Fourth and Sevenths Circuits reaffirmed adherence to the

14

"actually derived" standard after Rockwell was decided. *See Wilson,* 528 F.3d at 307-08; *Fowler*, 496 F.3d at 737-38.[8]  Given Rockwell's plain meaning interpretation of the "information on which the allegations are based," Rockwell lends more support to the "actually derived" standard. *See also Safeco Ins. Co. of Am v. Burr*, 127 S.Ct. 2201, 2212 (2007) (interpreting Fair Credit Reporting Act and observing that "In common talk, the phrase 'based on' indicates a but-for causal relationship and thus a necessary logical condition.")

As Cigna concedes, its public disclosure argument rests entirely upon its assumption that the so-called "majority rule" applies.  Cigna argues only that Ms. Barrett does not satisfy the "based upon" requirement because her "allegations are similar to and, in many instances, exactly the same as" the so-called "public disclosures."  (Mot. to Dismiss at 29.)  Cigna does not posit that Ms. Barrett's allegations actually derived from any of the alleged public disclosures cited in Cigna's 50-page memorandum, nor is there any evidence in the record to that effect.  Because the correct interpretation of "based upon" is "actually derived" from, and Cigna has not even argued, let alone demonstrated, that the complaint's allegations are derived from any public disclosure,  Cigna's motion must fail.

### 3.    Ms. Barrett Is the Original Source of the Allegations In Her Complaint

Because Cigna has not demonstrated that there has been a public disclosure, or that Ms. Barrett's allegations are based upon public disclosures, the Court need not address whether Ms.

---

[8] The *Rockwell* Court did not address "based upon" because the parties agreed that the allegations were "based upon" a public disclosure, and therefore the only issue before the Court was whether the relator was the original source of the information.  *See Rockwell*, 127 S.Ct. at 1407.  And although the Court noted that the parties cannot stipulate to confer subject matter jurisdiction on a court, the parties' agreement on "based upon" did not confer subject matter jurisdiction on the court, but rather operated to withdraw jurisdiction, so there was not reason for the Court to address it.

Barrett qualifies as an original source of the information in her complaint.   But, in any event, the record developed to date demonstrates that Ms. Barrett does so qualify.  "In order to qualify as an original source, a *qui tam* plaintiff need only have direct and independent knowledge of the alleged fraud and have disclosed that information to the government prior to bringing his or her *qui tam* action."  *Rost I*, 446 F. Supp. 2d at 23.  Ms. Barrett meets both criteria.

Ms. Barrett disclosed the information in her possession to the government prior to filing her complaint.  *See, e.g.*, Relator's June 17, 2008 Privilege Log lines 10, 18, 19, 29 (Nadler Decl. Ex. F) (demonstrating transmission of disclosures to the government as early as 11/7/03).[9]  And, Ms. Barrett clearly had direct and independent knowledge of the allegations she disclosed.  Ms. Barrett's sworn testimony was quite specific that her direct observance and participation in Cigna's practices and the training she received there provided the basis for her allegations of Cigna's fraudulent conduct for the period 1996 to the present:

**Redacted**

Barrett Tr. 127:6-127:20 (Nadler Decl. Ex. H).

_____

[9] As Relator informed Defendants in her February 25, 2008 letter, the contents of a relator's disclosure statement and her communications with the Government are shielded from discovery as classic attorney work product, *see, e.g., United States ex rel. Bagley v. TRW, Inc.*, 212 F.R.D. 554, 560-62 (C.D. Cal. 2003); *United States ex rel. Hunt v. Merck-Medco Managed Care, LLC*, No. 00-CV-737, 2004 U.S. Dist. LEXIS 7152, *7 (E.D. Pa. Apr. 21, 2004), and are also protected by the joint prosecution privilege, *see, e.g., United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.*, No. 99-3298, 2004 U.S. Dist. LEXIS 18747, *17 (D.D.C. May 17, 2004); *United States ex rel. Purcell v. MWI Corp.*, 209 F.R.D. 21, 27 (D.D.C. 2002); February 25, 2008 letter from Kimbrell to Wichers (Nadler Decl. Ex. G).  In the factually similar UnumProvident case (Civil Action No. 03-11699-PBS), Judge Saris summarily denied defendants' motion to compel the production of Relator's disclosure statement.

**Redacted**

Barrett Tr. 86:8-86:23 (Nadler Decl. Ex. H).

**Redacted**

Barrett Tr.  95:16-95:22 (Nadler Decl. Ex. H).[10]

There is, therefore, no evidence to support Cigna's wholly unsupported assertion that Mr. Loughren, not Ms. Barrett, was an original source of the allegations in Ms. Barrett's complaint. In any event, evidence probative of Ms. Barrett's status as an original source remains subject to Relator's outstanding discovery requests.  Cigna has yet to produce a promised Rule 30(b)(6) witness on the training its employees receive with respect to SSDI.  With certain very limited exceptions, Cigna still has not yet produced Ms. Barrett's work emails or documents.

Because Cigna's primary argument regarding Ms. Barrett's status as an original source is that Ms. Barrett's job responsibilities did not expose her to Cigna's illegal practices (*see* Mot. to Dismiss at 33-37), Relator is entitled to discovery on these topics.  Moreover, the forthcoming

---

[10] *See also* Barrett Tr. 57:5-57:23, 93:19-94:8, 95:16-95:22, 111:12-111:24, 139:12-140:16, 142:2-142:13 (Nadler Decl. Ex. H) (all evidencing that Ms. Barrett's complaint was based on her personal knowledge based on her work at Cigna).

testimony of Ms. Barrett's co-workers would be highly probative of Ms. Barrett's ability to be an original source concerning Defendants' illegal conduct.

### B.    Cigna's So-called "Government Knowledge" Argument is Entirely Without Merit

Government knowledge does not prevent liability under the False Claims Act for knowingly causing false claims to be submitted to the United States.  *See United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1156-57 (2d Cir. 1993) (defendant's knowledge of the falsity of its claim is "not automatically exonerated by any overlapping knowledge by government officials").  As the Ninth Circuit explained in *United States ex rel. Hagood v. Sonoma Cty. Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991), "[t]he requisite intent" under the False Claims Act is the defendant's "knowing presentation of what is known to be false.  That the relevant government officials know of the falsity is not in itself a defense."  *Id.*

Indeed, Congress amended the FCA in 1986 specifically to make clear that government knowledge is *not* a defense.  *Shaw v. AAA Eng'g & Drafting, Inc.*, 213 F.3d 519, 534 (10th Cir. 2000) (1986 amendments make clear that "government knowledge of a contractor's wrongdoing is no longer an automatic defense"); *see also Rost II*, 507 F.3d at 729 (explaining how under earlier version of the Act, "the 'government knowledge' bar proved too restrictive of qui tam actions" and was "resulting in under-enforcement of the FCA").

Notwithstanding the FCA's plain language and the 1986 amendments, some courts have recognized a "very narrow exception" whereby government knowledge may, in some limited circumstances, be relevant to a defendant's scienter in false claims act cases. *See United States v. Dynamics Research Corp.*, No. 03CV11965-NG, 2008 WL 886035, at *17 (D. Mass. Mar. 31, 2008).  Even were this Court to adopt this "very narrow exception," determining whether it is

applicable at all to this case turns on three factors none of which Cigna has demonstrated — nor could demonstrate — exist here:

- the Government was fully informed that Cigna was causing insureds they knew to be ineligible to file claims for SSDI;

- the Government nevertheless approved Cigna's causing the submission of these knowingly ineligible claims; *and*

- Cigna was aware that the Government was fully informed of Cigna's conduct, had approved its conduct, and Cigna acted on that basis when it caused the claims to be submitted.

*United States v. Southland Mgmt. Corp.*, 288 F.3d 665, 682, n.27 (5th Cir. 2002) (concurring opinion); *United States ex rel. Tyson v. Amerigroup Illinois, Inc.*, 488 F. Supp. 2d 719, 730 (N.D. Ill. 2007) ("This Court has noted that mere acquiescence (rather than approval) by government employees is not sufficient to avoid liability, as requiring mere acquiescence would preclude FCA liability any time a government employee and a defendant were in cahoots"); *United States ex rel. Asch v. Teller, Levit & Silvertrust, P.C.*, No. 00 C 3289, 2004 WL 1093784, at *3 (N.D. Ill. May 7, 2004) (same); *United States ex rel. Mayman v. Martin Marietta Corp.*, 894 F. Supp. 218, 223 (D. Md. 1995) ("Even assuming that Martin Marietta did inform the Government of its precise actions, a government officer cannot authorize a contractor to violate federal regulations.").

Cigna's motion fails to provide any evidence — much less undisputed evidence as is the standard on summary judgment — that even a single one of these elements is met. With respect to what the Government knew, testimony from the Social Security Administration's 30(b)(6) designee clearly demonstrates that the SSA did *not* understand Cigna's practices until they were disclosed by Ms. Barrett's Complaint: "we certainly have an arms-length relationship with the private insurers. We don't have their contracts. We don't know who they send over. We typically don't ask. We didn't have a reason to know until this litigation started. It's just not

something that was really on our radar screen." Sklar Tr. 25:16-26:9 (Nadler Decl. Ex.H).  With

respect to the Government's alleged approval of the knowing submission of ineligible claims,

Cigna's motion provides no evidence at all that the government approved of Cigna's policy of

knowingly causing many thousands of its insureds to submit claims for benefits for which they

were not entitled.  Finally, Cigna presents not  even a shred of evidence that Cigna management

relied on some alleged government approval of their policy of requiring claims that they knew

were false to be submitted.


V.      **Conclusion**

        For the reasons set forth in this opposition, Defendants' motion to stay discovery should

be denied and briefing on Cigna's Motion to Dismiss should be suspended until the completion

of discovery on April 4, 2009.

Dated:  September 5, 2008                         Respectfully submitted,


                                                 /s/ Carl S. Nadler
                                                 Carl S. Nadler

Mary Louise Cohen                                Peter B. Krupp, B.B.O.  #548112
Colette G. Matzzie                               LURIE & KRUPP, LLP
PHILLIPS AND COHEN LLP                            One McKinley Square
2000 Massachusetts Ave., NW                       Boston, MA  02109
Washington, DC  20036                             Tel: (617) 367-1970
Tel: (202) 833-4567                               Fax: (617) 367-1971
Fax: (202) 833-1815

Carl S. Nadler
Stuart M. Rennert
HELLER EHRMAN LLP
1717 Rhode Island Avenue, NW
Washington, DC  20036
Tel: (202) 912-2000
Fax: (202) 912-2020

                                                 *Counsel for Dawn Barrett*

                                          20

**<u>CERTIFICATE OF SERVICE</u>**

       I, Carl S. Nadler, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on September 5, 2008.

                          /s/ Carl S. Nadler
                          Carl S. Nadler