# Exhibit I

1

Volume 1, Pages 1 - 115

Exhibits: 1 - 18

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA ex rel.

DAWN BARRETT,

        Plaintiff

vs.                  Docket No. 03-12382-MLW

CIGNA CORPORATON and LIFE

INSURANCE COMPANY OF NORTH

AMERICA,

        Defendants

30(b)(6) DEPOSITION OF SOCIAL SECURITY

ADMINISTRATION

By its designee GLENN SKLAR

Tuesday, July 22, 2008, 9:47 a.m.

Choate, Hall & Stewart

Two International Place

Boston, Massachusetts

----Reporter: Kathleen L. Good, CSR, RPR----

K. L. GOOD & ASSOCIATES

Post Office Box 367

Swampscott, Massachusetts 01907

Tel. 781-367-0815   Fax 781-598-0815

25

1   receiving so much money that no one ends up
2   working. Really a totally different idea.
3   Q. Again, in the 17 years that you've been working
4      at SSA, have you ever heard about or
5      participated in any discussion where the
6      propriety of state disability programs for their
7      state employees, those states requiring
8      employees to apply for SSDI as a precondition to
9      receiving benefits under that state program,
10     you've never engaged in or heard about
11     discussions about the propriety of that
12     practice?
13  A. As previously stated, I never heard of this
14     issue until I saw it in the subpoena
15     approximately 60 days ago.
16  Q. How long, to your knowledge -- I guess now I'm
17     asking you in your 30(b)(6) capacity -- how long
18     has SSA been aware of the practice of
19     coordination of benefits by private long-term
20     disability insurers?
21  A. SSA has had general knowledge of the practice
22     for many years. In fact, I believe the first
23     documentation that I'm familiar with comes from
24     the late '80s that we had general knowledge that

1   this practice was going on and that knowledge
2   went to the highest levels of the agency.
3           That said, we certainly have an
4   arms-length relationship with the private
5   insurers.  We don't have their contracts.  We
6   don't know who they send over.  We typically
7   don't ask.  We didn't have a reason to know
8   until this litigation started.  It's just not
9   something that was really on our radar screen.
10          MR. KAPLAN:  Let's mark as Exhibits 4
11  and 5, two memoranda from Associate Commissioner
12  Eileen Bradley, one dated September 22, 1989,
13  and the other dated October 18, 1989.
14          (Marked, Exhibit No. 4, Memo, 9/22/89.)
15          (Marked, Exhibit No. 5, Memo, 10/18/89.)
16  Q.  As you review Exhibits 4 and 5, my question will
17      be whether these are the memoranda you were just
18      referring to in your prior answer.
19  A.  Yes.
20  Q.  Were you familiar with these memoranda prior to
21      your getting ready for this deposition?
22  A.  No, I was not familiar with these particular
23      memoranda.  However, I was familiar with the
24      general practice of private disability insurers